Tiffany L. Dehen
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Telephone: 858-262-0052
Email: tiffany.dehen@gmail.com

NUNC PRO TUNC
Apr 14 2017



**FILED**

Apr 17 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ kristenb          DEPUTY

Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY DEHEN <br> 1804 Garnet Avenue, #239 <br> Pacific Beach, CA 92109 <br><br>     Plaintiff, <br><br> v. <br><br> JOHN DOE <br> Address TBD <br><br> and <br><br> TWITTER, INC. <br> 1355 Market St. #900 <br> San Francisco, CA 94103 <br><br> and <br><br> UNIVERSITY OF SAN DIEGO <br> Hughes Administration Center #320 <br> 5998 Alcala Park <br> San Diego, California 92110 | Case No.: 3:17-cv-00198-BEN-WVG <br><br> **PLAINTIFF'S MOTION TO FILE AMENDED COMPLAINT FOR:** <br> (1)  VIOLATIONS OF THE U.S. COPYRIGHT ACT; 15 U.S.C. 106, 501 *et seq.*; <br> (2)  VIOLATIONS OF THE CALIFORNIA CIVIL CODE § § 44 AND 45, *et seq.*; <br> (3)  VIOLATION OF THE CALIFORNIA PENAL CODE § 528.5, *et seq.*; <br> (4)  VIOLATION OF THE CALIFORNIA CIVIL CODE § § 1572 or 1573, *et seq.*; |

SERVE:                                          )    (5)   DECLARATORY RELIEF
                                                )          UNDER CALIFORNIA CIVIL
                                                )          CODE § 1692, *et seq.*;
JOHN DOE                                        )    (6)   INTENTIONAL
Address TBD                                     )          INTERFERENCE WITH
                                                )          ACTUAL AND/OR
TWITTER, INC.                                   )          PROSPECTIVE ECONOMIC
Attn: Incorporating Services, Ltd.              )          RELATIONS;
3500 South DuPont Highway                       )    (7)   INTENTIONAL INFLICTION
Dover, Delaware 19901                           )          OF EMOTIONAL DISTRESS;
                                                )    (8)   NEGLIGENT INFLICTION
and                                             )          OF EMOTIONAL DISTRESS;
                                                )    (9)   CIVIL CONSPIRACY;
UNIVERSITY OF SAN DIEGO                         )    (10)  VIOLATION OF 18 U.S.C. §
Hughes Administration Center #320               )          1962, *et seq.*;
5998 Alcala Park                                )    (11)  VIOLATION OF
San Diego, California 92110                     )          CALIFORNIA CIVIL CODE
                                                )          § 45.
        Defendants.                             )    (12)  BREACH OF CONTRACT;
                                                )    (13)  NEGLIGENT INFLICTION
                                                )          OF EMOTIONAL DISTRESS.
                                                )

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

# PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT

1. Pursuant to the Federal Rules of Civil Procedure, Plaintiff moves to file her

First Amended Complaint under Rule 15(a)(2) in particular, which provides in

relevant part the following, "[i]n all other cases, a party may amend its pleading

only with the opposing party's written consent or the court's leave. This court

should freely give leave when justice so requires." *See* Fed. R. Civ. P. 15(a)(2).

2. Plaintiff alleges justice so requires in this case because she initially filed her 02/01/2017 complaint under duress. Plaintiff alleges she was in fear for her personal safety and suffering extreme mental anguish due to circumstances that will soon become apparent to the Court throughout the course of this litigation.

3. Plaintiff is entitled to amend her complaint because there has not been undue delay since Plaintiff sent by, express signature with signature required with FedEx, this filing and all filings with the Court she submitted on April 12, 2017, April 5, 2017 and 02/01/2017, to both known Defendants, Twitter, Inc., and USD.

4. Plaintiff spent the time since filing her initial complaint to craft an amended complaint that alleges causes of action which this court has jurisdiction over, as well as causes of action upon which relief can be granted, such as the ones referenced above on the cover page.

5. Plaintiff is within the statute of limitations for all causes of action she will allege in her first amended complaint, should this Court grant her motion.

6. With this motion Plaintiff does not seek to reserve her original filing date with the court, but respectfully moves the Court to supersede the initial complaint in every respect, including the filing date.

7.  WHEREFORE Plaintiff respectfully moves for the Court to accept her motion

to file First Amended Complaint, which is full in and of itself, with the proper

Table of Authorities and Exhibits attached thereto.

**Dated: April 12, 2017**

Respectfully submitted,

Tiffany L. Dehen
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Tel. 858-262-0052
Tiffany.Dehen@Gmail.com

Tiffany L. Dehen
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Telephone: 858-262-0052
Email: tiffany.dehen@gmail.com

Pro Se Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY DEHEN<br>1804 Garnet Avenue, #239<br>Pacific Beach, CA 92109<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE<br>Address TBD<br><br>and<br><br>TWITTER, INC.<br>1355 Market St. #900<br>San Francisco, CA 94103<br><br>and<br><br>UNIVERSITY OF SAN DIEGO<br>Hughes Administration Center #320<br>5998 Alcala Park<br>San Diego, California 92110 | Case No.: <u>3:17-cv-00198-BEN-WVG</u><br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:**<br>(1)  VIOLATIONS OF THE U.S.<br>      COPYRIGHT ACT; 15 U.S.C.<br>      106, 501 *et seq.*;<br>(2)  VIOLATIONS OF THE<br>      CALIFORNIA CIVIL CODE §<br>      § 44 AND 45, *et seq.*;<br>(3)  VIOLATION OF THE<br>      CALIFORNIA PENAL CODE<br>      § 528.5, *et seq.*;<br>(4)  VIOLATION OF THE<br>      CALIFORNIA CIVIL CODE §<br>      § 1572 or 1573, *et seq.*; |

1

| | |
|---|---|
| SERVE:<br><br>JOHN DOE<br>Address TBD<br><br>TWITTER, INC.<br>Attn: Incorporating Services, Ltd.<br>3500 South DuPont Highway<br>Dover, Delaware 19901<br><br>and<br><br>UNIVERSITY OF SAN DIEGO<br>Hughes Administration Center #320<br>5998 Alcala Park<br>San Diego, California 92110<br><br>     Defendants. | (5) DECLARATORY RELIEF UNDER CALIFORNIA CIVIL CODE § 1692, *et seq.*;<br>(6) INTENTIONAL INTERFERENCE WITH ACTUAL AND/OR PROSPECTIVE ECONOMIC RELATIONS;<br>(7) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;<br>(8) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;<br>(9) CIVIL CONSPIRACY;<br>(10) VIOLATION OF 18 U.S.C. § 1962, *et seq.*;<br>(11) VIOLATION OF CALIFORNIA CIVIL CODE § 45.<br>(12) BREACH OF CONTRACT;<br>(13) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS. |

## FIRST AMENDED COMPLAINT

Plaintiff, Tiffany L. Dehen J.D., brings this action against Defendants John

Doe(s), Twitter, Inc., and the University of San Diego jointly and severally.

## JURY TRIAL DEMANDED

Plaintiff Tiffany Dehen alleges the following against Defendants John Doe,

Twitter, Inc. ("Twitter"), and University of San Diego ("USD"):

## NATURE OF ACTION

2

1.  This is a civil action in which Ms. Dehen has been the target of a predatory scheme by Defendants to defraud, harass, embarrass, and intimidate her, and to cause Ms. Dehen financial loss and damage to her personal reputation, professional reputation, and copyright interests, as set forth below.

2.  Defendant(s) John Doe(s) impersonated Ms. Dehen over the Internet by registering a social media account under the name "Tiffany Dehen," purporting to be Ms. Dehen and caused Ms. Dehen humiliation, embarrassment, emotional distress, financial loss, and damage to her personal and professional reputation by including falsified copyrighted photographs of Ms. Dehen without her consent and publishing personal information and false, derogatory, National Socialist German Workers' Party and Ku Klux Klan supporting content and other false statements about Ms. Dehen, including information directed at harming her economic interests.

3.  Twitter allowed this behavior to continue occurring on their system and did not abide by their posted policies, but instead breached the contract it entered into with Plaintiff, causing Plaintiff additional damages and emotional distress.

4. Upon information and belief (to be confirmed through discovery), John Doe(s) engaged in harassing behavior aimed towards Plaintiff in violation of the University of San Diego (hereafter USD) Student Conduct agreement, for which

Plaintiff alleges USD did not address pursuant to its policies, causing a breach of contract between Plaintiff and USD, and proximately leading to the actions that led to this cause of injury.

## PARTIES

5. Plaintiff Tiffany Dehen is a citizen of the United States domiciled in the State of California. She brings this lawsuit on behalf of herself.

6. Plaintiff is informed and believes that John Doe, or John Does, are individuals whose true identities are unknown, but are engaged in anonymous communications over the internet which are designed to prey upon, defame and harass Ms. Dehen while relying on their anonymity to avoid detection.

7. The communications, as described herein below, are also calculated to harm Ms. Dehen's economic interests.

8. The true names and capacities of John Doe(s) are unknown to Plaintiff who therefore sues said defendants by such fictitious names, *inter alia*, pursuant to Federal Rule of Civil Procedure 15(a)(2), Federal Rule of Civil Procedure 21, and California Code of Civil Procedure § 474. Plaintiff will seek leave of court to amend this complaint when said true names and capacities have been ascertained.

9. Defendant Twitter, Inc. d/b/a Twitter, is incorporated under the laws of the State of Delaware, with its principal place of business in San Francisco, California.

Twitter manages, operates, and publishes Tweets written by users of its social media website. Twitter has 313 million monthly active users, 1 billion unique visits monthly to sites with embedded Tweets, and 79% of its accounts are outside of the United States. *See* https://about.twitter.com/company.

10. Plaintiff has reason to believe John Doe(s) attended University of San Diego School of Law (to be confirmed through discovery) and thus, Plaintiff alleges University of San Diego acted or omitted to act in the manner which proximately caused the damage and injury to plaintiff alleged herein, and is also legally responsible and liable to plaintiff as alleged herein for breach of contract.

11. On information and belief, Defendant University of San Diego, "USD," is a for-profit education institution located in San Diego, California. USD has 8,508 undergraduate, paralegal, graduate and law students, 36% of which are minority students and 9% of which are international students. *See* https://www.sandiego.edu/about/facts.php.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

13. Specifically, the Court has federal question jurisdiction in this matter, in that Plaintiff seeks injunctive relief and damages against John Doe under the Copyright

Act of 1976 (17 U.S.C. § 501-505, inclusive) and under 18 U.S.C. § 1964, further explained below.

14.  This Court has supplemental jurisdiction over all other claims that do not arise under a federal statute in that these supplemental claims involves a substantial federal question and each claim is so related to the federal claim in the action, arising from a common nucleus of operative facts, that they form part of the same case or controversy under Article III of the United States Constitution pursuant to 28 U.S.C. § 1367.

15.  Upon information and belief, this Court might have further jurisdiction pursuant to 28 U.S.C. § 1332, depending on the identity of John Doe, to be ascertained during discovery.

16.  Plaintiff avers that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

17.  The Court has personal jurisdiction over each of the Defendants because each resides in, is domiciled in and/or does systematic and continuous business in the State of California and in this judicial district, various acts complained of herein occurred in the State of California and this judicial district, and/or Defendants have caused injury to Plaintiff and to Plaintiff's intellectual property and other

proprietary and economic interests within the State of California and in this judicial district.

18.  Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b) and (c) and/or possibly under 28 U.S.C. § 1400(a), depending on the identity of John Doe.

## FACTS COMMON TO ALL CLAIMS

### Background Information

19.  Plaintiff realleges and incorporates by reference paragraphs 1 through 18 as though fully set forth herein.

20.  Ms. Dehen graduated from Arizona State University *cum laude* in 2011 with a Bachelor of Science in Marketing from the W.P. Carey School of Business, Minor in Mass Communications from the Walter Cronkite School of Journalism and Mass Communications, and the International Business Certificate offered by W.P. Carey School of Business.

21.  Ms. Dehen earned her Juris Doctor from the University of San Diego School of Law in 2.5 years with a dual concentration in Intellectual Property Law and Business and Corporate Law.

22.  While in law school Ms. Dehen externed for the USD Federal Tax Clinic, assisting indigent clients in their tax disputes with the Internal Revenue Service.

7

23.  Plaintiff is self-employed and supported herself through law school by providing marketing and consulting services as an independent contractor, selling products online, and obtaining federal student loans.

24.  Ms. Dehen invested $215,618.47 in student loans (*see* Exhibit 62), in addition to the past 4.5 years of her life, to increase the value of her image, likeness, brand and services by earning her Juris Doctor from USD, with the ultimate goal being admittance to the State Bar of California.

25.  Plaintiff spent the year before law school preparing and saving up for law school, a semester off during law school to save money to complete law school, in addition to working the last nine months since completing law school to finance the costs associated with admittance to the State Bar of California.

26.  In the weeks leading up to the actions that led to this cause of action, Plaintiff was actively seeking a position in the legal industry.

27.  Before, during, and after the injury that led to this cause of action, Ms. Dehen was, and still is, actively pursuing several business ventures which would rely upon her reputation.

28.  Plaintiff is also still seeking admittance to the State Bar of California, which includes a rigorous character and background check and a strenuous test.

8

29. While attending law school at USD, Ms. Dehen was subjected to harassing behavior which led to an investigation with the Federal Bureau of Investigation due to the nature of statements made to her and behavior aimed towards her.

30. The FBI investigation was commenced in July 2016 due to alarming behavior that occurred in the months leading up to and around the time of the Dallas Shooting, *i.e.*, at the height of the ISIS terrorist attacks in the U.S., and around the world, broadcast on various, if not all of the, media outlets.

31. Ms. Dehen has reason to believe the aforementioned FBI investigation is relevant to this case due to the fact that the day she became apprised of the malicious Twitter account, she noticed Photograph 2 titled "Tiffany Pro," (*see* Exhibit 2) that Doe used to create Infringing Work #6 (*see* Exhibit 13), was taken from her LinkedIn profile.

32. January 30, 2017 Ms. Dehen checked to see the individuals who had viewed her LinkedIn profile in the days leading up to the malicious Twitter account, and found two individuals from USD Law recently viewed her profile in the days leading up to the malicious Twitter account. *See* Exhibit 52.

33. The conduct that led to the aforementioned FBI investigation is linked to conduct that occurred on USD property and in connection with USD students, and upon information and belief, is also linked to the conduct giving rise to this case.

34. University of San Diego provides a Code with Rules of Conduct outlining

specific prohibitions, policies and procedures that each student is responsible for

understanding and following.

35. USD Rules of Conduct can be found online at:

https://www.sandiego.edu/conduct/the-code/rules-of-conduct.php

36. The USD Rules of Conduct provide the following:

> The following conduct is prohibited on University premises or at University
> events, wherever they may occur. This same conduct, though occurring off
> University premises and not at University events, may nonetheless be
> subject to University sanctions when it adversely affects the University, its
> educational mission or its community. Violation of these standards, policies,
> and procedures may subject an individual or group to disciplinary action as
> determined by the Assistant Vice President for Student Affairs/Dean of
> Students or his or her designee, pursuant to the provisions of the Code.

