Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

Ryan Mrazik, WSBA No. 40526
*Pro Hac Vice Pending*
RMrazik@perkinscoie.com
Nicola Menaldo, WSBA No. 44459
*Pro Hac Vice Pending*
NMenaldo@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Defendant
Twitter, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY DEHEN,<br><br>                              Plaintiff,<br><br>          v.<br><br>JOHN DOE, TWITTER, INC.,<br>and UNIVERSITY OF SAN<br>DIEGO,<br><br>                              Defendants. | Case No. 17-cv-00198-BEN- WVG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TWITTER, INC.'S MOTION TO DISMISS**<br><br>Hearing Date:  October 2, 2017<br>Time:  10:30 a.m.<br>Courtroom: 5A<br>Judge:  Hon. Roger T. Benitez |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 1

II. BACKGROUND ................................................................. 2

    A.  Plaintiff's Allegations Against Twitter ................................. 2

    B.  Twitter's Terms of Service and Policies ............................ 4

III. LEGAL STANDARD .......................................................... 6

IV. ARGUMENT ................................................................... 7

    A.  Twitter's Motion to Dismiss Should Be Granted ................. 7

        1.  The Communications Decency Act Bars All of Plaintiff's Claims ........................................................ 7

            a.  Twitter Provides an Interactive Computer Service ........................................................ 7

            b.  Plaintiff's Claims Treat Twitter as a Publisher ....................................................... 8

            c.  The Content Was Posted by Another Information Content Provider ........................ 10

        2.  Plaintiff Has Not Alleged Any Viable Claim Against Twitter .................................................. 11

            a.  Plaintiff Cannot Obtain the Remedy of Rescission ................................................... 11

            b.  Twitter Cannot Be Liable for Negligent Infliction of Emotional Distress Because Twitter Owed Plaintiff No Duty .................... 14

        3.  Plaintiff's Derivative Declaratory Relief Claim Fails ......................................................... 14

    B.  Plaintiff Should Be Denied Leave to Amend ................... 15

V.  CONCLUSION ................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alder v. Drudis*,
  30 Cal. 2d 372 (1947) ........................................................................... 11

*Anthony v. Yahoo Inc.*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006) ................................................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................... 6, 12

*Audette v. Int'l Longshoremen's & Warehousemen's Union*,
  195 F.3d 1107 (9th Cir. 1999) .............................................................. 14

*Ballard v. Chase Bank USA, NA*,
  No. 10-cv-790-L-POR, 2010 WL 5114952 (S.D. Cal. Dec. 9, 2010) ................ 14

*Barnes v. Yahoo!*,
  570 F.3d 1096 (9th Cir. 2009) ....................................................*passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 6

*Camofi Master LDC v. Associated Third Party Adm'rs*,
  No. 16-cv-00855-FMC, 2016 WL 6834585
  (N.D. Cal. Nov. 21, 2016) .................................................................... 11

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016) ........................................... 12, 14

*Cross v. Facebook, Inc.*,
  No. A148263 & A149140, --- Cal. Rptr. 3d ---, 2017 WL 3404767
  (Cal. App. Ct. Aug. 9, 2017) ........................................................... 9, 10

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) .................................................................. 7

*Dowbenko v. Google Inc.*,
  991 F. Supp. 2d 1219 (S.D. Fla. 2013) ................................................. 11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ........................................................................ 6

*Fiedler v. Clark*,
   714 F.2d 77 (9th Cir. 1983) ........................................................................... 14

*Fields v. Twitter, Inc.*,
   217 F. Supp. 3d 1116 (N.D. Cal. 2016) ...................................................... 7, 10

*Gaston v. Facebook, Inc.*,
   No. 12-cv-0063-ST, 2012 WL 629868 (D. Or. Feb. 2, 2012) .............................. 8

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ........................................................... 10

*Green v. Am. Online (AOL)*,
   318 F.3d 465 (3d Cir. 2003) ............................................................................ 8

*Highfields Capital Mgmt., L.P. v. Doe*,
   385 F. Supp. 2d 969 (N.D. Cal. 2005) .............................................................. 11

*Joude v. WordPress Found.*,
   No. 14-cv-01656-LB, 2014 WL 3107441 (N.D. Cal. July 3, 2014) ................... 12

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .......................................................................... 8

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
   701 F.2d 1276 (9th Cir. 1983) ........................................................................... 6

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.D.C. 2014) ............................................................................ 8

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .......................................................................... 4

