Tiffany L. Dehen
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Telephone: 858-262-0052
Email: tiffany.dehen@gmail.com

Pro Se Plaintiff

FILED

17 SEP 18   AM 9: 55

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____   DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY DEHEN<br>    individually and on behalf of<br>    all similarly situated<br>    individuals<br><br>        Plaintiff<br><br>    v.<br><br>JOHN DOE, TWITTER, INC.,<br>and UNIVERSITY OF SAN DIEGO<br><br>    Defendants. | Case No.: <u>3:17-cv-00198-BEN-WVG</u><br><br>**PLAINTIFF'S NOTICE OF OPPOSITION AND OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>Hearing Date:  October 2, 2017<br>Time: 10:30 a.m.<br>Courtroom: 5A<br>Judge: Hon. Roger T. Benitez |

# PLAINTIFF'S NOTICE OF OPPOSITION AND OPPOSITION TO

# DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED

# COMPLAINT PURSUANT TO RULES 12(b)(6) AND 12(b)(1).

**Dated:** September 18, 2017

Respectfully submitted,

Tiffany L. Dehen
Pro Se Plaintiff
1804 Garnet Avenue, #239
Pacific Beach, CA 92109
Tel. 858-262-0052
Tiffany.Dehen@Gmail.com

# TABLE OF CONTENTS

Page

I.   INTRODUCTION……………………………………………………1

II.   ARGUMENT……………………………………………………….1

A. Plaintiff Can Adequately Plead Her Claims (And Additional Claims)

Against USD………………………………………………………..2

   1.  Plaintiff Has Supplemental Jurisdiction Over USD…………3

   2.  28 U.S.C. § 1962 Constitutes Federal Question Jurisdiction

Over USD, Which Plaintiff Plausibly Can And Will Allege In

Second Amended Complaint………………………..………..4

   3.  USD Committed Perjury In Its Motion To Dismiss…………8

B. Plaintiff Adequately Pleads Her Claims Against Twitter……….…..9

   1.  Twitter Committed Perjury In Its Motion To Dismiss………...9

     a)  Twitter Did Not Investigate In Part………………...…….10

   2.  Twitter's Motion To Dismiss Contains Material Facts In

Dispute, Supporting Plaintiff's Claims And Further Warranting

Discovery……………………………………………….…..11

   3.  Plaintiff's Claims Are Not Barred By The CDA……..………..14

     a)  Fraud Is Not Publishing Activity……………………...15

b) Breach of Contract Is Not Publishing Activity............15

c) Fraudulent Misrepresentation Is Not Publishing

   Activity..................................................................15

d) Facilitating Terrorism Is Not Publishing Activity........15

e) CDA Does Not Bar Causes Of Action Arising Under

   RICO (28 U.S.C. § 1962)..............................................15

f) Barring Plaintiffs' Claims Would Not Further The Goals

   Of The CDA...............................................................16

4. In The Alternative, CDA § 230 Is Unconstitutional...........16

   a) CDA § 230 Allows Speech To Be Discriminated Against

      Based On Its Content and Viewpoint.....................16

C. Defendants' Have Not Met, And Cannot Meet, Their Burden To

   Warrant 12(b)(6) Dismissal................................................17

   1. Rule 11 Sanctions.......................................................17

D. Plaintiff Should Be Granted Discovery, Or In The Alternative, Leave

   To File Second Amended Complaint.............................17

# TABLE OF AUTHORITIES

## CASES

*Aetna Life Ins. Co. v. Alla Medical Services, Inc.*
> 855 F.2d 1470, 1476 (9th Cir. 1988)..............................................................16

*American Freedom Defense Initiative et a., v. Lynch*
> No. 16-cv-1437, 2016 WL 6635634 (D.D.C. Nov. 9, 2016)........................15

*Apple Inc. v. Motorola Mobility, Inc.*
> No. 12CV355 DMC (BLM), 2012 WL 12846983 (S.D. Cal. July 17, 2012)............................................................................................................3

