Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Attorneys for Defendant
Twitter, Inc.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY DEHEN,<br><br>               Plaintiff,<br>v.<br>JOHN DOE, TWITTER, INC., and UNIVERSITY OF SAN DIEGO,<br><br>               Defendants. | Case No. 17-cv-00198-BEN- WVG<br>**REPLY IN SUPPORT OF TWITTER, INC.'S MOTION TO DISMISS**<br>Hearing Date: October 2, 2017<br>Time: 10:30 a.m.<br>Courtroom: 5A<br>Judge: Hon. Roger T. Benitez |

## I.  INTRODUCTION

Plaintiff's Opposition to Twitter's Motion to Dismiss, Dkt. 34, ("Opp.") confirms that her First Amended Complaint, Dkt. 36, ("FAC" or "Complaint") should be dismissed without leave to amend.  Plaintiff wrongly argues that (1) Twitter "perjured" itself and is subject to Rule 11 sanctions for moving to dismiss her lawsuit, (2) the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230, does not immunize Twitter from liability, and (3) there are "material facts in dispute," so her lawsuit should be able to proceed to discovery.  Indeed, Plaintiff's legal arguments fail, her claim that "material facts [are] in dispute" is irrelevant[1], and her sanctions request is baseless.  The Court should grant Twitter's Motion.

Plaintiff's factual allegations as to Twitter are straightforward.  She alleges:

- Twitter's help center article regarding Twitter's impersonation policy states that Twitter will investigate impersonation accounts (FAC ¶ 47);

- On January 30, 2017 at approximately 9:50 p.m., Plaintiff became aware of the Twitter account @tiffanydehen (the "Account"), which was allegedly created by John Doe; Plaintiff reported the Account to Twitter as an impersonation account (*id.* ¶¶ 71, 98-100);

- Twitter responded to Plaintiff within minutes at 9:56 p.m., asking for her identification for its investigation (*id.* ¶ 101; Ex. 48);

- On February 1, 2017 at 4:10 p.m., Plaintiff sent her identification to Twitter (*id.* ¶¶ 102-104; Ex. 49);

- The next day, February 2, 2017, at 8:51 a.m., Twitter communicated with Plaintiff regarding its investigation (*id.* ¶ 106; Ex. 51);

---

[1] Plaintiff's argument that there are "material facts in dispute" misapprehends the legal standard on this Motion.  Opp. at 11-14.  The Court's review is whether the Complaint's facts, as alleged and incorporated, state a plausible claim for relief, not whether there are disputed facts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  They do not.  Further, Plaintiff has not issued discovery and in any event, must satisfy the requirements of the First Amendment before she can discover John Doe's identity.  *See* Memorandum of Point's and Authorities in Support of Twitter, Inc.'s Motion to Dismiss, Dkt. 30-1 ("Mot.") at 11 n. 5.

Reply ISO Motion to Dismiss                                                      No. 17-cv-00198-BEN- WVG

- Twitter suspended the Tweets on the offending Account shortly thereafter (*id*. ¶ 107);
- The Account was disabled by 10 a.m. on February 3, 2017 (*id*. ¶ 109); and
- Days later, the Account was taken down altogether (*id*. ¶ 110).

At their core, all of Plaintiff's causes of action target Twitter's exercise of its discretion under its impersonation policy to review and remove user content hosted on its service. Plaintiff takes issue with Twitter requesting her identification, but Twitter's choice to request identification as part of its review process is editorial conduct—not to mention good practice—immunized by the CDA, and no amount of creative pleading by Plaintiff can change that fact.

Further, Plaintiff's allegations cannot support her claims for rescission for fraud, negligent infliction of emotional distress, and declaratory relief, or any claim Plaintiff "reserves the right" to bring. Her allegations and referenced documents confirm that Twitter has breached no contract with or duty to Plaintiff. Therefore, all her claims fail. Twitter investigated Plaintiff's claim, apparently in a manner she disliked, but it did not owe her any duty or engage in any actionable conduct.