37. The Rules outlined in the Code of Conduct include, in relevant part, the

following:

> 2. Disruption of teaching, research, administration, conduct proceedings or
> any other institutional activity.
> 3. Abuse of any person, including but not limited to physical abuse, threats,
> verbal intimidation, harassment, stalking, coercion and/or other conduct
> which threatens the health or safety of any person.
> 6. Conduct that is disorderly, lewd, indecent or obscene.

38. Plaintiff and University of San Diego entered into a written contract pursuant

to the aforementioned Code of Student Conduct when Ms. Dehen enrolled in the

10

University of San Diego School of Law in August 2013 and again in January 2015

when Ms. Dehen re-enrolled in the University of San Diego School of Law.

39.  For at least the past seven years, Plaintiff has consistency held an online

following of around 5,000 followers across all of her personal social media

websites.

40.  Ms. Dehen created her Twitter account, *i.e.*, entered into the user agreement

with Twitter, with the expectation Twitter would enforce its stated rules, pursuant

to its policies.

41.  Ms. Dehen and Twitter entered into a written contract pursuant to the terms of

Twitter's user agreement on or about October 9, 2015.  *See* Exhibit 53.

42.  Twitter provides a policy for restricting access to its business, titled, "The

Twitter Rules," and can be found online at:

https://support.twitter.com/articles/18311.

43.  Pertaining to hateful conduct, Twitter's rules provide, in relevant part, the

following:

> You may not promote violence against or directly attach or threaten other
> people on the basis of race, ethnicity, national origin, sexual orientation,
> gender, gender identity, religious affiliation, age, disability, or disease.  We
> also do not allow accounts whose primary purpose is inciting harm towards
> others on the basis of these categories.

44. Twitter provides an Impersonation Policy, that can be found online at:

https://support.twitter.com/articles/18366.

45. Twitter's Impersonation Policy provides, in relevant part, the following:

> Impersonation is a violation of the Twitter Rules. Twitter accounts
> portraying another person in a confusing or deceptive manner may be
> permanently suspended under the Twitter impersonation policy.

46. Twitter's Impersonation Policy further provides, "[i]n order to be

impersonation, the account must also portray another person in a misleading or

deceptive manner."

47. In Twitter's Impersonation Policy, Twitter promises:

> Upon receipt of an impersonation report, we will investigate the reported
> accounts to determine if the accounts are in violation of the Twitter Rules.
> Accounts determined to be in violation of our impersonation policy, or those
> not in compliance with our parody, commentary, and fan account policy,
> will either be suspended or asked to update the account(s) so they no longer
> violate our policies.
>
> *See* https://support.twitter.com/articles/20170142.

48. Twitter provides a Hateful Conduct Policy, that can be found online at:

https://support.twitter.com/articles/20175050.

49. Twitter's Hateful Conduct Policy provides, in relevant part, the following:

"[w]e do not tolerate behavior that harasses, intimidates, or uses fear to silence

another person's voice."

50. Twitter's Hateful Conduct Policy further provides the following:

> Examples of what we do not tolerate includes, but is not limited to behavior that harasses individuals or groups of people with: violent threats; wishes for the physical harm, death, or disease of individuals or groups; references to mass murder, violent events, or specific means of violence in which/with which such groups have been the primary targets or victims; behavior that incites fear about a protected group; repeated and/or non-consensual slurs, epithets, racist and sexist tropes, or other content that degrades someone.

51. Twitter's Hateful Conduct Policy further provides the following: "[w]e enforce policies when someone reports behavior that is abusive and targets an entire protected group and/or individuals who may be members."

52. Plaintiff and Twitter entered into a written contract including the terms set forth above at the time Plaintiff accepted Twitter's Terms of Use and activated her account on October 9, 2015 at 11:11 p.m. *See* Exhibit 53.

53. Upon information and belief there is no other "Tiffany Dehen" in existence, nor is there any other individual using the name "Tiffany Dehen" to sell products or render consulting, marketing and legal services anywhere in the United States.

54. Merriam Webster Dictionary's definition of Nazi provides the following:

> (1) a member of a German fascist party controlling Germany from 1933 to 1945 under Adolf Hitler; (2) *often not capitalized*; (a) one who espouses the beliefs and policies of the German Nazis: Fascist; (b) one who is likened to a German Nazi: a harshly domineering, dictatorial, or intolerant person; a grammar nazi.

13

*See* https://www.meriam-webster.com/dictionary/Nazi.

55. Encyclopedia Britannica's definition of Nazi Party provides the following:

> Nazi Party, byname of National Socialist German Workers' Party, German Nationalsozialistische Deutsche Arbeiterpartei (NSDAP), political party of the mass movement known as National Socialism. Under the leadership of Adolf Hitler, the party came to power in Germany in 1933 and governed by totalitarian methods until 1945.

*See* https://www.britannica.com/topic/Nazi-Party.

56. Merriam Webster Dictionary's definition of Swastika provides the following:

> (1) A symbol or ornament in the form of a Greek cross with the ends of the arms extended at right angles all in the same rotary direction; (2) a swastika used a symbol of anti-Semitism or of Nazism.

*See* https://www.merriam-webster.com/dictionary/swastika.

57. Ms. Dehen is not a member of the National Socialist German Workers' Party (colloquially known as the Nazi Party), nor the Ku Klux Klan (colloquially known as the KKK).

58. Further, Ms. Dehen has no relatives that were involved in either the National Socialist German Workers' Party or the Ku Klux Klan.

59. Ms. Dehen's late grandfather was Captain John D. Raikos, who was awarded the following decorations for his role in the 83rd Infantry of the United States Army in World War II: Combat Infantryman Badge, Silver Star Medal, Bronze

14

Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good

Conduct, American Campaign Medal, WWII Victory Medal, and the EAME

Campaign Medal with 5 Bronze Stars for the Five Campaigns. *See* Exhibit 1 or

visit http://www.normandytothebulge.be/83rd_JRaikos.html.

60.  Additionally Ms. Dehen's late grandfather, Captain John D. Raikos, was

honored with the esteemed citation from Yom H'ashowa Holocaust Remembrance

for his role with the 83rd Division's liberation of Nazi concentration camps. *See*

Exhibit 1 or visit http://www.normandytothebulge.be/83rd_JRaikos.html.

61.  Ms. Dehen has a relative who was Jewish, *i.e.*, Ms. Dehen is part Jewish.

62.  Further, Ms. Dehen volunteered as a Summer Camp Counselor at the Tucson

Jewish Community Center.

## Copyrighted Works

63. On June 20, 2013, Plaintiff created Photograph 1, titled, "Tiffany Pro," in

Scottsdale, Arizona and published to LinkedIn 06/20/2013. *See* Exhibit 2.

64.  Plaintiff submitted a Federal Copyright application to register "Tiffany Pro"

with the U.S. Copyright Office on 03/31/2017 and assigned Case Number:

1-4765958281.

65. On April 2, 2016, Plaintiff created Photograph 2, titled, "Tiffany DC," in front of Trump Tower in Washington D.C, and published to Twitter on 04/02/2016, and Facebook on 09/15/2016.  *See* Exhibit 3.

66.  Plaintiff submitted a Federal Copyright application to register "Tiffany DC" with the U.S. Copyright Office on 03/31/2017 and assigned Case Number: 1-4763442854.

67. On April 28, 2016, Plaintiff created Photograph 3, titled, "Tiffany MAGA," in front of the Trump rally in Orange County, California, and posted to Twitter on 04/28/2016.  *See* Exhibit 4.

68.  Plaintiff submitted a Federal Copyright Application to register "Tiffany MAGA" with the U.S. Copyright Office on 03/31/2017 and assigned Case Number: 1-4765958329.

69. On December 18, 2016, Plaintiff created Photograph 4, titled, "Tiffany Christmas MAGA," in Pacific Beach, California, and posted to Instagram, Facebook, and Twitter on 12/23/2016.  *See* Exhibit 5.

70.  Plaintiff submitted a Federal Copyright application to register "Tiffany Christmas MAGA" with the U.S. Copyright Office on 04/01/2017 and assigned Case Number: 1-4771340771.

**Twitter Account With Domain @tiffanydehen**

71. On or about January 26, 2017, John Doe created a Twitter account with the domain @tiffanydehen, with the description, "[p]arody account; Fiction and political satire about Republican white women", yet used Tiffany Dehen's legal name in the domain @tiffanydehen, and Ms. Dehen's copyrighted photos. *See* Exhibit 9.

72. The natures of the posts, described below, are so egregious as to deny Doe's protection under the First Amendment, further explained below.

73. Due to the ongoing terrorism investigation led by the Federal Bureau of Investigation, and on advice of the FBI, Tiffany Dehen was no longer using the domain @tiffanydehen in connection with her social media accounts.

74. On or about January 26, 2017, Doe, using the Twitter domain @tiffanydehen, followed various Twitter users including the following:

> "Helmut Pepe Thick @HelmutThick,""Vladamir Putin @realtalkputin,"
> "Donald J. Trump @realDonaldTrump," "Ann Coulter @AnnCoulter,"
> "Paul Ryan @SpeakerRyan," "Bill O'Reilly @oreillyfactor," "Sean Hannity
> @seanhannity," "The White House @WhiteHouse," "Eric Trump
> @EricTrump," "Kellyanne Conway @KellyannePolls," "Donald Trump Jr.
> @DonaldJTrumpJr," "Ivanka Trump @IvankaTrump," "Mike Pence
> @mike_pence," "Dr. Ben Carson @RealBenCarson," "Fox News
> @FoxNews," "Milo Yiannopoulous @DontGoAwayM4d," "Adolf Hitler
> @AdolfHitlerFuhr," "Vladamir Putin @realtalkputin," "Donald J. Trump
> @realDonaldTrump," "Klu Klux Klan @TheeKluKluxKlan," "klu klux klan
> @FuckTheNiggers," and "Breitbart News @BreitbartNews."

*See* Exhibits 6-8, and 44-47.

75. On or about January 27, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "@realDonaldTrump is gonna stop these alien abductions plaguing our nation y'all. These anal probes gotsa stop. #MakeAmericaGreatAgain #ufos". *See* Exhibit 43.

76. On or about January 27, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted "I'm all for building that wall over mexico but the real aliens come from above #buildthatwall #MakeAmericaGreatAgain @realDonaldTrump #ufos". *See* Exhibits 42-44.

77. On or about January 27, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "The only better time to be a woman in America beside 2day was the day Jesus was crucified #witness #amen #Jesusfirst #MakeAmericaGreatAgain". *See* Exhibits 42-43.

78. On or about January 28, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "Me+my girls today. If you can't bring back an 80's dye job, U DON'T DESERVE TO BE AMERICAN!!! #MakeAmericaGreatAgain #SexyLikeCockatoos #grl". *See* Exhibit 41.

79. On or about January 28, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "My gawd Who is that lucky lady? @POTUS @realDonaldTrump My

18

pastor wouldn't be happy with my inside-outies right now?

#MakeAmericaGreatAgain". *See* Exhibit 40.

80. On or about January 28, 2017, Doe, using the Twitter domain @tiffanydehen,

tweeted, "TO HELL WITH MUSLIMS WHO WANT TO BAN OUR

AMERICAN VALUES! U NEVER PUT ME IN A BURKA! #MuslimBan

#MakeAmericaGreatAgain @POTUS #BuildTheWall". *See* Exhibit 39.

81. On or about January 28, 2017, Doe, using the Twitter domain @tiffanydehen,

tweeted, "Just found this lovely pic of our #firstladymelania Pearl necklaces 4

every girl about time @MELANIATRUMP @POTUS

#MakeAmericaGreatAgain". *See* Exhibits 37-38.

82. On or about January 28, 2017, Doe, using the Twitter domain @tiffanydehen,

tweeted, "Have y'all noticed the blacks are on all the magazines nowadays?  Time

4 change!! White women are the silent majority in the lamestream media". *See*

Exhibits 35-36.

83. On or about January 28, 2017, Doe, using the Twitter domain @tiffanydehen,

tweeted, "Nothing like my own personal welcome team on Twitter.  Thanks

@AdolfHitlerFuhr XOXO Let's #MakeAmericaGreatAgain studcakes

#MuslimBan", and included a photo stating, "Fuhrer welcomes you" showing the

19

Adolf Hitler Twitter account that Doe followed using the Twitter domain @tiffanydehen.  *See* Exhibits 35-36.

84. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "Donated some eggs today!  Don't know why sept they told me they were tax deductible! #MakeAmericaGreatAgain", with Infringing Work #1 (*see* Exhibit 34), which comprises of Photograph #2 titled, "Tiffany DC," (*see* Exhibit 3) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) altered with the word, "MURIKKKA!", and two drawn in Swastikas.  *See* Exhibits 32-33.

85. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "Throwing this dog over this cliff!  Animals don't deserve special rights! Down with special interists! #MakeAmericaGreatAgain @POTUS", with Infringing Work #2 (*see* Exhibit 31), which comprises of Photograph #4 titled, "Tiffany Christmas MAGA," (*see* Exhibit 5) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the words, "DOWN WITH THEM SPESHUL INTRISTS!".  *See* Exhibit 29-30.

86. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "Saving myself for marriage!  My man knows we can have sex 3 times: honeymoon, Trumps reelection, & jesus 2nd coming! #MakeAmericaGreatAgain",

with Infringing Work #3 (*see* Exhibit 28), which comprises of Photograph 3 titled, "Tiffany MAGA," (*see* Exhibit 4) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the top of Ms. Dehen's hat whited out with the words, "MAKE AMERICA GRATE AGAIN", written instead. *See* Exhibits 26-27.

87. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted "Why do the gays hate this hate? I thought they all liked fashion! #snowflakes #EndSpecialInterests #ReligiousFreedom #MakeAmericaGreatAgain", with Infringing Work #4 (*see* Exhibit 25), which, again, comprises of Photograph 3 titled, "Tiffany MAGA," (*see* Exhibit 4) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the top of Ms. Dehen's hat whited out with the words, "BRING BACK (with a symbol that looks like a vagina)", written instead. *See* Exhibits 23-24.

88. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted "That'll teach them terrorist saudis! #MuslimBan #MakeAmericaGreatAgain my hero! @POTUS @realDonaldTrump", with a photo showing the countries of President Donald J. Trump's temporary ban on refugees. *See* Exhibits 21-22.

89. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "CNN is fake news! Serena won the Australian open!", with an article to CNN Breaking News @cnnbrk, "Roger Federer beats Rafael Nadal in a five-set match in the Australian Open Men's Final winning his 18th grand slam". *See* Exhibits 20-21.

90. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, retweeted a post from Paul Ryan @SpeakerRyan, "RT if you agree It's time to rebuild our partnership with #Israel and reaffirm our commitment to her security", but Doe added, "I agree with @SpeakerRyan do what you can to keep them Jews out of our Christian country!! #AmericaFirst #MakeAmericaGreatAgain #Muslim Ban". *See* Exhibit 20.

91. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "Fuck throwing this dog off a cliff. Ima eat him instead! What a #snowflake @peta #MakeAmericaGreatAgain Animals don't deserve extra rights!", with Infringing Work #5 (*see* Exhibit 19), which, again, comprises of Photograph 4 titled, "Tiffany Christmas MAGA," (*see* Exhibit 5) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account), and altered with the words "DOWN WITH THEM SPESHUL INTRISTS!". *See* Exhibits 16-18.

92. On or about January 29, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "I'm so excited for my audition for TV! I can't wait to make America proud! #MakeAmericaGreatAgain #AmericaFirst #AmericaFirstOnly @POTUS", with a photo of Tomi Lahren and the word "TIFF" added, and added text above the photograph that reads, "BRAVO'S The Real Housewives of Nazi-Occupied Russian Territory Formerly Known as America *twirls* "If he's not Aryan, we're not marryin'!" *See* Exhibits 15-16.

93. On or about January 30, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "Here's my mom and her bible study sisters being saved from an evil Muslim palace.  If I'm not her spitting image…GO TRUMP GO! @POTUS", with a photo of President Donald J. Trump and three women. *See* Exhibit 14.

94.  On or about January 30, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "All ready for my job interview.  Too much??? #AmericaFirst #AmericaFirstOnly Help me fashion queens!!! @MELANIATRUMP @KellannePolls", with Infringing Work #6 (*see* Exhibit 13), which comprises of Photograph 1 titled, "Tiffany Pro," (*see* Exhibit 2) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's LinkedIn account this time), altered with a black headband containing a Swastika drawn in, as well as a red Swastika added to Ms. Dehen's chest. *See* Exhibits 11-12.

23

95.  On or about January 30, 2017, Doe, using the Twitter domain @tiffanydehen, retweeted one of Ms. Dehen's personal tweets where she posted an article from *Drudge Report*, and wrote, "That's right @tiffanysundevil we should just get rid of all those countries that aren't america! #AmericaFirst #AmericaFirstOnly." *See* Exhibits 10-11.

96.  On or about January 30, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "We don't need a justice department! fuck impartiality! #MakeAmericaGreatAgain", with a retweet from *Drudge Report* @DRUDGE_REPORT that says, "TRUMP FIRES ACTING ATTORNEY GENERAL", with a link to an article. *See* Exhibit 10.

97. On or about January 30, 2017, Doe, using the Twitter domain @tiffanydehen, tweeted, "ONLY WHITE PEOPLE DESRVE BENEFITS! america should be great to win I no knowledge of it! #MakeAmericaGreatAgain @POTUS @realDonaldTrump", with a retweet from a post by Thomas Paine @Thomas1774Paine that said, "Hey DOJ & #Yates, welcome back to the real America where you get fired for screwing up like the rest of us. #Obama's Country Club is closed". *See* Exhibits 9-10.

98.  On January 30, 2017 around 9:50 p.m., Plaintiff became aware of the account

due to the retweet of Plaintiff's tweet referenced above, and the fact that Doe

"liked" 10 of Ms. Dehen's Tweets. *See* Exhibits 10-11, and 54.

99.  Upon inspection of the Twitter account, Plaintiff sought immediate removal of

the impersonating account by utilizing Twitter's Impersonation Policy through

completion of the provided form to "report an account for impersonation."

100.  Plaintiff submitted the report for impersonation for Doe's defaming Twitter

account in the username @tiffanydehen to Twitter on 01/30/2017, thus fulfilling all

conditions, covenants, and promises required on her part to be performed in

accordance with the terms and conditions of the user agreement. *See* Exhibit 48.

101.  On January 30, 2017 at 9:56 p.m., Twitter responded to Plaintiff's request to

Case # 50854043 with the following:

> Hello,
> Thanks for sending your report regarding impersonation on Twitter.
> Our next steps: First, we need to confirm your identity. Below you'll find
> instructions and a link you can use to upload a copy of your valid
> government-issued photo ID. Then we'll review and process your report.
> We can't review your report until the documentation is received.
> Your next steps: Review the instructions below and upload the requested
> documentation. Please make sure to upload a legible copy so we can review
> the full name and photo on the ID. This information will be kept
> confidential and your documentation will be deleted.
> Instructions: Click on the link below and upload a copy of your valid
> government issued photo ID (e.g., driver's license or passport). If you are
> reporting an account that is not using the name that appears on your
> government-issued photo ID, you must also include documentation

demonstrating that the name used by the account you're reporting is associated with you (e.g., proof of registration of your trade name or pseudonym).
Upload link:
https://twitterinc.secure.force.com/u?e=tiffany.dehen@gmail.com&cn=5085 4043
Please note that accounts in compliance with Twitter's parody, commentary, and fan accounts policy (https://support.twitter.com/entries/106373) are not considered in violation of our impersonation policy (https://support.twitter.com/articles/18366).
Thank you,
Twitter

*See* Exhibit 48.

102.   On February 1, 2017 Ms. Dehen was involved in an automobile collision on the I-5 freeway southbound on her way to Federal Court to commence suit that she luckily walked away from with only neck pains felt at the time. *See* Exhibits 57-58.

103.   Fearing for her personal safety and under severe emotional distress, Ms. Dehen first submitted the initial complaint with the Court in order to get the alleged conduct on federal record.

104.   Thereafter Ms. Dehen went to the emergency room, where she submitted the requested proof of identity via photo of her state issued driver's license to Twitter, in completion of the additional action Twitter requested in order to enforce its stated policies. *See* Exhibit 49.

105.  On February 1, 2017 around 4:30 p.m., Doe, using the Twitter domain

@tiffanydehen, tweeted, "Black history month? More like "excuse to complain

more" month." *See* Exhibit 50.

106.  On February 2, 2017 at 8:51 a.m., Twitter replied to the second report Ms.

Dehen submitted for Impersonation (Case # 50854043), with the following:

> Thanks for bringing this to our attention.  Parody, newsfeed, commentary
> and fan accounts are permitted on Twitter so long as they comply with our
> policy for such accounts.  In response to your complaint, we're providing the
> user with instructions on how to comply with our policy.  Please allow 48
> hours from the receipt of this email if you'd like to file a follow-up
> complaint about the account.  Note that Twitter will not proactively monitor
> the account, but will respond to all valid follow-up complaints.

> *See* Exhibit 51.

107.  After receiving Plaintiff's second Impersonation Request, it took Twitter at

least an additional 12 hours to suspend the tweets on the account, which also could

have been due in part or in whole to the fact that Plaintiff had already commenced

this action, as Plaintiff found her initial complaint posted on Twitter at 7:07 a.m.

on February 3, 2017.  *See* Exhibit 55.

108.  Ms. Dehen checked Twitter around 5 a.m. on February 3, 2017, and the

account was still active.

109.   When Ms. Dehen checked the account again around 10 a.m. on February 3, 2017, the account was disabled with the main profile photo still visible and the account still accessible through a search on Twitter.

110.   The main account page stayed active for days following the disabling of the tweets.  Days later, Plaintiff noticed the account was taken down altogether.

111.   Twitter is in a better position than Ms. Dehen to present to the Court the exact timeframe of the creation and disabling of the defaming Twitter account through discovery because that information is now unavailable to Plaintiff.

112.   Plaintiff requests leave to further amend this complaint.

### FIRST CAUSE OF ACTION

### Willful Copyright Infringement

### Against John Doe

113.   Plaintiff realleges and incorporates by this reference paragraphs 1 – 112 as though fully set forth herein.

114.   Plaintiff is, and at all relevant times has been, the legal copyright owner, under U.S. Copyright Law, 17 U.S.C. § 201(a), of the copyrighted photographs referenced above.  Plaintiff seeks leave to amend complaint once Registration Numbers have been officially issued by the U.S. Copyright Office: [of the copyright registrations identified in Exhibits xx-xx attached hereto, which is the

28

subject of a valid Certificate of Copyright Registration issued by the United States Copyright Office.]

115. Registration is a prerequisite to filing a lawsuit for copyright infringement involving a U.S. work. *See* 17 U.S.C. § 411(a); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 132 S. Ct. 1962, 1977 (2014) ("Although registration is 'permissive,' both the certificate and the original work must be on file with the Copyright Office before a copyright owner can sue for infringement."); *Alaska Stock, LLC. v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 678 (9th Cir. 2014) ("Though an owner has property rights without registration, he needs to register the copyright to sue for infringement.").

116. Plaintiff submitted federal copyright registration applications for all four photographs on 03/31/2017 and 04/01/2017, which she is entitled to do under 17 U.S.C. § 410 within five years after first publication of the works.

117. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act is the exclusive right to reproduce the Copyrighted Works and to distribute the Copyrighted Works to the public.

118. Plaintiff is informed and believes and thereon alleges that John Doe, without the permission or consent of Plaintiff, produced the six Infringing Works, which

are substantially similar, not to mention extremely damaging, reproductions of the four Copyrighted Works referenced above.

119.  Plaintiff is informed and believes and thereon alleges that Doe distributed the Copyrighted Works to the public, and/or made the Copyrighted Works available for distribution to to others, and publicly displayed the Infringing Works, including via the Twitter account @tiffanydehen, on Twitter, a social media website with over 313 million active monthly users.

120.  Through the conduct alleged herein, Doe directly infringed Plaintiff's rights in the Copyrighted Works, including by reproducing, distributing, and publicly displaying the Copyrighted Works, in violation of Sections 106 and 501 of the Copyright Act 17 U.S.C. §§ 106 and 501.

121.  Defendant Doe's actions constitute direct infringement of Plaintiff's copyrights and exclusive rights under U.S. Copyright Law.

122.  Doe's acts of infringement are willful, intentional and purposeful, in reckless disregard of and with indifference to Plaintiff's rights.

123.  Doe is not entitled to the affirmative defense of fair use in this case because Doe's use of the infringing works is in the same market as Plaintiff and actually damaging Plaintiff's economic prospects in that market.  Doe's use of the Copyrighted Works does not constitute social commentary, criticism, or news

reporting because Doe used Ms. Dehen's legal name as the author of the posts,

leading the public to believe Ms. Dehen was responsible for the Twitter account.

124.  The artistic nature of the Copyrighted Works weighs against fair use, as do

the facts that, Doe used the Copyrighted Works in their entirety and Doe's use is

negatively impacting the potential market for the Copyrighted Works.

125.  By means of the actions complained of herein, Doe willfully infringed and

may continue to infringe Plaintiff's Copyrighted Works outlined above, by

publishing, reproducing, copying, distributing, and using, in whole or in part,

Plaintiff's Copyrighted Works.

126.  As a direct and proximate result of Defendant Doe's infringement of

Plaintiff's copyrights and exclusive rights in the Copyrighted Works under U.S.

Copyright Law, Plaintiff is entitled to recover actual damages, pursuant to 17

U.S.C. § 504(b), for her lost profits as a result of Defendant's infringement, in an

amount to be proven at trial.

127.  Had Plaintiff registered her copyright three days earlier than 04/01/2017 in

the work titled, "Christmas MAGA," Plaintiff would further be entitled to statutory

damages in an amount to be determined by the trier of fact, attorneys' fees and

costs pursuant to 17 U.S.C. §§ 412(c), 504, 505 since the date the infringement

began was 01/29/2017.  Plaintiff would have also been entitled to an enhancement

31

of her statutory damages award, up to $150,000 for each infringement, pursuant to 17 U.S.C. § 504(c)(2).

128.  As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

129.  Plaintiff is informed and believes and on that basis alleges that unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's rights in the Copyrighted Works and cause Plaintiff irreparable injury that cannot be fully compensated.

130.  Therefore, pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct, including, but not limited to, an order prohibiting Defendant Doe from further infringing Plaintiff's copyrights and directing Defendant to destroy the Infringing Works and all identical and substantially similar copies thereof made in violation of Plaintiff's exclusive rights.

131.  Plaintiff requests leave to further amend this complaint.

<div align="center">

**SECOND CAUSE OF ACTION**

**Malicious Defamation Through Libel Per Se**

**Against John Doe**

</div>

32

132.  Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 131 of this Complaint, as well as Plaintiff's previous Causes of Actions, as though fully set forth herein.

133.  Doe's intentional publications by Internet were and are false, unprivileged, have a natural tendency to injure, and cause special damage, and thus constitute defamation per se under California Civil Code sections 44, 45, and under the common law and case law of California.

134.  Plaintiff is informed and believes, and thereon alleges, that Doe intentionally created the Twitter account using the domain @tiffanydehen, knowing that he was not in fact, Ms. Dehen, and deliberately posted each one of the aforementioned defaming Tweets.

135.  Doe expressly referred to Plaintiff in each Tweet because he used Plaintiff's true and legal name as the username.  Further, Plaintiff used actual photographs of Ms. Dehen to represent Ms. Dehen and retweeted Ms. Dehen's personal Twitter account.

136.  Doe claimed to be a parody account of "Republican White Women," yet posted no other tweets from any "Republican White Women" other than Ms. Dehen.

137.  Doe's actions are clearly intentional, as evidenced by the fact that Doe expended a considerable amount of time and effort creating the false Twitter account, following the aforementioned 22 Twitter users, meticulously downloading and altering the 4 copyrighted photos from both Twitter and LinkedIn, publishing the six Infringing Works, and posting the 24 defaming tweets.

138.  The defamatory tweets were not privileged.

139.  Doe did not engage in a one-time piece of snideness, but rather a campaign against Ms. Dehen with defamatory accusations that tarnish and disparage her and hurt her reputation and economic interests.

140.  Doe deliberately published the Infringing Works with the defaming Swastikas drawn in, with the intent to refer to the National Socialist German Workers' Party, evidenced by the fact he followed Adolf Hitler Fuhr through the Twitter account.

141.  Plaintiff is informed and believes, and thereon alleges, that the publication by Internet is a communication to the public, and to third parties, who reasonably understood that the defaming tweets and photographs were about Ms. Dehen or posted by Ms. Dehen, and that such third parties further reasonably understood the statements to mean that either Doe or Ms. Dehen wrote the statements in fact, and not merely as a matter of Doe's opinion.

34

142.  Doe did not lead the public to believe that the defaming account was a parody of Ms. Dehen, but rather a parody of Republican White Women in general, yet only used Ms. Dehen's true name and only drew Swastikas on Ms. Dehen's photographs, thereby contradicting the true nature of the Twitter account.

143.  Although there were only three followers at the time Ms. Dehen found the account, Ms. Dehen has no way to know how many people actually saw the offending account and various tweets.

144.  The defaming account actually did cause confusion in the marketplace because at least one of Ms. Dehen's actual followers followed the account, @BrittTaylorGOP, who is Ms. Dehen's follower of her personal Twitter account @tiffanysundevil. *See* Exhibit 56.

145.  The representation of Ms. Dehen on the Twitter account is false, as Ms. Dehen is not a supporter of the National Socialist German Workers' Party, nor a supporter of the Ku Klux Klan.

146.  The tweets are not legitimate criticism, they are not parody, they are not joking, and they are not ironic.

147.  The defaming statements are particularly malicious and harmful, as Doe's attacks actually constitute an attack on an aspect of Ms. Dehen's heritage and Ms. Dehen's late grandfather, Captain John D. Raikos suffered extreme emotional

35

distress the duration of his life from what he saw in the war related to the 83rd Infantry's liberation of Nazi concentration camps.