*Ladd v. Cnty. of San Mateo*,
   412 Cal. 4th 913 (1996) .................................................................................. 14

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ........................................................................... 12

*Music Grp. Macao Commercial Offshore Ltd. v. Does*,
   82 F. Supp. 3d 979 (N.D. Cal. 2015) ................................................................ 11

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ............................................... 6, 10

*Price v. Gannett Co.*,
   No. 11-cv-00628, 2012 WL 1570972 (S.D. W. Va. May 1, 2012).................... 10

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ................................................... 15

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................ 8

*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ............................................... 13

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................... 4

*Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*,
   No. 12-CV-2079-GPC-KSC, 2014 WL 2511448
   (S.D. Cal. June 4, 2014) ...................................................... 14

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011)......................................... 14

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) .................................................... 8

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................... 15

**STATUTES**

Communications Decency Act, 47 U.S.C. § 230. ..............................................*passim*

Declaratory Judgment Act, 28 U.S.C. § 2201 ....................................... 14

Racketeer Influenced and Corrupt Organizations Act,
   18 U.S.C. § 1962 ...................................................... 3, 8, 15

18 U.S.C. § 1343.......................................................... 3

Cal. Civ. Code § 1572........................................................ 3, 13

Cal. Civ. Code § 1573........................................................ 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

Defendant Twitter, Inc.'s Motion to Dismiss the First Amended Complaint ("Complaint") should be granted without leave to amend.  Plaintiff Tiffany Dehen has not stated—and cannot state—any claims as to Twitter.

Plaintiff alleges that she reported an account impersonating her to Twitter.  Twitter immediately responded and investigated in part by requesting her identification, which Plaintiff provided.  The impersonation account was disabled *within days* and removed entirely just *days later*.  Plaintiff nevertheless brings claims against Twitter (and reserves the right to bring more) based on Twitter's alleged failure to remove the account upon receiving her report.

Notwithstanding Twitter's expedient actions and the removal of the account concerned, the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), is fatal to Plaintiff's lawsuit.  Plaintiff's claims target Twitter's exercise of editorial discretion and improperly attempt to hold Twitter liable for the conduct of the account creator.  Plaintiff attempts to circumvent the CDA by alleging that Twitter promised her it would remove content, relying on the Ninth Circuit's decision in *Barnes v. Yahoo!*, 570 F.3d 1096 (9th Cir. 2009) ("*Barnes*").  This attempt fails because, unlike the plaintiff in *Barnes,* Plaintiff here has no promissory estoppel claim against Twitter.  Twitter's Terms of Service and applicable policies merely enshrine Twitter's discretion to remove content and disclaim any liability for user content.

Regardless of this immunity, Plaintiff has not stated any claim against Twitter.  Plaintiff cannot obtain the remedy of rescission because she has alleged no breach of contract.  Nor has Plaintiff alleged fraud to justify rescission—Twitter's actions were consistent with its terms and policies, and there is no plausible allegation otherwise.  Similarly, Plaintiff cannot recover for negligent infliction of emotional distress because Twitter owed Plaintiff no duty to remove the

account.  Similarly, Plaintiff's declaratory relief claim is derivative of her other claims and thus fails.

Plaintiff should not be permitted to proceed with this lawsuit against Twitter.  There is no basis for Plaintiff's current claims, which fail in the face of the immunity provided under the CDA and Twitter's terms and policies, let alone the civil conspiracy, racketeering, and libel claims that she reserves the right to bring.  Plaintiff's Complaint should therefore be dismissed with prejudice as to Twitter.

## II.   BACKGROUND

### A.   Plaintiff's Allegations Against Twitter

Twitter is an online platform that allows users all over the world to communicate through short messages called "Tweets" using unique account names called "handles."  *See generally* Plaintiff's First Amended Complaint, Dkt. 13 ("FAC.") ¶ 9.  Twitter is a free user-directed service, and users can find Tweets they are interested in reading in a number of ways, including by "following" the Twitter accounts of other users.  *See id.*

Plaintiff alleges that, on January 26, 2017, John Doe allegedly created a Twitter account using @tiffanydehen as its handle (the "Account").  *Id.* ¶ 71.  John Doe styled the Account as a "Parody account; Fiction and political satire about Republican white women" and used a photograph of Plaintiff for the profile.  *Id.*  He used the Account to "follow" multiple controversial Twitter accounts, including those of Vladimir Putin, the Ku Klux Klan, and Adolf Hitler, and published Tweets that ascribed certain contentious views to Plaintiff.  *See*, *e.g.*, *id.* ¶¶ 74-97; Exs. 9-43.