*Ashcroft v. Iqbal*
> 556 U.S. 662 (2009)......................................................................................2

*Baldwin v. Zoradi*
> 123 Cal. App. 4th 199 (2006).......................................................................9

*Barnes v. Yahoo!*
> 570 F.3d 1096 (9th Cir. 2009)....................................................................14

*Bell Atl. Corp. v. Twombly*
> 550 U.S. 544 (2007)..................................................................................1, 2

*Doe v. Internet Brands, Inc.*
> 824 F.3d 846, 852 (9th Cir. 2016)..............................................................15

*Erie v. Railroad Co. v. Tompkins*
> 304 U.S. 64 (1938)...............................................................................passim

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*
     521 F.3d 1157 (9th Cir. 2008)................................................................passim

*Fields v. Twitter, Inc.*
     217 F. Supp. 3d 1116 (N.D. Cal. 2016)....................................................passim

*Makaeff v. Trump University, LLC*
     715 F.3d 254 (9th Cir. 2013)...................................................................passim

*Makaeff v. Trump University, LLC*
     309 F.R.D. 631 (S.D. Cal. 2015)..............................................................passim

*Reddy v. Litton Indus., Inc.*
     912 F.2d 291, 296-97 (9th Cir. 1990).................................................................8

*United Mine Workers v. Gibbs*
     383 U.S. 715 (1966).........................................................................................5


**STATUTES**

Communications Decency Act, 47 U.S.C. § 230...........................13, 14, 15

Racketeer Influenced and Corrupt Organizations Act,
     18 U.S.C. § 1962.............................................................................4, 5

18 U.S.C. § 2331................................................................................passim

28. U.S.C. § 1331...............................................................................passim

28 U.S.C. § 1332................................................................................passim

2

28 U.S.C. § 1338.................................................................passim

28 U.S.C. § 1367.................................................................passim

28 U.S.C. § 1652.................................................................passim

Cal. Civ. Code § 1572...........................................................passim

Cal. Civ. Code § 1573...........................................................passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 11.....................................................................1

Fed. R. Civ. P. 12(b)(1)......................................................passim

Fed. R. Civ. P. 12(b)(6).................................................9, passim

## INTRODUCTION

Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (hereinafter "Complaint") should both be denied. Further, attorneys for both answering defendants' should be sanctioned pursuant to Fed. R. Civ. P. 11.

Plaintiff Tiffany Dehen very clearly stated, and will further state, several claims against both Twitter and USD with particularity which entitle Plaintiff to relief, such as the relief Plaintiff requested in her Complaint. At this time, Plaintiff is, at the very least, entitled to discovery.

Defendants' answers only further prove that Plaintiff is entitled to her day in Court. For example, Twitter's answer interestingly consists of *93 pages* in a poor attempt to convince the Court that Plaintiff has not stated, and cannot state, any claims against Twitter. Plaintiff very clearly articulated several causes of action against Twitter which include a breach of contract claim rising to the level of a violation of the Federal RICO statute, which is much more than a right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Additionally, Plaintiff alleges USD is fully apprised of the unlawful conduct which ultimately led to the injury for which this cause of action arose; for USD to claim otherwise is just plain dishonest and deceitful. Just because USD is attempting to continue its cover up of unlawful behavior, which includes covering up terroristic threats which arguably violate federal terrorism laws rather than addressing them in accordance with its promised policies and student code of conduct, does not mean Ms. Dehen is unable to raise a right to relief "above the speculative level." *Id.*

1

To the contrary, Ms. Dehen is more than able to satisfy the "plausibility" pleading standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Twombly*, 550 U.S. at 555, and should be granted discovery to proceed with her case. Ms. Dehen has done her best thus far disclosing a reasonable amount of information to proceed to discovery on matters related to national security and terrorism, which are sensitive matters and deserve to be treated with the utmost care.