Accordingly, Twitter's Motion should be granted, and Plaintiff's Complaint should be dismissed with prejudice. Further, Plaintiff's baseless Rule 11 sanctions request, which rests in part on her hollow claim of "perjury," should be denied.

## II.   ARGUMENT

**A.   Plaintiff's Complaint Should be Dismissed with Prejudice**

   **1.   The CDA Bars Plaintiff's Claims, All of Which Target Twitter's Conduct as a Publisher of Online Content**

Twitter meets all three requirements for CDA immunity. Plaintiff does not dispute and therefore concedes two of the three requirements—that Twitter provides an "interactive computer service" and that the allegedly offending content (the Account) was "provided by another information content provider" (John

Doe). *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009) ("*Barnes*"). Plaintiff challenges only one of the requirements—that her claims treat Twitter as the "publisher" or "speaker" of the Account—but her arguments fail.

Twitter satisfies this requirement because Plaintiff's claims treat Twitter as the "publisher" of the Account. Plaintiff grounds her claims against Twitter on a help center article that states, "[u]pon receipt of an impersonation report, [Twitter] will investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules." Declaration of Julie E. Schwartz in Support of Twitter, Inc.'s Motion to Dismiss, Dkt. 30-2, ("Schwartz Decl."), Ex. F; *see also* Opp. at 12; FAC ¶ 179. Although Twitter responded to Plaintiff's impersonation report within minutes, requested her identifying information, and the Account was disabled and removed shortly thereafter, Plaintiff nevertheless argues that Twitter did not investigate the Account "upon receipt" of her report as "promised" because Twitter sought identification as part of the investigation. Opp. at 10-14; FAC ¶¶ 101, 105-112.

Plaintiff's claims plainly target Twitter's protected exercise of discretion as a publisher in reviewing and removing user content. *Barnes,* 570 F.3d at 1102 ("We have indicated that publication involves *reviewing*, editing, and *deciding whether to publish or to withdraw from publication* third-party content.") (emphasis added); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (holding that claims that target activity that "can be boiled down to deciding whether to exclude material that third parties seek to post online" are "perforce immune under section 230."). Indeed, Plaintiff's complaint is that Twitter's requirement of providing identification during the review process slowed down the removal (by a matter of days), thereby causing Plaintiff damage. FAC ¶ 3 ("Twitter allowed [John Doe's] behavior to continue occurring on their system . . . causing Plaintiff additional damages and emotional distress.").

Despite her efforts, Plaintiff cannot plead around the immunity conferred by the CDA.  First, Plaintiff's claims do not treat Twitter as a counterparty to a contract (or quasi contract) under *Barnes*, rather than as a publisher.  *See* Opp. at 15.  Nowhere did Twitter promise to undertake certain procedures in investigating and removing impersonation accounts or to complete its review in a certain amount of time.  *Cf. Barnes*, 570 F.3d at 1099 (holding that the CDA was inapplicable to a promissory estoppel claim where Yahoo!'s Director of Communications personally promised the plaintiff to remove certain content immediately but failed to do so).

To the contrary, Twitter's Terms of Service and policies enshrine Twitter's editorial discretion and disclaim any liability for user content.[2]  *See, e.g.*, Schwartz Decl., Dkt. 30-2, Ex. A at § 4 ("We *may* . . . remove or refuse to distribute any Content on the Services . . . without liability to you") (emphasis added); *id.* § 5 (disclaiming liability for third party content and cautioning users that using the service is "at your own risk").  And as *Barnes* made clear, a general policy such as Twitter's "does not suffice for contract liability," especially where the policy "disclaim[s] any intention to be bound."  570 F.3d at 1108.

Second, Plaintiff's claims do not arise from fraudulent conduct and, in any event, Twitter's editorial discretion remains immunized from liability.  Opp. at 15.  Plaintiff makes a convoluted argument that Twitter fraudulently misrepresented its impersonation policy by not disclosing the requirement that she provide her identification, and therefore the Terms of Service should be rescinded.  *Id*. at 12.