148. Further, Doe's statements have the potential to damage actual professional relationships that exists between Plaintiff and the Tucson Jewish Community Center and between Plaintiff and the State Bar of California.

149. Had John Doe acted in good faith, a simple Google search of Ms. Dehen would have shown Doe that Ms. Dehen's late grandfather was Captain John D. Raikos, who was awarded the following decorations for his role in the 83rd Infantry of the United States Army in World War II: Combat Infantryman Badge, Silver Star Medal, Bronze Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good Conduct, American Campaign Medal, WWII Victory Medal, and the EAME Campaign Medal with 5 Bronze Stars for the Five Campaigns. *See* Exhibit 1 or visit http://www.normandytothebulge.be/83rd_JRaikos.html.

150. Plaintiff contends Doe's actions fall outside the protection of the First Amendment, even for purposes of anonymous speech, which can't be remedied by a simple disclaimer of "parody account," while using Ms. Dehen's true legal name as the username, publishing Ms. Dehen's copyrighted photographs altered with

disparaging Swastikas, and expressly suggesting Ms. Dehen is affiliated with the National Socialist German Workers' Party or the Ku Klux Klan.

151.   The defamatory statements Doe published on Twitter were of and concerning Plaintiff, cast Ms. Dehen in a false light, were attacks on her reputation which discouraged members of the public from having a positive opinion of her, and exposed Ms. Dehen to potential verbal, physical, and mental abuse.

152.   The defaming Twitter account is adverse to Plaintiff's profession and business and the defamatory publications foreseeably caused substantial damage to her business, career, reputation and her actual and prospective economic relationships.

153.   Plaintiff's reputation is subjected to scrutiny in the legal profession, as well as in the Bar application process.

154.   The injurious character of the defamatory statements on Twitter is self-evident and constitutes defamation per se.

155.   Plaintiff is not required to allege special damages because Doe's statements are defamatory on their face, such that the statements malign the Plaintiff's profession and business.

156.   The nature of the Twitter account, related tweets and photographs are so obscene as to lead Plaintiff to allege Doe published the aforementioned tweets

37

maliciously with the intent to cause pain and suffering to Ms. Dehen and to destroy her professional reputation and to cause her to lose clients and job prospects.

157.  Doe's intent to act with malice is evidenced by the injurious nature of each of the tweets, the misspelling on the various tweets and photographs, the fact Doe used Ms. Dehen's true and legal name, and the inherently injurious nature of the Twitter accounts Doe followed, such as the Ku Klux Klan and Adolf Hitler.

158.  Further, Doe knew, or should have known, that Ms. Dehen was actively seeking bar admittance and a position in the legal industry, as evidenced on Ms. Dehen's Twitter account and LinkedIn, both of which he deliberately referenced to obtain Ms. Dehen's personal information and photographs. *See* Exhibits 60-61.

159.  Upon information and belief, Doe even went to such lengths to create false Facebook accounts and harass Ms. Dehen with several friend requests in an attempt to gain more personal information on Ms. Dehen.

160.  Plaintiff believes the actions by Doe may reduce her chances of passing the bar, which will prevent her from being admitted to the bar, and thus, could limit her prospects in the legal industry.

161.  Plaintiff was in the process of pursuing several business ventures which would rely upon her reputation, and which have been damaged and put on hold by

the injury that led to this cause of action, and may even limit the future revenue generated by these business ventures.

162.  Plaintiff's credit has been negatively impacted, which may affect her ability to finance assets and obtain employment, thus potentially negatively impacting her quality of life.

163.  In attempting to defend her name in Court, Plaintiff has been subjected to widespread criticism and condemnation from various members of the legal community, as well as certain classmates, family, friends and acquaintances, in addition to harassment and abuse by some members of the public.

164. Doe's statements have not only caused damage to Ms. Dehen's reputation and economic interests, but have also resulted in emotional distress.  *See* Seventh Cause of Action below.

165. As a result of Doe's conduct, Plaintiff has been damaged in an amount to be proven at trial.

166. Doe's intentional and knowing per se defamation of Ms. Dehen constitutes malice and oppression under California Civil Code section 3294, and therefore Plaintiff is entitled to punitive damages against Twitter in an amount sufficient to punish and set an example of him, which amount is to be proven at trial.

167. Plaintiff requests leave to further amend this complaint.

## THIRD CAUSE OF ACTION

## Violation of Cal. Penal Code § 528.5

### Against John Doe(s)

168. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 167 of this Complaint, as well as Plaintiff's previous Causes of Actions, as though fully set forth herein.

169. Plaintiff alleges Doe is criminally liable under Cal. Penal Code § 528.5, because Doe credibly impersonated Ms. Dehen, an actual person, online, and without Ms. Dehen's consent, for the purposes of harming, intimidating, or threatening her, which pursuant to Cal. Penal Code § 528.5(e), entitles Ms. Dehen to compensatory damages and injunctive relief, as well as other equitable relief because she suffered damage and loss.

170. Upon information and belief, John Doe(s) engaged in a predatory scheme aimed at harming, humiliating, threatening, and intimidating Plaintiff leading up to and including the injury that led to this cause of action.

171. Due to the injurious nature of the tweets and photographs, Plaintiff alleges Doe impersonated Ms. Dehen with the intent to cause Ms. Dehen harm to her personal reputation, professional reputation, economic interests, and profession.

172. Plaintiff requests leave to amend this complaint.

## FOURTH CAUSE OF ACTION

### Rescission For Fraud In Violation of Cal. Civil Code § 1572 or § 1573

### Against Twitter

173.  Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 172 of this Complaint, as well as Plaintiff's previous Causes of Actions, as though fully set forth herein.

174.  Pursuant to California Civil Code § 1689, an alleged contract may be rescinded if all the parties thereto consent or if the consent of the party rescinding was given by mistake, or obtained through fraud, or exercised by or with the connivance of the party as to whom it rescinds.

175.  Rescission under California Civil Code § 1689 is also appropriate where the purported contract was induced by fraud, misrepresentation, and/or fraudulent misrepresentation, or where there is failure of consideration.

176.  On October 9, 2015, Twitter fraudulently misrepresented to Plaintiff that Twitter would investigate reported accounts to determine if the accounts are in violation of the Twitter Rules upon receipt of an impersonation report by Plaintiff.

177.  Twitter violated California Civil Code § 1572 by promising to investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules

41

in the Impersonation Policy, without any intention of performing the aforementioned investigation upon receipt of an impersonation report.

178. Plaintiff alleges Twitter had no intention of investigating the reported account unless and until Plaintiff provided additional information in the form of a government issued identification card.

179. In addition, there is a failure of consideration with respect to the revised Impersonation Policy in that they are illusory, and lack mutuality because Plaintiff relied upon Twitter's fraudulent misrepresentation that it would investigate offending accounts upon receipt of an impersonation report when she entered into the user agreement with Twitter; Plaintiff has been harmed by a result of that reliance. Under basic contracts principles Twitter is not allowed to change its contractual terms unilaterally after partial performance.

180. Plaintiff alleges Twitter failed to disclose material terms of the user agreement by purposely not disclosing the fact Twitter would need a government issued photograph identification in order to proceed with an investigation into an account reported to be in clear violation of the Impersonation Policy under the Twitter Rules.

42

181.  Twitter benefitted from the concealment of the true impersonation process by, *inter alia*, the advertising revenues Twitter earned off of the impersonating account.

182.  Upon information and belief, Plaintiff alleges that at such time as these representations were made, Twitter intended that Plaintiff would rely on their representations.

183.  Plaintiff was harmed, and similarly situated plaintiffs continue to be harmed, by their reliance upon the representation of Twitter that it will take down impersonating accounts upon receipt of an impersonation report.

184.  The false representation of Twitter was a substantial factor in causing harm to Plaintiff in the form of economic injury and emotional distress.

185.  If Twitter's actions do not amount to actual fraud under California Civil Code § 1572, which is a question of fact for the fact finder, Plaintiff alleges Twitter engaged in constructive fraud in violation of California Civil Code § 1573 because even lacking fraudulent intent, Twitter gained an advantage through advertising revenues off of the impersonation of Plaintiff, for which Twitter promised to remove upon receipt of an impersonation report, and Plaintiff relied on and was harmed by Plaintiff's failure to do so.

186.  Plaintiff intends service of the Summons and Complaint in this action to
serve as notice of rescission of the additional impersonation policy imposed on
Plaintiff after Plaintiff performed.

187.  Plaintiff reserves the right to add a class of Plaintiffs which might be
similarly situated to this cause of action as the lead Plaintiff, in the interest of
justice if so required, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

188.  Plaintiff contends Twitter cannot successfully assert Communications
Decency Act (CDA) § 230 as a defense to this action, as CDA § 230 does not bar
causes of action that arise out of breach of contract.  The Ninth Circuit held, and
reaffirmed, that the CDA does not declare "a general immunity against all claims
derived from third-party content." *See Barnes v. Yahoo!, Inc.*, 570 F.3d at 1100;
*see also Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016).

189.  Plaintiff requests leave to further amend this complaint.

## FIFTH CAUSE OF ACTION

### Declaratory Relief

### Against Twitter

190.  Plaintiff hereby realleges and incorporates by reference the allegations in
paragraphs 1 through 189 of this Complaint, as well as Plaintiff's previous Causes
of Actions, as though fully set forth herein.

191.  An actual, justiciable controversy has arisen and now exists between Plaintiff and Twitter, relating to their respective legal rights, duties and obligations, such that it is necessary for the Court to determine the parties' respective rights , duties and obligations.

192.  Plaintiff therefore respectfully requests that this Court enter an Order, pursuant to 28 U.S.C. § 1692:

a) That the Terms of Use Agreement set forth above are void *ab initio*;

b) In the alternative, order that the contract between Plaintiff and Twitter is unenforceable on the grounds that it is illusory, lacks mutuality, fails of consideration;

c) In the alternative, order that the contract between Plaintiff and Twitter is rescinded pursuant to California Civil Code §1689 on the grounds that they were mutually rescinded, Plaintiff's consent was given by mistake, obtained through fraud, concealment and misrepresentation, and/or exercised by or with the connivance of Twitter, and there is failure of consideration;

d) Order that Plaintiff is under no legal obligation to compensate or pay Twitter under the terms of the contract between Twitter and Plaintiff as it is void *ab initio*, unenforceable, and/or rescinded; and

45

(e) Ordering the parties restored to their former positions and requiring them

to return whatever they received, if anything, under the revised contract

pursuant to California Civil Code § 1692.

193.  Plaintiff requests leave to amend this complaint.

## SIXTH CAUSE OF ACTION

### Intentional Interference With Actual and/or Prospective Economic Relations

### Against John Doe(s)

194.  Plaintiff hereby realleges and incorporates by reference the allegations in

paragraphs 1 through 193 of this Complaint, as well as Plaintiff's previous Causes

of Actions, as though fully set forth herein.

195.  Plaintiff alleges intentional interference with actual and prospective

economic relations against John Doe(s).

196.  Plaintiff has numerous business ventures in place she is currently pursuing,

including admittance to the California Bar, a job in the legal profession, as well as

various business ventures that probably would have resulted in a future economic

benefit to Plaintiff.

197.  John Doe knew, at the very least, that Plaintiff was currently seeking

admittance to the State Bar of California.

198.  John Doe intended to disrupt Plaintiff's admittance to the State Bar of California by engaging in the wrongful conduct referenced above.

199.  John Doe failed to act with reasonable care and engaged in wrongful conduct, referenced above.

200.  Doe's actions were intentionally made and were foreseeably and substantially certain to cause interference with Plaintiff's actual and/or prospective business relationships by damaging Plaintiff's good name and reputation, and deterring persons and entities from doing business with her.

201.  Doe's conduct alleged herein actually interfered with Plaintiff's actual and/or prospective business relationships as referenced above.  Plaintiff has an actual business relationship with the Tucson Jewish Community Center, of which is reasonably foreseen to be damaged as a result of Doe's despicable conduct.

202.  Plaintiff requests leave to amend this complaint.

## SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against John Doe

203.  Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 202 of this Complaint, as well as Plaintiff's previous Causes of Actions, as though fully set forth herein.

47

204.  At all times relevant to the matters alleged in this Complaint, John Doe(s) owed a duty of care to prevent Plaintiff from being injured as a result of Doe's conduct.

205.  Doe intentionally, willfully and maliciously breached the aforesaid duty of care owed to the Plaintiff and engaged in extreme and outrageous conduct by viciously impersonating and defaming Plaintiff.

206.  John Doe(s) engaged in this extreme and outrageous conduct with the intent of causing, or in reckless disregard of the probability of causing, severe emotional distress to the Plaintiff.

207.  As a direct and proximate result of Doe's extreme and outrageous conduct, Plaintiff has suffered extreme mental and emotional distress.  Plaintiff feared, and continues to fear, for her physical safety.  Plaintiff will likely incur medical expenses, including expenses for psychiatric care and psychological counseling services.

208.  Plaintiff will seek leave to amend this complaint once the identity/identities of John Doe(s) is/are confirmed to include additional harassment which Plaintiff suspects occurred in connection with the injuries stated herein.

## EIGHTH CAUSE OF ACTION

## Negligent Infliction of Emotional Distress

**Against Twitter**

209.  Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 208 of this Complaint, as well as Plaintiff's previous Causes of Action, as though fully set forth herein.

210.  At all times relevant to the matters alleged in this Complaint, Twitter owed a duty of care to prevent Plaintiff from being injured as a result of Twitter's conduct.

211.  Twitter breached the aforesaid duty of care owed to the Plaintiff by breaching its contract with Plaintiff and then allowing the continued publication of Doe's harmful conduct to persist after breaching its contract with Plaintiff.

212.  As a direct and proximate result of Twitter's negligent conduct, Plaintiff has suffered extreme mental and emotional distress.  Plaintiff feared, and continues to fear, for her physical safety, and that she will be wrongly accused in the public view.  Plaintiff will likely incur medical expenses, including expenses for psychiatric care and psychological counseling services.

213.  Plaintiff requests leave to amend this complaint.

## NINTH CAUSE OF ACTION

### Civil Conspiracy

49

214.  Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 213 of this Complaint, as well as Plaintiff's previous Causes of Actions, as though fully set forth herein.

215.  Plaintiff reserves the right to bring this cause of action for civil conspiracy, as well as amend the above Causes of Actions accordingly, if discovery reveals that it is probable that more than one individual engaged in the procurement, constructing, or publishing of the Twitter account with domain @tiffanydehen and Infringing Works, in any capacity whatsoever to Defendants' economic benefit and Plaintiff's economic harm.

216.  Plaintiff requests leave to amend this complaint.

## TENTH CAUSE OF ACTION

### Violation of 18 U.S. Code § 1962

### Against Twitter

217.  Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 216 of this Complaint, as well as Plaintiff's previous Causes of Actions, as though fully set forth herein.