On January 30, 2017, Plaintiff became aware of the Account and completed and transmitted Twitter's form for reporting an impersonation account.  Twitter responded to Plaintiff six minutes later.  *Id.* ¶¶ 98-99, 101 & 143; Ex. 48.  For its investigation into the Account, Twitter asked Plaintiff to "confirm [her] identity" by

"upload[ing] a copy of [her] valid government-issued photo ID," providing instructions about how to do so.  *Id.* ¶ 101; Ex. 48.  Plaintiff did not upload her identification to Twitter until two days later, on February 1, 2017 at 4:10 p.m., after she was involved in an automobile collision "on her way to Federal Court to commence suit."  *Id*. ¶¶ 102-04.

The next day, February 2, 2017, at 8:51 a.m., Twitter informed Plaintiff it was "providing the user [who published the impersonation account] with instruction on how to comply with [the Parody policy]."  *Id.* ¶ 106.  Twitter explained that it would not "proactively monitor the account" but that it would "respond to all valid follow-up complaints."  *Id*.  The specific Tweets that Plaintiff had reported to Twitter were taken down shortly thereafter.  *Id*. ¶ 107.  The Account was then disabled by 10 a.m. on February 3, 2017.  *Id.* ¶ 109.  And then just days later, Plaintiff  noticed that the Account was taken down altogether.  *Id.* ¶ 110.

At bottom, Plaintiff complains that Twitter required her to provide identification as part of the investigation process into an impersonation account, thereby allowing the Account to remain active for a matter of days.  *See, e.g.*, *id.* ¶ 178 ("Twitter had no intention of investigating the reported account unless and until Plaintiff provided . . . government issued identification card."); *id. at* ¶ 3 ("Twitter allowed [Doe's] behavior to continue occurring on their systems and did not abide by their posted policies, but instead breached the contract it entered into with Plaintiff, causing Plaintiff additional damages and emotional distress.").

Based on these allegations, Plaintiff brings claims against Twitter for rescission of contract for fraud (Cal. Civ. Code §§ 1572, 1573), negligent infliction of emotional distress, and declaratory relief.  FAC ¶¶ 173-89, 190-93, 209-13.  Plaintiff "reserves the right" to bring claims against Twitter for libel and alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c) by engaging in wire fraud in violation of 18 U.S.C. § 1343, and to assert a civil conspiracy claim against unspecified

defendants.  FAC ¶¶ 214-33.  Plaintiff seeks damages and injunctive relief against Twitter.

**B.      Twitter's Terms of Service and Policies**

To create a Twitter account, a user must accept Twitter's Terms of Service ("TOS") and Privacy Policy, which refer and link to Twitter's other policies and rules (collectively, "Terms").  Declaration of Julie E. Schwartz in Support of Motion to Dismiss ("Schwartz Decl."), Exs. A-E.[1]  Plaintiff confirms that when she signed up for a Twitter account on October 9, 2015, she agreed to the Terms.  FAC ¶ 41, Ex. 53.[2]

Twitter's Terms undertake no obligation to remove content at a user's request and affirmatively disclaim any liability for user generated content.  The TOS says, "We *may* . . . remove or refuse to distribute any Content on the Services, suspend or terminate users . . . without liability to you.  Schwartz Decl. Ex. A § 4; *see also id.*, Ex. A § 5 ("Your access to and use of the Services or any Content are *at your own risk*. . . . [and Twitter] *disclaim[s] all responsibility and liability* for . . .

_____

[1] The Court may consider Twitter's Terms and the Twitter web pages that address its policies concerning impersonation accounts without converting the motion to dismiss into a motion for summary judgment.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if no one disputes their authenticity, they are referred to in the plaintiff's complaint, and they are central to their claim).  Twitter's statements in its Terms and in other online documents are central to Plaintiff's claims, and Plaintiff herself references Twitter's online statements about impersonation in her complaint.  FAC ¶¶ 42-52.  Plaintiff cannot cherry-pick only those portions that best support her claims and bar Twitter from referencing other portions.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (noting the incorporation by reference doctrine "[p]revent[s] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based") (internal ellipsis and citation omitted).