Ms. Dehen even served her initial filing as well as her First Amended Complaint upon both defendants before the Court even formally issued a summons, in an attempt to allocate a reasonable amount of time for both Twitter and USD to respond accordingly to her complaint with the identity or identifying information of John Doe(s), which both failed to do. Ms. Dehen has more than enough evidence to prove to the Court that the plausibility pleading standard of *Iqbal* and *Twombly* are satisfied. The language in the claims of both defendants to the contrary borders on the line of perjury.

Plaintiff alleges that both defendants' motions to dismiss contain perjury and, at the very least, several erroneous statements from both defendants constituting confirmation that there are several material facts in dispute, further supporting Plaintiff's request to deny both of their motions to dismiss and proceed to discovery.

## ARGUMENT

## PLAINTIFF CAN ADEQUATELY PLEAD HER CLAIMS (AND ADDITIONAL CLAIMS) AGAINST UNIVERSITY OF SAN DIEGO

## Subject Matter Jurisdiction Exists

This Court has subject matter jurisdiction over all of the claims alleged in Plaintiff's Complaint.  Contrary to USD's claim that, "Dehen's prospective efforts to "reserve" the right to bring claims against USD at some future point in time when she confirms the identity of John Doe do not resolve the deficiencies in her FAC," (*see generally* USD's Motion To Dismiss), Ms. Dehen's claim is plenty ripe for adjudication, as she was simply allowing USD a reasonable amount of time to halt its egregious and unlawful behavior and mitigate its damages. *Apple Inc. v. Motorola Mobility, Inc.*, NO. 12CV355 DMS (BLM), 2012 WL 12846983, at *1 (S.D. Cal. July 17, 2012) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal citations omitted).

Contrary to USD's suggestion, Ms. Dehen relies on absolutely no future events to occur.  To spare USD further humiliation, Plaintiff did not initially allege definitive claims against USD before she allowed a reasonable amount of time to elapse for the identity of John Doe to be disclosed (or compelled) from Twitter, or refuted by USD, Twitter, or John Doe.  Plaintiff graciously gave both defendants, USD and Twitter, the opportunity to cooperate with her requests in order to avoid continued engagement in unlawful conduct.  Both defendants refused.

Twitter refused to provide Ms. Dehen any additional identifying information as to the identity or identities of John Doe(s) to allow Ms. Dehen to proceed with named legal action against the individual(s) who comprise John Doe, which further exacerbated Ms. Dehen's injuries through additional unlawful conduct for which Ms. Dehen deserves her day in court.  USD refused to provide Ms. Dehen any

3

additional information regarding unlawful conduct which caused Ms. Dehen extreme emotional distress due to the nature of the conduct including, but not limited to, terroristic threats, harassment, and stalking, all related to USD's duties owed to Ms. Dehen which Ms. Dehen alleges USD breached.

Ms. Dehen alleges that not only is USD liable to Ms. Dehen for injury sustained due to breach of contract and several other allegations as outlined in Ms. Dehen's Complaint, but Ms. Dehen also alleges USD is complicit in a smear campaign against her which includes directing, or at the very least, communicating with, an internet blogger, or bloggers, to smear Ms. Dehen and defame her in at least one ridiculous hit-piece.

Not only does Ms. Dehen allege that USD's behavior rises to several instances of breach of contract, including more than one instance of fraud which constitutes a violation of 28 U.S.C. § 1962 against Ms. Dehen herself, not even considering similar claims against any other individuals similarly situated such as Ms. Dehen's law school classmates, but now USD is attempting to claim under penalty of perjury that it genuinely believes Ms. Dehen's claims against USD fail because they do not raise a right to relief "above the speculative level." *See generally* USD's Motion to Dismiss. Ms. Dehen is awaiting absolutely no future event whatsoever, she was simply giving both Twitter and USD an opportunity to mitigate their damages, which both failed to so much as attempt, especially USD.