---

[2] Plaintiff's argument that whether Twitter disclaimed any intention to be bound is a "material fact in dispute," Opp. at 13, misapprehends the standard on this Motion.  Twitter has properly introduced the Terms of Service and policies by the incorporation by reference doctrine. Plaintiff does not dispute their authenticity.

But "what matters is not the name of the cause of action—[but] whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of the content provided." *Barnes*, 570 F.3d at 1101-02. Fundamentally, Plaintiff challenges traditional publisher activity—Twitter's review and removal decisions regarding user content—and she has not alleged any conduct by Twitter outside of that role. And in any event, Twitter did not misrepresent anything—it said that it would investigate reports of impersonation, and it did exactly that.

Ultimately, nothing about Plaintiff's claims override the broad immunity of the CDA. All three requirements are met, and all Plaintiff's claims are barred.[3]

### 2. Plaintiff Has Not Sufficiently Pled Any Claim Against Twitter

Plaintiff does not directly respond to Twitter's arguments regarding the pleading deficiencies of her rescission for fraud, negligent infliction of emotional distress, and declaratory relief claims. Instead, Plaintiff reiterates her allegations and argues that there are "material facts in dispute." Opp. at 11-13. However, that is not the applicable legal standard on a motion to dismiss and, as set forth below, Plaintiff's allegations do not support any plausible claim for relief anyway.

#### a. Plaintiff has not pled a rescission for fraud claim

Plaintiff's rescission for fraud claim is premised on her flawed argument that Twitter breached an obligation to her under its Terms of Service and incorporated

---

[3] Plaintiff "reserves the right" to argue that the CDA is unconstitutional but alleges nothing in support, and the Court should not consider it. *See* FAC ¶ 232; Opp. at 16. For example, the FAC does not allege that Twitter has or would treat any other user differently than it treated Plaintiff, so her contention (Opp. at 16) that Twitter "openly discriminate[s] content based on its viewpoint" is unsupported. Plaintiff's additional allegations about harassment, stalking, and "feeling physically threatened on and off campus" (*id.*) lack any connection to the Twitter-related allegations in the FAC. And *American Freedom Defense Initiative v. Lynch*, 217 F. Supp. 3d 100 (D.D.C. 2016), is inapposite. In that case, the court summarily dismissed a constitutional challenge to the CDA for lack of standing. *Id.* at 101.

1   policies.[4]  Opp. at 12-13.  But Plaintiff has not identified any obligation in any
2   document that Twitter supposedly breached, and she therefore has not alleged (and
3   cannot allege) a claim for rescission for fraud.  *See Alder v. Drudis*, 30 Cal. 2d 372,
4   381-82 (1947) (rescission requires alleging a breach of contract).

5   Further, Plaintiff does not address any of Twitter's authority holding that
6   where an online service's contract "place[s] restrictions on users' behavior," but
7   does not "create affirmative obligations," it cannot form the basis for a breach of
8   contract claim.  *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D.
9   Cal. 2016) (dismissing a breach of contract claim against Facebook because its
10  Terms of Service did not place affirmative obligations on Facebook) (citation
11  omitted); *Joude v. WordPress Found.*, No. C 14-01656 LB, 2014 WL 3107441,
12  at *5 (N.D. Cal. July 3, 2014) ("A plaintiff cannot predicate a breach of contract
13  claim on a defendant's terms of service where those terms did not commit the
14  defendant to performing any particular action.") (citation omitted).

15  Likewise, Twitter's Terms of Service and incorporated policies do not create
16  any binding obligations.  Twitter did not promise to remove content—it only
17  reserved the right to do so.  *See* Schwartz Decl., Ex. A at §§ 4 and 5.  And in its
18  impersonation policy and associated help center articles, Twitter stated only that it
19  "may" suspend violative accounts.  *Id.* Exs. D, E.  Nowhere did Twitter promise to
20  investigate impersonation reports in any particular manner or in a set amount of
21  time.  *Id.*, Ex. F; *see also* Opp. at 13-14; FAC ¶ 179.