218.  Plaintiff reserves the right to bring a Cause of Action under 18 U.S. Code § 1964 against Twitter for the injuries sustained by Plaintiff, and all other individuals

similarly situated if justice permits or requires pursuant to the Federal Rules of Civil Procedure Rule 23, as a result of Twitter's fraudulent misrepresentations.

219.  At all relevant times, Defendant Twitter was a "person" within the meaning of 18 U.S.C. § 1961(3) because it was "capable of holding a legal or beneficial interest in property."

220.  Plaintiff alleges Twitter participated in a pattern of racketeering activity, as defined by 18 U.S.C. § 1962(5), consisting of numerous and repeated uses of interstate wire communications to execute a scheme to defraud in violation of 18 U.S.C. § 1962(c).

221.  The fraudulent misrepresentation by Twitter of the terms of the Twitter User Agreement was created and/or used as a tool to carry out the Scheme and pattern of racketeering activity.

222.  Plaintiff alleges Defendant Twitter has committed at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. § 1343, within the past ten years.  The multiple acts of racketeering activity that they committed and/or conspired to, or aided and abetted in the commission of, were related to each other, pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."

223.  Defendant Twitter's predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1) include, but are not limited to:

(a) Wire Fraud: Defendant Twitter violated 18 U.S.C. § 1343, by transmitting and receiving, or causing to be transmitted or received, materials by wire for the purpose of executing the Scheme, which amounts to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions.  The materials transmitted and/or received include but are not limited to, interstate credit card transactions, publication by Internet promoting the Scheme, and the fraudulent misrepresentation in Twitter's Terms of Use.

224.  Defendant Twitter knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose.  Defendant Twitter either knew or recklessly disregarded that these were material misrepresentations and omissions.

225.  Defendant Twitter obtained money and property belonging to Plaintiff, and the Class as a result of these violations.  Plaintiff alleges Plaintiff and other Class Members been injured in their business or property by Defendant Twitter's overt acts of wire fraud.

226. Plaintiff and the Class have been injured in their property by reason of Twitter's violations of 18 U.S.C. § 1962, including the damage done to Plaintiff's reputation as a result of relying on Twitter's fraudulent misrepresentation, which collectively amounts to tens of millions of dollars, plus the advertising revenues Twitter obtained off the fraudulent misrepresentations. In the absence of Defendant Twitter's violations of 18 U.S.C. § 1962, Plaintiff and the Class would not have incurred these losses.

227. Plaintiff's and the Class's injuries were directly and proximately caused by Defendant Twitter's racketeering activity.

228. Twitter knew and intended that Plaintiff and the Class would rely on the Scheme's fraudulent misrepresentations and omissions. Defendant Twitter knew and intended Plaintiff, and the Class, would enter into the terms of use, and pay advertising fees, as a result of the same.

229. Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover their treble damages, the costs of bringing this suit and reasonable attorneys' fees.

230. Defendant Twitter is accordingly liable to Plaintiff and the Class for three times their actual damages as proved at trial plus interest and attorneys' fees.

## ELEVENTH CAUSE OF ACTION

## Libel

### Against Twitter

231. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 230 of this Complaint, as well as Plaintiff's previous Causes of Actions, as though fully set forth herein.

232. Plaintiff reserves the right to bring a cause of action against Twitter for libel in violation of California Civil Code § 45 in light of the fact that plaintiffs in a case on appeal in the D.C. Circuit are currently seeking a permanent injunction from the Attorney General to declare CDA § 230 unconstitutional. *See American Freedom Defense Initiative et al. v. Lynch*, No. 16-cv-1437, 2016 WL 6635634 (D.D.C. Nov. 9, 2016).

233. Plaintiff requests leave to amend this complaint.

## TWELFTH CAUSE OF ACTION

### Breach of Contract

### Against University of San Diego

234. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 233 of this Complaint, as well as Plaintiff's previous Causes of Actions, as though fully set forth herein.

235.  Plaintiff reserves the right to bring a cause of action against University of San Diego if and/or when discovery reveals the identity of John Doe.

236.  At this time, Plaintiff alleges she has good cause indicating the person or persons who comprise Defendant John Doe violated the USD Student Code of Conduct while enrolled at USD, and it was the action or inaction of USD that proximately led to the injury that led to this cause of action.

237.  Plaintiff requests leave to further amend this Complaint.

### THIRTEENTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### Against USD

238.  Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 237 of this Complaint, as well as Plaintiff's previous Causes of Action, as though fully set forth herein.

239.  Depending on the identity of John Doe, Plaintiff reserves the right to bring a cause of action against USD for negligent infliction of emotional distress under California law.

240.  If John Doe was related to USD in the way that she suspects he was at the filing of this complaint,  Plaintiff alleges that at all times relevant to the matters

alleged in this Complaint, USD owed a duty of care to prevent Plaintiff from being injured as a result of Doe's conduct.

241. USD breached the aforesaid duty of care owed to Plaintiff by breaching its contract with Plaintiff, negligently resulting in Doe's despicable conduct.

242. As a direct and proximate result of USD's negligent conduct, Plaintiff has suffered extreme mental and emotional distress. Plaintiff feared, and continues to fear, for her physical safety, and that she will be wrongly accused in the public view due to Doe's conduct. Plaintiff will likely incur medical expenses, including expenses for psychiatric care and psychological counseling services.

243. Plaintiff requests leave to amend this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Accept jurisdiction over this action;

2. For the Court to compel Twitter to provide the email address John Doe used to sign up for the offending Twitter account so that Plaintiff may request the Court to authorize service of the summons and complaint on Defendant Doe by email to his "published and last known valid email address without requirement of return receipt" under Federal Rules of Civil Procedure 4(f)(3) and 4(h)(2);

3.  That Defendant Doe(s) be permanently enjoined from infringing Plaintiff's copyrights in any manner, specifically those related to the Infringing Works;

4.  That Defendant Doe(s) be permanently enjoined from publishing defamatory statements about Plaintiff such as those set forth herein;

5.  That Defendant Twitter be permanently enjoined from publishing the fraudulent misrepresentation in its Terms of Use;

6.  For economic damages according to proof at trial;

7.  For punitive damages according to proof at trial;

8.  For prejudgment interest to the extent recoverable by law;

9.  For attorney's fees to the extent recoverable by law or contract;

10.  For costs of suit; and

11.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

A TRIAL BY JURY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38 AND CONSTITUTIONAL AMENDMENT SEVEN IS HEREBY DEMANDED.

**Dated: April 12, 2017**

Respectfully submitted,

Tiffany L. Dehen

57

1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Tel. 858-262-0052
Tiffany.Dehen@Gmail.com

Tiffany L. Dehen
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Telephone: 858-262-0052
Email: tiffany.dehen@gmail.com

Pro Se Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| _____ ) | |
| TIFFANY DEHEN ) | |
| 1804 Garnet Avenue, #239 ) | |
| Pacific Beach, CA 92109 ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN DOE ) | Case No.: <u>3:17-cv-00198-BEN-WVG</u> |
| Address TBD ) | |
| ) | **PLAINTIFF'S TABLE OF** |
| and ) | **EXHIBITS AND EXHIBITS** |
| ) | **FOR PLAINTIFF'S FIRST** |
| TWITTER, INC. ) | **AMENDED COMPLAINT** |
| 1355 Market St. #900 ) | |
| San Francisco, CA 94103 ) | |
| ) | |
| and ) | |
| ) | |
| UNIVERSITY OF SAN DIEGO ) | |
| Hughes Administration Center #320 ) | |
| 5998 Alcala Park ) | |
| San Diego, California 92110 ) | |
| ) | |

SERVE:                                  )
                                        )
JOHN DOE                                )
Address TBD                             )
                                        )
TWITTER, INC.                           )
Attn: Incorporating Services, Ltd.      )
3500 South DuPont Highway               )
Dover, Delaware 19901                   )
                                        )
and                                     )
                                        )
UNIVERSITY OF SAN DIEGO                 )
Hughes Administration Center #320       )
5998 Alcala Park                        )
San Diego, California 92110             )
                                        )
        Defendants.                     )
                                        )
_____ )

## PLAINTIFF'S TABLE OF EXHIBITS
## FIRST AMENDED COMPLAINT

Exhibit 1 ..................................................................................................1-2

Exhibit 2...................................................................................................3

Exhibit 3...................................................................................................3

Exhibit 4...................................................................................................4

Exhibit 5...................................................................................................4

Exhibit 6...................................................................................................5

Exhibit 7...................................................................................................6

Exhibit 8...................................................................................................7

Exhibit 9...................................................................................................8

Exhibit 10..................................................................................................8

Exhibit 11..................................................................................................9

Exhibit 12..................................................................................................9

Exhibit 13...........................................................................................................10

Exhibit 14...........................................................................................................10

Exhibit 15...........................................................................................................11

Exhibit 16...........................................................................................................11

Exhibit 17...........................................................................................................12

Exhibit 18...........................................................................................................12

Exhibit 19...........................................................................................................13

Exhibit 20...........................................................................................................13

Exhibit 21...........................................................................................................14

Exhibit 22...........................................................................................................14

Exhibit 23...........................................................................................................15

Exhibit 24...........................................................................................................15

Exhibit 25...........................................................................................................16

Exhibit 26...........................................................................................................16

Exhibit 27...........................................................................................................17

Exhibit 28...........................................................................................................17

Exhibit 29...........................................................................................................18

Exhibit 30...........................................................................................................18

Exhibit 31...........................................................................................................19

Exhibit 32...........................................................................................................19

Exhibit 33...........................................................................................................20

Exhibit 34...........................................................................................................20

Exhibit 35...........................................................................................................21

Exhibit 36...........................................................................................................21

Exhibit 37...........................................................................................................22

Exhibit 38...........................................................................................................22

Exhibit 39...........................................................................................................23

Exhibit 40...........................................................................................................23

Exhibit 41...........................................................................................................24

Exhibit 42...........................................................................................................24

Exhibit 43...........................................................................................................25

Exhibit 44...........................................................................................................26

Exhibit 45...........................................................................................................26

Exhibit 46............................................................................27
Exhibit 47............................................................................27
Exhibit 48............................................................................28
Exhibit 49............................................................................29
Exhibit 50............................................................................30
Exhibit 51............................................................................31
Exhibit 52............................................................................32
Exhibit 53............................................................................33
Exhibit 54............................................................................34
Exhibit 55............................................................................35
Exhibit 56............................................................................36
Exhibit 57............................................................................37
Exhibit 58............................................................................38
Exhibit 59............................................................................39
Exhibit 60............................................................................39
Exhibit 61............................................................................40
Exhibit 62............................................................................41

# PLAINTIFF'S EXHIBITS
# FIRST AMENDED COMPLAINT

# EXHIBIT 1

### John D. Raikos (#0-443183)



Picture taken 1945

| | |
|---|---|
| Place of Birth | |
| Date of Birth | March 8, 1922 |
| Rank | Captain (WWII) - Colonel (Ret.) |
| Platoon | |
| Company | HQ |
| Battalion | |
| Regiment | 329th |
| Division | 83rd Infantry |
| Decorations | Combat Infantryman Badge, Silver Star Medal, Bronze Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good Conduct, American Campaign Medal, WWII Victory Medal, EAME Campaign Medal with 5 bronze stars for the five Campaigns. |

John D. Raikos was born on March 8, 1922. John Raikos was a graduate of Manual High School and joined the Army on January 30, 1942. He was part of the original cadre which reactivated the 83rd Infantry Division "Thunderbolts" at Camp Atterbury on August 15, 1942. He was trained in Tennessee Maneuvers, to Fort Benning and came ashore in the Normandy Campaign as 1st Lieutenant with 329th Infantry landing at Omaha Beach, with mission orders to seize the Brandenburg Gate in Berlin.

John Raikos served as a combat liaison officer, comm. platoon leader and Regimental Headquarters Company Commander, during the war, promoted to Captain and decorated with the Silver Star, Bronze Star for valor, Oak Leaf Cluster to Bronze Star and OLC.

Lt. Raikos rode on the lead tank into Cherbourg Belgium. On September 1, 1944, he and Lt. James Bagley liberated Tours, France, and Mayor Albert Joubert made John Raikos a "Tours Citizen d' Honneur and Grand Marshall" at the 1964 liberation commemoration and parade in his honor. Raikos was also honored with the esteemed citation from Yom H'ashowa Holocaust Remembrance for his role with the 83rd Division's liberation of Nazi concentration camps. John Raikos was the first American to make radio contact with the Russians. The 83rd Division, near war's end after constructing the Truman Bridge over the Elbe and making furthest penetration into Germany by Allied forces, was ordered to pull back across the Elbe. With "permission with disavowal" of his co Capt. Raikos advanced within 20 miles of Berlin and waited 10 days for the Russians to physically link up. He served as Provisional Governor of Deggendorf Germany, before returning home.

Raikos continued his military career in the reserves, graduated from the Army's Command and General Staff College and retired as Colonel in 1982. Raikos was extremely proud of serving his country and remained active in the 83rd Infantry Division Association, serving as its Judge Advocate until 2003. He was a member of the World War II roundtable. Raikos also attended Indiana University Bloomington undergraduate and law schools in 1950 was admitted as an attorney to the practice of law in Indiana, which he actively pursued until his January 8, 2003 stroke. He joined the law firm of Cook Mendenhall and Bose and later formed, Raikos, Barton, Rochford and Thomas, which became Raikos and Raikos. Raikos was a lawyer's lawyer; tenacious, fiercely loyal, compassionate and always eager to serve as advocate and adviser with generous time and open to all. A warrior and a healer. His soldiering moved to the courtroom and he enjoyed an illustrious and varied legal career, championing causes from "Step 'n Fetchit," one of Hollywood's first African American actors, in his defamation suit against CBS for its portrayal of him as a chicken stealing, crap shooting, slow shuffling Negro, to an original action in the U.S. Supreme Court of behalf of Robert L. Montgomery to mandate Congress to cease deficit spending and restore the gold standard. He successfully tried numerous cases which garnered media attention from procuring the release by a tearful jury of a client wrongfully committed to Central State Mental Hospital, to will contest of a murdered bank heiress from 1st Amendment to Sunday Blue Laws and OSHA, and was a pioneer in using psychologists in jury voir dire and selection, resulting in substantial verdicts. He was elected attorney for the Indianapolis Sanitary District and was a founding board member and legal counsel for many

years for the Indianapolis Kroger Credit Union (KEMBA). Raikos also enjoyed the coal business with Kentucky Mountain Coal Co. and Western Minerals Corp. and prior to that his business activities as President in developing South Side Sanitary Landfill, American Reclamation and Earth Equipment Leasing Co. John lived everyday to the fullest, each day after the war as a gift. "Time and tide wait for no man." Driven and determined, he raced up and down steps rather than wait for elevators and moved always with purpose and energy. John was proud of his Greek heritage and proudest of all of his family. First, foremost and always he was a devoted son, brother, husband, father and grandfather, never missing the opportunity for a family gathering filled with his cooking, stories and love. His emotions were as transparent as his words were direct. Raikos was a member of the Indianapolis Murat Shrine Temple, Scottish Rite, the Mystic Tie Lodge, American Legion Broad Ripple Kennington Post, Veterans of Foreign Wars, Reserve Officers Association, Indianapolis Colombia Club, IAC, Indianapolis and Indiana State and American Bar Associations and the Holy Trinity Greek Orthodox Church.