[2] Plaintiff continued to use Twitter throughout the ensuing years, *see* FAC ¶¶ 39, 95, and thus agreed to Twitter's revised terms published on September 30, 2016.  *See* Schwartz Decl., Ex. B at § 12 ("By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."); *id.* Ex. C at 12 (same).

1 harm that results from your access to or use of the Services or any Content")

2 (emphasis added); *id.*, Ex. A § 4 ("Any feedback, comments, or suggestions you

3 may provide regarding Twitter, or the Services is entirely voluntary and we will be

4 free to use such feedback, comments or suggestions as we see fit and *without any*

5 *obligation to you*.") (emphasis added).

6      The TOS refers users to the Twitter Rules "to better understand what is

7 prohibited on the Twitter Services." *Id.* The Twitter Rules prohibit certain user

8 content, including "impersonat[ing] others through the Twitter service in a manner

9 that is intended to or does mislead, confuse, or deceive others." Schwartz Decl.,

10 Ex. D ("In order to protect the experience and safety of people who use Twitter,

11 there are some limitations on the type of content and behavior that we allow.").

12      The Twitter Rules also link to Twitter's Impersonation Policy, which states

13 that "Twitter accounts portraying another person in a confusing or deceptive

14 manner *may* be permanently suspended." *Id.*, Ex. E (emphasis added); *see also*

15 FAC ¶ 45. "Upon receipt of an impersonation report," Twitter says, "we will

16 investigate the reported accounts to determine if the accounts are in violation of the

17 Twitter Rules." *See* Schwartz Decl., Ex. F. "Accounts determined to be in

18 violation of our impersonation policy, or those not in compliance with our parody,

19 commentary, and fan account policy, will either be suspended or asked to update

20 the account(s) so they no longer violate our policies." *Id.*; *see also* FAC ¶ 47.

21      Twitter's Terms are clear: Twitter is not responsible for what Twitter users

22 publish. The TOS states that "*[a]ll Content is the sole responsibility of the person*

23 *who originated such Content.*" Schwartz Decl., Ex. A at § 3 (emphasis

24 added). Twitter also explains that "[w]e may not monitor or control the Content

25 posted via the Services and, we cannot take responsibility for such Content."

26 *Id.* Finally, the TOS disclaims any warranty or representation about the service and

27 responsibility for "any harm that results from [users'] access to or use of"

28 Twitter. *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   LEGAL STANDARD

Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  This provision immunizes providers "against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).  Courts apply Section 230 immunity broadly "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id.* at 1175; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (because "immunity is an immunity from suit rather than a mere defense to liability," courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case") (emphasis omitted) (internal quotation marks and citation omitted).

Additionally, to state a claim upon which relief can be granted, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks and citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Finally, denying leave to amend is appropriate when amendment would be "futil[e]." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).

# IV.   ARGUMENT

## A.   Twitter's Motion to Dismiss Should Be Granted

Plaintiff's claims are barred by the CDA because they attempt to hold Twitter liable for publisher activity—Twitter's exercise of discretion to remove content.  Here, Twitter followed its policies—which did not make any specific promises to Plaintiff—and indeed, the content that Plaintiff complained about was removed from Twitter within a mere matter of days.  Second, even if the CDA were not fatal to Plaintiff's claims, the Complaint does not state any viable cause of action against Twitter.  Plaintiff's claims against Twitter should therefore be dismissed in their entirety.

### 1.   The Communications Decency Act Bars All of Plaintiff's Claims

Under the CDA, a defendant is entitled to immunity if (1) it provides an "interactive computer service," (2) plaintiff's claim treats the defendant as the "publisher" or "speaker" of the offending content, and (3) the content was "provided by another information content provider."  *Barnes*, 570 F.3d at 1100-01.  As set forth below, Twitter satisfies these three requirements and is entitled to immunity from suit.

#### a.   Twitter Provides an Interactive Computer Service

The first requirement is met because Twitter provides an interactive computer service, which is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  An "access software provider" is "a provider of software (including client or server software), or enabling tools that do any one or more of the following: [] filter, screen, allow, or disallow content; [] pick, choose, analyze, or digest content; or [] transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content."  *Id*. § 230(f)(4).