Ms. Dehen alleges that not only did USD fail at upholding its contractual obligations to Ms. Dehen, as well as fraudulently misrepresent on numerous occasions constituting violation(s) of the RICO Act, impede federal law enforcement, impede local law enforcement, facilitate criminal behavior including but not limited to terroristic threats that ultimately required intervention from the

4

Federal Bureau of Investigation, but now USD erroneously leads the Court to believe that there is no enforceable agreement Ms. Dehen entered into with USD that USD breached. In her First Amended Complaint, Ms. Dehen quite clearly conveyed at least one enforceable contract between herself and USD, namely that of the student code of conduct as an example. *See generally* Plaintiff's First Amended Complaint.

Since neither Twitter, nor USD, offered any alternative identity or explanation for the identities of John Doe(s), Ms. Dehen will proceed with the direct and circumstantial evidence she currently has which proves more likely than not the identity of John Doe(s), as well as the fact that John Doe(s) is so related to USD that Ms. Dehen can and will allege measurable injury sustained due to USD's breach of several contractual obligations owed to Ms. Dehen, including several instances of fraudulent misrepresentation which amount to violation(s) of the RICO Act, namely 28 U.S.C. § 1962, for which Ms. Dehen requests leave to file her Second Amended Complaint, as well as negligence as Ms. Dehen stated in her First Amended Complaint.

Plaintiff's evidence is so strong that she initially requested, and continues to request, to reserve the right to bring additional claims against USD after discovery which involve serious allegations including, but not limited to, violation(s) of 28 U.S.C. § 1962, impeding federal law enforcement, impeding local law enforcement, and facilitating terrorism. At this stage, this Court has at the very least, supplemental jurisdiction over the breach of contract claim and negligent infliction of emotional distress claim Ms. Dehen alleged against USD in her Complaint, in that they are so related to the common nucleus of operative fact for which these causes of action arise. *See United Mine Workers v. Gibbs*, 383 U.S.

5

715 (1966).  In USD's motion to dismiss, USD erroneously emphasizes the state law claims Ms. Dehen brought against Defendants Twitter, Inc., and USD, while discounting the serious nature of the federal claims Ms. Dehen brought, including violations of 28 U.S.C. § 1962 and the Copyright Act.

Plaintiff alleges USD is well apprised of the behavior to which she is referring that led to these causes of action, as the behavior in question leading up to the cause of injury for which these actions arise was well known to a majority of the law school student body and faculty and was even addressed by the Deans of the law school on several occasions to the entire law school student and faculty body.  Additionally, the alarming unlawful behavior was communicated repeatedly to the President of the University himself by Ms. Dehen and various witnesses. *See* Exhibits A, B, and C.  Plaintiff respectfully requests that the record reflect she reserves the right to add the President of USD as a defendant individually, as well as the Deans of the Law School.

Plaintiff alleges USD obstructed local and federal law enforcement from carrying out investigations relating to terrorism and threats to the safety of students, both on and off campus, which ultimately contributed to the injuries which led to this cause of action.  USD's actions, or inactions, breached duties owed to Plaintiff and probably several other individuals similarly situated, namely the entire law school student and faculty body.  Ms. Dehen suffered actual injury from USD's unlawful conduct, including but not limited to fraudulent misrepresentations in violation of the RICO Act and breach of contract, for which Ms. Dehen feared for her personal physical safety for now *over 19 months*.

Contrary to what USD alleges in its motion to dismiss, the conduct leading up to these causes of action date back to 2015, with USD being on notice since

6

March 2016. Ms. Dehen has gravely feared for her personal safety since November 2015 due to terroristic threats made to her *on USD campus at a USD sponsored event* which USD became aware of in March 2016 during the aforementioned temper tantrum of yet another student whom USD failed to enforce its code of conduct, constituting another instance of fraudulent misrepresentation.

Ms. Dehen just recently started feeling safe since filing her initial complaint with Federal Court on 02/01/2017, knowing that her allegations are actually on federal record and she is no longer at the mercy of USD with its empty promises, who clearly did not adequately address her safety concerns pursuant to their contract, in addition to aiding, abetting, encouraging and emboldening the unlawful terroristic behavior that ultimately led to these causes of action.