22  Plaintiff also has not alleged the facts required to support fraud as a basis for
23  rescission—that Twitter made a "false statement" or "[a] promise . . . without any
24  intention of performing it."  Cal. Civ. Code § 1572.4; *Flaxel v. Johnson*, 541 F.
25  Supp. 2d 1127, 1145 (S.D. Cal. 2008).  Here, Plaintiff's allegations that Twitter

---

[4] Despite arguing that Twitter is liable for breach of contract and promissory estoppel, nowhere in the FAC does Plaintiff allege either theory of liability.  Opp. at 11.  Nor could Plaintiff make such a claim for the reasons set forth above.

never intended to investigate Plaintiff's impersonation report, or that it intentionally made a false statement by promising to do so, are implausible given that Twitter did, in fact, investigate the report. *See* FAC ¶¶ 101, 105-112.

Indeed, Plaintiff alleges that Twitter sent her emails in response to her impersonation report (*id.* ¶¶ 101, 106) (the first of which was only minutes after her report), requested her identification (*id.* ¶ 101), stated that it reviewed the Account (*id.* ¶ 106), said that it provided the Account holder with instructions about how to comply with Twitter's policies (*id.* ¶ 106), and ultimately the Account was disabled and removed (*id.* ¶¶ 109-110). Plaintiff's apparent misunderstanding of the nature of Twitter's investigation cannot support a claim for fraud, particularly where Twitter's conduct was timely and effective.

Finally, Plaintiff's allegation that she would not have used Twitter if she had known Twitter would ask for her identification before removing user content is implausible and irrelevant. *See* Opp. at 12. Plaintiff does not allege the she relied on the statements in the help center article before registering an account. Moreover, proof of identification is a necessary component to *any* impersonation policy. Plaintiff's assertion that she would not have used a service that requires identification to investigate impersonation defies logic. Indeed, even if Plaintiff had not used Twitter, that would not have kept John Doe from allegedly impersonating her, at which point she would have had to provide identification to report the impersonation.[5]

### b. Plaintiff has not pled a negligent infliction of emotional distress claim

Plaintiff is wrong that whether Twitter owes her a duty for purposes of negligent infliction of emotional distress is a "material fact in dispute." Opp.

---

[5] Additionally, whether Twitter took down specific Tweets or the entire Account (*see* Opp. at 10-11) is immaterial to Plaintiff's claim of rescission for fraud, given that her claim is allegedly based on Twitter's failure to investigate. Similarly, and for the same reasons, why Twitter removed the content is irrelevant. *See id.*.

at 13.  To the contrary, whether a legal duty exists is a matter of law that can be resolved on a motion to dismiss.  *See Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004) ("The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide.").

As detailed above, Twitter does not owe Plaintiff a contractual duty, and Plaintiff has alleged no other type of duty.  Plaintiff's claim therefore fails as a matter of law.  *See Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1126 (E.D. Cal. 2014) (dismissing negligent infliction of emotional distress claim where "the complaint allege[d] no facts to support defendant's' actionable duty owed to plaintiffs and in turn grounds to support a negligence recovery"); *see also Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) ("Young does not identify any contractual basis for these alleged duties, and she cites no legal authority for any non-contractual duty that would give rise to a tort claim").

      **c.**      **Plaintiff has not pled a declaratory relief claim**

Because Plaintiff's other claims fail, her declaratory relief claim fails as well.  *See Ballard v. Chase Bank USA, NA*, No. 10cv790 L(POR), 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims'" (citation omitted)).  Plaintiff does not dispute this.  Accordingly, her derivative declaratory relief claim must be dismissed.