# EXHIBIT 1 (CONTINUED)



*John D. Raikos, somewhere on the riviera (courtesy of John's daughter Margo (Raikos) McLaughlin)*

John D. Raikos passed away on July 24, 2006, and is buried at the Crown Hill Cemetery, Indianapolis, Marion County, Indiana.
He was preceded in death by his parents, his brothers, Nicholas, George and Andrew Raikos and his sisters, Mary and Katherine Raikos.
Survivors include his loving wife of 60 years, Mary P. Raikos, sons, Gustin J., John Dr. Jr.; daughters, Lili Marlene (Michael) Dehen, Margo Elaine; grandchildren, Melissa Denise, GJ, Nicholas and



*Source: Find A Grave*

Jake Raikos, Tiffany, Alyssa and Michael Jr. Dehen; nephews, James A. Raikos, William James Raikos, Springfield, MO and nieces, Pamela Jean Raikos and Denisa Raikos.

*Thanks to Margo (Raikos) McLaughlin for sharing this story and the photos of her dad.*

*Link to additional information about John D. Raikos may be found on Thijs Hodiamont's website*

BACK to 83rd VETERANS                    BACK to LATEST UPDATES                    BACK to MAIN MENU

http://www.normandytothebulge.be/83rd_JRaikos.html

2

**EXHIBIT 2**



Photograph 1: "Tiffany Pro"

**EXHIBIT 3**



Photograph 2:"Tiffany DC"

**EXHIBIT 4**



Photograph 3:"Tiffany MAGA"

**EXHIBIT 5**



Photograph 4:"Tiffany Christmas MAGA"

4

# EXHIBIT 6



Screenshot of Twitter account @tiffanydehen taken by Plaintiff on 02/01/2017

5

# EXHIBIT 7



Screenshot of Twitter account @tiffanydehen by Plaintiff on 02/01/2017

# EXHIBIT 8



Screenshot of Twitter account @tiffany dehen taken by Plaintiff on 02/01/2017

**EXHIBIT 9**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 10**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

8

**EXHIBIT 11**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 12**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 13**



Infringing Work #6

**EXHIBIT 14**

Celebrating the start of Black History Month

**Rex Tillerson**
Senate confirms Rex Tillerson as Secretary
of State

**#WatermarkConf**
3,245 Tweets

**#PressOn**
@benshapiro is Tweeting about this

**DeVos**
Betsy DeVos' confirmation hangs in the
balance

**Dover**
6,844 Tweets

**Tiffany Dehen** @tiffanydehen · Jan 30
Here's my mom and her bible study sisters
being saved from an evil Muslim palace. If
I'm not her spitting image... GO TRUMP
GO! @POTUS



**Tiffany Dehen** @tiffanydehen · Jan 30
I'm so excited for my audition for TV! I can't
wait to make America proud!

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

10

**EXHIBIT 15**

 **Tiffany Dehen** @tiffanydehen · Jan 30
I'm so excited for my audition for TV! I can't
wait to make America proud!
#MakeAmericaGreatAgain #AmericaFirst
#AmericaFirstOnly @POTUS

> BRAVO's The Real Housewives of Nazi-
> Occupied Russian Territory Formerly
> Known as America
>
> *twirls*
>
> "If he's not Aryan, we're not marryin'!"



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 16**



 **Tiffany Dehen** @tiffanydehen · Jan 29
Fuck throwing this dog off a cliff. Ima eat him instead! What a
#snowflake @peta #MakeAmericaGreatAgain Animals don't deserve
extra rights!



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

11

**EXHIBIT 17**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 18**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

12

## EXHIBIT 19

Infringing Work #5

## EXHIBIT 20

**Tiffany Dehen** @tiffanydehen · Jan 29
I agree with @SpeakerRyan do what you can to keep them Jews out of our Christian country!! #AmericaFirst #MakeAmericaGreatAgain #MuslimBan

**Paul Ryan** @SpeakerRyan
RT if you agree → It's time to rebuild our partnership with #Israel and reaffirm our commitment to her security.

3:41

**Tiffany Dehen** @tiffanydehen · Jan 29
CNN is fake news! Serena won the Australian open!

**CNN Breaking News** @cnnbrk
Roger Federer beats Rafael Nadal in a five-set match in the Australian Open Men's Final winning his 18th grand slam. cnn.it/2kHdrnk

**Tiffany Dehen** @tiffanydehen · Jan 29
That'll teach them terrorist saudis!
#MuslimBan #MakeAmericaGreatAgain my

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

## EXHIBIT 21

 **Tiffany Dehen** @tiffanydehen · Jan 29
CNN is fake news! Serena won the Australian open!

 **CNN Breaking News** @cnnbrk
Roger Federer beats Rafael Nadal in a five-set match in
the Australian Open Men's Final winning his 18th grand
slam. cnn.it/2kHdrnk

 **Tiffany Dehen** @tiffanydehen · Jan 29
That'll teach them terrorist saudis!
#MuslimBan #MakeAmericaGreatAgain my
hero! @POTUS @realDonaldTrump



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

## EXHIBIT 22

 **Tiffany Dehen** @tiffanydehen · Jan 29
That'll teach them terrorist saudis!
#MuslimBan #MakeAmericaGreatAgain my
hero! @POTUS @realDonaldTrump



 **Tiffany Dehen** @tiffanydehen · Jan 29
Why do the gays hate this hat? I thought they all liked fashion!
#snowflakes #EndSpecialInterests #ReligiousFreedom
#MakeAmericaGreatAgain



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

14

**EXHIBIT 23**



**Tiffany Dehen** @tiffanydehen · Jan 29
Why do the gays hate this hat? I thought they all liked fashion!
#snowflakes #EndSpecialInterests #ReligiousFreedom
#MakeAmericaGreatAgain



**Tiffany Dehen** @tiffanydehen · Jan 29
Saving myself for marriage! My man knows

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 24**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

15

**EXHIBIT 25**



Infringing Work #4

**EXHIBIT 26**

 **Tiffany Dehen** @tiffanydehen · Jan 29
Saving myself for marriage! My man knows
we can have sex 3 times: honeymoon,
Trump's reelection, & jesus 2nd coming!
#MakeAmericaGreatAgain



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

16

**EXHIBIT 27**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 28**



Infringing Work #3

17

# EXHIBIT 29

**Tiffany Dehen** @tiffanydehen · Jan 29
Throwing this dog over this cliff! Animals don't deserve special rights! Down with special interists! #MakeAmericaGreatAgain @POTUS

**Tiffany Dehen** @tiffanydehen · Jan 29
Donated some eggs today! Don't know why sent they told me they were tax deductible!

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

# EXHIBIT 30

**Tiffany Dehen** @tiffanydehen · Jan 29
Throwing this dog over this cliff! Animals don't deserve special rights! Down with special interists! #MakeAmericaGreatAgain @POTUS

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 31**



Infringing Work #2

**EXHIBIT 32**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

19

**EXHIBIT 33**



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 34**



Infringing Work #1

20

## EXHIBIT 35

**Tiffany Dehen** @tiffanydehen · Jan 28
Nothing like my own personal welcome team to Twitter. Thanks
@AdolfHitlerFuhr XOXO Let's #MakeAmericaGreatAgain studcakes
#MuslimBan

Fuhrer welcomes you

14h

**Tiffany Dehen** @tiffanydehen · Jan 28
Have y'all noticed the blacks are on all the magazines nowadays?
Time 4 change!! White women are the silent majority in the lamestream
media

**Tiffany Dehen** @tiffanydehen · Jan 28
Just found this lovely pic of our
#firstladymelania Pearl necklaces 4 every
girl about time @MELANIATRUMP @POTUS

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

## EXHIBIT 36

**Tiffany Dehen** @tiffanydehen · Jan 28
Nothing like my own personal welcome team to Twitter. Thanks
@AdolfHitlerFuhr XOXO Let's #MakeAmericaGreatAgain studcakes
#MuslimBan

Fuhrer welcomes you

14h

**Tiffany Dehen** @tiffanydehen · Jan 28
Have y'all noticed the blacks are on all the magazines nowadays?
Time 4 change!! White women are the silent majority in the lamestream
media

**Tiffany Dehen** @tiffanydehen · Jan 28
Just found this lovely pic of our
#firstladymelania Pearl necklaces 4 every
girl about time @MELANIATRUMP @POTUS
#MakeAmericaGreatAgain



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

21

**EXHIBIT 37**

 **Tiffany Dehen** @tiffanydehen · Jan 28
Have y'all noticed the blacks are on all the magazines nowadays?
Time 4 change!! White women are the silent majority in the lamestream
media

 **Tiffany Dehen** @tiffanydehen · Jan 28
Just found this lovely pic of our
#firstladymelania Pearl necklaces 4 every
girl about time @MELANIATRUMP @POTUS
#MakeAmericaGreatAgain



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 38**



 **Tiffany Dehen** @tiffanydehen · Jan 28
TO HELL WITH MUSLIMS WHO WANT TO BAN OUR AMERICAN
VALUES! U NEVER PUT ME IN A BURKA! #MuslimBan
#MakeAmericaGreatAgain @POTUS #BuildTheWall



Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

22

## EXHIBIT 39



 **Tiffany Dehen** @tiffanydehen · Jan 28
TO HELL WITH MUSLIMS WHO WANT TO BAN OUR AMERICAN
VALUES! U NEVER PUT ME IN A BURKA! #MuslimBan
#MakeAmericaGreatAgain @POTUS #BuildTheWall



 **Tiffany Dehen** @tiffanydehen · Jan 28
My gawd Who is that lucky lady? @POTUS
@realDonaldTrump My pastor wouldn't be
happy with my inside-outies right now?
#MakeAmericaGreatAgain

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

## EXHIBIT 40

 **Tiffany Dehen** @tiffanydehen · Jan 28
My gawd Who is that lucky lady? @POTUS
@realDonaldTrump My pastor wouldn't be
happy with my inside-outies right now?
#MakeAmericaGreatAgain



 **Tiffany Dehen** @tiffanydehen · Jan 28
Me+my girls today. If you can't bring back

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

23

**EXHIBIT 41**

 **Tiffany Dehen** @tiffanydehen · Jan 28
Me+my girls today. If you can't bring back
an 80's dye job, U DON'T DESERVE TO BE
AMERICAN!!! #MakeAmericaGreatAgain
#SexyLikeCockatoos #grl



↩        ♻ 2        ♡ 5

 **Tiffany Dehen** @tiffanydehen · Jan 27
The only better time to be a woman in America beside 2day was the
day Jesus was crucified #witness #amen #Jesusfirst

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

**EXHIBIT 42**



↩        ♻ 2        ♡ 5

 **Tiffany Dehen** @tiffanydehen · Jan 27
The only better time to be a woman in America beside 2day was the
day Jesus was crucified #witness #amen #Jesusfirst
#MakeAmericaGreatAgain

↩        ♻        ♡ 1



 **Tiffany Dehen** @tiffanydehen · Jan 27
i'm all for building that wall over mexico but the real aliens come from
above #buildthatwall #MakeAmericaGreatAgain @realDonaldTrump
#ufos

↩        ♻        ♡ 1

📷 Tiffany Dehen followed Breitbart News, Klu Klux Klan, klu klux klan and 3 others

  

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

24

**EXHIBIT 43**



**Tiffany Dehen** @tiffanydehen · 3d
The only better time to be a woman in
America beside 2day was the day Jesus
was crucified #witness #amen #Jesusfirst
#MakeAmericaGreatAgain

**Tiffany Dehen** @tiffanydehen · 3d
i'm all for building that wall over mexico but
the real aliens come from above
#buildthatwall #MakeAmericaGreatAgain
@realDonaldTrump #ufos

**Tiffany Dehen** @tiffanydehen · 3d
@realDonaldTrump is gonna stop these
alien abductions plaguing our nation y'all.
these anal probes gotsa stop.
#MakeAmericaGreatAgain #ufos

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 01/30/2017

25

## EXHIBIT 44



**Tiffany Dehen** @tiffanydehen · Jan 27
I'm all for building that wall over mexico but the real aliens come from above #buildthatwall #MakeAmericaGreatAgain @realDonaldTrump #ufos

Tiffany Dehen followed Breitbart News, Klu Klux Klan, klu klux klan and 3 others

**Breitbart News** ✓
@BreitbartNews
News, commentary, and destruction of the political/media establishment.
Following

**Klu Klux Klan**
@TheeKluKluxKlan
This is the page for all participating kkk members I am the grand wizard and shall follow any whites and spam blacks
Follow

Tiffany Dehen followed Donald J. Trump, Vladamir Putin, Adolf Hitler and 3 others

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

## EXHIBIT 45



Tiffany Dehen followed                                          ×

**klu klux klan** @FuckTheNiggers                               Follow

**Adolf Hitler** @AdolfHitlerFuhr                                Follow
The Official Profile Of Adolf Hitler.Leader of National Socialist German Workers Party From 1921 To 1945.Chancellor and Fuhrer of Germany From 1933 to 1945.

**Vladimir Putin** @realtalkputin                               Follow
KGB top boy, general badman and silent shareholder at Chelsea FC. KTBFFH #freemyKGBdonnys#vladsgassed#realtalk putin

**Donald J. Trump** ✓ @realDonaldTrump                          Following
45th President of the United States of America

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

26

# EXHIBIT 46



@BreitbartNews

News, commentary, and destruction of the political/media establishment.



@TheeKluKluxKlan

This is the page for all participating kkk members I am the grand wizard and shall follow any whites and spam blacks

Tiffany Dehen followed Donald J. Trump, Vladamir Putin, Adolf Hitler and 3 others

**Donald J. Trump** ✓
@realDonaldTrump

45th President of the United States of America

**Vladamir Putin**
@realtalkputin

KGB top boy, general badman and silent shareholder at Chelsea FC. KTBFFH #freemyKGBdonnys#vladsgassed#realtalkputin



Back to top ↑

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

# EXHIBIT 47



@BreitbartNews

News, commentary, and destruction of the political/media establishment.



@TheeKluKluxKlan

This is the page for all participating kkk members I am the grand wizard and shall follow any whites and spam blacks

Tiffany Dehen followed Donald J. Trump, Vladamir Putin, Adolf Hitler and 3 others

**Donald J. Trump** ✓
@realDonaldTrump

45th President of the United States of America

**Vladamir Putin**
@realtalkputin

KGB top boy, general badman and silent shareholder at Chelsea FC. KTBFFH #freemyKGBdonnys#vladsgassed#realtalkputin



Back to top ↑

Screenshot of Twitter account @tiffanydehen taken by Plaintiff 02/01/2017

27

# EXHIBIT 48



**Twitter Support**
To:  tiffany.dehen@gmail.com
Case# 50854043: Impersonation - tiffanydehen

January 30, 2017 at 9:56 PM

 @tiffanysundevil

Hello,

Thanks for sending your report regarding impersonation on Twitter.