Twitter fits this definition because it is a website that hosts content and allows communications, including communications of Plaintiff and John Doe.  *See*

1   FAC ¶ 9; *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016)

2   (holding that Twitter is an interactive computer service); *see also Barnes*, 570 F.3d

3   at 1101 (holding that Yahoo! is a provider of an interactive computer service

4   because it allowed users to post public profiles on the Internet); *Doe v. MySpace,*

5   *Inc.*, 528 F.3d 413, 415 (5th Cir. 2008) (treating MySpace as an interactive

6   computer service); *Green v. Am. Online (AOL)*, 318 F.3d 465, 469 (3d Cir. 2003)

7   (finding that AOL is "undisputed[ly]" an interactive computer service); *Sikhs for*

8   *Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015)

9   (holding that Facebook is a provider of an interactive computer service because it

10   "provides or enables computer access by multiple users to a computer service").

11   **b.    Plaintiff's Claims Treat Twitter as a Publisher**

12       The second requirement is also met because Plaintiff's claims treat Twitter as

13   a publisher—they target Twitter's actions in deciding whether to remove

14   content.  *See, e.g., Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.D.C. 2014)

15   ("[T]he very essence of publishing is making the decision whether to print or retract

16   a given piece of content—the very actions for which Klayman seeks to hold

17   Facebook liable"); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 332-33 (4th Cir. 1997)

18   ("The computer service provider must decide whether to publish, edit, or withdraw

19   the posting.  In this respect, Zeran seeks to impose liability on AOL for assuming

20   the role for which § 230 specifically proscribes liability—the publisher

21   role").  Indeed, the crux of Plaintiff's claims is that "Twitter *allowed [John Doe's]*

22   *behavior to continue occurring on their system* . . . causing Plaintiff additional

23   damages and emotional distress."[3]  FAC ¶ 3 (emphasis added).  Decisions to

24   remove or allow content are quintessentially publisher conduct.

25   _____

26   [3] CDA immunity applies so long as the three requirements are met and the cause of
action is not one of the four types exempted from the CDA.  *See* 47 U.S.C.

27   § 230(e)(1)-(4).  "[W]hat matters is not the name of the cause of action—[but]
whether the cause of action inherently requires the court to treat the defendant as

28   the 'publisher or speaker' of the content provided."  *Barnes*, 570 F.3d at 1101-02.

Plaintiff is incorrect that the Ninth Circuit's decision in *Barnes* saves her claims because they "arise out of breach of contract." FAC ¶ 188; *see also id.* ¶ 3. In *Barnes*, Yahoo!'s Director of Communications personally promised the plaintiff he would remove content, but Yahoo! failed to do so for two months. 570 F.3d at 1099. The court held that the CDA did not bar the plaintiff's promissory estoppel claim because it treated Yahoo! as a counterparty that undertook a legal obligation, not a publisher. *Id.* at 1107. The court, however, made clear that "*a general monitoring policy*, or even an attempt to help a particular person . . . *does not suffice for contract liability.*" *Id.* at 1108 (emphasis added). And where there is a contract, an interactive computer service "need only disclaim any intention to be bound" for it "to avoid liability." *Id.*

Unlike in *Barnes*, Plaintiff has no promissory estoppel claim against Twitter for at least two reasons, and her reliance on *Barnes* is therefore misplaced. *See Cross v. Facebook, Inc.*, No. A148263 & A149140, --- Cal. Rptr. 3d ---, 2017 WL 3404767, at *6 (Cal. App. Ct. Aug. 9, 2017) ("Knight has no promissory estoppel claim—and *Barnes* no applicability here"). First, there is no allegation that Twitter personally promised Plaintiff removal of the Account, nor could there be any such allegation. And second, Twitter's Terms undertake no obligation to remove content and disclaim any liability for third-party content. *See, e.g.,* Schwartz Decl., Ex. A at § 4 ("We *may* . . . remove or refuse to distribute any Content on the Services . . . without liability to you") (emphasis added); *id.*, Ex. A at § 5 ("Your access to and use of the Services or any Content are *at your own risk*. . . . [and Twitter]

---

"[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker'. If it does, section 230(c)(1) precludes liability." *Id.* This includes the types of claims that Plaintiff asserts. *See, e.g.*, *Klayman*, 753 F.3d at 1355 (breach of contract and negligence); *Zeran*, 129 F.3d at 332 (negligence); *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (civil RICO); *Gaston v. Facebook, Inc.,* No. 3:12-cv-0063-ST, 2012 WL 629868, at *1-2 (D. Or. Feb. 2, 2012) (defamation).

1    *disclaim[s] all responsibility and liability* for . . . harm that results from your access

2    to or use of the Services or any Content") (emphasis added).[4]  At most, the Terms

3    enshrine Twitter's discretion to investigate and remove content.  FAC ¶ 47 ("Upon

4    receipt of an impersonation report, we will investigate the reported accounts …

5    Accounts determined to be in violation of our [policies], will either be suspended or

6    asked to update the account(s) so they no longer violate our policies.").