For the record, Ms. Dehen alleges that USD is defending the actions of an openly declared enemy combatant of the United States who engaged in terrorism on and off campus, which includes harassing and stalking Ms. Dehen along with an accomplice who *openly admitted to engaging in terrorism on Facebook* during a several day long public temper tantrum that startled and worried a majority of the law school student body and faculty.

A large portion of John Doe's unlawful behavior originated and occurred on USD's campus, with crucial aspects of Doe(s)'s behavior occurring during University sponsored events. USD's material breach of contract to Ms. Dehen directly caused substantial injury which Ms. Dehen can show direct and circumstantial evidence of, notwithstanding the fact that USD fraudulently misrepresented on several occasions in violation of the RICO Act.

USD had several written complaints filed regarding the behavior in question. Ms. Dehen alleges she was threatened by a terrorist organization, harassed, and

7

stalked by an openly declared enemy combatant of the United States, which all contributed to her substantial economic injury, emotional distress, and eventually the unlawful conduct which led to these causes of action for which Ms. Dehen seeks to hold USD liable.

Plaintiff alleges, upon information and belief, that USD's actions and inactions actually incited violence and harassment against her, resulting in substantial economic and emotional injury well over $75,000.

Further, all of the causes of action alleged against USD are part of the common nucleus of operative fact from which all the claims in Plaintiff's Complaint arise. This Court is best positioned to hear the federal claims alleged in Ms. Dehen's Complaint, as well as the additional claims that Ms. Dehen anticipates arising after the course of discovery, which she can and will show direct and circumstantial evidence for, including but not limited to violations of the RICO Act.

Further, USD's inaction, which further constituted material breach of contract to Ms. Dehen individually and other individuals including, but not limited to, the USD law student body and faculty, emboldened certain USD students to continue engaging in unlawful conduct aimed at the entire law school student body and faculty including, but not limited to, terroristic threats, as well as unlawful conduct aimed at Ms. Dehen individually including, but not limited to, stalking and harassment. Plaintiff alleges USD's actions and inactions go so far as to question whether USD should be evaluated as an accomplice to John Doe(s) in each and every cause of action named against John Doe.

**University of San Diego Committed Perjury In Its Motion To Dismiss**

8

USD claims that there is a reasonable certainty that Ms. Dehen is not entitled to relief under any set of provable facts against USD, thus warranting dismissal under Rule 12 with prejudice and without leave to further amend. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990). USD is committing perjury by claiming that there is reasonably certainty that there is not set of provable facts against USD which would entitle Ms. Dehen to relief because USD knows that there are plenty sets of provable facts against USD which would entitle Ms. Dehen to relief.

USD's reliance upon *Baldwin v. Zoradi* is misplaced, as Ms. Dehen is not alleging a contractual duty upon the university in regard to another student. Rather, Ms. Dehen is alleging a contractual duty upon the university in regard to its own representations. USD's mishandling of multiple situations by various students, claiming to be enemy combatants of the United States, for example, is evidence that merely supports Ms. Dehen's arguments that USD fraudulently misrepresented and engaged in acts of fraud since they clearly prove USD had no intention of enforcing its code of conduct, as it represented to Ms. Dehen and other students.

## PLAINTIFF ADEQUATELY PLEADS HER CLAIMS AGAINST TWITTER

### Twitter Committed Perjury In Its Motion To Dismiss

First, in Twitter's 12(b)(6) Motion to Dismiss, Twitter concedes that Plaintiff reported an account impersonating Ms. Dehen to Twitter. *See* Defendant Twitter's

9

Motion To Dismiss Plaintiff's First Amended Complaint. As Plaintiff explained in her Complaint, Twitter's Terms of Use clearly state, "[u]pon receipt of an impersonation report, we will investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules." *See* Plaintiff's First Amended Complaint; *see also* https://support.twitter.com/articles/20170142.