    **3.**    **Plaintiff Should be Denied Leave to Amend**

Plaintiff has not rebutted and cannot rebut Twitter's showing that her Complaint should be dismissed without leave to amend.  A court need not grant leave to amend where it would be a futile act.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  Here, even if Plaintiff were allowed to amend, her existing claims would be barred by the CDA because they would all arise from Twitter's protected publishing activity.  The claims for libel, civil conspiracy, and civil RICO that she "reserves the right" to bring would also be barred.  *See Roommates.com*, 521 F.3d at 1175 (holding that courts apply Section

Reply ISO Motion to Dismiss      -8-      No. 17-cv-00198-BEN- WVG

230 immunity broadly "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles"); *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (barring plaintiff's civil RICO claim under the CDA); *Gaston v. Facebook, Inc.,* No. 3:12-cv-0063-ST, 2012 WL 629868, at *6-7 ((D. Or. Feb. 2, 2012) (barring plaintiff's defamation claim under the CDA).

Nor can there be any set of facts to support these claims. As in Plaintiff's own allegations, Twitter did not breach any obligations to her, it acted consistently with its policies, and it resolved Plaintiff's complaint expeditiously. Because there is no amendment that could cure the defects of Plaintiff's claims against Twitter, the Court should dismiss Plaintiff's complaint as to Twitter with prejudice.

**B.     Plaintiff's Rule 11 Sanctions Request Should be Denied**

Finally, Plaintiff's allegations of "perjury" should be disregarded, and her request for Rule 11 sanctions should be denied. Plaintiff has no grounds for the serious and extraordinary accusations of perjury and litigation misconduct that she carelessly levies against Twitter and its counsel. Opp. at 1-2, 17.

For one, Twitter has not perjured itself. *See id*. at 2. Perjury is "[t]he act or an instance of a person's deliberately making material false or misleading statements while under oath." Black's Law Dictionary (10th ed. 2014); *see also Ashker v. Alameida*, No. C 05-03759 CW(EDL), 2007 WL 3146929, at *2 (N.D. Cal. Oct. 25, 2007) (Perjury consists of "willfully making a material assertion she knew to be false.") (citation omitted). Twitter's legal arguments are based on Plaintiff's allegations in the FAC, which are accepted as true for purposes of this Motion, as well as the terms and policies that Plaintiff references and excerpts in her FAC. Plaintiff disagrees with Twitter's characterization of her allegations, but that is not perjury.

Moreover, Plaintiff's accusation that Twitter filed its Motion "for improper purpose" in violation of Rule 11 is meritless. Under Rule 11, a sanction for

"improper purpose" is appropriate only when a paper is filed with the court "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11.  Twitter's filing of a motion to dismiss, as authorized by the Federal Rules of Civil Procedure and entirely in accordance with the same rules and within the prescribed deadlines, is not "bully[ing]" under any standard, nor is it an attempt to deprive Plaintiff of her day in court.  Opp. at 17; *cf. Aetna Life Ins. Co. v. Alla Med. Servs.*, Inc., 855 F.2d 1470,1476 (9th Cir. 1988) ( "[T]here comes a point when successive motions and papers become so harassing and vexatious that they justify sanctions even if they are not totally frivolous.").

Indeed, Twitter is also entitled to its day in court to defend against Plaintiff's baseless accusations and argue for dismissal of Plaintiff's case.  And as discussed above, dismissal of Plaintiff's lawsuit with prejudice is the appropriate relief here.

### III.   CONCLUSION

For the reasons set forth in Twitter's moving papers and the reasons above, Twitter respectfully requests that the Court dismiss this case with prejudice.

DATED:  September 25, 2017.

**Respectfully submitted,**

*/s/ Julie E. Schwartz*
Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

Attorneys for Defendant
Twitter, Inc.

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on September 25, 2017 to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5.4(d). Plaintiff, who is *pro se*, will be served via overnight delivery at the following address:

Tiffany Dehen
1804 Garnet Avenue #239
San Diego, CA 92109

*s/ Julie E. Schwartz*
Julie E. Schwartz