**Our next steps:**
First, we need to confirm your identity. Below you'll find instructions and a link you can use to upload a copy of your valid government-issued photo ID. Then we'll review and process your report. We can't review your report until the documentation is received.

**Your next steps:**
Review the instructions below and upload the requested documentation. Please make sure to upload a legible copy so we can review the full name and photo on the ID. This information will be kept confidential and your documentation will be deleted.

**Instructions:**

- Click on the link below and upload a copy of your valid government-issued photo ID (e.g., driver's license or passport).
- If you are reporting an account that is not using the name that appears on your government-issued photo ID, you must also include documentation demonstrating that the name used by the account you're reporting is associated with you (e.g., proof of registration of your trade name or pseudonym).

Upload link: https://twitterinc.secure.force.com/u?e=tiffany.dehen@gmail.com&cn=50854043

Please note that accounts in compliance with Twitter's parody, commentary, and fan accounts policy (https://support.twitter.com/entries/106373) are not considered in violation of our impersonation policy (https://support.twitter.com/articles/18366).

Thank you,

Twitter

## Email sent from Twitter to Plaintiff 01/30/2017 at 9:56 p.m.

28

# EXHIBIT 49

◀ Back to Mail                4:10 PM                ↗ 39% ▭

🔒 twitterinc.secure.force.com          ↻

**Upload file for CASE - 50854043**

*Only image files with PNG,JPE[G, GIF, TIFF, PDF extensions are allowed. File size cannot be greater than 5 Mb.

### File uploaded successfully
#### If required please upload additional files

Browse and upload a file to case

File*
( Choose File ) no file selected

SITIC    [illegible]

[type the text]        Privacy & Terms

Upload

Twitter, Inc. 1355 Market st. Suite 900  San Francisco, CA 94103

⟨      ⟩      ⬆      📖      🗗

Screenshot Taken By Plaintiff 02/01/2017 at 4:10 p.m.

29

**EXHIBIT 50**



# Tiffany Dehen
@tiffanydehen

Parody account. Fiction and political satire about Republican white women.

◎ Praying for America

**20** FOLLOWING   **3** FOLLOWERS

| Tweets | Media | Likes |
|--------|-------|-------|

 **Tiffany Dehen** @tiffanydehen · 2h    ⌄
Black history month? More like "excuse to complain more" month.



 **Tiffany Dehen** @tiffanydehen · 22h    ⌄
ONLY WHITE PEOPLE DESRVE BENEFITS! america should be great to win i no knowledge of it! #MakeAmericaGreatAgain @POTUS @realDonaldTrump

**Thomas Paine** @Thomas1774Paine

Hey DOJ & #Yates, welcome back to

 Home     Explore     Notifications     Messages     Me

Screenshot of Twitter account @tiffanydehen taken by Plaintiff on 02/01/2017 at 6:25 p.m.

30

# EXHIBIT 51

**support@twitter.com**
To:  tiffany.dehen@gmail.com
Case# 50854043: Impersonation - tiffanydehen

February 2, 2017 at 8:51 AM   

 Tiffanysundevil

Hello,

Thanks for bringing this to our attention. Parody, newsfeed, commentary and fan accounts are permitted on Twitter so long as they comply with our policy for such accounts (http://support.twitter.com/articles/106373).

In response to your complaint, we're providing the user with instructions on how to comply with our policy. Please allow 48 hours from the receipt of this email for the user to make the necessary changes. After 48 hours have passed, you can reply to this email if you'd like to file a follow-up complaint about the account. Note that Twitter will not proactively monitor the account, but will respond to all valid follow-up complaints.

Thanks,

Twitter

Help

Twitter, Inc. 1355 Market Street, Suite 900 San Francisco, CA 94103

Email sent from Twitter to Plaintiff 02/02/2017 at 8:51 a.m.

31

**EXHIBIT 52**



Screenshot of Plaintiff's Recent LinkedIn Profile Views Taken By Plaintiff
01/30/2017 at 10:51 p.m.

# EXHIBIT 53



Email Confirmation of written contract entered into by Plaintiff and Twitter on 10/09/2015 at 11:11 p.m.

**EXHIBIT 54**

 MetroPCS 📶   7:08 AM   ⌃ 100% 🔋 

⚙   **Notifications**   ✎

 **Tiffany Dehen** @tiffanydehen · 3d   ⌄
That's right @tiffanysundevil we should just get rid of all those countries that aren't america! #AmericaFirst #AmericaFirstOnly

> **Tiffany Dehen J.D.** @tiffanysundevil
> THIS IS HEINOUS. What morons. I wish we could not deal with countries who are so stupid. twitter.com/drudge_report/...

◁ 1    ⇄    ♡    ✉ 

♥ 

**Tiffany Dehen** liked 10 of your Tweets

THIS IS HEINOUS. What morons. I wish we could not deal with countries who are so stupid. twitter.com/drudge_report/...

We are SO LUCKY to have such an amazing first family! #MAGA twitter.com/ivankatrump/st...

We are deeply honored to have you!!!!!!!!!! twitter.com/flotus/status/...

View all

📍        

**Texas Belle** and 4 others followed you

🏠 Home   🔍 Explore   🔔 Notifications   ✉ Messages   👤 Me

Screenshot taken by Plaintiff 02/03/2017 at 7:08 a.m.

34

# EXHIBIT 55

•○○○○ MetroPCS 7:07 AM 100%

**Notifications**

**Nazi Free in 2017** @mlse · 20h
I think Tiffany Dehen probably should've just ignored @tiffanysundevil

**Keith Lee** @associatesmind
$100 MILLION in damages! Slander & IIED for...a parody T...

2 1

**DROP CLOTH** followed you

**matt suhajda** liked your Tweet
😂😂😂😂 twitter.com/realdonaldtrum...

**Lili Dehen** liked this and 1 more Retweet
This #HolocaustRemembrance Day, we join the Jewish people to remember the victims & honor the survivors of the past for sake of the future.

View all

Home Explore Notifications Messages Me

Screenshot taken by Plaintiff 02/03/2017 at 7:07 a.m.

**EXHIBIT 56**



Screenshot taken by Plaintiff 02/01/2017 at 5:40 p.m. of Twitter account @tiffanydehen followers.

**EXHIBIT 57**



Photograph taken by Plaintiff 02/01/2017 at 9:07 a.m.

**EXHIBIT 58**

Original to Officer; send copy(ies) to involved party(ies)

| DATE OF COLLISION | | TIME (2400) | NCIC NUMBER | OFFICER I.D. | NUMBER | PAGE |
|---|---|---|---|---|---|---|
| MO. | DAY | YR. | | | | |

1. Flat bed tow truck swerved left, out of his lane, and
2. to avoid collison, the silver kia, license 7FHL828,
3. swerved left into the lane I was traveling
4. South bound on. I jammed my brakes, honked
5. the horn, but couldn't swerve into the left
6. lane b/c of a car next to me, so I collided
7. in the back of the silver kia. The flat bed
8. truck who caused the entire accident drove
9. off. As soon as traffic allowed him and did
10. not allow us to get his license plate. I have
11. the info of witness Scott williams 619-616-
12. 9038, who was driving a dark silver hyundai
13. and witnessed the entire accident, and tried
14. leaving the scene but couldn't b/c I stood in
15. his way in the middle of the freeway and
16. flagged him down until he wrote his
17. info for me. I asked him if he saw the
18. whole thing happen and he replied yes,
19. and then graciously wrote his info down.
20. I think he was in shock too. I have a
21. photo if 15 S right after the incident. so
22. maybe w/proper technology it can be
23. cleaned up to see the flat bed who fled
24. the scene of the accident after causing
25. the whole thing. Nobody else stopped to
26. help or ask if we were okay, and 911 was
27. worthless both times I called for help, but hung up
28. when I saw a patrol driving ahead of me.

| PREPARER'S NAME | | | | | |
|---|---|---|---|---|---|

Plaintiff's Report Filed With Department of California Highway Patrol on
02/01/2017 at 10:50 a.m.

38

# EXHIBIT 59

Photograph of Plaintiff's car accident February 20, 2017 at 3:24 p.m.

# EXHIBIT 60

Tiffany Dehen

**Juris Doctor Candidate May 2016**

Recruiting Services of Arizona • University of San Diego School of Law

Greater San Diego Area • 500+

I completed my J.D. from University of San Diego School of Law in July 2016 with dual concentrations in Intellectual Property Law and Business and Corporate Law.

I graduated in 2011 Cum Laude from Arizona State University with a Bachelor of Science in Marketing offered by the highly rated W.P. Carey School of Business, Minor in Mass Communications from Walter Cronkite School of Journalism and Mass Communications (again highly rated), and International Business Certificate from W.P. Carey School of Business.

From 2011 to 2016, I worked as the Marketing Coordinator at Recruiting Services of Arizona, a recruiting and consulting firm in the Financial Services Industry. I continued to work remotely for RSA through law school, averaging 10-20 hours per week. To put myself through law school, I worked another part time job marketing for and assisting a professional yacht salesman in the San Diego area.

See less

Screenshot of Plaintiff's LinkedIn Taken By Plaintiff 04/12/2017 at 11:58 a.m.

**EXHIBIT 61**



🏠 Home    ⚡ Moments    🔔 Notifications    ✉ Messages    🐦     Search Twitter    🔍

| TWEETS | FOLLOWING | FOLLOWERS | LIKES | MOMENTS |
|--------|-----------|-----------|-------|---------|
| 180 | 304 | 53 | 271 | 0 |

Edit profile

**Tiffany Dehen J.D.**
@tiffanysundevil

I just graduated from USD Law School
and I am helping to
#MakeAmericaGreatAgain by voting for
Donald J. Trump. #trumptrain2016baby
#choochoo

📍 San Diego, CA
📅 Joined October 2015

**Tweets**   Tweets & replies   Media

🔁 You Retweeted

**DRUDGE REPORT** @DRUDGE_REPORT · Jan 31
TRUMP FIRES ACTING ATTORNEY GENERAL

**Why Yates Had to Go, by The Editors, National Revi...**
It was a mistake to leave the likes of Sally Yates in place
-- but at least that error has now been corrected by
Trump, who said, "You're fired!"
nationalreview.com

Screenshot of Plaintiff's Twitter Account Taken By Plaintiff 02/01/2017

40

# EXHIBIT 62

**Loan Summary**

| Date | Loan Type | Status | Balance |
|------|-----------|--------|---------|
| 05/27/2016 | Direct Student Plus Loan | Repayment | $12,003.80 |
| 05/03/2016 | Direct Student Plus Loan | Repayment | $1,698.53 |
| 09/02/2015 | Direct Student Plus Loan | Repayment | $6,548.25 |
| 08/14/2015 | Direct Unsub Stafford Loan | Repayment | $22,244.93 |
| 08/14/2015 | Direct Student Plus Loan | Repayment | $44,473.06 |
| 06/10/2015 | Direct Student Plus Loan | Repayment | $16,721.47 |
| 01/02/2015 | Direct Unsub Stafford Loan | Repayment | $23,412.11 |
| 01/02/2015 | Direct Student Plus Loan | Repayment | $12,368.20 |
| 08/15/2014 | Direct Unsub Stafford Loan | Paid In Full | $0.00 |
| 08/15/2014 | Direct Student Plus Loan | Repayment | $12,999.19 |
| 03/28/2014 | Direct Student Plus Loan | Repayment | $487.75 |
| 02/27/2014 | Direct Student Plus Loan | Repayment | $549.69 |
| 12/19/2013 | Direct Student Plus Loan | Repayment | $1,651.31 |
| 08/16/2013 | Direct Unsub Stafford Loan | Repayment | $24,376.24 |
| 08/16/2013 | Direct Student Plus Loan | Repayment | $36,083.94 |
| 08/09/2010 | Direct Sub Stafford Loan | Repayment | $1,350.11 |
| 08/09/2010 | Direct Unsub Stafford Loan | Repayment | $8,642.18 |
| 08/22/2009 | Direct Sub Stafford Loan | Repayment | $5,984.42 |
| 08/22/2009 | Direct Unsub Stafford Loan | Repayment | $2,946.75 |
| ⊙ View Loan Details | | **Total Loan Balance:** | **$234,541.93** |

Screenshot of Plaintiff's Loan Summary Taken By Plaintiff 04/11/2017

**Dated: April 12, 2017**

Respectfully submitted,

Tiffany L. Dehen
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Tel. 858-262-0052
Tiffany.Dehen@Gmail.com

41

Tiffany L. Dehen
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Telephone: 858-262-0052
Email: tiffany.dehen@gmail.com

Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| _____ ) <br> TIFFANY DEHEN ) <br> 1804 Garnet Avenue, #239 ) <br> Pacific Beach, CA 92109 ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN DOE ) <br> Address TBD ) <br> ) <br> and ) <br> ) <br> TWITTER, INC. ) <br> 1355 Market St. #900 ) <br> San Francisco, CA 94103 ) <br> ) <br> and ) <br> ) <br> UNIVERSITY OF SAN DIEGO ) <br> Hughes Administration Center #320 ) <br> 5998 Alcala Park ) <br> San Diego, California 92110 ) <br> ) | Case No.: 3:17-cv-00198-BEN-WVG <br><br> **PLAINTIFF'S LEGAL AUTHORITIES AND TABLE FOR PLAINTIFF'S FIRST AMENDED COMPLAINT** |

SERVE:                                )
                                      )
JOHN DOE                              )
Address TBD                           )
                                      )
TWITTER, INC.                         )
Attn: Incorporating Services, Ltd.    )
3500 South DuPont Highway             )
Dover, Delaware 19901                 )
                                      )
and                                   )
                                      )
UNIVERSITY OF SAN DIEGO               )
Hughes Administration Center #320     )
5998 Alcala Park                      )
San Diego, California 92110           )
                                      )
        Defendants.                   )
                                      )
                                      )

## TABLE OF LEGAL AUTHORITIES FOR
## PLAINTIFF'S FIRST AMENDED COMPLAINT

### FEDERAL STATUTES

Fed. R. Civ. P. 15(a)(2)..........................................................................................1
Fed. R. Civ. P. 21..................................................................................................1
Fed. R. Civ. P. 23..................................................................................................1
17 U.S.C. § 106..................................................................................................1-2
17 U.S.C. § 201(a)................................................................................................2
17 U.S.C. § 410(c)................................................................................................2
17 U.S.C. § 410(d)................................................................................................2
17 U.S.C. § 411(a)..............................................................................................2-3
17 U.S.C. § 501....................................................................................................3
17 U.S.C. § 502....................................................................................................3
17 U.S.C. § 503....................................................................................................3

17 U.S.C. § 504……………………………………………………………3-4

17 U.S.C. § 505……………………………………………………………..4

18 U.S.C. § 1343…………………………………………………….....4-5

18 U.S.C. § 1961……………………………………………………….....5

18 U.S.C. § 1962…………………………………………………….....5-6

18 U.S.C. § 1964……………………………………………………….....6

28 U.S.C. § 1331………………………………………………………....6

28 U.S.C. § 1332……………………………………………………......6-7

28 U.S.C. § 1338(a)…………………………………………………….....7

28 U.S.C. § 1367…………………………………………………….……7

28 U.S.C. § 1391…………………………………………………….....7-8

28 U.S.C. § 1400(a)…………………………………………………….....8

47 U.S.C. § 230……………………………………………….....…....…..8-10

## CALIFORNIA STATUTES

California Code of Civil Procedure § 474…………………………………10

California Penal Code § 528.5……………………………………………...10

California Civil Code § 44…………………………………………….10-11

California Civil Code § 1473…………………………………………….11

California Civil Code § 1549…………………………………………….11

California Civil Code § 1550…………………………………………….11

California Civil Code § 1572…………………………………………11-12

California Civil Code § 1573…………………………………………….12

California Civil Code § 1574…………………………………………….12

California Civil Code § 1689…………………………………………12-13

California Civil Code § 1692…………………………………………13-14

California Civil Code § 1700…………………………………………….14

California Civil Code § 1708…………………………………………….14

California Civil Code § 1709…………………………………………….14

California Civil Code § 1710…………………………………………….14

California Civil Code § 1711…………………………………………14-15

California Civil Code § 1714…………………………………………….15

California Civil Code § 3294.................................................................15
California Civil Code § 3333............................................................15-16
California Business & Professional Code § 17200...............................16

## FEDERAL CASE LAW

*Alaska Stock, LLC. v. Houghton Mifflin Harcourt Publishing Co*...............16
*American Freedom Defense Initiative et al. v. Lynch*............................17
*Barnes v. Yahoo!, Inc*...............................................................16-17
*Doe v. Internet Brands, Inc*.............................................................17
*Petrella v. Metro-Goldwyn-Mayer, Inc*...................................................16

## CALIFORNIA CASE LAW

*Conroy v. Regents of University of California*.....................................17-18
*Dalkilic v. Titan Corp*.................................................................18
*Davidson v. City of Westminster*........................................................18
*Trerice v. Blue Cross of Cal*...........................................................18

# RELEVANT LEGAL AUTHORITIES FOR PLAINTIFF'S

## FIRST AMENDED COMPLAINT

1. Federal Rule of Civil Procedure Rule 15(a)(2) provides the following:

> (a) Amendments Before Trial; (2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the Court's leave. The Court should freely give leave when justice so requires.