7           Indeed, Plaintiff's own allegations confirm that Twitter acted consistent with

8    its policies—it investigated, resulting in the removal of the Account in a matter of

9    days.  FAC ¶¶ 99-110.  Under the circumstances, *Barnes* is inapplicable.  *See*

10   *Cross*, 2017 WL 3404767, at *5-6, 9 (rejecting argument that Facebook's terms and

11   policies created binding obligations for Facebook to remove content and finding

12   CDA immunity for claims targeting Facebook's failure to remove content);

13   *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, (N.D. Cal. 2009) (holding that

14   neither Google's Advertiser Terms nor its Content Policy "contain[ed] any promise

15   *by Google* to enforce its terms of use or otherwise to remove noncompliant

16   advertisements") (emphasis in original); *see also Fields*, 217 F. Supp. 3d at 1125-

17   26 (finding *Barnes* inapplicable because "plaintiffs . . . allege[d] no promise made

18   or breached by Twitter).

19          **c.    The Content Was Posted by Another Information Content
                    Provider**

20

21          Finally, Twitter satisfies the third requirement because John Doe, the creator

22   of the Account, is the "information content provider."  *See, e.g.*, FAC ¶ 2; *Nemet*

23   _____

24   [4] *See also* Schwartz Decl. Ex. A  at § 4 ("Please review the Twitter Rules, which
     are part of the User Agreement and outline *what is prohibited* on the Services.")

25   (emphasis added); *id.*, Ex. A at § 4 ("Any feedback, comments, or suggestions you
     may provide regarding Twitter, or the Services is entirely voluntary and we will be

26   free to use such feedback, comments or suggestions as we see fit and *without any
     obligation to you*."); *id.*, Ex. D ("In order to protect the experience and safety of

27   people who use Twitter, there are some limitations on the type of content and
     behavior *that we allow*.") (emphasis added).

28

*Chevrolet,* 591 F.3d at 254 ("plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online"); *Price v. Gannett Co.*, No. 2:11-cv-00628, 2012 WL 1570972, at *2 (S.D. W. Va. May 1, 2012) ("Plaintiffs have admitted in the complaint that the unknown individuals provided the statements, not Topix"). (Indeed, if Plaintiff has any viable claim, it would be against John Doe, not against Twitter.)[5]

Plaintiff cannot show otherwise. *See Dowbenko v. Google Inc.*, 991 F. Supp. 2d 1219, 1220 (S.D. Fla. 2013) (rejecting as "simply implausible" the notion that Google executives were responsible for defamatory content posted via Google services). Again, the crux of Plaintiff's claims against Twitter is that it allowed the Account to remain active while Twitter investigated, not that Twitter created the Account or was the speaker. Accordingly, each of the three elements of Section 230(c)(1) is met, and Twitter is immune from liability for Plaintiff's claims.

### 2. Plaintiff Has Not Alleged Any Viable Claim Against Twitter

#### a. Plaintiff Cannot Obtain the Remedy of Rescission

##### i. Plaintiff has not alleged a breach of contract

Plaintiff cannot obtain the remedy of rescission because she has not alleged a breach of contract. *See Alder v. Drudis*, 30 Cal. 2d 372, 381-82 (1947) ("It is well settled in this state that *one who has been injured by a breach of contract* has an election to pursue any of three remedies," including "treat[ing] the contract as

---

[5] If Plaintiff pursues information identifying John Doe from Twitter, Plaintiff must (1) demonstrate that she made a reasonable attempt to notify the user of the request and the lawsuit, thus providing the user an opportunity to assert his or her First Amendment right to speak anonymously; and (2) make a prima facie showing of the elements of defamation or other cause of action. *See Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005) (requiring plaintiff to demonstrate a "real evidentiary basis" that the anonymous defendant engaged in wrongdoing); *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (applying *Highfields* and denying motion to enforce third-party subpoena to Twitter seeking to unmask anonymous speakers).

1  rescinded and . . . recover[ing] upon a quantum meruit so far as he has performed")

2  (emphasis added) (internal quotation marks and citation omitted); *see also Camofi*

3  *Master LDC v. Associated Third Party Adm'rs*, No. 16-cv-00855-FMC, 2016 WL

4  6834585 at *3 (N.D. Cal. Nov. 21, 2016) (noting that rescission "is a remedy," "not

5  a cause of action") (citation omitted)).