To be clear, Plaintiff alleged in her Complaint, and continues to allege, that Twitter did not investigate the reported account with the Twitter handle @TiffanyDehen upon receipt of Ms. Dehen's impersonation report, as Twitter stated it would in its Terms of Use. *See* Plaintiff's First Amended Complaint.

Second, Twitter claims in its Motion to Dismiss under penalty of perjury that "Twitter immediately responded and investigated in part by requesting her identification, which Plaintiff provided." *See* Defendant Twitter's Motion To Dismiss Plaintiff's First Amended Complaint. Plaintiff alleges Twitter committed perjury because Plaintiff alleges Twitter did not immediately investigate in part, regardless of the fact that Twitter sent an automated message to Plaintiff requesting her identification. Further, the aforementioned statement, namely that "Twitter immediately responded and investigated in part by requesting her identification," supports Plaintiff's argument that Twitter fraudulently misrepresented in its Terms of Use, the argument which Plaintiff makes in her Complaint. *See* Plaintiff's First Amended Complaint.

Third, Twitter claims that, "[t]he specific Tweets that Plaintiff had reported to Twitter were taken down shortly thereafter". (*See generally* Twitter's Motion to Dismiss). Plaintiff is entitled to discovery because Plaintiff alleges Twitter did not take down "the specific Tweets that Plaintiff reported to Twitter," rather Twitter just disabled the entire account once Twitter realized Ms. Dehen was suing Twitter

10

in U.S. District Court.  Further, Twitter is in a better position to provide the timeline of that information to the Court.

Ms. Dehen alleges the account @TiffanyDehen was taken down after Plaintiff's initial complaint went public on Twitter, which she has reason to believe because she checked the account at 5 a.m. on February 2, 2017 and saw the account was still active.  It was not until after Ms. Dehen started receiving harassing Tweets from random users on Twitter since her initial complaint went public that she noticed the Tweets of @TiffanyDehen were finally disabled.  Ms. Dehen alleges there was no review of the "specific Tweets," as all of the Tweets of @TiffanyDehen were disabled at that time.  Ms. Dehen further alleges Twitter only investigated the account at the time the Tweets were disabled due to Twitter becoming aware that Ms. Dehen filed suit against Twitter the day prior, February 1, 2017, as the Complaint was public and trending on Twitter on February 2, 2017.

## Twitter's Motion To Dismiss Contains Material Facts In Dispute, Supporting Plaintiff's Claims and Warranting Discovery

Twitter's Motion to Dismiss further illustrates material facts in dispute which entitle Plaintiff to discovery.  For example, where Twitter claims, "Plaintiff nevertheless brings claims against Twitter (and reserves the right to bring more) based on Twitter's alleged failure to remove the account upon receiving her report." *See generally* Defendant Twitter's Motion To Dismiss Plaintiff's First Amended Complaint.

Ms. Dehen's claims do not rest solely on "Twitter's alleged failure to remove the account upon receiving her report," as Defendant Twitter's Motion to Dismiss

11

Plaintiff's Complaint states.  Contrary to Twitter's reading of Ms. Dehen's complaint, Ms. Dehen alleges that not only does she have a valid promissory estoppel claim against Twitter, but Ms. Dehen advances a stronger argument in that Twitter materially breached their written contract.  To go a step further, by definition, Ms. Dehen's claims against Twitter are protected at least to the same extent as claims of promissory estoppel, as they rest on the principles of fraud and fraudulent misrepresentation.  Ms. Dehen alleges that she would not have entered into the contract with Twitter to utilize its service had she been aware of Twitter's actual policy which it fraudulently misrepresented, nor would she have continued using Twitter's service after her meeting with the F.B.I. in July 2016 based on terrorism concerns had she been aware of Twitter's true policy that it fraudulently misrepresented in its Terms of Use.

As Ms. Dehen alleged in her Complaint, not only did Ms. Dehen rely on Twitter's promise stated in its Terms of Use to her detriment in signing up for Twitter and then utilizing Twitter's service, but Ms. Dehen further alleges Twitter materially breached its written contract with Ms. Dehen by unilaterally modifying the terms of the contract after Ms. Dehen's performance pursuant to the terms of the contract.  *See generally* Plaintiff's First Amended Complaint.