> *See* Fed. R. Civ. P. 15(a)(2).

2. Federal Rule of Civil Procedure Rule 21 provides, in relevant part, "[o]n motion

or on its own, the court may at any time, on just terms, add or drop a party." *See*

Fed. R. Civ. P. 21.

3. Federal Rule of Civil Procedure Rule 23 provides in relevant part the following:

> (a) *Prerequisites*. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

> *See* Fed. R. Civ. P. 23.

4. 17 U.S. Code § 106 provides in relevant part the following:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other

1

transfer of ownership...;...(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted works publicly[.]"

*See* 17 U.S. Code § 106.

5. 17 U.S.C. § 201(a) provides in relevant part the following, "[c]opyright in a work protected under this title vests initially in the author or authors of the work."

*See* 17 U.S.C. § 201(a).

6. 17 U.S.C. § 410 provides in relevant part the following:

> (c) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.
>
> *See* 17 U.S.C. § 410(c).

7. 17 U.S.C. § 410(d) further provides the following:

> The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office.
>
> *See* 17 U.S.C. § 410(d).

8. 17 U.S.C. § 411(a) provides in relevant part the following:

> (a) Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall

be instituted until preregistration or registration of the copyright claims has been made in accordance with this title.

*See* 17 U.S.C. § 411(a).

9. 17 U.S. Code § 501 provides in relevant part the following:

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a)...is an infringer of the copyright or right of the author, as the case may be. (b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.

*See* 17 U.S. Code §§ 501(a) and (b).

10. 17 U.S. Code § 502 provides in relevant part the following:

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

*See* 17 U.S. Code § 502.

11. 17 U.S. Code § 503 provides in relevant part the following:

(b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights.

*See* 17 U.S.C. § 503(b).

12. 17 U.S. Code § 504 provides in relevant part the following:

(a) *In General*. Except as otherwise provided by this title, an infringer of copyright is liable for either (1) the copyright owner's actual damages and

3

any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c).  (b) *Actual Damages and Profits*.  The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages...(c) *Statutory Damages*. (1) ...the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

*See* 17 U.S. Code §§§ 504(a), (b), and (c).

13. 17 U.S. Code § 504(c)(2) further provides in relevant part the following:

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.

*See* 17 U.S. Code § 504(c)(2).

14. 17 U.S.C. § 505 provides the following:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

*See* 17 U.S. Code § 505.

15. 18 U.S. Code § 1343 provides in relevant part the following:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted

4

by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

*See* 18 U.S. Code § 1343 (limited on other constitutional grounds).

16. 18 U.S. Code § 1961 provides in relevant part the following:

As used in this chapter (1) "racketeering activity" means...(B) any act which is indictable under any of the following provisions of title 18, United States Code:...section 1343 (relating to wire fraud).

*See* 18 U.S. Code § 1961(1).

17. 18 U.S. Code § 1961 further provides in relevant part the following:

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property; (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity; (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]

*See* U.S. Code § 1961

18. 18 U.S. Code § 1962 provides in relevant part the following:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

*See* 18 U.S. Code § 1962(a).

19. 18 U.S. Code § 1964 provides in relevant part the following:

> (a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

*See* 18 U.S. Code § 1964(a).

20. 18 U.S. Code § 1964 further provides in relevant part the following:

> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

*See* 18 U.S. Code § 1964(c).

21. 28 U.S. Code § 1331 provides the following, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S. Code § 1331.

22. 28 U.S. Code § 1332 provides in relevant part the following:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States.

6

*See* 28 U.S. Code § 1332(a).

23.  28 U.S. Code § 1338(a) provides in relevant part the following:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.

> *See* U.S. Code § 1338(a).

24.  28 U.S. Code § 1367 provides in relevant part the following:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

> *See* 28 U.S. Code § 1367.

25.  28 U.S. Code § 1391 provides in relevant part the following:

> (B) *Venue in General.*  A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

> *See* 28 U.S.C. § 1391.

26.  28 U.S. Code § 1391 further provides in relevant part the following:

> [A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and,

7

if a plaintiff, only in the judicial district in which it maintains its principal place of business."

*See* 28 U.S.C. § 1391(c)(2).

27. 28 U.S. Code § 1400(a) provides in relevant part the following:

Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

*See* 28 U.S. Code § 1400.

28. Section 230 of the Communications Decency Act ("CDA") begins with a statement of findings and a statement of policy, in subsections 230(a) and (b), respectively. *See* 47 U.S.C. § 230.

29. The findings are rather general, but they illustrate Congress' appreciation for the Internet as a "forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad adventures for intellectual activity," which "ha[s] flourished, to the benefit of all Americans, with a minimum of government regulation." *See* 47 U.S.C. § 230(a)(3)-(4).

30. Congress further expressed, "[i]ncreasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services." *See* 47 U.S.C. § 230(a)(5).

31. CDA § 230 provides, in relevant part, as follows:

8

(c) Protection for "Good Samaritan" blocking and screening of offensive material.
(1) Treatment of publisher or speaker.  No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
(2) Civil liability.  No provider or user of an interactive computer service shall be held liable on account of—
(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1) [subparagraph (A)].

*See* 47 U.S.C. § 230(c).

32. Section 230 further provides the following in relevant part:

> Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section.  No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

> *Id.* At § 230(e)(3).

33. Section 230 further states in relevant part as follows:

> (1) Internet.  The term "Internet" means the international computer network of both Federal and non-Federal interoperable packet switched data networks.
> (2) Interactive Computer Service.  The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.
> (3) Information Content Provider.  The term "information content provider" means any person or entity that is responsible, in whole or in part, for the

9

creation or development of information provided through the Internet or any other interactive computer service.
(4) Access software provider. The term "access software provider" means a provider of software (including client or server software), or enabling tools that do any one or more of the following:
(A) filter, screen, allow, or disallow content;
(B) pick, choose, analyze, or digest content; or
(C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content.

*See* 47 U.S.C. § 230(f).

## CALIFORNIA STATUTES

34. California Code of Civil Procedure allows fictitious defendants, i.e., naming

unknown defendants. *See* CA C. Civ. P. § 474.

35. California Penal Code § 528.5 provides the following:

(a) Notwithstanding any other provision of law, any person who knowingly and without consent credibly impersonates another actual person through or on an Internet Web site or by other electronic means for purposes of harming, intimidating, threatening, or defrauding another person is guilty of a public offense punishable pursuant to subdivision (d). (b) For purposes of this section, an impersonation is credible if another person would reasonably believe, or did reasonably believe, that the defendant was or is the person who was impersonated. (c) For purposes of this section, "electronic means" shall include opening an e-mail account or an account or profile on a social networking Internet Web site in another person's name. (d) A violation of subdivision (a) is punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment. (e) In addition to any other civil remedy available, a person who suffers damage or loss by reason of a violation of subdivision (a) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief pursuant to paragraphs (1), (2), (4), and (5) of subdivision (e) and subdivision (g) of Section 502. (f) This section shall not preclude prosecution under any other law.

10

*See* California Penal Code § 528.5.

36.  California Civil Code § 44 provides the following, "[d]efamation is effected

by either of the following: (a) Libel. (b) Slander." *See* California Civil Code § 44.

37.  California Civil Code § 45 provides the following:

> Libel is a false and unprivileged publication by writing, printing, picture,
> effigy, or other fixed representation to the eye, which exposes any person to
> hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or
> avoided, or which has a tendency to injure him in his occupation.

*See* California Civil Code § 45.

38.  California Civil Code § 1473 provides the following:

> Full performance of an obligation, by the party whose duty it is to perform
> it, or by any other person on his behalf, and with his assent, if accepted by
> the creditor, extinguishes it.

*See* California Civil Code § 1473.

39.  California Civil Code § 1549 provides, "[a] contract is an agreement to do or

not to do a certain thing." *See* California Civil Code § 1549.

40.  California Civil Code § 1550 provides the following:

> *Essential Elements of Contract.* It is essential to the existence of a contract
> that there should be: 1. Parties capable of contracting; 2. Their consent; 3. A
> lawful objective; and, 4. A sufficient cause or consideration.

*See* California Civil Code § 1550.

41.  California Civil Code § 1572 provides in relevant part the following:

11

Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with the intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive.

*See* California Civil Code § 1572.

42. California Civil Code § 1573 provides the following:

Constructive Fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

*See* California Civil Code § 1573.

43. California Civil Code § 1574 provides the following, "[a]ctual fraud is always a question of fact." *See* California Civil Code § 1574.

44. California Civil Code § 1689 provides in relevant part the following:

(b) A party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party. (2) If the consideration for the obligations of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds. (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause. (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause. (5) If the contract is unlawful for causes

12

which do not appear in its terms or conditions, and the parties are not equally at fault. (6) If the public interest will be prejudiced by permitting the contract to stand. (7) Under the circumstances provided for in...or any other statute providing for rescission.

*See* California Civil Code § 1689.

45.  California courts no longer grant rescission, but merely recognize that the underlying facts have been established and grant consistent relief. *See* California Civil Code § 1692.

46.  California Civil Code § 1692 provides in relevant part the following: [w]hen a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by:

> (a) Bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances.

*See* California Civil Code § 1692

47.  California Civil Code § 1692 further provides in relevant part the following:

> A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery. If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to many any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties.

13

*See* California Civil Code § 1692.

48. California Civil Code § 1700 provides the following:

> The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act.

> *See* California Civil Code § 1700.

49. California Civil Code § 1708 provides the following, "[e]very person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." *See* California Civil Code § 1708.

50. California Civil Code § 1709 provides the following, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." *See* California Civil Code § 1709.

51. California Civil Code § 1710 provides in relevant part the following, "[a] deceit, within the meaning of the last section, is either…; or (4) [a] promise, made without any intention of performing it." *See* California Civil Code § 1710.

52. California Civil Code § 1711 provides the following:

> One who practices a deceit with intent to defraud the public or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit.

14

*See* California Civil Code § 1711.

53. California Civil Code § 1714 provides in relevant part the following:

> (a) Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person.

*See* California Civil Code § 1714.

53. California Civil Code § 3294 provides in relevant part the following:

> (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover for the sake of example and by way of punishing the defendant.

*See* California Civil Code § 3294(a).

54. California Civil Code § 3294 further provides in relevant part the following:

> (c) As used in this section, the following definitions shall apply: (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

*See* California Civil Code § 3294.

55. California Civil Code § 3333 provides the following:

15

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

*See* California Civil Code § 3333.

56. California Business & Professional Code § 17200 provides the following:

> As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

*See* California Business & Professional Code § 17200.

## FEDERAL CASE LAW

57. "Although registration is 'permissive,' both the certificate and the original work must be on file with the Copyright Office before a copyright owner can sue for infringement." *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 132 S. Ct. 1962, 1977 (2014).

58. "Though an owner has property rights without registration, he needs to register the copyright to sue for infringement." *See Alaska Stock, LLC. v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 678 (9th Cir. 2014)

59. The Ninth Circuit held, and reaffirmed, that the CDA does not declare "a general immunity against all claims derived from third-party content." *See Barnes*

16

*v. Yahoo!, Inc.*, 570 F.3d at 1100; *see also Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016).

60.  In the D.C. Circuit, plaintiffs brought a cause of action against the Attorney General of the United States alleging CDA § 230, immunizing social media providers against liability for removal of content, violates the First Amendment and sought preliminary and permanent injunctions enjoining § 230.  *See American Freedom Defense Initiative et al. v. Lynch*, No. 16-cv-1437, 2016 WL 6635634 (D.D.C. Nov. 9, 2016).  The district judge dismissed for lack of standing and held the alleged injury by social media providers in removing content was not fairly traceable to Attorney General's actions, and thus the causation prong of Article III's standing inquiry was not satisfied.  *Id.*  The plaintiffs recently filed an appeal, explaining that although the court pointed out the plaintiffs could sue the social media companies directly, doing so would be futile in light of the immunity granted to them by the Government through the operation of § 230.  *See Id.*

## CALIFORNIA CASE LAW

61.  The elements for intentional infliction of emotional distress in California include the following:

> 1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) the plaintiff's suffering severe or extreme emotional distress; and

17

3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*See Conroy v. Regents of University of California,* 59 Cal.Rptr.3d 661

(Cal.App. 4 Dist.2007), quoting *Davidson v. City of Westminster,* 32 Cal.3d

197, 209, 185 Cal.Rptr. 252, 649 P.2d 894 (1982).

62.   Although the question of whether a defendant's conduct is "outrageous"

normally presents an issue of fact for a trier of fact, a reviewing court may, as a

matter of law, determine if "defendant's conduct may reasonably be regarded as so

extreme and outrageous as to permit recovery." *See Trerice v. Blue Cross of Cal.,*

209 Cal.App.3d at 883; *see also Dalkilic v. Titan Corp.* (S.D. Cal. 2007) 516.

**Dated: April 12, 2017**

Respectfully submitted,

Tiffany L. Dehen
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Tel. 858-262-0052
Tiffany.Dehen@Gmail.com

18