6      Indeed, "[a] plaintiff cannot predicate a breach of contract claim on a

7  defendant's terms of service where those terms did not commit the defendant to

8  performing any particular action." *Joude v. WordPress Found.*, No. C 14-01656

9  LB, 2014 WL 3107441, at *5 (N.D. Cal. July 3, 2014) (citing *Anthony v. Yahoo*

10  *Inc.*, 421 F. Supp. 2d 1257, 1260-61 (N.D. Cal. 2006)).  Thus, where an online

11  service contract "place[s] restrictions on users' behavior," but does not "create

12  affirmative obligations," it cannot form the basis for a user's breach of contract

13  claim.  *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal.

14  2016) (dismissing a breach of contract claim against Facebook because its Terms of

15  Service did not place affirmative obligations on Facebook) (citation omitted).

16      By this same logic, Plaintiff cannot predicate a rescission claim on Twitter's

17  Terms.  As discussed *supra* Section IV.A.1(b), Twitter's Terms merely "place

18  restrictions on users' behavior."  *Id.*; *see* Schwartz Decl. Ex. A at § 4; *id.*, Ex.

19  D.  And the Terms undertake no obligation to Plaintiff to remove content and

20  disclaim any liability for third-party content. *See id.*, Ex. A at §§ 4 and 5.  In

21  explaining its impersonation policies, Twitter further makes clear that it *may*

22  suspend violative accounts, but it nowhere undertakes an obligation to do so.  *See*

23  *id.*, Exs. D, E.

24      Because Twitter did not undertake any enforceable obligations to Plaintiff,

25  there can be no contract to rescind.

26          **ii.   Plaintiff has not plausibly alleged fraud**

27      Plaintiff's rescission claim also fails because she has not plausibly alleged

28  fraud.  *See Iqbal*, 556 U.S. at 679 (holding that a complaint's well-pleaded

allegations, if taken as true, must "plausibly give rise to an entitlement to relief");
*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)
(holding that "mere conclusory allegations of fraud are insufficient" to state a claim
for fraud).  In the contractual context, fraud includes "[a] promise made without any
intention of performing it."  Cal. Civ. Code  § 1572.4.

Plaintiff's conclusory allegations that "Twitter fraudulently misrepresented to
Plaintiff that Twitter would investigate reported accounts to determine if the
accounts are in violation of the Twitter Rules upon receipt of an impersonation by
Plaintiff" are belied by Plaintiff's own allegations.  FAC ¶ 176.  Indeed, Plaintiff
alleges that Twitter investigated and the Account that Plaintiff reported was
removed within a short period of time—a mere matter of days.  *See id.* ¶¶ 99-110.

Finally, Plaintiff's allegations that Twitter intentionally misrepresented its
"true impersonation process" by not disclosing that it would request Plaintiff's
identification because it wanted to earn "advertising revenues off . . . the
impersonating account" defy common sense.  *See id.* ¶ 180.  Plaintiff admits that
Twitter simply requested a photo of her driver's license to confirm her identity.  *Id.*
¶¶ 101, 104.  This request is entirely consistent with Twitter's stated policy to
investigate, since any impersonation investigation necessarily requires sorting out
who is the real individual and who is the impersonator.[6]  And how could Twitter be
expected to know if an account was impersonating someone without proof of who
that person is?  Plaintiff's rescission claim should be dismissed with prejudice.

---

[6] For this reason, even if Plaintiff had established that Twitter owed her a
contractual duty, her claim would fail for failure to allege breach.  *See Song fi
Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (holding that
Plaintiff "cannot state a claim for breach of the Terms of Service . . . because
conduct authorized by a contract cannot give rise to a claim for breach of the
agreement).

### b.   Twitter Cannot Be Liable for Negligent Infliction of Emotional Distress Because Twitter Owed Plaintiff No Duty

Plaintiff's negligent infliction of emotional distress claim is likewise deficient.  "Negligent infliction of emotional distress is a species of negligence" that requires, among other things, that "the defendant owed a legal duty to use due care."  *Caraccioli*, 167 F. Supp. 3d at 106 (citing *Ladd v. Cnty. of San Mateo*, 412 Cal. 4th 913, 917 (1996)).