As Plaintiff alleged in her Complaint, Plaintiff submitted a report for impersonation pursuant to Twitter's Terms of Use on 01/30/2017, thus fulfilling all conditions, covenants, and promises required on her part to be performed in accordance with the terms and conditions of the user agreement, *i.e.*, a written binding contract between Ms. Dehen and Twitter, which was entered into on October 9, 2015 at 11:11 p.m. *See generally* Plaintiff's First Amended Complaint; *see also* Exhibit 53.

12

The mere fact that Twitter claimed, "Twitter's Terms of Service and applicable policies merely enshrine Twitter's discretion to remove content and disclaim any liability for user content," in its Motion to Dismiss constitutes a material fact in dispute that warrants discovery because obviously Plaintiff disagrees.

Further, Twitter's claim that, "Plaintiff attempts to circumvent the CDA by alleging that Twitter promised her it would remove content," is another example of a material fact in dispute, further supporting Plaintiff's request to deny Twitter's Motion To Dismiss.

Another example of a material fact in dispute is where Twitter claims, "Plaintiff cannot recover for negligent infliction of emotional distress because Twitter owed Plaintiff no duty to remove the account," thus supporting Plaintiff's request to proceed to discovery.

As Twitter concedes in its Motion to Dismiss, Plaintiff became aware of the Account in question and completed and transmitted Twitter's form for reporting an impersonation account. *See generally* Twitter's Motion to Dismiss. Twitter then states that it "responded to Plaintiff six minutes later". *See generally* Twitter's Motion to Dismiss. As Plaintiff stated in her Complaint, Plaintiff became aware of the account "around 9:50 p.m.", a statement containing the word, "around," because Ms. Dehen is uncertain as to the exact number of minutes which elapsed from the time she submitted the impersonation report to Twitter because this case has not even yet reached discovery yet. As Plaintiff repeatedly stated in her First Amended Complaint, Twitter is in a better position to provide certain information, such as that relevant material fact, to the Court through discovery.

Regardless, Ms. Dehen alleges that at the time that Twitter's material breach of contract became apparent to Ms. Dehen, she started gathering the necessary evidence to commence this suit, as her injury from Doe's unlawful conduct was still accruing, and continues to accrue, and was then exacerbated by Twitter's unlawful conduct. This fact is relevant to address Twitter's statement that, "Plaintiff did not upload her identification to Twitter until two days later," (*See generally* Twitter's Motion to Dismiss), because ultimately the amount of time that elapsed from the time Ms. Dehen submitted the impersonation report to the time Ms. Dehen submitted her government issued identification has no bearing on Ms. Dehen's fraudulent misrepresentation argument against Twitter as at that point one day of fraudulent misrepresentation is the same as twenty five days of fraudulent misrepresentation, *i.e.*, still fraudulent misrepresentation.

Plaintiff alleges that Twitter is liable to her for her injuries sustained from Twitter's negligent, arguably reckless, infliction of emotional distress for the heightened emotional distress she experienced from the time Twitter's breach of contract became apparent to Ms. Dehen, *i.e.*, when Twitter requested additional performance after Ms. Dehen performed her duties under the contract.

### Plaintiff's Claims Are Not Barred By The CDA

"[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). (A publisher is one who "reviews material submitted for publication, perhaps edits it for style or technical fluency, and then decides whether to publish it."); *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016) ("Jane Doe's failure to warn claim has nothing to do with Internet

14

Brands' efforts, or lack thereof, to edit, monitor or remove user generated content.").

Contrary to Twitter's claim, "Plaintiff's claims target Twitter's exercise of editorial discretion and improperly attempt to hold Twitter liable for the conduct of the account creator," (*See generally* Twitter's Motion to Dismiss), Plaintiff's claim against Twitter does not attempt to hold Twitter liable for the conduct of the account creator. As explained in her Complaint and above, Ms. Dehen's claims against Twitter attempt to hold Twitter liable for Twitter's conduct, not that of the account creator, John Doe.