Plaintiff's conclusory allegation that "Twitter owed a duty of care to prevent Plaintiff from being injured as a result of Twitter's conduct" is contradicted by Twitter's Terms (*see supra* Section IV.A.1(b)).  FAC ¶ 210; *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) ("Young does not identify any contractual basis for these alleged duties, and she cites no legal authority for any non-contractual duty that would give rise to a tort claim").  Because Twitter owes no duty to Plaintiff, her negligent infliction of emotional distress claim should be dismissed with prejudice.  *See Caraccioli*, 167 F. Supp. 3d at 1064 (dismissing negligence claim because Facebook owed the plaintiff no duty).

### 3.   Plaintiff's Derivative Declaratory Relief Claim Fails

Plaintiff's claim for declaratory relief must be dismissed because it is dependent upon the survival of Plaintiff's other claims, which all fail for the reasons above.  *Ballard v. Chase Bank USA, NA*, No. 10cv790 L POR, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims'" (citation omitted)); *see also Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*, No. 12-CV-2079-GPC-KSC, 2014 WL 2511448, at *3 (S.D. Cal. June 4, 2014) (a declaratory relief claim "does not by itself state a claim" and cannot stand without a substantive cause of action).

Indeed, where a plaintiff otherwise fails to state a claim upon which relief can be granted, the plaintiff's "claim" for declaratory relief must therefore be dismissed.  *See Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195

1   F.3d 1107, 1111 n.2 (9th Cir. 1999) (excluding cause of action for "declaratory

2   judgment" because it merely sought relief rather than stating a claim); *see also*

3   *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act

4   does not provide an independent jurisdictional basis for suits in federal court.  It

5   only permits the district court to adopt a specific remedy when jurisdiction exists."

6   (citation omitted)).

7       Because Plaintiff has not adequately pleaded any claim, the Court should

8   dismiss Plaintiffs' claim for declaratory relief as well.

9   **B.    Plaintiff Should Be Denied Leave to Amend**

10      Plaintiff should be denied leave to amend because she has not alleged, and

11  cannot allege, any actionable conduct against Twitter.  *Zucco Partners, LLC v.*

12  *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (a court has the discretion to

13  deny a plaintiff leave to amend the operative complaint).  A court need not grant

14  leave to amend in cases where permitting a plaintiff to amend would be an exercise

15  in futility.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.

16  1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings

17  before the court demonstrate that further amendment would be futile").  Twitter has

18  legal immunity under the CDA from Plaintiff's claims, did not breach of any

19  obligations to Plaintiff, and acted consistent with its policies.

20      Plaintiff "reserves the right" to bring certain claims—civil conspiracy, civil

21  RICO, and libel—against Twitter.  However, these proposed claims provide no

22  basis for amendment.  First, they are all subject to CDA immunity because, as with

23  the other claims, they would treat Twitter, an interactive computer service, as a

24  publisher and attempt to hold Twitter liable for John Doe's content.  Second, there

25  are no facts supporting any of these claims.  Twitter investigated a claim by

26  Plaintiff and responded to address the problem, and the situation was resolved

27  within days.  There is no basis to assert that Twitter was involved in a conspiracy or

28

that Twitter engaged in a racketeering enterprise.  Accordingly, Plaintiff's lawsuit should be dismissed as to Twitter entirely, without leave to amend.

## V.    CONCLUSION

For the foregoing reasons, Twitter respectfully requests that the Court dismiss Plaintiff's claims against Twitter with prejudice.


DATED:  August 21, 2017.

**Respectfully submitted,**


*/s/ Julie E. Schwartz*
Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

Ryan Mrazik, *Pro Hac Vice Pending*
RMrazik@perkinscoie.com
Nicola Menaldo, *Pro Hac Vice Pending*
NMenaldo@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

Attorneys for Defendant
Twitter, Inc.

1

## CERTIFICATE OF SERVICE

2

3       The undersigned hereby certifies that a true and correct copy of the foregoing

4   document has been served on August 21, 2017 to all current and/or opposing

5   counsel of record, if any to date, who are deemed to have consented to electronic

6   service via the Court's CM/ECF system per Local Rule 5.4(d). Plaintiff, who is *pro*

7   *se*, will be served via overnight delivery at the following address:

8
        Tiffany Dehen
9       1804 Garnet Avenue #239
        San Diego, CA 92109
10

11

12                          *s/ Julie E. Schwartz*
                            Julie E. Schwartz
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and            -17-         No. 17-cv-00198-BEN- WVG
Authorities ISO Motion to Dismiss