Twitter engaging in fraud is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets. Similarly, Twitter breaching its contract with Ms. Dehen is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets. Similarly, Twitter fraudulently misrepresenting in its posted Terms of Use is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

As Ms. Dehen pointed out in her Complaint, the Ninth Circuit has held, and reaffirmed, that the CDA does not declare "a general immunity against all claims derived from third-party content." *See Barnes v. Yahoo!, Inc.*, 570 F.3d at 1100; *see also Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016). While it appears Twitter would like to use the CDA to bar all possible claims in Court against itself, Twitter cannot successfully assert CDA § 230 protection here to prevent Ms. Dehen from pursuing causes of action involving fraud, nor to prevent Ms. Dehen from pursuing causes of action related to the federal RICO statute.

15

Allowing Twitter to cowardly hide behind protection of CDA § 230 for its wrongful conduct does nothing but frustrate the aims of the CDA, and would additionally allow government intrusion to infringe upon Ms. Dehen's First Amendment rights, at the expense of protecting openly declared enemy combatants of the United States.

### CDA § 230 Is Unconstitutional

In the alternative, Ms. Dehen reserves the right to question the constitutionality of CDA § 230. Ms. Dehen reserves the right to advance a similar argument as to that in *American Freedom Defense Initiative et a., v. Lynch*, No. 16-cv-1437, 2016 WL 6635634 (D.D.C. Nov. 9, 2016). Ms. Dehen contends that the grant of power afforded to companies such as Twitter by the CDA § 230 exceeds the scope of the legislature. Government action on behalf of the legislature in extending the safe harbor through CDA § 230 to companies such as Twitter who are openly discriminating content based on its viewpoint can be argued as constituting government action sponsoring certain types of speech based on viewpoint, and thus a violation of the First Amendment.

Ms. Dehen alleges her personal First Amendment rights have been violated. Ms. Dehen lived in fear for over a year due to expressing her freedom of speech on an American university campus and on the internet. In response to Ms. Dehen exercising her First Amendment right to freedom of speech, she was targeted by openly declared enemy combatants of the United States, harassed, stalked, caused to suffer substantial injuries, and terrified to the point of feeling physically threatened on and off campus, for over a year.

### DEFENDANTS HAVE NOT AND CANNOT MEET THEIR BURDEN TO WARRANT 12(b)(6) DISMISSAL

16

Even if a Rule 12 motion is technically proper, there is a risk of sanctions if its interposed for an improper purpose. *See* Fed. R. Civ. P. 11; *see also Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988) ("there comes a point when successive motions and papers become so harassing and vexatious that they justify sanctions even if they are not totally frivolous").

Plaintiff alleges defendants Twitter, Inc., and USD have not met their burden to warrant 12(b)(6) dismissal. Plaintiff alleges she can and will amend her complaint to reflect the aforementioned causes of action against USD, thus curing her complaint of any possible arguments relating to lack of subject matter jurisdiction. Plaintiff alleges she already has supplemental jurisdiction over the state law claims since they are all so related to the common nucleus of operative fact as to the federal law claims, that to bring a separate action in state court would be impractical and frustrate judicial efficiency.

Further, Plaintiff alleges sanctions should be interposed on both defendants, Twitter and USD, for attempting to use 12(b)(6) motions for improper purpose. Both defendants attempted to use 12(b)(6) motions in an attempt to bully Ms. Dehen even more so than they both already have, into forfeiting her legal rights and preventing her from having her day in court.

**PLAINTIFF SHOULD BE GRANTED DISCOVERY, OR IN THE ALTERNATIVE, LEAVE TO FILE SECOND AMENDED COMPLAINT**

As Ms. Dehen alleged above, she can and will amend her Complaint to cure her pleadings of any and all deficiencies erroneously claimed by the defendants. Ms. Dehen is well within the statute of limitations.