TIFFANY DEHEN J.D.
1804 GARNET AVENUE #239
SAN DIEGO, CA 92109
858-262-0052
tiffany.dehen@gmail.com

Pro Se Plaintiff

FILED

APR 0 6 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

**TIFFANY DEHEN**, an individual on behalf of herself,

Plaintiff,

v.

**JOHN DOES 1-100, TWITTER, INC., UNIVERSITY OF SAN DIEGO AND PERKINS COIE, LLP.**,

Defendants.

Case No.: 17-cv-00198-LAB-WVG

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR:**

(1) **VIOLATIONS OF THE U.S. COPYRIGHT ACT; 15 U.S.C. 106, 501 et seq.;**
(2) **VIOLATIONS OF THE CALIFORNIA CIVIL CODE § 44 AND 45, et seq.;**
(3) **VIOLATION OF THE CALIFORNIA PENAL CODE § 528.5, et seq.;**
(4) **VIOLATION OF THE CALIFORNIA CIVIL CODE §§ 1572 or 1573, et seq.;**
(5) **DECLARATORY RELIEF UNDER CALIFORNIA CIVIL CODE § 1692, et seq.;**
(6) **INTENTIONAL INTERFERENCE WITH ACTUAL AND/OR PROSPECTIVE ECONOMIC RELATIONS;**
(7) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
(8) **NEGLIGENCT INFLICTION OF EMOTIONAL DISTRESS;**
(9) **CIVIL CONSPIRACY;**
(10)  **VIOLATIONS OF 18 U.S.C. § 1962, et seq.;**

1

**(11)     VIOLATIONS OF CALIFORNIA CIVIL CODE § 45;**
**(12)     CLAIMS OF EXTORTION AND CONSPIRACY TO COMMIT EXTORTION.**

COMES NOW, the Plaintiff, TIFFANY DEHEN, and for cause of action against the Defendants, and each of them, seeking $100,000,000 in compensatory, punitive, and statutory damages, complains and alleges as follows:

## PARTIES

1.     Plaintiff TIFFANY DEHEN, is and at all times herein mentioned, was an individual residing in the County of San Diego.  She brings this lawsuit on behalf of herself.

2.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendant TWITTER, INC. was and is a Corporation incorporated under the laws of the State of Delaware, with its principal place of business in San Francisco, California, doing business in San Diego County.  Twitter manages, operates, publishes, and censors Tweets written by users of its social media website.  Twitter has 313 million monthly active users, 1 billion unique visits monthly to sites with embedded Tweets, and 79% of its accounts are outside of the United States.  *See* https://about.twitter.com/company.

3.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendant UNIVERSITY OF SAN DIEGO,

2

1   hereinafter "USD," was and is a for-profit education institution located in
2   San Diego County.  USD has 8,508 undergraduate, paralegal, graduate and
3   law students, 36% of which are minority students and 9% of which are
4   international students. *See* https://www.sandiego.edu/about/facts.php.

5        4.      The true names and capacities, whether individual, corporate,
6   associate or otherwise of Defendants, DOES 1 through 100, inclusive, are
7   unknown to Plaintiff who therefore, sues said defendants by such fictitious
8   names.  Plaintiff is informed and believes and thereon alleges that each of
9   the Defendants herein designated as a DOE is responsible in some manner
10  for the events and happenings herein referred to and caused injuries and
11  damages proximately thereby as hereinafter alleged.

12       5.      Plaintiff is informed and believes and thereon alleges that at all
13  times mentioned herein Defendant PERKINS COIE, LLP., was and is an
14  international for-profit law firm, with more than 1000 lawyers in 19 offices
15  across the United States and Asia, including an office located in San Diego,
16  California. *See* https://www.perkinscoie.com/en/index.html.

17       6.      Plaintiff is informed and believes and thereon alleges that due
18  to the nature of the claims against all defendants, each is jointly and severally
19  liable to Plaintiff for the injuries sustained.

20       7.      Plaintiff reserves the right to bring additional claims against any
21  and all named and unnamed defendants including, but not limited to, the
22  Democratic National Committee, the Federal Bureau of Investigation, the
23  Department of Justice, Homeland Security, the State Department, San Diego
24  Police Department, the City of San Diego, and any individuals who worked
25  at or were affiliated with the aforementioned agencies during the relevant
26  timeframe.

27                          **JURISDICTION AND VENUE**

28

3

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

9.     Specifically, this Court has federal question jurisdiction in this matter in that Plaintiff seeks injunctive relief and damages against John Does 1-100 under the Copyright Act of 1976 (17 U.S.C. § 501-505, inclusive), under 18 U.S.C. § 1964, under 18 U.S.C. § 875, under 18 U.S.C. § 1951, and reserves the right to bring any and all related causes of action, both state and federal.

10.    This Court has supplemental jurisdiction over all other claims that do not arise under a federal statute in that these supplemental claims involves a substantial federal question and each claim is so related to the federal claim in the action, arising from a common nucleus of operative facts, that they form part of the same case or controversy under Article III of the United States Constitution pursuant to 28 U.S.C. § 1967.

11.    This Court has further jurisdiction pursuant to 28 U.S.C. § 1332.

12.    Plaintiff avers that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs, and punitive damages.

13.    This Court has personal jurisdiction over each of the Defendants because each resides in, is domiciled in and/or does systematic and continuous business in the State of California and in this judicial district.

14.    Jurisdiction of this Court is proper because the events described herein and injuries to Plaintiff occurred within San Diego County, and/or Defendants have caused injury to Plaintiff and to Plaintiff's intellectual property and other proprietary and economic interests within the State of California and in this judicial district.

4

15.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b) and (c) and under 28 U.S.C. § 1400(a).

**FACTUAL ALLEGATIONS**

16.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 15 as though fully set forth herein.

17.     Since at least 2009, Plaintiff consistency held and continues to hold an online presence of around 5,000 followers across various social media websites including but not limited to Twitter, Facebook, Instagram, Snapchat, and LinkedIn.

18.     Plaintiff Ms. Dehen graduated *cum laude* from Arizona State University in 2011 with a Bachelor of Science in Marketing from the W.P. Carey School of Business, Minor in Mass Communications from the Walter Cronkite School of Journalism and Mass Communications and International Business Certificate from W.P. Carey School of Business.

19.     Ms. Dehen earned her Juris Doctor from the University of San Diego School of Law in 2.5 years with a dual concentration in Intellectual Property Law and Business & Corporate Law.

20.     While in law school Ms. Dehen externed for the USD Federal Tax Clinic assisting indigent clients in their tax disputes with the Internal Revenue Service.

21.     Plaintiff is self-employed and supported herself through law school by providing marketing and consulting services as an independent contractor, selling products online and obtaining federal student loans.

22.     Ms. Dehen invested $215,618.47 in student loans (*see* Exhibit 62) in addition to 4.5 years of her life to increase the value of her image, likeness, brand and services by preparing for and then earning her Juris

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1    Doctor from USD with the ultimate goal of admittance to the State Bar of

2    California.

3        23.   Plaintiff spent the year before law school preparing and saving

4    up for law school, took a semester off during law school to save money to

5    complete law school, in addition to working the last 21 months and

6    counting since completing law school to finance the costs associated with

7    admittance to the State Bar of California.

8        24.   In the weeks leading up to the actions that led to this cause of

9    action, Plaintiff was actively seeking a position in the legal industry.

10   *Please see* Exhibits 142 - 149.

11       25.   Before, during, and after the injury that led to this cause of

12   action, Ms. Dehen was, and still is, actively pursuing several business

13   ventures which relied upon, continue to rely, and will rely upon her

14   reputation.

15       26.   Plaintiff is actively seeking admittance to the State Bar of

16   California, which includes a rigorous character and background check and

17   a strenuous test, namely the Bar exam which Plaintiff has not been able to

18   take since graduating from law school due to financial reasons directly

19   related to the causes of action for which this dispute arose.

20       27.   While attending law school at USD, Ms. Dehen was subjected

21   to harassing, terroristic behavior which ultimately led to intervention by the

22   Federal Bureau of Investigation, hereinafter "FBI," through a federal

23   criminal investigation due to the nature of terroristic statements made to

24   her and terroristic behavior aimed towards her and other USD students.

25   *Please see* Exhibits 94 – 140.

26       28.   Ms. Dehen alleges the aforementioned criminal FBI

27   investigation commenced in July 2016 due to alarming terroristic behavior

28

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

that occurred in the several months leading up to and around the time of the Dallas Shooting in July 2016, *i.e.*, at the height of the ISIS terrorist attacks in the U.S. and around the world broadcast on an overwhelming majority of U.S. news outlets. *Please see* Exhibits 94 - 140.

29.     As further explained below, Photograph 2, titled, "Tiffany Pro," (*see* Exhibit 2), that John Doe(s) illegally used to create Infringing Work #6 (*see* Exhibit 13), was taken from Ms. Dehen's LinkedIn profile.

30.     To further corroborate the direct evidence regarding the identities of at least John Doe 1-2, two individuals from USD Law School viewed Ms. Dehen's LinkedIn profile in the immediate days leading up to the creation and execution of the unlawful Twitter account. *See* Exhibit 52.

31.     The conduct which ultimately resulted in direct intervention by the FBI including the aforementioned federal criminal investigation is linked to conduct that occurred on USD property, at USD sponsored events, and in connection with USD students.

## University of San Diego

32.     USD ensnared Plaintiff in a fraudulent scheme nationwide to sell safe education.

33.     USD uniformly misled Plaintiff more than once that she would learn at USD in safety.

34.     USD promised a safe university, which it did not deliver.

35.     USD expressly set out to leverage its commitment for safety. For example, on the USD website, USD expressly states it is, "[c]omitted to safety through education." *See* https://www.sandiego.edu/safety/.

36.     The USD Public Safety webpage continues:
          The Department of Public Safety is located on the south side of Hughes Administration Hall, and is open 24 hours a day, 7 days a week. The Department of Public Safety supports the mission and goals of the University of San Diego by providing a full range of community-oriented crime prevention and crime control services to contribute to the

7

safety and security of the campus community. This is not a job that we can do alone. Your help is essential.

    *See* https://www.sandiego.edu/safety/.

  37. Defendant USD marketed USD as a safe university.

  38. USD expressly claims to keep a record of crime alerts "provided to keep all members of the University of San Diego community up to date with and aware of all ongoing criminal acts." *See* https://www.sandiego/edu/safety/prevention/alerts.php.

  39. USD expressly states:

> Our Public Safety Officers are responsible for a wide range of activities, including developing crime prevention programs, taking crime and accident reports, initiating investigations, responding to medical and fire emergencies, controlling parking and traffic, and enforcing certain local and state laws, as well as rules developed by the University to address campus-related concerns. Emergencies on campus should be reported directly to the Department of Public Safety by dialing extension x2222 from any on-campus phone, 24 hours a day.

    *See* https://www.sandiego.edu/safety/about/.

  40. USD expressly provides:

> The University of San Diego Department of Public Safety is committed to the support of the University's greater mission of excellence in education and service to the community. As an integral part of the University, we pledge ourselves to a continuing partnership with the campus community to provide a safe and secure environment through community based public safety. We will achieve our goals by service to the community that reflects respect for the law, dignity of all persons and pride in our profession.

    *See* https://www.sandiego.edu/safety/about/mission.php.

  41. USD expressly provides its Department of Public Safety motto as follows:

> Service to Our Community. People in our campus community are our most important customers. Our motto: "Committed to Safety Through Education" is not just a slogan it is our way of life. We pledge to work in partnership with the USD community and do our best to provide for its public safety needs. Commitment to Integrity. Integrity is our standard. We are proud of our profession and will conduct ourselves in a manner that merits the respect of all people. We will demonstrate honest, ethical behavior in all our interactions. We must have the courage to always do what is right. Respect for People. The dignity of mankind is a value that we treasure. We believe in treating all people with respect. We show concern for the victims of crime and treat violators of the law with fairness at all times. Commitment to Leadership. Managers, supervisors and team leaders need to be leaders in their areas of responsibility. Making

SECOND AMENDED COMPLAINT   No.: 17-cv-00198-LAB-WVG

certain that our values become part of our day to day work life is our mandate. We encourage our employees to submit ideas, we listen to their suggestions, and we help them develop to their maximum potential.

*See* https://www.sandiego.edu/safety/about/mission.php.

42.   USD expressly provides:

Hate Crimes/Acts of Intolerance
       USD is a diverse community of which we are proud. Sometimes, some of our newer students come from environments that are not as rich in cultural and religious diversity. Hateful speech and conduct against others of different backgrounds and cultures is unacceptable at a university which prides itself on the recognition of the dignity of each individual (USD Mission Statement). "The university is committed to creating a welcoming, inclusive and collaborative community accentuated by a spirit of freedom and charity; and marked by protection of the rights and dignity of the individual. The university values students, faculty and staff from different backgrounds and faith traditions and is committed to creating an atmosphere of trust, safety and respect in a community characterized by a rich diversity of people and ideas." Harassment of others because of a persons race, religion, ancestry, national origin, disability, gender, sexual orientation, or because he/she perceives that the other person has one or more of these characteristics is against the law and will not be tolerated by the University. Severe disciplinary action and possible criminal prosecution will follow.

*See* https://www.sandiego.edu/safety/reporting/hate-crimes/.

43.   University of San Diego provides a Code with Rules of Conduct outlining specific prohibitions, policies, and procedures that each student is responsible for understanding and following.

44.   USD Rules of Conduct can be found online at: https://www.sandiego.edu/conduct/the-code/rules-of-conduct.php.

45.   The USD Rules of Conduct provide the following:
       The following conduct is prohibited on University premises or at University events, wherever they may occur. This same conduct, though occurring off University premises and not at University events, may nonetheless be subject to University sanctions when it adversely affects the University, its educational mission or its community. Violation of these standards, policies, and procedures may subject an individual or group to disciplinary action as determined by the Assistant Vice President for Student Affairs/Dean of Students or his or her designee, pursuant to the provisions of the Code.

46.   The Rules outlined in the Code of Conduct include, in relevant part, the following:

9

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

2. Disruption of teaching, research, administration, conduct proceedings or any other institutional activity.
3. Abuse of any person, including but not limited to physical abuse, threats, verbal intimidating, harassment, stalking, coercion and/or other conduct which threatens the health or safety of any person.
6. Conduct that is disorderly, lewd, indecent or obscene.

47.    Upon information and belief, Plaintiff and University of San Diego entered into a written contract pursuant to the aforementioned Code of Student Conduct when Ms. Dehen enrolled in the USD School of Law in August 2013 and again in January 2015 when Ms. Dehen re-enrolled in the USD School of Law.  Plaintiff alleges USD has a copy of a signed agreement in the form of signed acknowledgement of the student code of conduct and is better positioned to present the original copy to the Court during discovery.  In consideration of Plaintiff accepting USD's offer to attend USD law school, paying USD over a hundred thousand dollars for education and agreeing to abide by the student code of conduct, USD promised to provide a safe learning environment to Plaintiff, free of threat of physical harm and free of the school violating federal law to Plaintiff's harm.  Plaintiff alleges USD Law Financial Office expressly confirmed its alleged commitment to follow and abide by federal law both in writing and orally on numerous occasions to Plaintiff personally.

48.    Plaintiff alleges that in November 2015 on USD campus during a USD sponsored event, a USD law student openly declared himself to be an enemy combatant of the United States by openly declaring himself to be in an ISIS sleeper cell in the presence of Plaintiff and at least one other student. *Please see* Exhibits 130 – 139.

49.    Plaintiff alleges a student witness of the terrorist remark later publicly declared himself to be actively engaging in terrorism in March 2016 after engaging in threatening behavior which disrupted the entire university and sent the law school student body and faculty into a

10

widespread panic which interrupted normal business operations on campus for several days, weeks for some individuals, including Plaintiff. *Please see* Exhibits 94 – 139. The threatening behavior consisted of, among other things, the student calling all USD law students Nazi's, as well as personally and directly calling Plaintiff a Nazi, and engaging in alarming threatening behavior further shown in Exhibits 94 - 139. Ms. Dehen alleges various students expressed fear, to both Ms. Dehen and to USD, that this student brought a bomb to school and/or was planning to harm himself and/or USD students. *Please see* Exhibits 94 - 139.

50.     In March 2016 Plaintiff and several other students and faculty members at USD relayed, *on more than one occasion*, the alarming erratic behavior to USD Law Administration, USD Administration, the President of USD, USD Department of Public Safety, San Diego Police Department, as well as various attempts to federal and state agencies by Plaintiff personally. *Please see* Exhibits 94 - 139.

51.     Plaintiff alleges USD not only failed to adhere by federal law in dealing with sensitive allegations such as the ones Plaintiff personally relayed to USD, but USD went so far as to shut down the local law enforcement investigation and refused to cooperate with federal law enforcement to Plaintiff's detriment. *Please see* Exhibits 94 - 139.

52.     Not only did USD fail to adequately address the serious threats which threatened to harm and actually harmed Ms. Dehen as USD expressly represented it would, but USD gave preferential treatment to both aforementioned students, whom Plaintiff alleges comprise John Does 1 & 2 in this litigation. Not only did neither student face disciplinary action, but *both students received preferential treatment to complete their schooling.* *Please see* Exhibits 94 – 139.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

53.     Due to USD's failure to address the serious situations as it promised repeatedly it would do in its stated policies as well as express repeated promises made during the situations by agents of USD to Plaintiff and several other law students and faculty members, the situations escalated to the point where the Federal Bureau of Investigation intervened in July 2016 when one of the aforementioned self-proclaimed enemy combatants of the United States stalked Plaintiff at her residence in San Diego, California. *Please see* Exhibits 94 - 139.

54.     Plaintiff lived, and continues to live, in grave fear of danger to her personal body, safety, economic interests, personal relationships, family members' and friends' safety, among other injuries for which Plaintiff can and will prove to this Court through this litigation.

55.     Plaintiff alleges USD became aware of the serious allegations in March 2016. Plaintiff alleges USD then owed a heightened duty to Plaintiff beginning in or around March 2016 when it was put on notice of the serious behavior in violation of both federal and state law, which it failed to uphold, hence this litigation. *Please see* Exhibits 94 – 139.

**Twitter**

56.     Ms. Dehen and Twitter entered into a written contract pursuant to the terms of Twitter's user agreement on or about October 9, 2015. *See* Exhibit 53.

57.     Ms. Dehen created her Twitter account, *i.e.*, entered into the user agreement with Twitter, with the reasonable expectation that Twitter would fulfill its own express promises and enforce its expressly stated policies and rules.

SECOND AMENDED COMPLAINT                     No.: 17-cv-00198-LAB-WVG

58.   Twitter provides a policy for restricting access to its business, titled, "The Twitter Rules," and can be found online at: https://support.twitter.com/articles/18311.

59.   Pertaining to hateful conduct, Twitter's rules provide, in relevant part, the following:

> You may not promote violence against or directly attach or threaten other people on the basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age disability, or disease. We also do not allow accounts whose primary purpose is inciting harm towards others on the basis of these categories.

*See* https://support.twitter.com/articles/18311.

60.   Twitter provides an Impersonation Policy that can be found online at: https://support.twitter.com/articles/18366.

61.   Twitter's Impersonation Policy provides, in relevant part, the following:

> Impersonation is a violation of the Twitter Rules. Twitter accounts portraying another person in a confusing or deceptive manner may be permanently suspended under the Twitter impersonation policy.

*See* https://support.twitter.com/articles/18366.

62.   Twitter's Impersonation Policy further provides, "[i]n order to be impersonation, the account must also portray another person in a misleading or deceptive manner."

*See* https://support.twitter.com/articles/18366.

63.   In Twitter's Impersonation Policy, Twitter promises:

> *Upon receipt* of an impersonation report, <u>we will investigate</u> the reported accounts to determine if the accounts are in violation of the Twitter Rules. Accounts determined to be in violation of our impersonation policy, or those not in compliance with our parody, commentary, and fan account policy, will either be suspended or asked to update the account(s) so they no longer violate our policies.

*See* https://support.twitter.com/articles/20170142.

64.   Twitter provides a Hateful Conduct Policy, that can be found online at: https://support.twitter.com/articles/20175050.

65.     Twitter's Hateful Conduct Policy provides, in relevant part, the following: "[w]e do not tolerate behavior that harasses, intimidates, or uses fear to silence another person's voice." *See* https://support.twitter.com/articles/20175050.

66.     Twitter's Hateful Conduct Policy provides the following:

Examples of what we do not tolerate includes, but is not limited to, behavior that harasses individuals or groups of people with: violent threats; wishes for the physical harm, death, or disease of individuals or groups; references to mass murder, violent events, or specific means of violence in which/with which such groups have been the primary targets or victims; behavior that incites fear about a protected group; repeated and/or non-consensual slurs, epithets, racist and sexist tropes, or other content that degrades someone.

*See* https://support.twitter.com/articles/20175050.

67.     Twitter's Hateful Conduct Policy further provides the following: "[w]e enforce policies when someone reports behavior that is abusive and targets an entire protected group and/or individuals who may be members." *See* https://support.twitter.com/articles/20175050.

68.     Plaintiff and Twitter entered into a written contract including the terms set forth above at the time Plaintiff accepted Twitter's Terms of Use and activated her account on October 9, 2015 at 11:11 p.m. *See* Exhibit 53.

**Additional Background Facts**

69.     Upon information and belief, there is no other "Tiffany Dehen" in existence, nor is there any other individual using the name "Tiffany Dehen" to sell products or render consulting, marketing, or legal services anywhere in the United States, or anywhere in the world.

70.     Merriam Webster Dictionary's definition of Nazi provides the following:

(1) a member of a German fascist party controlling Germany from 1933 to 1945 under Adolf Hitler; (2) often not capitalized; (a) one who espouses the beliefs and policies of the German Nazis: Fascist; (b) one who is likened to a German Nazi: a harshly domineering, dictatorial, or intolerant person; a grammar nazi.

14

SECOND AMENDED COMPLAINT               No.: 17-cv-00198-LAB-WVG

*See* https://www.meriam-webster.com/dictionary/Nazi.

71.     Encyclopedia Britannica's definition of Nazi Party provides the following:

Nazi Party, byname of National Socialist German Workers' Party, German Nationalsozialistische Deutsche Arbeiterpartei (NSDAP), a political part of the mass movement known as National Socialism.  Under the leadership of Adolf Hitler, the party came to power in Germany in 1933 and governed by totalitarian methods until 1945.

*See* https://www.britannica.com/topic/Nazi-Party.

72.     Merriam Webster Dictionary's definition of Swastika provides the following:

(1) A symbol or ornament in the form of a Greek cross with the ends of the arms extended at right angles all in the same rotary direction; (2) a swastika used a symbol of anti-Semitism or of Nazism.

*See* https://www.merriam-webster.com/dictionary/swastika.

73.     Ms. Dehen is not a member of the National Socialist German Workers' Party (colloquially known as the Nazi Party), nor the Ku Klux Klan (colloquially known as the KKK).

74.     Further, Ms. Dehen has no relatives that were involved in either the National Socialist German Workers' Party or the Ku Klux Klan.

75.     Ms. Dehen's late grandfather was Captain John D. Raikos, awarded the following decorations for his role in the 83rd Infantry of the United States Army in World War II: Combat Infantryman Badge, Silver Star Medal, Bronze Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good Conduct, American Campaign Medal, WWII Victory Medal, and the EAME Campaign Medal with 5 Bronze Stars for the Five Campaigns. *See* Exhibit 1 or visit http://www.normandytothebulge.be/83rd_JRaikos.html.

76.     Notably, Ms. Dehen's late grandfather, Captain John D. Raikos, was honored with the esteemed citation from Yom H'ashowa Holocaust Remembrance for his role with the 83rd Division's liberation of

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Nazi concentration camps.  *See* Exhibit 1 or visit

http://www.normandytothebulge.be/83rd_JRaikos.html.

77.     Upon information, belief, and research into Ms. Dehen's

family tree, Ms. Dehen has at least one relative who was Jewish, *i.e.*, Ms.

Dehen is technically part Jewish.

78.     Ms. Dehen volunteered as a Summer Camp Counselor at the

Tucson Jewish Community Center ("TJCC") in 2004 and her family

continued and continues to keep a relationship with the TJCC.

79.     During Mr. President Donald J. Trump's State of the Union

Address on January 30, 2018, he stated, "[w]e must be clear – terrorists are

not merely criminals; they are unlawful enemy combatants." (*Please see*

Mr. President Donald J. Trump's 2018 State of the Union Address).

80.     President Donald J. Trump also stated, "[i]n the past, we have

foolishly released hundreds and hundreds of dangerous terrorists, only to

meet them again on the battlefield, including the ISIS leader al-Baghdadi,

who we captured, who we had, who we released." (*Id.*)

**Copyrighted Works**

81.     On June 20, 2013, Plaintiff created Photograph 1, titled,

"Tiffany Pro," in Scottsdale, Arizona and published to LinkedIn

06/20/2013. *See* Exhibit 2.

82.     "Tiffany Pro," is registered with the United States Copyright

Office, which constitutes, "prima facie evidence of the validity of the

copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a).

"Tiffany Pro," is assigned Registration Number: VA 2-069-923, with April

01, 2017 as the Effective Date of Registration. *Please see* Exhibit 68.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

83.   On April 2, 2016, Plaintiff created Photograph 2, titled, "Tiffany DC," in front of Trump Tower in Washington D.C, and published to Twitter on 04/02/2016, and Facebook on 09/15/2016. *See* Exhibit 3.

84.   "Tiffany DC," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany DC," is assigned Registration Number: VA 2-073-279, with March 31, 2017 as the Effective Date of Registration. *Please see* Exhibit 69.

85.   On April 28, 2016, Plaintiff created Photograph 3, titled, "Tiffany MAGA," in front of the Trump rally in Orange County, California, and posted to Twitter on 04/28/2016. *See* Exhibit 4.

86.   "Tiffany MAGA," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany MAGA," is assigned Registration Number: VA 2-069-924, with April 01, 2017 as the Effective Date of Registration. *Please see* Exhibit 70.

87.   On December 18, 2016, Plaintiff created Photograph 4, titled, "Tiffany Christmas MAGA," in Pacific Beach, California, and posted to Instagram, Facebook, and Twitter on 12/23/2016. *See* Exhibit 5.

88.   "Tiffany Christmas MAGA," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany Christmas MAGA," is assigned Registration Number: VA 2-069-747, with April 01, 2017 as the Effective Date of Registration. *Please see* Exhibit 71.

**Twitter Account With Domain @tiffanydehen**

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

89.     On or about January 26, 2017, John Doe(s) created a Twitter account with the domain @tiffanydehen, with the description, "[p]arody account; Fiction and political satire about Republican white women", yet used Tiffany Dehen's legal name in the domain @tiffanydehen, and Ms. Dehen's copyrighted photos. *See* Exhibit 9.

90.     The natures of the posts, described below, are so egregious as to deny Doe(s)'s protection under the First Amendment, further explained below.

91.     Due to the ongoing terrorism investigation led by the Federal Bureau of Investigation, and on advice of the FBI, Tiffany Dehen was no longer using the domain @tiffanydehen in connection with her social media accounts.

92.     On or about January 26, 2017, Doe(s), using the Twitter domain @tiffanydehen, followed various Twitter users including the following: "Helmut Pepe Thick @HelmutThick,""Vladamir Putin @realtalkputin," "Donald J. Trump @realDonaldTrump," "Ann Coulter @AnnCoulter," "Paul Ryan @SpeakerRyan," "Bill O'Reilly @oreillyfactor," "Sean Hannity @seanhannity," "The White House @WhiteHouse," "Eric Trump @EricTrump," "Kellyanne Conway @KellyannePolls," "Donald Trump Jr. @DonaldJTrumpJr," "Ivanka Trump @IvankaTrump," "Mike Pence @mike_pence," "Dr. Ben Carson @RealBenCarson," "Fox News @FoxNews," "Milo Yiannopoulous @DontGoAwayM4d," "Adolf Hitler @AdolfHitlerFuhr," "Vladamir Putin @realtalkputin," "Donald J. Trump @realDonaldTrump," "Klu Klux Klan @TheeKluKluxKlan," "klu klux klan @FuckTheNiggers," and "Breitbart News @BreitbartNews."

*See* Exhibits 6-8, and 44-47.

93.     On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "@realDonaldTrump is gonna stop these alien abductions plaguing our nation y'all. These anal probes gotsa stop. #MakeAmericaGreatAgain #ufos". *See* Exhibit 43.

94.     On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted "I'm all for building that wall over mexico but the

18

SECOND AMENDED COMPLAINT            No.: 17-cv-00198-LAB-WVG

real aliens come from above #buildthatwall #MakeAmericaGreatAgain @realDonaldTrump #ufos". *See* Exhibits 42-44.

95.  On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "The only better time to be a woman in America beside 2day was the day Jesus was crucified #witness #amen #Jesusfirst #MakeAmericaGreatAgain". *See* Exhibits 42-43.

96.  On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Me+my girls today.  If you can't bring back an 80's dye job, U DON'T DESERVE TO BE AMERICAN!!! #MakeAmericaGreatAgain #SexyLikeCockatoos #grl". *See* Exhibit 41.

97.  On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "My gawd Who is that lucky lady? @POTUS @realDonaldTrump My pastor wouldn't be happy with my inside-outies right now? #MakeAmericaGreatAgain". *See* Exhibit 40.

98.  On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "TO HELL WITH MUSLIMS WHO WANT TO BAN OUR AMERICAN VALUES! U NEVER PUT ME IN A BURKA! #MuslimBan #MakeAmericaGreatAgain @POTUS #BuildTheWall". *See* Exhibit 39.

99.  On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Just found this lovely pic of our #firstladymelania Pearl necklaces 4 every girl about time @MELANIATRUMP @POTUS #MakeAmericaGreatAgain". *See* Exhibits 37-38.

100.  On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Have y'all noticed the blacks are on all the magazines nowadays? Time 4 change!! White women are the silent majority in the lamestream media". *See* Exhibits 35-36.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

101.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Nothing like my own personal welcome team on Twitter.     Thanks     @AdolfHitlerFuhr     XOXO     Let's #MakeAmericaGreatAgain studcakes #MuslimBan", and included a photo stating, "Fuhrer welcomes you" showing the Adolf Hitler Twitter account that Doe followed using the Twitter domain @tiffanydehen. *See* Exhibits 35-36.

102.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Donated some eggs today!  Don't know why sept they told me they were tax deductible! #MakeAmericaGreatAgain", with Infringing Work #1 (*see* Exhibit 34), which comprises of Photograph #2 titled, "Tiffany DC," (*see* Exhibit 3) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) altered with the word, "MURIKKKA!", and two drawn in Swastikas. *See* Exhibits 32-33.

103.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Throwing this dog over this cliff!  Animals don't deserve     special     rights!     Down     with     special     interists! #MakeAmericaGreatAgain @POTUS", with Infringing Work #2 (*see* Exhibit 31), which comprises of Photograph #4 titled, "Tiffany Christmas MAGA," (*see* Exhibit 5) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the words, "DOWN WITH THEM SPESHUL INTRISTS!". *See* Exhibit 29-30.

104.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Saving myself for marriage!  My man knows we can have sex 3 times: honeymoon, Trumps reelection, & jesus 2ⁿᵈ coming! #MakeAmericaGreatAgain", with Infringing Work #3 (*see* Exhibit 28),

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

which comprises of Photograph 3 titled, "Tiffany MAGA," (*see* Exhibit 4) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the top of Ms. Dehen's hat whited out with the words, "MAKE AMERICA GRATE AGAIN", written instead. *See* Exhibits 26-27.

105.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted "Why do the gays hate this hate? I thought they all liked fashion! #snowflakes #EndSpecialInterests #ReligiousFreedom #MakeAmericaGreatAgain", with Infringing Work #4 (*see* Exhibit 25), which, again, comprises of Photograph 3 titled, "Tiffany MAGA," (*see* Exhibit 4) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the top of Ms. Dehen's hat whited out with the words, "BRING BACK (with a symbol that looks like a vagina)", written instead. *See* Exhibits 23-24.

106.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted "That'll teach them terrorist saudis! #MuslimBan #MakeAmericaGreatAgain my hero! @POTUS @realDonaldTrump", with a photo showing the countries of President Donald J. Trump's temporary ban on refugees. *See* Exhibits 21-22.

107.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "CNN is fake news! Serena won the Australian open!", with an article to CNN Breaking News @cnnbrk, "Roger Federer beats Rafael Nadal in a five-set match in the Australian Open Men's Final winning his 18th grand slam". *See* Exhibits 20-21.

108.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, retweeted a post from Paul Ryan @SpeakerRyan, "RT if you agree It's time to rebuild our partnership with #Israel and reaffirm our

SECOND AMENDED COMPLAINT            No.: 17-cv-00198-LAB-WVG

commitment to her security", but Doe added, "I agree with @SpeakerRyan do what you can to keep them Jews out of our Christian country!! #AmericaFirst #MakeAmericaGreatAgain #Muslim Ban". *See* Exhibit 20.

109.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Fuck throwing this dog off a cliff. Ima eat him instead! What a #snowflake @peta #MakeAmericaGreatAgain Animals don't deserve extra rights!", with Infringing Work #5 (*see* Exhibit 19), which, again, comprises of Photograph 4 titled, "Tiffany Christmas MAGA," (*see* Exhibit 5) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account), and altered with the words "DOWN WITH THEM SPESHUL INTRISTS!". *See* Exhibits 16-18.

110.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "I'm so excited for my audition for TV! I can't wait to make America proud! #MakeAmericaGreatAgain #AmericaFirst #AmericaFirstOnly @POTUS", with a photo of Tomi Lahren and the word "TIFF" added, and added text above the photograph that reads, "BRAVO'S The Real Housewives of Nazi-Occupied Russian Territory Formerly Known as America *twirls* "If he's not Aryan, we're not marryin'!" *See* Exhibits 15-16.

111.   On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Here's my mom and her bible study sisters being saved from an evil Muslim palace.  If I'm not her spitting image…GO TRUMP GO! @POTUS", with a photo of President Donald J. Trump and three women. *See* Exhibit 14.

112.   On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "All ready for my job interview.  Too much??? #AmericaFirst   #AmericaFirstOnly   Help   me   fashion   queens!!!

22

@MELANIATRUMP @KellannePolls", with Infringing Work #6 (*see* Exhibit 13), which comprises of Photograph 1 titled, "Tiffany Pro," (*see* Exhibit 2) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's LinkedIn account this time), altered with a black headband containing a Swastika drawn in, as well as a red Swastika added to Ms. Dehen's chest. *See* Exhibits 11-12.

113.   On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, retweeted one of Ms. Dehen's personal tweets where she posted an article from *Drudge Report*, and wrote, "That's right @tiffanysundevil we should just get rid of all those countries that aren't america! #AmericaFirst #AmericaFirstOnly." *See* Exhibits 10-11.

114.   On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "We don't need a justice department! fuck impartiality! #MakeAmericaGreatAgain", with a retweet from *Drudge Report* @DRUDGE_REPORT that says, "TRUMP FIRES ACTING ATTORNEY GENERAL", with a link to an article. *See* Exhibit 10.

115.   On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "ONLY WHITE PEOPLE DESRVE BENEFITS! america should be great to win I no knowledge of it! #MakeAmericaGreatAgain @POTUS @realDonaldTrump", with a retweet from a post by Thomas Paine @Thomas1774Paine that said, "Hey DOJ & #Yates, welcome back to the real America where you get fired for screwing up like the rest of us. #Obama's Country Club is closed". *See* Exhibits 9-10.

116.   On January 30, 2017 around 9:50 p.m., Plaintiff became aware of the account due to the retweet of Plaintiff's tweet referenced above, and the fact that Doe "liked" 10 of Ms. Dehen's Tweets. *See* Exhibits 10-11, and 54.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

117. Upon inspection of the Twitter account, Plaintiff sought immediate removal of the impersonating account by utilizing Twitter's Impersonation Policy through completion of the provided form to "report an account for impersonation."

118. Plaintiff submitted the report for impersonation for Doe(s)'s defaming Twitter account in the username @tiffanydehen to Twitter on 01/30/2017, thus fulfilling all conditions, covenants, and promises required on her part to be performed in accordance with the terms and conditions of the user agreement. *See* Exhibit 48.

119. On January 30, 2017 at 9:56 p.m., Twitter responded to Plaintiff's request to Case # 50854043 with the following:

Hello,
Thanks for sending your report regarding impersonation on Twitter.
Our next steps: First, we need to confirm your identity. Below you'll find instructions and a link you can use to upload a copy of your valid government-issued photo ID. Then we'll review and process your report. We can't review your report until the documentation is received.
Your next steps: Review the instructions below and upload the requested documentation. Please make sure to upload a legible copy so we can review the full name and photo on the ID. This information will be kept confidential and your documentation will be deleted.
Instructions: Click on the link below and upload a copy of your valid government issued photo ID (e.g., driver's license or passport). If you are reporting an account that is not using the name that appears on your government-issued photo ID, you must also include documentation demonstrating that the name used by the account you're reporting is associated with you (e.g., proof of registration of your trade name or pseudonym).
Upload                                                                  link:
https://twitterinc.secure.force.com/u?e=tiffany.dehen@gmail.com&c n=50854043
Please note that accounts in compliance with Twitter's parody, commentary, and fan accounts policy (https://support.twitter.com/entries/106373) are not considered in violation of our impersonation policy (https://support.twitter.com/articles/18366).
Thank you,
Twitter

*See* Exhibit 48.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

120.   On February 1, 2017 Ms. Dehen was involved in an automobile collision on the I-5 freeway southbound on her way to Federal Court to commence suit that she luckily walked away from with only neck and back pains felt at the time. *See* Exhibits 57-58.

121.   Fearing for her personal safety and under severe emotional distress, Ms. Dehen first submitted the initial complaint with the Court in order to get the alleged conduct on federal record.

122.   Thereafter Ms. Dehen went to the emergency room, where she submitted the requested proof of identity via photo of her state issued driver's license to Twitter, in completion of the additional action Twitter requested in order to enforce its stated policies. *See* Exhibit 49.

123.   On February 1, 2017 around 4:30 p.m., Doe, using the Twitter domain @tiffanydehen, tweeted, "Black history month? More like "excuse to complain more" month." *See* Exhibit 50.

124.   On February 2, 2017 at 8:51 a.m., Twitter replied to the second report Ms. Dehen submitted for Impersonation (Case # 50854043), with the following:

Thanks for bringing this to our attention.  Parody, newsfeed, commentary and fan accounts are permitted on Twitter so long as they comply with our policy for such accounts.  In response to your complaint, we're providing the user with instructions on how to comply with our policy.  Please allow 48 hours from the receipt of this email if you'd like to file a follow-up complaint about the account.  Note that Twitter will not proactively monitor the account, but will respond to all valid follow-up complaints.

*See* Exhibit 51.

125.   After receiving Plaintiff's second Impersonation Request, it took Twitter more than 12 additional hours to suspend the tweets on the account, which also could have been due in part or in whole to the fact that Plaintiff had already commenced this action, as Plaintiff found her initial

SECOND AMENDED COMPLAINT            No.: 17-cv-00198-LAB-WVG

complaint posted on Twitter the day prior, February 2, 2017. *See* Exhibits 72-73.

126. Ms. Dehen checked Twitter around 5 a.m. on February 3, 2017, and the offending account was still active.

127. When Ms. Dehen checked the account again around 10 a.m. on February 3, 2017, the account was disabled with the main profile photo still visible and the account still accessible through a search on Twitter.

128. The main account page stayed active for days following the disabling of the tweets. Days later, Plaintiff noticed the account was taken down altogether.

129. Twitter is in a better position than Ms. Dehen to present to the Court the exact timeframe of the creation and disabling of the defaming Twitter account through discovery because that information is now unavailable to Plaintiff.

130. Plaintiff can and will show monetary damages as well as reputational and emotional damages, in addition to the statutory and punitive damages she is entitled under the law. For example, Plaintiff was so intimidated, frightened and ashamed in the immediate days after finding the offending Twitter account that she missed an attorney networking event which she was supposed to be a volunteer witness for the week of 1/31/17. *Please see* Exhibit 94.

## RELEVANT FACTS AFTER COMMENCING SUIT

131. On February 1, 2017, Plaintiff Ms. Dehen rushed to file suit out of fear for her safety and well-being due to the aforementioned terroristic behavior, including threats to her personal safety and the safety of Ms. Dehen's dog, Mitty, in order to ensure there was in fact a federal record started somewhere, as Ms. Dehen previously thought the FBI was

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

taking care of it but became worried the FBI did not have the threat under control as Ms. Dehen was still being subjected to escalating illegal threatening conduct continuing to harm her.

132.   On February 2, 2017, Ms. Dehen's initial complaint she filed under duress went public to her surprise.  Ms. Dehen became apprised of the fact that her complaint went public when she received harassing messages and tweets on Twitter in response to her lawsuit.  Plaintiff requests the record to reflect that the Twitter account in question with domain @TiffanyDehen was still public at this time that her initial complaint was public, and was only taken down by Twitter *after* a copy of Ms. Dehen's initial complaint was all over Twitter.

133.   On February 2, 2017, out of continued fear for her personal safety, Ms. Dehen went straight to Federal Court to attempt to be seen by the Judge.  Unsuccessful, Ms. Dehen left a rushed note for the Judge under duress.  Ms. Dehen then went straight to the Federal Bureau of Investigation and refused to leave the premises until an agent came down to notate the new information pertaining to a case which Ms. Dehen thought was ongoing with the FBI regarding the aforementioned terroristic threats to Ms. Dehen personally and to the United States.  The FBI made clear to Ms. Dehen that in spite of the new intel revealing continued threats and harassment, the bureau was still under no duty whatsoever to disclose any updates regarding the ongoing investigation, or Ms. Dehen's safety, to Ms. Dehen, unless her name was picked up as "terrorism chatter" by "known terrorists".

134.   After the February 2, 2017 meeting with the FBI, Ms. Dehen noticed Mohammed's Instagram account (the student who self-proclaimed

himself to be an enemy combatant of the United States, *i.e.,* in an ISIS Sleeper Cell) was finally taken down.

135.   On February 3, 2017, the day after Ms. Dehen's initial complaint went public, Mr. Mike Masnick with Tech Dirt published a biased negative news article on Ms. Dehen without the correct facts and without any attempt whatsoever by Mr. Masnick to contact Ms. Dehen for facts. *Please see* https://www.techdirt.com/articles/20170202/16511636619/recent-law-school-grad-sues-twitter-because-someone-made-parody-twitter-account.shtml.

136.   On February 6, 2017, four days after Ms. Dehen's initial complaint went public, Mr. Dorian Hargrove with the San Diego Reader published an article on Ms. Dehen's initial filing without any attempt to reach out to Ms. Dehen for comment. *Please see* https://www.sandiegoreader.com/news/2017/feb/06/ticker-fake-twitter-account-prompts-lawsuit/#.

137.   On February 9, 2017, seven days after Ms. Dehen's initial complaint went public, Ms. Kristina Davis with the San Diego Union Tribune published an article on Ms. Dehen's initial filing without any attempt to reach out to Ms. Dehen for comment. *Please see* http://www.sandiegouniontribune.com/news/courts/sd-me-twitter-lawsuit-20170209-story.html.

138.   On February 17, 2017, Ms. Dehen's friend helped her create a website using the domain www.TiffanyDehen.com, where she made clear she was not backing down with her lawsuit.

139.   On February 17, 2017, Ms. Dehen received a letter from "Adolf hitter" with the email address Mod@aol.com and phone number of

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1   8585676545 at 8:07:24 PM that said, "Heil hitter u racist dumb broad".

2   *Please see* Exhibit 74.

3       140.   On February 18, 2017 at 9:38 a.m., www.TiffanyDehen.com

4   had 4444 views. *Please see* Exhibit 75.

5       141.   On February 18, 2017 at 10:53:21 a.m., a John Doe claiming

6   the name "Anon" with the email address anon@anon.co sent Ms. Dehen a

7   message through her website contact that stated the following:

8           You are seriously an idiot.  It's called the 1st amendment.
Maybe your law school allows idiots in, maybe it's just you.  The account

9   said parody.  Good luck finding an attorney willing to pursue such a

10  frivolous claim.  Makes sense that you supported Trump; which is much
different than just voting for the idiot.  Your shit-stained eyes can't tell

11  parody from defamation with a disclaimer!  Maybe get your head out of

12  your ass? –An IP Attorney

13      *Please see* Exhibit 76.

14      142.   On February 20, 2017, 18 days after Plaintiff Ms. Dehen's

15  initial complaint went public, Ms. Dehen was involved in a serious

16  automobile collision in Pacific Beach that totaled her car and left her with

17  serious back and neck injuries, for which she sought medical treatment for

18  almost a year, and continues to seek alternative pain management

19  treatments. *Please see* Exhibits 59, 77 - 82.  The San Diego Police

20  Department refused to record an incident report regarding the accident,

21  even after requested by Ms. Dehen. *Please see* Exhibits 81 & 82.

22      143.   On February 21, 2017, Ms. Dehen, in excruciating back and

23  neck pain, went to the San Diego Police Department to again, request for

24  them to file a police report regarding the serious collision the day prior.

25  San Diego Police Department refused.  Ms. Dehen called the FBI outside

26  of the Police Department and relayed all of the information regarding the

27  automobile collision to the Bureau, out of fear and suspicion that the

28

SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

accident was intentional and related to either the underlying threatening

terroristic behavior or the freshly filed federal complaint Ms. Dehen filed

19 days prior, or both. Plaintiff Ms. Dehen respectfully requests the Court

to compel from the FBI a copy of the recording of her phone call to the

Bureau on February 21, 2017 to enter into evidence.

144.   On February 22, 2017, a professor from USD reached out to

Ms. Dehen via the contact form on her website.

145.   On February 24, 2017 at 10:35:38 a.m., a Mr. John Roberts,

C.J. with the claimed email address of Roberts@supremecourt.gov and

phone number of 202-228-7343 sent a message to Ms. Dehen through her

website contact form that said the following:

> You do realize that you will never get a legal job after filing
> that complaint? The complaint demonstrates that you learned nothing in
> law school. Nothing. It also demonstrates that you are many sandwiches
> short of a picnic basket. Seek therapy.

*Please see* Exhibit 83.

146.   On February 24, 2017 at 11:37:35 a.m. a Mr. Ben Hayes with

the email address bthayes125@gmail.com and phone number 434-284-

3221 sent a message to Ms. Dehen through her website contact form that

said the following:

> Hello Ms. Dehen, Your lawsuit came to my attention through
> the blog, Above the Law. In reading it, one thing in particular caught my
> eye. I was just curious if you are now aware that Adolf Hitler was not a
> "socialist communist" dictator. He was the leader of the Nazi party, which
> was National Socialist Democratic German Workers Party. There are pretty
> significant differences in the two, and I would be happy to send resources
> to aid in your understanding, but I am first genuinely curious to see if you
> know this or not. Best, Ben.

*Please see* Exhibit 84.

147.   On February 28, 2017, William Vogeler, Esq. with Find Law

published a biased negative news article on Plaintiff Ms. Dehen without the

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

correct facts and without any attempt whatsoever by Mr. Vogeler to reach out to Ms. Dehen for facts. *Please see* http://blogs.findlaw.com/greedy_associates/2017/02/jd-sues-twitter-and-her-alma-mater.html?utm_source=dlvr.it&utm_medium=twitter.

148.   On March 25, 2017, a second professor from USD reached out to Ms. Dehen via the contact form on her website.

149.   While Ms. Dehen would like to believe that the two aforementioned professors who reached out to Ms. Dehen did so out of fondness for Ms. Dehen as their student, in light of the surrounding circumstances Ms. Dehen chose to be cautious.  Ms. Dehen has not communicated with either of the two professors who reached out to her about any of the events at school leading up to this cause of action.  After they reached out to Ms. Dehen, she decided not to talk to them directly regarding the case or any claims against USD in order not to taint the evidence since both professors would have testimony that Ms. Dehen alleges shed light on the illegal conduct complained of herein.

150.   Ms. Dehen asked the FBI to reach out to the first professor during her home interview with the FBI because Ms. Dehen was briefly enrolled in a class taught by this professor in which the student who declared himself to be an enemy combatant of the United States was also a student (before he made the alarming statements to Ms. Dehen).  In this class, as Ms. Dehen relayed to the FBI, she specifically remembers this student going off on an Islam rant, though did not have any reason *at the time* to be alarmed by the statements made in class.

151.   As for the second professor who reached out to Ms. Dehen, Ms. Dehen alleges that immediately following the university sponsored event during which the student proclaimed himself to be an enemy

31

combatant of the United States, Ms. Dehen walked into class late with one other student from the Dean's Mixer and was yelled at by this particular professor. This was a memorable evening for Ms. Dehen since she had just been told by a fellow law student that he was "in an ISIS sleeper cell" "until he's activated" and then was yelled at by one of her favorite professors for being late which was out of the ordinary because Ms. Dehen was never late to this class. Ms. Dehen did not take hardly any notes during this class period completely out of character for Ms. Dehen and appeared visibly distraught throughout the entire class period. This particular professor approached Ms. Dehen the following class to apologize, conceding the fact that he had been harsh on her especially since her conduct was out of the norm for Ms. Dehen.

152. On May 9, 2017 at 6:04:59 p.m., a John Doe claiming the name "Sad!" with an email address of johnsmith@yahoo.com wrote the following to Plaintiff Ms. Dehen through her website contact form:

Fuck off. You're a sad excuse for a person if you support that asswipe of a President, and a terrible excuse for a wanna-be lawyer. You think you stand for the constitution and 'Merican values? What a laugh- I would be my LIFE on the fact that you couldn't beat me in court regarding any aspect of our Constitution. Enjoy these words, from someone who's actually a member of the bar in their state. Idiot.

*Please see* Exhibit 85.

153. On June 22, 2017, Mr. Vogeler published a second biased negative news article on Ms. Dehen. *Please see* http://blogs.findlaw.com/greedy_associates/2017/06/law-grad-sues-her-law-school-and-twitter.html#more.

154. On June 23, 2017, Plaintiff Ms. Dehen submitted documents related to this case with the Southern District of California, where she met an elderly woman in a wheelchair whom she helped wheel downstairs and

32

ate lunch with. *Please see* Exhibit 88. Ms. Dehen became uncomfortable when it appeared as though this woman was interested in learning details about Ms. Dehen's case not yet disclosed and tried pushing Ms. Dehen to work on her case at her "office" in downtown San Diego. After Ms. Dehen left the presence of this woman, the woman contacted Ms. Dehen about ten or more times the next two days, to the point where Ms. Dehen had to block this woman from further contact via blocking her phone number. *Please see* Exhibits 89 – 92. Plaintiff alleges the fact relevant that this woman's daughter works for Jones Day. *Please see* Exhibit 93. Plaintiff alleges collusion between Perkins Coie LLP and this woman in an attempt to extort and intimidate Ms. Dehen because Ms. Dehen alleges this woman was sent as an agent of Perkins Coie to harass and intimidate Ms. Dehen from pursuing her claims in court.

155.  On or around December 11, 2017, Plaintiff Ms. Dehen was contacted by a reporter with Bloomberg News, who asked Ms. Dehen to send her a copy of her second amended complaint before she filed it with the Court. *Please see* Exhibit 86.

156.  Plaintiff respectfully requests the record reflect she reserves the right to raise any and all issues related to collusion, intimidation, extortion, and other claims against all named and unnamed defendants should discovery reveal direct evidence of such.

## CDA § 230 IS UNCONSTITUTIONAL

157.  Perkins Coie LLP, on behalf of Twitter, asserted CDA § 230 bars jurisdiction of United States Federal District Court over this case, *please see* Perkins Coie LLP's Answer to Plaintiff's First Amended Complaint on behalf of Twitter Inc. The fact that Perkins Coie LLP already tried to assert CDA § 230 as a bar to Plaintiff's claims against Twitter

1   merely provides further evidence in favor of Plaintiff's argument that CDA

2   § 230 is unconstitutional and needs to be stricken down by this Court

3   immediately.

4       158.   CDA § 230 does not bar claims arising from breach of

5   contract, *please see Baldino's Lock & Key Service, Inc. v. Google LLC*,

6   2018 WL 400755 at *1 (D.D.C., 2018), nor does CDA § 230 bar claims

7   arising from promissory estoppel, *please see Barnes v. Yahoo!*, 570 F.3d

8   1096 (9th Cir. 2009).   Contrary to Perkins Coie LLP's absurd assertion,

9   Plaintiff's claims against Defendant Twitter are not barred by CDA § 230

10  as Plaintiff alleges claims against Defendant Twitter for actions taken by

11  Twitter, not that of a third party, which consist of fraud in the form of

12  fraudulent misrepresentation to Plaintiff personally on more than one

13  occasion, indicating a pattern of racketeering in violation of 18 U.S.C. §

14  1962, further explained below.   Twitter then attempted to intimidate and

15  extort Ms. Dehen into dropping her legal claims against Twitter, again, not

16  considered activity of a third party for which CDA § 230 is used to bar.

### CDA § 230 Exceeds Legislative Power

18      159.   Plaintiff respectfully requests that the record reflect she

19  reserves the right to argue the CDA § 230 exceeds legislative power should

20  this Court not strike down CDA § 230 as unconstitutional for violating the

21  First Amendment.

### CDA § 230 Violates The First Amendment

23      160.   Plaintiff hereby incorporates by reference all stated paragraphs

24  as though fully set forth herein.

25      161.   As the plaintiffs in *American Freedom Defense Initiative, et*

26  *al., v. Loretta Lynch* 2016 WL 3881116 (D.D.C.) argue, Plaintiff argues

27  CDA § 230 is in violation of the First Amendment of the United States

28

SECOND AMENDED COMPLAINT    No.: 17-cv-00198-LAB-WVG

1  Constitution.  Should this case uphold the constitutionality of CDA § 230,
2  Plaintiff reserves the right to bring claims against Twitter and Perkins Coie,
3  LLP for First Amendment violations against Plaintiff.

4      162.  Section 230 of the CDA, facially and as applied, is a content
5  and viewpoint based restriction on speech in violation of the First
6  Amendment.

7      163.  Section 230 of the CDA, facially and as applied, is vague and
8  overbroad and lacks any objective criteria for suppressing speech in
9  violation of the First Amendment.  In *O'Kroley v. Fastcase, Inc.,* 831 F.3d
10  352, 355 (6th Cir. 2016), the Sixth Circuit reasoned that "the CDA
11  immunizes a search engine's 'automated editorial acts.'" *Baldino's Lock &*
12  *Key Service, Inc. v. Google LLC*, 2018 WL 400755 at *5 (D.D.C., 2018)
13  citing *O'Kroley v. Fastcase, Inc.,* 831 F.3d 352, 355 (6th Cir. 2016).
14  Plaintiff argues 'automated editorial acts' could and does include editorial
15  acts which are discriminatory against a certain viewpoint based on the
16  content in violation of the First Amendment, such as censorship alleged
17  against Twitter, YouTube, Facebook, Google, whether it be intentional or
18  through their algorithms.

19      164.  The Sixth Circuit continued, "[w]hen a search engine re-
20  publishes information originally created by a third party, CDA immunity
21  applies even when confusion may result." *Baldino's Lock & Key Service,*
22  *Inc. v. Google LLC*, 2018 WL 400755 at *5 (D.D.C., 2018) citing *O'Kroley*
23  *v. Fastcase, Inc.,* 831 F.3d 352, 355 (6th Cir. 2016).  In "common sense
24  terms", no companies should be given free reign over censoring American
25  citizens' freedom of speech in exchange for no risk of liability, extending
26  all the way to barring any potential causes of action.  No policy interest
27  here outweighs the importance of free speech.  Plaintiff alleges her freedom
28

SECOND AMENDED COMPLAINT    No.: 17-cv-00198-LAB-WVG

of speech has been censored and suppressed via intimidation through express terroristic threats made against herself and her dog which was then exacerbated by Twitter's fraudulent misrepresentations and failure to uphold its contractual obligations.

165.   Section 230 of the CDA, facially and as applied, permits Twitter and similar companies such as Facebook, YouTube and Google to engage in government-sanctioned discrimination and censorship of free speech in violation of the First Amendment, such as alleged in *American Freedom Defense Initiative, et al., v. Loretta Lynch* 2016 WL 3881116 (D.D.C.). These same companies are alleged to make similar fraudulent misrepresentations as Twitter without enforcing their expressly stated promises, such as alleged against YouTube for example in *Prager University v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, (N.D. Cal. Mar. 26, 2018).

166.   Section 230 of the CDA, facially and as applied, permits Twitter and similar companies such as Facebook, YouTube and Google to engage in government-sanctioned discrimination that would otherwise violate California Civil Code § 51. *Please see American Freedom Defense Initiative, et al., v. Loretta Lynch* 2016 WL 3881116 (D.D.C.).

167.   Section 230 of the CDA, facially and as applied, permits Twitter and similar companies such as Facebook, YouTube and Google to engage in government-sanctioned censorship of speech that would otherwise violate Article I, section 2 of the California Constitution. *Id.*

168.   Section 230 of the CDA, facially and as applied, confers broad powers of censorship upon Twitter and similar companies like Facebook, YouTube and Google officials, who can censor constitutionally protected speech and engage in discriminatory business practices with impunity by

36

virtue of this power conferred by the federal government in violation of the First Amendment. *Id.*

169.   Section 230 of the CDA, facially and as applied, grants Twitter and similar companies like Facebook, YouTube and Google and their officers, agents, and employees unbridled discretion to censor speech such that their decisions to limit speech are not constrained by objective criteria, but may rest on ambiguous and subjective reasons in violation of the First Amendment. *Id.*

170.   Plaintiff argues if large online companies such as Twitter, Facebook, and Google don't have the manpower to appropriately respond to illegal conduct harming American citizens as *they explicitly promise to do*, these international companies should not be able to use their large size as an excuse or shield protecting them from civil liability. Plaintiff does not take issue with the size of the company, rather Plaintiff takes issue with these companies citing impossibility as a valid concern contributing to their unfair unilateral unconstitutional protection afforded by the CDA.

171.   The United States Constitution does not guarantee freedom of speech to *citizens of the world,* or any of the powers vested therein. The United States Constitution grants freedom of speech to <u>citizens of the United States</u>. *Please see* U.S. Const. Am. 1. As just a few examples, Facebook claiming protection of CDA § 230 used the safe harbor to bar allegations that Facebook allowed Palestinian terrorist organization and its members to operate accounts to further their aims. *Please see Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 146 (E.D.N.Y. 2017). Google successfully asserted immunity under CDA § 230 against claims brought by family members of deceased victim of terrorist attack under Anti-Terrorism Act alleging Google provided material support to ISIS. *Please*

SECOND AMENDED COMPLAINT            No.: 17-cv-00198-LAB-WVG

1   *see Gonzalez v. Google, Inc.,* 282 F. Supp. 3d 1150 (N.D. Cal. 2017).

2   American citizens' freedom of speech are being suppressed for their

3   content and viewpoint by these same companies under CDA § 230.  *Please*

4   *see Green v. YouTube Inc. et al.,* No. 18-CV-203-PB (D.N.H. 2018).

5       172.   The unconstitutional CDA is wasting precious judicial

6   resources.  There are countless cases pending before various federal and

7   state courts, in addition to numerous published cases alleging wrongdoing

8   of companies which fall under the broad scope of the CDA, a fraction of

9   which are cited in this complaint.  On Westlaw there are 7,000 cases that

10  cite to CDA § 230.  *Please see* Exhibit 87.

## IF THIS COURT ERRONEOUSLY HOLDS CDA § 230 CONSTITUTIONAL, IT DOES NOT APPLY IN THIS CASE

13      173.   "[A] website does not create or develop content when it

14  merely provides a neutral means by which third parties can post

15  information of their own independent choosing online."  *Baldino's Lock &*

16  *Key Service, Inc. v. Google LLC,* 2018 WL 400755 (D.D.C., 2018), quoting

17  *Klayman v. Zuckerberg,* 753 F.3d 1354, 1357 (D.C. Cir. 2014).  Plaintiff

18  avers that the operating word in that sentence is "neutral," of which

19  Plaintiff alleges Twitter is not.  Plaintiff alleges Twitter does not provide a

20  neutral means by which third parties can post information of their own

21  independent choosing online, but Twitter is actually quite the opposite.

22      174.   "[P]ublication involves reviewing, editing, and deciding

23  whether to publish or to withdraw from publication third-party content."

24  *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1102 (9th Cir. 2009).  (A publisher is

25  one who "reviews material submitted for publication, perhaps edits it for

26  style or technical fluency, and then decides whether to publish it.");  *Doe v.*

27  *Internet Brands, Inc.,* 824 F.3d 846, 852 (9th Cir. 2016) ("Jane Doe's failure

28

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

to warn claim has nothing to do with Internet Brands' efforts, or lack thereof, to edit, monitor or remove user generated content.").

175.   Contrary to Perkins Coie LLP's claims on behalf of Twitter in response to Plaintiff's First Amended Complaint, "Plaintiff's claims target Twitter's exercise of editorial discretion and improperly attempt to hold Twitter liable for the conduct of the account creator," (*see generally* Twitter's Motion to Dismiss Plaintiff's First Amended Complaint), Plaintiff's claims against Twitter do not attempt to hold Twitter liable for the conduct of the account creator.

176.   As explained further below, Plaintiff's claims against Twitter attempt to hold Twitter liable for Twitter's conduct including, but not limited to, express contractual obligations and explicit promises, and not that of the account creator, John Doe.  Plaintiff also alleges fraud, conspiracy to commit fraud, and violations of the RICO act against Twitter, none of which are barred by the CDA.

### CDA § 230 Does Not Bar Claims Brought Under The Federal RICO Act

177.   Claims of Twitter engaging in a criminal enterprise under the definition of the RICO act are not barred by CDA § 230 because operating a criminal enterprise in violation of the RICO Act is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Breach of Contract Claims

178.   Twitter breaching its contract with Ms. Dehen is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Fraud Claims

39

179.   Twitter engaging in fraud is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

180.   Similarly, Twitter fraudulently misrepresenting in its posted Terms of Use is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Extortion Claims

181.   Twitter engaging in extortion is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Conspiracy Claims

182.   Twitter engaging in a criminal and/or civil conspiracy is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets as a publisher.

183.   Plaintiff further reserves the right to allege that Twitter illegally conspired as a co-conspirator in the fraudulent scheme amounting to a violation of the Sherman Act, a conspiracy in the restraint of trade in interstate commerce, with both Perkins Coie LLP and social media companies including, but not limited to, Facebook and Google.

### FIRST CAUSE OF ACTION
### Willful Copyright Infringement
### Against John Doe(s)

184.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

185.   Plaintiff is, and at all relevant times has been, the legal copyright owner, under U.S. Copyright Law, 17 U.S.C. § 201(a), of the

40

copyrighted photographs referenced above. Registration Numbers have been officially issued by the U.S. Copyright Office of the copyright registrations identified in Exhibits 68, 69, 70, and 71 attached hereto, which is the subject of a valid Certificate of Copyright Registration issued by the United States Copyright Office.

186. Registration is a prerequisite to filing a lawsuit for copyright infringement involving a U.S. work. *See* 17 U.S.C. § 411(a); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 132 S. Ct. 1962, 1977 (2014) ("Although registration is 'permissive,' both the certificate and the original work must be on file with the Copyright Office before a copyright owner can sue for infringement."); *Alaska Stock, LLC. v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 678 (9th Cir. 2014) ("Though an owner has property rights without registration, he needs to register the copyright to sue for infringement.").

187. Plaintiff submitted federal copyright registration applications for all four photographs on 03/31/2017 and 04/01/2017, which she is entitled to do under 17 U.S.C. § 410 within five years after first publication of the works.

188. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act is the exclusive right to reproduce the Copyrighted Works and to distribute the Copyrighted Works to the public.

189. Plaintiff is informed and believes and thereon alleges that John Doe(s), without the permission or consent of Plaintiff, produced the six Infringing Works, which are substantially similar, not to mention extremely damaging, reproductions of the four Copyrighted Works referenced above.

190. Plaintiff is informed and believes and thereon alleges that Doe(s) distributed the Copyrighted Works to the public, and/or made the

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Copyrighted Works available for distribution to others, and publicly displayed the Infringing Works, including via the Twitter account @tiffanydehen, on Twitter, a social media website with over 313 million active monthly users.

191.  Through the conduct alleged herein, Doe(s) directly infringed Plaintiff's rights in the Copyrighted Works, including by reproducing, distributing, and publicly displaying the Copyrighted Works, in violation of Sections 106 and 501 of the Copyright Act 17 U.S.C. §§ 106 and 501.

192.  Defendant Doe(s)'s actions constitute direct infringement of Plaintiff's copyrights and exclusive rights under U.S. Copyright Law.

193.  Doe(s)'s acts of infringement are willful, intentional and purposeful, in reckless disregard of and with indifference to Plaintiff's rights.

194.  Doe(s) is/are not entitled to the affirmative defense of fair use in this case because Doe(s)'s use of the infringing works is in the same market as Plaintiff and actually damaging Plaintiff's economic prospects in that market.  Doe(s)'s use of the Copyrighted Works does not constitute social commentary, criticism, or news reporting because Doe(s) used Ms. Dehen's legal name as the author of the posts, leading the public to believe Ms. Dehen was responsible for the Twitter account.  124.  The artistic nature of the Copyrighted Works weighs against fair use, as do the facts that, Doe(s) used the Copyrighted Works in their entirety and Doe's use is negatively impacting the potential market for the Copyrighted Works.

195.  By means of the actions complained of herein, Doe(s) willfully infringed and may continue to infringe Plaintiff's Copyrighted Works outlined above, by publishing, reproducing, copying, distributing, and using, in whole or in part, Plaintiff's Copyrighted Works.

196.   As a direct and proximate result of Defendant Doe(s)'s infringement of Plaintiff's copyrights and exclusive rights in the Copyrighted Works under U.S. Copyright Law, Plaintiff is entitled to recover actual damages, pursuant to 17 U.S.C. § 504(b), for her lost profits as a result of Defendant's infringement, in an amount to be proven at trial.

197.   Had Plaintiff registered her copyright three days earlier than 04/01/2017 in the work titled, "Christmas MAGA," Plaintiff would further be entitled to statutory damages in an amount to be determined by the trier of fact, attorneys' fees and costs pursuant to 17 U.S.C. §§ 412(c), 504, 505 since the date the infringement began was 01/29/2017.  Plaintiff would have also been entitled to an enhancement of her statutory damages award, up to $150,000 for each infringement, pursuant to 17 U.S.C. § 504(c)(2).

198.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

199.   Plaintiff is informed and believes and on that basis alleges that unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's rights in the Copyrighted Works and cause Plaintiff irreparable injury that cannot be fully compensated.

200.   Therefore, pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct, including, but not limited to, an order prohibiting Defendant Doe(s) from further infringing Plaintiff's copyrights and directing Defendant to destroy the Infringing Works and all identical and substantially similar copies thereof made in violation of Plaintiff's exclusive rights.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

## SECOND CAUSE OF ACTION

### Malicious Defamation Through Libel Per Se

### Against John Doe

201.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

202.   Doe(s)'s intentional publications by Internet were and are false, unprivileged, have a natural tendency to injure, and cause special damage, and thus constitute defamation per se under California Civil Code sections 44, 45, and under the common law and case law of California.

203.   Plaintiff is informed and believes, and thereon alleges, that Doe(s) intentionally created the Twitter account using the domain @tiffanydehen, knowing that he was not in fact, Ms. Dehen, and deliberately posted each one of the aforementioned defaming Tweets.

204.   Doe(s) expressly referred to Plaintiff in each Tweet because he used Plaintiff's true and legal name as the username.  Further, Defendant used actual photographs of Ms. Dehen to represent Ms. Dehen and retweeted Ms. Dehen's personal Twitter account.

205.   Doe(s) claimed to be a parody account of "Republican White Women," yet posted no other tweets from any "Republican White Women" other than Ms. Dehen.

206.   Doe(s)'s actions are clearly intentional, as evidenced by the fact that Doe(s) expended a considerable amount of time and effort creating the false Twitter account, following the aforementioned 22 Twitter users, meticulously downloading and altering the 4 copyrighted photos from both Twitter and LinkedIn, publishing the six Infringing Works, and posting the 24 defaming tweets.

207.   The defamatory tweets were not privileged.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

208.   Doe(s) did not engage in a one-time piece of snideness, but rather a campaign against Ms. Dehen with defamatory accusations that tarnish and disparage her and hurt her reputation and economic interests.

209.   Doe(s) deliberately published the Infringing Works with the defaming Swastikas drawn in, with the intent to refer to the National Socialist German Workers' Party, evidenced by the fact he followed Adolf Hitler Fuhr through the Twitter account.

210.   Plaintiff is informed and believes, and thereon alleges, that the publication by Internet is a communication to the public, and to third parties, who reasonably understood that the defaming tweets and photographs were about Ms. Dehen or posted by Ms. Dehen, and that such third parties further reasonably understood the statements to mean that either Doe(s) or Ms. Dehen wrote the statements in fact, and not merely as a matter of Doe(s)'s opinion.

211.   Doe(s) did not lead the public to believe that the defaming account was a parody of Ms. Dehen, but rather a parody of Republican White Women in general, yet only used Ms. Dehen's true name and only drew Swastikas on Ms. Dehen's photographs, thereby contradicting the true nature of the Twitter account.

212.   Although there were only three followers at the time Ms. Dehen found the account, Ms. Dehen has no way to know how many people actually saw the offending account and various tweets.

213.   The defaming account actually did cause confusion in the marketplace because at least one of Ms. Dehen's actual followers followed the account, @BrittTaylorGOP, who is Ms. Dehen's follower of her personal Twitter account @tiffanysundevil. *See* Exhibit 56.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

214.   The representation of Ms. Dehen on the Twitter account is false, as Ms. Dehen is not a supporter of the National Socialist German Workers' Party, nor a supporter of the Ku Klux Klan.

215.   The tweets are not legitimate criticism, they are not parody, they are not joking, and they are not ironic.

216.   The defaming statements are particularly malicious and harmful, as Doe(s)'s attacks actually constitute an attack on an aspect of Ms. Dehen's heritage and Ms. Dehen's late grandfather, Captain John D. Raikos suffered extreme emotional distress the duration of his life from what he saw in the war related to the 83rd Infantry's liberation of Nazi concentration camps.

217.   Further, Doe(s)'s statements have the potential to damage actual professional relationships that exists between Plaintiff and the Tucson Jewish Community Center and between Plaintiff and the State Bar of California.

218.   Had John Doe(s) acted in good faith, a simple Google search of Ms. Dehen would have shown Doe(s) that Ms. Dehen's late grandfather was Captain John D. Raikos, who was awarded the following decorations for his role in the 83rd Infantry of the United States Army in World War II: Combat Infantryman Badge, Silver Star Medal, Bronze Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good Conduct, American Campaign Medal, WWII Victory Medal, and the EAME Campaign Medal with 5 Bronze Stars for the Five Campaigns. *See* Exhibit 1 or visit http://www.normandytothebulge.be/83rd_JRaikos.html.

219.   Plaintiff contends Doe(s)'s actions fall outside the protection of the First Amendment, even for purposes of anonymous speech, which can't be remedied by a simple disclaimer of "parody account," while using Ms.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Dehen's true legal name as the username, publishing Ms. Dehen's copyrighted photographs altered with disparaging Swastikas, and expressly suggesting Ms. Dehen is affiliated with the National Socialist German Workers' Party or the Ku Klux Klan.

220.   The defamatory statements Doe(s) published on Twitter were of and concerning Plaintiff, cast Ms. Dehen in a false light, were attacks on her reputation which discouraged members of the public from having a positive opinion of her, and exposed Ms. Dehen to potential verbal, physical, and mental abuse.

221.   The defaming Twitter account is adverse to Plaintiff's profession and business and the defamatory publications foreseeably caused substantial damage to her business, career, reputation and her actual and prospective economic relationships.

222.   Plaintiff's reputation is subjected to scrutiny in the legal profession, as well as in the Bar application process.

223.   The injurious character of the defamatory statements on Twitter is self-evident and constitutes defamation per se.

224.   Plaintiff is not required to allege special damages because Doe's statements are defamatory on their face, such that the statements malign the Plaintiff's profession and business.

225.   The nature of the Twitter account, related tweets and photographs are so obscene as to lead Plaintiff to allege Doe(s) published the aforementioned tweets maliciously with the intent to cause pain and suffering to Ms. Dehen and to destroy her professional reputation and to cause her to lose clients and job prospects.

226.   Doe(s)'s intent to act with malice is evidenced by the injurious nature of each of the tweets, the misspelling on the various tweets and

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

photographs, the fact Doe used Ms. Dehen's true and legal name, and the inherently injurious nature of the Twitter accounts Doe followed, such as the Ku Klux Klan and Adolf Hitler.

227. Further, Doe(s) knew, or should have known, that Ms. Dehen was actively seeking bar admittance and a position in the legal industry, as evidenced on Ms. Dehen's Twitter account and LinkedIn, both of which he deliberately referenced to obtain Ms. Dehen's personal information and photographs. *See* Exhibits 60-61.

228. Upon information and belief, Doe(s) even went to such lengths to create false Facebook accounts and harass Ms. Dehen with several friend requests in an attempt to gain more personal information on Ms. Dehen.

229. Plaintiff believes the actions by Doe(s) may reduce her chances of passing the bar, which will prevent her from being admitted to the bar, and thus, could limit her prospects in the legal industry.

230. Plaintiff was in the process of pursuing several business ventures which would rely upon her reputation, and which have been damaged and put on hold by the injury that led to this cause of action, and may even limit the future revenue generated by these business ventures.

231. Plaintiff's credit has been negatively impacted, which may affect her ability to finance assets and obtain employment, thus potentially negatively impacting her quality of life.

232. In attempting to defend her name in Court, Plaintiff has been subjected to widespread criticism and condemnation from various members of the legal community, as well as certain classmates, family, friends and acquaintances, in addition to harassment and abuse by some members of the public.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

233. Doe(s)'s statements have not only caused damage to Ms. Dehen's reputation and economic interests, but have also resulted in emotional distress. *See* Seventh Cause of Action below.

234. As a result of Doe(s)'s conduct, Plaintiff has been damaged in an amount to be proven at trial.

235. Doe(s)'s intentional and knowing per se defamation of Ms. Dehen constitutes malice and oppression under California Civil Code section 3294, and therefore Plaintiff is entitled to punitive damages against Twitter in an amount sufficient to punish and set an example of him, which amount is to be proven at trial.

## THIRD CAUSE OF ACTION

### Violation of Cal. Penal Code § 528.5

### Against John Doe(s)

236. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

237. Plaintiff alleges Doe(s) is criminally liable under Cal. Penal Code § 528.5, because Doe credibly impersonated Ms. Dehen, an actual person, online, and without Ms. Dehen's consent, for the purposes of harming, intimidating, or threatening her, which pursuant to Cal. Penal Code § 528.5(e), entitles Ms. Dehen to compensatory damages and injunctive relief, as well as other equitable relief because she suffered damage and loss.

238. Upon information and belief, John Doe(s) engaged in a predatory scheme aimed at harming, humiliating, threatening, and intimidating Plaintiff leading up to and including the injury that led to this cause of action.

239. Due to the injurious nature of the tweets and photographs, Plaintiff alleges Doe(s) impersonated Ms. Dehen with the intent to cause Ms.

Dehen harm to her personal reputation, professional reputation, economic interests, and profession.

## FOURTH CAUSE OF ACTION

### Rescission For Fraud In Violation of Cal. Civil Code § 1572 or § 1573
### Against Twitter

240.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

241.   Pursuant to California Civil Code § 1689, an alleged contract may be rescinded if all the parties thereto consent or if the consent of the party rescinding was given by mistake, or obtained through fraud, or exercised by or with the connivance of the party as to whom it rescinds.

242.   Rescission under California Civil Code § 1689 is also appropriate where the purported contract was induced by fraud, misrepresentation, and/or fraudulent misrepresentation, or where there is failure of consideration.

243.   On October 9, 2015, Twitter fraudulently misrepresented to Plaintiff that Twitter would investigate reported accounts to determine if the accounts are in violation of the Twitter Rules upon receipt of an impersonation report by Plaintiff.

244.   Twitter violated California Civil Code § 1572 by promising to investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules in the Impersonation Policy, without any intention of performing the aforementioned investigation upon receipt of an impersonation report.

245.   Plaintiff alleges Twitter had no intention of investigating the reported account unless and until Plaintiff provided additional information in the form of a government issued identification card.

246.   In addition, there is a failure of consideration with respect to the revised Impersonation Policy in that they are illusory, and lack mutuality because Plaintiff relied upon Twitter's fraudulent misrepresentation that it would investigate offending accounts upon receipt of an impersonation report when she entered into the user agreement with Twitter; Plaintiff has been harmed by a result of that reliance.   Under basic contracts principles Twitter is not allowed to change its contractual terms unilaterally after partial performance.

247.   Plaintiff alleges Twitter failed to disclose material terms of the user agreement by purposely not disclosing the fact Twitter would need a government issued photograph identification in order to proceed with an investigation into an account reported to be in clear violation of the Impersonation Policy under the Twitter Rules.

248.   Twitter benefitted from the concealment of the true impersonation process by, *inter alia*, the advertising revenues Twitter earned off of the impersonating account.

249.   Upon information and belief, Plaintiff alleges that at such time as these representations were made, Twitter intended that Plaintiff would rely on their representations.

250.   Plaintiff was harmed, and similarly situated plaintiffs continue to be harmed, by their reliance upon the representation of Twitter that it will take down impersonating accounts upon receipt of an impersonation report.

251.   The false representation of Twitter was a substantial factor in causing harm to Plaintiff in the form of economic injury and emotional distress.

252.   If Twitter's actions do not amount to actual fraud under California Civil Code § 1572, which is a question of fact for the fact finder,

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Plaintiff alleges Twitter engaged in constructive fraud in violation of California Civil Code § 1573 because even lacking fraudulent intent, Twitter gained an advantage through advertising revenues off of the impersonation of Plaintiff, for which Twitter promised to remove upon receipt of an impersonation report, and Plaintiff relied on and was harmed by Plaintiff's failure to do so.

253.  Plaintiff intends service of the Summons and Complaint in this action to serve as notice of rescission of the additional impersonation policy imposed on Plaintiff after Plaintiff performed.

254.  Plaintiff reserves the right to add a class of Plaintiffs which might be similarly situated to this cause of action as the lead Plaintiff, in the interest of justice if so required, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

255.  Plaintiff contends Twitter cannot successfully assert Communications Decency Act (CDA) § 230 as a defense to this action, as CDA § 230 does not bar causes of action that arise out of breach of contract.  The Ninth Circuit held, and reaffirmed, that the CDA does not declare "a general immunity against all claims derived from third-party content."  *See Barnes v. Yahoo!, Inc.*, 570 F.3d at 1100; *see also Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016).

### FIFTH CAUSE OF ACTION

#### Declaratory Relief

#### Against Twitter

256.  Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

257.  An actual, justiciable controversy has arisen and now exists between Plaintiff and Twitter, relating to their respective legal rights, duties

and obligations, such that it is necessary for the Court to determine the parties' respective rights , duties and obligations.

258.   Plaintiff therefore respectfully requests that this Court enter an Order, pursuant to 28 U.S.C. § 1692:

a) That the Terms of Use Agreement set forth above are void *ab initio*;

b) In the alternative, order that the contract between Plaintiff and Twitter is unenforceable on the grounds that it is illusory, lacks mutuality, fails of consideration;

c) In the alternative, order that the contract between Plaintiff and Twitter is rescinded pursuant to California Civil Code §1689 on the grounds that they were mutually rescinded, Plaintiff's consent was given by mistake, obtained through fraud, concealment and misrepresentation, and/or exercised by or with the connivance of Twitter, and there is failure of consideration;

d) Order that Plaintiff is under no legal obligation to compensate or pay Twitter under the terms of the contract between Twitter and Plaintiff as it is void *ab initio*, unenforceable, and/or rescinded; and

(e) Ordering the parties restored to their former positions and requiring them to return whatever they received, if anything, under the revised contract pursuant to California Civil Code § 1692.

## SIXTH CAUSE OF ACTION

### Intentional Interference With Actual and/or Prospective Economic Relations

### Against John Doe(s)

259.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1      260.  Plaintiff alleges intentional interference with actual and
2  prospective economic relations against John Doe(s).

3      261.  Plaintiff has numerous business ventures in place she is
4  currently pursuing, including admittance to the California Bar, a job in the
5  legal profession, as well as various business ventures that probably would
6  have resulted in a future economic benefit to Plaintiff.

7      262.  John Doe(s) knew, at the very least, that Plaintiff was currently
8  seeking admittance to the State Bar of California through direct evidence
9  including, but not limited to, Plaintiff's various social media profiles Doe
10  used in creating the Twitter account and content, notably Plaintiff's LinkedIn
11  profile which specifically references the fact that Plaintiff was enrolled at the
12  University of San Diego Law School as a Juris Doctor Candidate 2016,
13  which is the social media profile Doe found the photograph titled, "Tiffany
14  Pro," as Plaintiff alleges, upon information and belief, that LinkedIn is the
15  only social media platform which she posted the photograph titled, "Tiffany
16  Pro."

17      263.  John Doe(s) intended to disrupt Plaintiff's admittance to the
18  State Bar of California by engaging in the wrongful conduct referenced
19  above.

20      264.  John Doe(s) failed to act with reasonable care and engaged in
21  wrongful conduct, referenced above.

22      265.  Doe(s)'s actions were intentionally made and were foreseeably
23  and substantially certain to cause interference with Plaintiff's actual and/or
24  prospective business relationships by damaging Plaintiff's good name and
25  reputation, and deterring persons and entities from doing business with her.

26      266.  Doe(s)'s conduct alleged herein actually interfered with
27  Plaintiff's actual and/or prospective business relationships as referenced
28

54

above.  Plaintiff has an actual business relationship with the Tucson Jewish Community Center, of which is reasonably foreseen to be damaged as a result of Doe(s)'s despicable conduct.

### SEVENTH CAUSE OF ACTION

#### Intentional Infliction of Emotional Distress

#### Against John Doe

267.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

268.   At all times relevant to the matters alleged in this Complaint, John Doe(s) owed a duty of care to prevent Plaintiff from being injured as a result of Doe(s)'s conduct.

269.   Doe(s) intentionally, willfully and maliciously breached the aforesaid duty of care owed to the Plaintiff and engaged in extreme and outrageous conduct by viciously impersonating and defaming Plaintiff.

270.   John Doe(s) engaged in this extreme and outrageous conduct with the intent of causing, or in reckless disregard of the probability of causing, severe emotional distress to the Plaintiff.

271.   As a direct and proximate result of Doe(s)'s extreme and outrageous conduct, Plaintiff has suffered extreme mental and emotional distress.   Plaintiff feared, and continues to fear, for her physical safety.  Plaintiff will likely incur medical expenses, including expenses for psychiatric care and psychological counseling services.

272.   Plaintiff will seek leave to amend this complaint once the identity/identities of John Doe(s) is/are confirmed to include additional harassment which Plaintiff suspects occurred in connection with the injuries stated herein.

### EIGHTH CAUSE OF ACTION

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

**Negligent Inflication of Emotional Distress**

**Against Twitter**

273.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

274.   At all times relevant to the matters alleged in this Complaint, Twitter owed a duty of care to prevent Plaintiff from being injured as a result of Twitter's conduct.

275.   Twitter breached the aforesaid duty of care owed to the Plaintiff by breaching its contract with Plaintiff and then allowing the continued publication of Doe's harmful conduct to persist after breaching its contract with Plaintiff.

276.   As a direct and proximate result of Twitter's negligent conduct, Plaintiff has suffered extreme mental and emotional distress.   Plaintiff feared, and continues to fear, for her physical safety, and that she will be wrongly accused in the public view.   Plaintiff will likely incur medical expenses, including expenses for psychiatric care and psychological counseling services.

## NINTH CAUSE OF ACTION

### Civil Conspiracy

277.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

278.   Plaintiff reserves the right to bring any and all additional causes of action including but not limited to, a cause of action for civil conspiracy amongst any or all of the named and unnamed defendants.

279.   Plaintiff reserves the right to bring a cause of action for civil conspiracy, as well as amend the above Causes of Actions accordingly, if discovery reveals that it is probable that more than one individual engaged

1    in the procurement, constructing, or publishing of the Twitter account with
2    domain @tiffanydehen and Infringing Works, in any capacity whatsoever to
3    Defendants' economic benefit and Plaintiff's economic harm.

4        280.   Plaintiff reserves the right to bring any and all additional causes
5    of action against any or all defendants who conspired together, or acted
6    alone, in illegally extorting and/or exploiting Plaintiff to Plaintiff's harm and
7    Defendant's benefit.

8        281.   Plaintiff reserves the right to bring additional claims including,
9    but not limited to, claims relating to conflicts of interest against Perkins Coie
10   LLP. For the record, Plaintiff alleges Perkins Coie LLP attempted to exploit
11   and extort her illegally for their client's illegal gains. Plaintiff goes so far as
12   to allege that discovery will prove that Perkins Coie LLP is guilty of
13   violating numerous federal laws including, but not limited to, conspiring in
14   the restraint of trade in violation of the Sherman Act, obstructing justice,
15   impeding federal law enforcement investigations, contempt of court, treason,
16   conspiracy to commit treason, racketeering activity in violation of the RICO
17   statute mentioned above including operating a criminal enterprise, engaging
18   in patterns of fraud, extortion, exploitation and blackmail. It would not be
19   the first time Perkins Coie LLP was accused of aiding and abetting its clients
20   in the commission of crimes, as Perkins Coie is currently at the center of a
21   wide scale United States investigation which includes possible claims of
22   treason, jeopardizing the ethical standards of the entire international law
23   firm. *Please see* the recently declassified Nunes Memo available here:
24   https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=85
25   6.

26                          **TENTH CAUSE OF ACTION**
27                      **Violation of 18 U.S. Code § 1962**

28

**Against Twitter**

282.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

283.   Plaintiff brings a Cause of Action under 18 U.S. Code § 1964 against Twitter for the injuries sustained by Plaintiff, and all other individuals similarly situated if justice permits or requires pursuant to the Federal Rules of Civil Procedure Rule 23, as a result of Twitter's fraudulent misrepresentations and scheme to defraud in violation of 18 U.S. Code § 1962(C).

284.   At all relevant times, Defendant Twitter was a "person" within the meaning of 18 U.S.C. § 1961(3) because it was "capable of holding a legal or beneficial interest in property."

285.   Twitter is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which Defendant Twitter conducted the pattern of racketeering activity described herein.   Throughout its existence, Twitter engaged in, and its activities affected interstate commerce because it involved commercial activities across state lines, including national marketing campaigns and the solicitation and receipt of money in the form of advertising revenues from victims located throughout the country.

286.   Plaintiff alleges Twitter participated in a pattern of racketeering activity, as defined by 18 U.S.C. § 1962(5), consisting of numerous and repeated uses of interstate wire communications to execute a scheme to defraud in violation of 18 U.S.C. § 1962(c).

287.   The fraudulent express misrepresentations by Twitter of the terms of the Twitter User Agreement was created and/or used as a tool to carry out the Scheme and pattern of racketeering activity.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

288.   Plaintiff alleges Defendant Twitter has committed at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. § 1343, within the past ten years.  The multiple acts of racketeering activity that they committed and/or conspired to, or aided and abetted in the commission of, were related to each other, pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."

289.   Defendant Twitter's predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1) include, but are not limited to:

(a) Wire Fraud: Defendant Twitter violated 18 U.S.C. § 1343, by transmitting and receiving, or causing to be transmitted or received, materials by wire for the purpose of executing the Scheme, which amounts to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions.   The materials transmitted and/or received include but are not limited to, interstate credit card transactions, publication by Internet promoting the Scheme, and the fraudulent misrepresentation in Twitter's Terms of Use.

290.   Defendant Twitter knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose.  Defendant Twitter either knew or recklessly disregarded that these were material misrepresentations and omissions.

291.   Defendant Twitter obtained money and property belonging to Plaintiff, and the Class as a result of these violations.   Plaintiff alleges Plaintiff and other Class Members been injured in their business or property by Defendant Twitter's overt acts of wire fraud.

292.   Plaintiff and the Class have been injured in their property by reason of Twitter's violations of 18 U.S.C. § 1962, including the damage

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

done to Plaintiff's reputation as a result of relying on Twitter's fraudulent misrepresentation, which collectively amounts to tens of millions of dollars, plus the advertising revenues Twitter obtained off the fraudulent misrepresentations.  In the absence of Defendant Twitter's violations of 18 U.S.C. § 1962, Plaintiff and the Class would not have incurred these losses.

293.   Plaintiff's and the Class's injuries were directly and proximately caused by Defendant Twitter's racketeering activity.

294.   Twitter knew and intended that Plaintiff and the Class would rely on the Scheme's fraudulent misrepresentations and omissions.  Defendant Twitter knew and intended Plaintiff, and the Class, would enter into the terms of use, and pay advertising fees, as a result of the same.

295.   Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover their treble damages, the costs of bringing this suit and reasonable attorneys' fees.

296.   Defendant Twitter is accordingly liable to Plaintiff and the Class for three times their actual damages as proved at trial plus interest and attorneys' fees.

### ELEVENTH CAUSE OF ACTION

#### Libel

#### Against Twitter

297.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

298.   Plaintiff reserves the right to bring a cause of action against Twitter for libel in violation of California Civil Code § 45 in light of the fact that plaintiffs in a case on appeal in the D.C. Circuit are currently seeking a permanent injunction from the Attorney General to declare CDA § 230

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1    unconstitutional. *See American Freedom Defense Initiative et al. v. Lynch*,

2    No. 16-cv-1437, 2016 WL 6635634 (D.D.C. Nov. 9, 2016).

**TWELFTH CAUSE OF ACTION**

**Violation of 18 U.S. Code § 1962**

**Against USD**

6    299.   Plaintiff hereby incorporates by reference all stated paragraphs

7    as though fully set forth herein.

8    300.   Plaintiff brings a Cause of Action under 18 U.S. Code § 1964

9    against USD for the injuries sustained by Plaintiff.

10   301.   At all relevant times, Defendant USD was a "person" within the

11   meaning of 18 U.S.C. § 1961(3) because it was "capable of holding a legal

12   or beneficial interest in property."

13   302.   USD is an "enterprise" within the meaning of 18 U.S.C. §

14   1961(4), through which Defendant USD conducted the pattern of

15   racketeering activity described herein.  Throughout its existence, the USD

16   enterprise engaged in, and its activities affected interstate commerce because

17   it involved commercial activities across state lines, including national

18   marketing campaigns and the solicitation and receipt of money in the form

19   of tuition, including federal student loans from the federal government, from

20   victims located throughout the country.   Defendant USD exercised

21   substantial control over the affairs of the USD Enterprise.

22   303.   Plaintiff alleges USD participated in a pattern of racketeering

23   activity, as defined by 18 U.S.C. § 1962(5), consisting of numerous and

24   repeated uses of interstate wire communications to execute a scheme to

25   defraud in violation of 18 U.S.C. § 1962(c).

26   304.   The fraudulent express misrepresentations by USD of the terms

27   and stated policies of the University and Department of Public Safety were

28

1   created and/or used as tools to carry out the Scheme and pattern of
2   racketeering activity.

3       305.   Plaintiff alleges Defendant USD has committed at least two acts
4   of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. § 1343, within
5   the past ten years.   The multiple acts of racketeering activity that they
6   committed and/or conspired to, or aided and abetted in the commission of,
7   were related to each other, pose a threat of continued racketeering activity,
8   and therefore constitute a "pattern of racketeering activity."

9       306.   Defendant USD's predicate acts of racketeering within the
10  meaning of 18 U.S.C. § 1961(1) include, but are not limited to:

11      (a) Wire Fraud: Defendant USD violated 18 U.S.C. § 1343, by
12          transmitting and receiving, or causing to be transmitted or received,
13          materials by wire for the purpose of executing the Scheme, which
14          amounts to a material scheme to defraud and obtain money on false
15          pretenses, misrepresentations, promises, and/or omissions.   The
16          materials transmitted and/or received include but are not limited to,
17          interstate credit card transactions, publication by Internet promoting
18          the Scheme, and the fraudulent misrepresentation in USD's expressly
19          stated policies.

20      307.   Defendant USD knowingly and intentionally made these
21  misrepresentations, acts of concealment and failures to disclose.   Defendant
22  USD either knew or recklessly disregarded that these were material
23  misrepresentations and omissions.

24      308.   Defendant USD obtained money and property belonging to
25  Plaintiff, and the Class as a result of these violations.   Plaintiff alleges
26  Plaintiff and other Class Members been injured in their business or property
27  by Defendant USD's overt acts of wire fraud.

28

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

309.   Plaintiff and the Class have been injured in their property by reason of USD's violations of 18 U.S.C. § 1962, including the damage done to Plaintiff's reputation as a result of relying on USD's fraudulent misrepresentation, which collectively amounts to tens of millions of dollars, plus the tuition revenues USD obtained off the fraudulent misrepresentations.   In the absence of Defendant USD's violations of 18 U.S.C. § 1962, Plaintiff and the Class would not have incurred these losses.

310.   Plaintiff's and the Class's injuries were directly and proximately caused by Defendant USD's racketeering activity.

311.   USD knew and intended that Plaintiff and the Class would rely on the Scheme's fraudulent misrepresentations and omissions.   Defendant USD knew and intended Plaintiff, and the Class, would attend its university and pay tuition, as a result of the same.

312.   Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover their treble damages, the costs of bringing this suit and reasonable attorneys' fees.

313.   Defendant USD is accordingly liable to Plaintiff and the Class for three times their actual damages as proved at trial plus interest and attorneys' fees.

## THIRTEENTH CAUSE OF ACTION
### Breach of Contract
### Against University of San Diego

314.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

315.   Plaintiff alleges USD breached several contracts between USD and Plaintiff, as well as between USD and all other individuals similarly situated.

316.   Not only did USD breach several contractual duties it expressly promised to Plaintiff and all other individuals similarly situated such as the several express contractual duties stated above, but Plaintiff relied on these promises made by USD to her detriment.  Specifically, Plaintiff relied on the promise that USD would provide a safe campus, as referenced above.  Not only did USD fail to uphold its express promises made to Plaintiff and all other individuals similarly situated, USD gave preferential treatment to individuals whom Plaintiff alleges violated federal terrorism laws.

## FOURTEENTH CAUSE OF ACTION

### Intentional and/or Negligent Infliction of Emotional Distress

### Against USD

317.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

318.   Plaintiff brings a cause of action against USD for intentional and negligent infliction of emotional distress under California law.

319.   Plaintiff alleges that at all times relevant to the matters alleged in this Complaint, USD owed a duty of care to prevent Plaintiff from being injured as a result of Doe's conduct.

320.   USD breached the aforesaid duty of care owed to Plaintiff by breaching its contracts with Plaintiff, negligently resulting in Doe's despicable conduct.

339.   As a direct and proximate result of USD's negligent conduct, Plaintiff suffered extreme mental and emotional distress.  Plaintiff feared, and continues to fear, for her physical safety, and for the safety of her close family and friends, in addition to the fear that she will continue to be wrongly accused in the public view due to Doe's conduct.  Plaintiff will likely incur

medical expenses, including expenses for psychiatric care and psychological counseling services.

321.  Plaintiff respectfully reserves the right to further amend this complaint.

## EXTORTION AND HOBBS ACT VIOLATIONS

322.  18 U.S.C. § 875(d) states:

Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

*Please see* 18 U.S.C. § 875(d).

323.  18 U.S.C. § 1951(a) states:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

*Please see* 18 U.S.C. § 1951(a).

324.  Subsection (b) continues
As used in this section –
(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

*Please see* 18 U.S.C. § 1951(b).

## FIFTEENTH CAUSE OF ACTION

### Extortion & Conspiracy to Commit Extortion Against Twitter

325.  Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

326.   Plaintiff alleges violations of 18 U.S.C. § 875(d) and 18 U.S.C. § 1951 against Twitter including actual extortion as defined under 18 U.S.C. § 1951(b) through the wrongful use of actual and threatened force, violence, and fear, conspiracy to commit extortion, and transmission in interstate commerce communication containing threats to injure the property and reputation of Plaintiff.

327.   As explained above, Plaintiff alleges Twitter working in conjunction with Perkins Coie, LLP and/or USD, attempted intimidation against Plaintiff in the form of actual physical harm of Plaintiff in the serious 02/20/2017 automobile collision and threatened harm to Plaintiff physically, financially and reputationally, with actual harm resulting to Plaintiff.

## SIXTEENTH CAUSE OF ACTION

### Extortion & Conspiracy to Commit Extortion Against Perkins Coie LLP

328.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

329.   Plaintiff alleges violations of 18 U.S.C. § 875(d) and 18 U.S.C. § 1951 against Perkins Coie, LLP including actual extortion as defined under 18 U.S.C. § 1951(b) through the wrongful use of actual and threatened force, violence, and fear, conspiracy to commit extortion, and transmission in interstate commerce communication containing threats to injure the property and reputation of Plaintiff.

330.   As explained above, Plaintiff alleges Perkins Coie, LLP working in conjunction with Twitter and/or USD, attempted intimidation against Plaintiff in the form of actual physical harm of Plaintiff in the serious 02/20/2017 automobile collision and threatened harm to Plaintiff

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

physically, financially and reputationally, with actual harm resulting to Plaintiff.

331.   Perkins Coie, LLP has come under public scrutiny recently for engaging in criminal acts on behalf of and in conjunction with its clients. Plaintiff alleges Perkins Coie threatened and intimidated her personally.

## SEVENTEENTH CAUSE OF ACTION

### Extortion & Conspiracy to Commit Extortion Against USD

332.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

333.   Plaintiff alleges violations of 18 U.S.C. § 875(d) and 18 U.S.C. § 1951 against USD including actual extortion as defined under 18 U.S.C. § 1951(b) through the wrongful use of actual and threatened force, violence, and fear, conspiracy to commit extortion, and transmission in interstate commerce communication containing threats to injure the property and reputation of Plaintiff.

334.   As explained above, Plaintiff alleges USD working in conjunction with Twitter and/or Perkins Coie, LLP, attempted intimidation against Plaintiff in the form of actual harm of Plaintiff from the negative news articles, as well as threatened harm to Plaintiff financially and reputationally, with actual harm resulting to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.   Accept jurisdiction over this action;

2.   For the Court to compel Twitter to provide the email address John Doe used to sign up for the offending Twitter account so that Plaintiff may request the Court to authorize service of the summons and complaint on Defendant Doe by email to his "published and last known valid email

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

address without requirement of return receipt" under Federal Rules of Civil Procedure 4(f)(3) and 4(h)(2);

3.     That Defendant Doe(s) be permanently enjoined from infringing Plaintiff's copyrights in any manner, specifically those related to the Infringing Works;

4.     That Defendant Doe(s) be permanently enjoined from publishing defamatory statements about Plaintiff such as those set forth herein;

5.     That Defendant Twitter be permanently enjoined from publishing the fraudulent misrepresentation in its Terms of Use;

6.     That Defendant USD be permanently enjoined from publishing the fraudulent misrepresentations on its website;

7.     That Defendant USD, and all American Universities operating on or off American soil receiving federal funds, such as in the form of federal student loans, be ordered to comply with United States Federal law, particularly in regards to terroristic threats and terroristic activities which could reasonably foreseeably harm American and foreign students on American soil;

8.     That Defendants Perkins Coie LLP, Twitter, Inc., and University of San Diego be permanently enjoined, fined and the attorneys at Perkins Coie sanctioned for engaging in Hobbs Act violations.

9.     For economic damages according to proof at trial;

10.    For punitive damages according to proof at trial;

11.    For prejudgment interest to the extent recoverable by law;

12.    For attorney's fees to the extent recoverable by law or contract;

13.    For costs of suit; and

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1    14.    For such other and further relief as the Court may deem just and
2    proper.
3    15.    Plaintiff reserves the right to bring additional claims against
4    including but not limited to the Democratic National Committee, the FBI,
5    the DOJ, San Diego Police Department, the City of San Diego, Homeland
6    Security, and the State Department.

7    **DEMAND FOR TRIAL BY JURY**
8    A TRIAL BY JURY PURSUANT TO FEDERAL RULE OF CIVIL
9    PROCEDURE 38 AND CONSTITUTIONAL AMENDMENT SEVEN IS
10   HEREBY DEMANDED.

12   **Dated: April 6, 2018**

13                                        Respectfully submitted,

15                                        Tiffany L. Dehen
16                                        1804 Garnet Avenue, #239
17                                        Pacific Beach, CA 92109
18                                        Tel. 858-262-0052
19                                        Tiffany.Dehen@Gmail.com

21                                        Pro Se Plaintiff.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on April 6, 2018 by express delivery with signature confirmation, postage pre-paid, to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5.4(d).

**Dated April 6, 2018**

Tiffany L. Dehen

Pro Se Plaintiff.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1

<div align="center">

**TABLE OF AUTHORITIES**

</div>

2   **Federal Statutes**

3

Fed. R. Civ. P. 15(a)(2)
4   Fed. R. Civ. P. 21
5   Fed. R. Civ. P. 23
17 U.S.C. § 106
6   17 U.S.C. § 201(a)
7   17 U.S.C. § 410(c)
17 U.S.C. § 410(d)
8   17 U.S.C. § 411(a)
9   17 U.S.C. § 501
17 U.S.C. § 502
10   17 U.S.C. § 503
11   17 U.S.C. § 504
17 U.S.C. § 505
12   18 U.S.C. § 875(d)
13   18 U.S.C. § 1343
18 U.S.C. § 1951(b)
14   18 U.S.C. § 1961
15   18 U.S.C. § 1962
18 U.S.C. § 1964
16   28 U.S.C. § 1331
17   28 U.S.C. § 1332
28 U.S.C. § 1338(a)
18   28 U.S.C. § 1367
19   28 U.S.C. § 1391
28 U.S.C. § 1400(a)
20   47 U.S.C. § 230

21

22   **California Statutes**

23
California Code of Civil Procedure § 474
24   California Penal Code § 528.5
25   California Civil Code § 44
California Civil Code § 51
26   California Civil Code § 1473
27   California Civil Code § 1549

28

<div align="center">

1

</div>

TABLE OF AUTHORITIES PLAINTIFF'S
SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

California Civil Code § 1550
California Civil Code § 1572
California Civil Code § 1573
California Civil Code § 1574
California Civil Code § 1689
California Civil Code § 1692
California Civil Code § 1700
California Civil Code § 1708
California Civil Code § 1709
California Civil Code § 1710
California Civil Code § 1711
California Civil Code § 1714
California Civil Code § 3294
California Civil Code § 3333
California Business & Professional Code § 17200

**Federal Case Law**

*Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1476 (9th
        Cir. 1988)
*American Freedom Defense Initiative et a., v. Lynch*, No. 16-cv-1437, 2016
        WL 6635634 (D.D.C. Nov. 9, 2016)
*Anthony v. Yahoo!*, 421 F.Supp.2d 1257 (N.D.Cal. 2016)
*Apple Inc. v. Motorola Mobility, Inc.*, No. 12CV355 DMC (BLM), 2012
        WL 12846983 (S.D.Cal. July 17, 2012)
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
*Baldino's Lock & Key Service, Inc. v. Google LLC*, 2018 WL 400755
        (D.D.C., 2018).
*Barnes v. Yahoo!*, 570 F.3d 1096 (9th Cir. 2009)
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
*Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 146 (E.D.N.Y. 2017)
*Dalkilic v. Titan Corp.*, 516 F.Supp.2d 1177 (S.D. Cal. 2007)
*Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016)
*Erie v. Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)
*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521
        F.3d 1157 (9th Cir. 2008)
*Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116 (N.D. Cal. 2016)
*Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150 (N.D. Cal. 2017)
*Green v. YouTube, Inc. et al.*, No. 18-CV-203-PB (D.N.H., 2018)

2

TABLE OF AUTHORITIES PLAINTIFF'S
SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

*Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).
*Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013)
*Makaeff v. Trump University, LLC*, 309 F.R.D. 631 (S.D. Cal. 2015)
*Ocasio v. United States*, 136 S.Ct. 1423, 1427 (U.S., 2016)
*O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016)
*Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, (N.D. Cal. Mar. 26, 2018)
*Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)
*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)
*United States v. Nardello*, 393 U.S. 286, 296 (1969)
*United States v. Teofl Brank*, 2018 WL 732704 (9th Cir. Feb. 6, 2018)

**California Case Law**

*Baldwin v. Zoradi*, 123 Cal. App. 4th 199 (2006)
*Davidson v. City of Westminster*, 32 Cal.3d 197 (Cal., 1982)
*Trerice v. Blue Cross of Cal*, 209 Cal.App.3d 878 (Cal., 1989)

3

1   TIFFANY DEHEN J.D.
    1804 GARNET AVENUE #239
2   SAN DIEGO, CA 92109
    858-262-0052
3   tiffany.dehen@gmail.com

4   Pro Se Plaintiff

5

6

7

8           UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  TIFFANY DEHEN, an individual      Case No.: 17-cv-00198-LAB-WVG
    on behalf of herself,
12                                    PLAINTIFF'S SECOND AMENDED
              Plaintiff,              COMPLAINT FOR:
13
         v.                           (1) VIOLATIONS OF THE U.S.
14                                        COPYRIGHT ACT; 15 U.S.C.
    JOHN DOES 1-100, TWITTER,             106, 501 et seq.;
15  INC., UNIVERSITY OF SAN           (2) VIOLATIONS OF THE
    DIEGO AND PERKINS COIE,               CALIFORNIA CIVIL CODE
16  LLP.,                                 § 44 AND 45, et seq.;
                                      (3) VIOLATION OF THE
17            Defendants.                 CALIFORNIA PENAL CODE
                                          § 528.5, et seq.;
18                                    (4) VIOLATION OF THE
                                          CALIFORNIA CIVIL CODE
19                                        §§ 1572 or 1573, et seq.;
                                      (5) DECLARATORY RELIEF
20                                        UNDER CALIFORNIA CIVIL
                                          CODE § 1692, et seq.;
21                                    (6) INTENTIONAL
                                          INTERFERENCE WITH
22                                        ACTUAL AND/OR
                                          PROSPECTIVE ECONOMIC
23                                        RELATIONS;
                                      (7) INTENTIONAL INFLICTION
24                                        OF EMOTIONAL DISTRESS;
                                      (8) NEGLIGENCT INFLICTION
25                                        OF EMOTIONAL DISTRESS;
                                      (9) CIVIL CONSPIRACY;
26                                    (10)    VIOLATIONS OF 18
                                          U.S.C. § 1962, et seq.;
27

28
                              1
    SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

(11)   VIOLATIONS OF CALIFORNIA CIVIL CODE § 45;

(12)   CLAIMS OF EXTORTION AND CONSPIRACY TO COMMIT EXTORTION.

COMES NOW, the Plaintiff, TIFFANY DEHEN, and for cause of action against the Defendants, and each of them, seeking $100,000,000 in compensatory, punitive, and statutory damages, complains and alleges as follows:

## PARTIES

1.   Plaintiff TIFFANY DEHEN, is and at all times herein mentioned, was an individual residing in the County of San Diego. She brings this lawsuit on behalf of herself.

2.   Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendant TWITTER, INC. was and is a Corporation incorporated under the laws of the State of Delaware, with its principal place of business in San Francisco, California, doing business in San Diego County. Twitter manages, operates, publishes, and censors Tweets written by users of its social media website. Twitter has 313 million monthly active users, 1 billion unique visits monthly to sites with embedded Tweets, and 79% of its accounts are outside of the United States. *See* https://about.twitter.com/company.

3.   Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendant UNIVERSITY OF SAN DIEGO,

2

SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

hereinafter "USD," was and is a for-profit education institution located in San Diego County. USD has 8,508 undergraduate, paralegal, graduate and law students, 36% of which are minority students and 9% of which are international students. *See* https://www.sandiego.edu/about/facts.php.

4.    The true names and capacities, whether individual, corporate, associate or otherwise of Defendants, DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants herein designated as a DOE is responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby as hereinafter alleged.

5.    Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendant PERKINS COIE, LLP., was and is an international for-profit law firm, with more than 1000 lawyers in 19 offices across the United States and Asia, including an office located in San Diego, California. *See* https://www.perkinscoie.com/en/index.html.

6.    Plaintiff is informed and believes and thereon alleges that due to the nature of the claims against all defendants, each is jointly and severally liable to Plaintiff for the injuries sustained.

7.    Plaintiff reserves the right to bring additional claims against any and all named and unnamed defendants including, but not limited to, the Democratic National Committee, the Federal Bureau of Investigation, the Department of Justice, Homeland Security, the State Department, San Diego Police Department, the City of San Diego, and any individuals who worked at or were affiliated with the aforementioned agencies during the relevant timeframe.

**JURISDICTION AND VENUE**

3

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

9.     Specifically, this Court has federal question jurisdiction in this matter in that Plaintiff seeks injunctive relief and damages against John Does 1-100 under the Copyright Act of 1976 (17 U.S.C. § 501-505, inclusive), under 18 U.S.C. § 1964, under 18 U.S.C. § 875, under 18 U.S.C. § 1951, and reserves the right to bring any and all related causes of action, both state and federal.

10.    This Court has supplemental jurisdiction over all other claims that do not arise under a federal statute in that these supplemental claims involves a substantial federal question and each claim is so related to the federal claim in the action, arising from a common nucleus of operative facts, that they form part of the same case or controversy under Article III of the United States Constitution pursuant to 28 U.S.C. § 1967.

11.    This Court has further jurisdiction pursuant to 28 U.S.C. § 1332.

12.    Plaintiff avers that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs, and punitive damages.

13.    This Court has personal jurisdiction over each of the Defendants because each resides in, is domiciled in and/or does systematic and continuous business in the State of California and in this judicial district.

14.    Jurisdiction of this Court is proper because the events described herein and injuries to Plaintiff occurred within San Diego County, and/or Defendants have caused injury to Plaintiff and to Plaintiff's intellectual property and other proprietary and economic interests within the State of California and in this judicial district.

Deleted: 12.

Formatted: Body Text, Don't add space between paragraphs of the same style, Line spacing:  exactly 24 pt

Deleted:

Deleted: 13.

Deleted: the

Deleted: ,

Deleted: Doe

Deleted: ) and

Deleted: further explained below

Moved down [3]: 14.

Deleted: 1367.

Deleted: 15. Upon information and belief, this

Deleted: might have

Deleted: , depending on the identity of John Doe, to be ascertained during discovery

Deleted: 16.

Deleted: costs

Deleted: 17. The

Moved (insertion) [3]

Formatted: Body Text, Don't add space between paragraphs of the same style, Line spacing:  exactly 24 pt

Deleted: , various acts complained

Deleted: in the State of California and this judicial district

Deleted:

Deleted: 1 .

15.   Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b) and (c) and under 28 U.S.C. § 1400(a).

## FACTUAL ALLEGATIONS

16.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 15 as though fully set forth herein.

17.   Since at least 2009, Plaintiff consistency held and continues to hold an online presence of around 5,000 followers across various social media websites including but not limited to Twitter, Facebook, Instagram, Snapchat, and LinkedIn.

18.   Plaintiff Ms. Dehen graduated *cum laude* from Arizona State University in 2011 with a Bachelor of Science in Marketing from the W.P. Carey School of Business, Minor in Mass Communications from the Walter Cronkite School of Journalism and Mass Communications and International Business Certificate from W.P. Carey School of Business.

19.   Ms. Dehen earned her Juris Doctor from the University of San Diego School of Law in 2.5 years with a dual concentration in Intellectual Property Law and Business & Corporate Law.

20.   While in law school Ms. Dehen externed for the USD Federal Tax Clinic assisting indigent clients in their tax disputes with the Internal Revenue Service.

21.   Plaintiff is self-employed and supported herself through law school by providing marketing and consulting services as an independent contractor, selling products online and obtaining federal student loans.

22.   Ms. Dehen invested $215,618.47 in student loans (*see* Exhibit 62) in addition to 4.5 years of her life to increase the value of her image, likeness, brand and services by preparing for and then earning her Juris

5

Doctor from USD with the ultimate goal of admittance to the State Bar of California.

23. Plaintiff spent the year before law school preparing and saving up for law school, took a semester off during law school to save money to complete law school, in addition to working the last 21 months and counting since completing law school to finance the costs associated with admittance to the State Bar of California.

24. In the weeks leading up to the actions that led to this cause of action, Plaintiff was actively seeking a position in the legal industry. *Please see* Exhibits 142 - 149.

25. Before, during, and after the injury that led to this cause of action, Ms. Dehen was, and still is, actively pursuing several business ventures which relied upon, continue to rely, and will rely upon her reputation.

26. Plaintiff is actively seeking admittance to the State Bar of California, which includes a rigorous character and background check and a strenuous test, namely the Bar exam which Plaintiff has not been able to take since graduating from law school due to financial reasons directly related to the causes of action for which this dispute arose.

27. While attending law school at USD, Ms. Dehen was subjected to harassing, terroristic behavior which ultimately led to intervention by the Federal Bureau of Investigation, hereinafter "FBI," through a federal criminal investigation due to the nature of terroristic statements made to her and terroristic behavior aimed towards her and other USD students. *Please see* Exhibits 94 – 140.

28. Ms. Dehen alleges the aforementioned criminal FBI investigation commenced in July 2016 due to alarming terroristic behavior

Deleted: ,
Deleted: being
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Deleted:
Formatted: Font:Not Bold
Deleted: 25.
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Deleted: nine
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Deleted: 26.
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Deleted: 27.
Formatted: Font:Not Bold
Deleted: would
Formatted: Font:Not Bold
Deleted:
Formatted: Font:Not Bold
Deleted: 28.
Formatted: Font:Not Bold
Deleted: also still
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Deleted: 29.
Formatted: Font:Not Bold
Deleted: an investigation with
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Deleted:
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Deleted: .
Formatted: Font:Not Bold
Deleted: 30. The
Formatted: Font:Not Bold
Deleted: was
Formatted: Font:Not Bold
Formatted: Font:Not Bold
Deleted: 1

that occurred in the several months leading up to and around the time of the

Dallas Shooting in July 2016, *i.e.*, at the height of the ISIS terrorist attacks

in the U.S. and around the world broadcast on an overwhelming majority of

U.S. news outlets. *Please see* Exhibits 94 - 140.

    29.    As further explained below, Photograph 2, titled, "Tiffany

Pro," (*see* Exhibit 2), that John Doe(s) illegally used to create Infringing

Work #6 (*see* Exhibit 13), was taken from Ms. Dehen's LinkedIn profile.

    30.    To further corroborate the direct evidence regarding the

identities of at least John Doe 1-2, two individuals from USD Law School

viewed Ms. Dehen's LinkedIn profile in the immediate days leading up to

the creation and execution of the unlawful Twitter account. *See* Exhibit 52.

    31.    The conduct which ultimately resulted in direct intervention

by the FBI including the aforementioned federal criminal investigation is

linked to conduct that occurred on USD property, at USD sponsored

events, and in connection with USD students.

### University of San Diego

    32.    USD ensnared Plaintiff in a fraudulent scheme nationwide to

sell safe education.

    33.    USD uniformly misled Plaintiff more than once that she would

learn at USD in safety.

    34.    USD promised a safe university, which it did not deliver.

    35.    USD expressly set out to leverage its commitment for safety.

For example, on the USD website, USD expressly states it is, "[c]omitted

to safety through education." *See* https://www.sandiego.edu/safety/.

    36.    The USD Public Safety webpage continues:

        The Department of Public Safety is located on the south
side of Hughes Administration Hall, and is open 24 hours a day, 7 days a
week. The Department of Public Safety supports the mission and goals of
the University of San Diego by providing a full range of community-
oriented crime prevention and crime control services to contribute to the

7

safety and security of the campus community.  This is not a job that we can do alone.  Your help is essential.

       *See* https://www.sandiego.edu/safety/.

37.    Defendant USD marketed USD as a safe university.

38.    USD expressly claims to keep a record of crime alerts "provided to keep all members of the University of San Diego community up to date with and aware of all ongoing criminal acts."  *See* https://www.sandiego/edu/safety/prevention/alerts.php.

39.    USD expressly states:

    Our Public Safety Officers are responsible for a wide range of activities, including developing crime prevention programs, taking crime and accident reports, initiating investigations, responding to medical and fire emergencies, controlling parking and traffic, and enforcing certain local and state laws, as well as rules developed by the University to address campus-related concerns.  Emergencies on campus should be reported directly to the Department of Public Safety by dialing extension x2222 from any on-campus phone, 24 hours a day.

       *See* https://www.sandiego.edu/safety/about/.

40.    USD expressly provides:

    The University of San Diego Department of Public Safety is committed to the support of the University's greater mission of excellence in education and service to the community.  As an integral part of the University, we pledge ourselves to a continuing partnership with the campus community to provide a safe and secure environment through community based public safety.  We will achieve our goals by service to the community that reflects respect for the law, dignity of all persons and pride in our profession.

       *See* https://www.sandiego.edu/safety/about/mission.php.

41.    USD expressly provides its Department of Public Safety motto as follows:

    Service to Our Community.  People in our campus community are our most important customers.  Our motto: "Committed to Safety Through Education" is not just a slogan it is our way of life.  We pledge to work in partnership with the USD community and do our best to provide for its public safety needs. Commitment to Integrity.  Integrity is our standard.  We are proud of our profession and will conduct ourselves in a manner that merits the respect of all people.  We will demonstrate honest, ethical behavior in all our interactions.  We must have the courage to always do what is right.  Respect for People.  The dignity of mankind is a value that we treasure.  We believe in treating all people with respect.  We show concern for the victims of crime and treat violators of the law with fairness at all times.  Commitment to Leadership.  Managers, supervisors and team leaders need to be leaders in their areas of responsibility.  Making

8

SECOND AMENDED COMPLAINT    No.: 17-cv-00198-LAB-WVG

certain that our values become part of our day to day work life is our mandate. We encourage our employees to submit ideas, we listen to their suggestions, and we help them develop to their maximum potential.

*See* https://www.sandiego.edu/safety/about/mission.php.

42.    USD expressly provides:

Hate Crimes/Acts of Intolerance
USD is a diverse community of which we are proud. Sometimes, some of our newer students come from environments that are not as rich in cultural and religious diversity. Hateful speech and conduct against others of different backgrounds and cultures is unacceptable at a university which prides itself on the recognition of the dignity of each individual (USD Mission Statement). "The university is committed to creating a welcoming, inclusive and collaborative community accentuated by a spirit of freedom and charity; and marked by protection of the rights and dignity of the individual. The university values students, faculty and staff from different backgrounds and faith traditions and is committed to creating an atmosphere of trust, safety and respect in a community characterized by a rich diversity of people and ideas." Harassment of others because of a persons race, religion, ancestry, national origin, disability, gender, sexual orientation, or because he/she perceives that the other person has one or more of these characteristics is against the law and will not be tolerated by the University. Severe disciplinary action and possible criminal prosecution will follow.

*See* https://www.sandiego.edu/safety/reporting/hate-crimes/.

43.    University of San Diego provides a Code with Rules of Conduct outlining specific prohibitions, policies, and procedures that each student is responsible for understanding and following.

44.    USD Rules of Conduct can be found online at: https://www.sandiego.edu/conduct/the-code/rules-of-conduct.php.

45.    The USD Rules of Conduct provide the following:
The following conduct is prohibited on University premises or at University events, wherever they may occur. This same conduct, though occurring off University premises and not at University events, may nonetheless be subject to University sanctions when it adversely affects the University, its educational mission or its community. Violation of these standards, policies, and procedures may subject an individual or group to disciplinary action as determined by the Assistant Vice President for Student Affairs/Dean of Students or his or her designee, pursuant to the provisions of the Code.

46.    The Rules outlined in the Code of Conduct include, in relevant part, the following:

9
SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

2. Disruption of teaching, research, administration, conduct proceedings or any other institutional activity.
3. Abuse of any person, including but not limited to physical abuse, threats, verbal intimidating, harassment, stalking, coercion and/or other conduct which threatens the health or safety of any person.
6. Conduct that is disorderly, lewd, indecent or obscene.

47. Upon information and belief, **Plaintiff and University of San Diego entered into a written contract pursuant to the aforementioned Code of Student Conduct when Ms. Dehen enrolled in the** USD **School of Law in August 2013 and again in January 2015 when Ms. Dehen re-enrolled in the** USD **School of Law, Plaintiff** alleges USD **has** a copy of a signed agreement in the form of signed acknowledgement of the student code of conduct and is better positioned to present the original copy to the Court during discovery. In consideration of Plaintiff accepting USD's offer to attend USD law school, paying USD over a hundred thousand dollars for education and agreeing to abide by the student code of conduct, USD promised to provide a safe learning environment to Plaintiff, free of threat of physical harm and free of the school violating federal law to Plaintiff's harm. Plaintiff alleges USD Law Financial Office expressly confirmed its alleged commitment to follow and abide by federal law both in writing and orally on numerous occasions to Plaintiff personally.

48. Plaintiff alleges that in November 2015 on USD campus during a USD sponsored event, a USD law student openly declared himself to be an enemy combatant of the United States by openly declaring himself to be in an ISIS sleeper cell in the presence of Plaintiff and at least one other student. *Please see* Exhibits 130 – 139.

49. Plaintiff alleges a student witness of the terrorist remark later publicly declared himself to be actively engaging in terrorism in March 2016 after engaging in threatening behavior which disrupted the entire university and sent the law school student body and faculty into a

10

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

widespread panic which interrupted normal business operations on campus for several days, weeks for some individuals, including Plaintiff. *Please see* Exhibits 94 – 139. The threatening behavior consisted of, among other things, the student calling all USD law students Nazi's, as well as personally and directly calling Plaintiff a Nazi, and engaging in alarming threatening behavior further shown in Exhibits 94 - 139. Ms. Dehen alleges various students expressed fear, to both Ms. Dehen and to USD, that this student brought a bomb to school and/or was planning to harm himself and/or USD students. *Please see* Exhibits 94 - 139.

50.    In March 2016 Plaintiff and several other students and faculty members at USD relayed, *on more than one occasion*, the alarming erratic behavior to USD Law Administration, USD Administration, the President of USD, USD Department of Public Safety, San Diego Police Department, as well as various attempts to federal and state agencies by Plaintiff personally. *Please see* Exhibits 94 - 139.

51.    Plaintiff alleges USD not only failed to adhere by federal law in dealing with sensitive allegations such as the ones Plaintiff personally relayed to USD, but USD went so far as to shut down the local law enforcement investigation and refused to cooperate with federal law enforcement to Plaintiff's detriment. *Please see* Exhibits 94 - 139.

52.    Not only did USD fail to adequately address the serious threats which threatened to harm and actually harmed Ms. Dehen as USD expressly represented it would, but USD gave preferential treatment to both aforementioned students, whom Plaintiff alleges comprise John Does 1 & 2 in this litigation.  Not only did neither student face disciplinary action, but *both students received preferential treatment to complete their schooling.* *Please see* Exhibits 94 – 139.

11

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

53. Due to USD's failure to address the serious situations as it promised repeatedly it would do in its stated policies as well as express repeated promises made during the situations by agents of USD to Plaintiff and several other law students and faculty members, the situations escalated to the point where the Federal Bureau of Investigation intervened in July 2016 when one of the aforementioned self-proclaimed enemy combatants of the United States stalked Plaintiff at her residence in San Diego, California. *Please see* Exhibits 94 - 139.

54. Plaintiff lived, and continues to live, in grave fear of danger to her personal body, safety, economic interests, personal relationships, family members' and friends' safety, among other injuries for which Plaintiff can and will prove to this Court through this litigation.

55. Plaintiff alleges USD became aware of the serious allegations in March 2016. Plaintiff alleges USD then owed a heightened duty to Plaintiff beginning in or around March 2016 when it was put on notice of the serious behavior in violation of both federal and state law, which it failed to uphold, hence this litigation. *Please see* Exhibits 94 – 139.

### **Twitter**

56. Ms. Dehen and Twitter entered into a written contract pursuant to the terms of Twitter's user agreement on or about October 9, 2015. *See* Exhibit 53.

57. Ms. Dehen created her Twitter account, *i.e.*, entered into the user agreement with Twitter, with the reasonable expectation that Twitter would fulfill its own express promises and enforce its expressly stated policies and rules.

58.   Twitter provides a policy for restricting access to its business, titled, "The Twitter Rules," and can be found online at: https://support.twitter.com/articles/18311.

59.   Pertaining to hateful conduct, Twitter's rules provide, in relevant part, the following:

You may not promote violence against or directly attach or threaten other people on the basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age, disability, or disease. We also do not allow accounts whose primary purpose is inciting harm towards others on the basis of these categories.

See https://support.twitter.com/articles/18311.

60.   Twitter provides an Impersonation Policy that can be found online at: https://support.twitter.com/articles/18366.

61.   Twitter's Impersonation Policy provides, in relevant part, the following:

Impersonation is a violation of the Twitter Rules. Twitter accounts portraying another person in a confusing or deceptive manner may be permanently suspended under the Twitter impersonation policy.

See https://support.twitter.com/articles/18366.

62.   Twitter's Impersonation Policy further provides, "[i]n order to be impersonation, the account must also portray another person in a misleading or deceptive manner."

See https://support.twitter.com/articles/18366.

63.   In Twitter's Impersonation Policy, Twitter promises:

*Upon receipt* of an impersonation report, we will investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules. Accounts determined to be in violation of our impersonation policy, or those not in compliance with our parody, commentary, and fan account policy, will either be suspended or asked to update the account(s) so they no longer violate our policies.

See https://support.twitter.com/articles/20170142.

64.   **Twitter provides a Hateful Conduct Policy, that can be found online at:** https://support.twitter.com/articles/20175050.

13

65.   Twitter's Hateful Conduct Policy provides, in relevant part, the following: "[w]e do not tolerate behavior that harasses, intimidates, or uses fear to silence another person's voice." *See* https://support.twitter.com/articles/20175050.

66.   Twitter's Hateful Conduct Policy provides the following: Examples of what we do not tolerate includes, but is not limited to, behavior that harasses individuals or groups of people with: violent threats; wishes for the physical harm, death, or disease of individuals or groups; references to mass murder, violent events, or specific means of violence in which/with which such groups have been the primary targets or victims; behavior that incites fear about a protected group; repeated and/or non-consensual slurs, epithets, racist and sexist tropes, or other content that degrades someone.

*See* https://support.twitter.com/articles/20175050.

67.   Twitter's Hateful Conduct Policy further provides the following: "[w]e enforce policies when someone reports behavior that is abusive and targets an entire protected group and/or individuals who may be members." *See* https://support.twitter.com/articles/20175050.

68.   Plaintiff and Twitter entered into a written contract including the terms set forth above at the time Plaintiff accepted Twitter's Terms of Use and activated her account on October 9, 2015 at 11:11 p.m. *See* Exhibit 53.

### Additional Background Facts

69.   Upon information and belief, there is no other "Tiffany Dehen" in existence, nor is there any other individual using the name "Tiffany Dehen" to sell products or render consulting, marketing, or legal services anywhere in the United States, or anywhere in the world.

70.   Merriam Webster Dictionary's definition of Nazi provides the following: (1) a member of a German fascist party controlling Germany from 1933 to 1945 under Adolf Hitler; (2) often not capitalized; (a) one who espouses the beliefs and policies of the German Nazis: Fascist; (b) one who is likened to a German Nazi: a harshly domineering, dictatorial, or intolerant person; a grammar nazi.

14

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

*See* https://www.meriam-webster.com/dictionary/Nazi.

71.   Encyclopedia Britannica's definition of Nazi Party provides the following:

Nazi Party, byname of National Socialist German Workers' Party, German Nationalsozialistische Deutsche Arbeiterpartei (NSDAP), a political part of the mass movement known as National Socialism. Under the leadership of Adolf Hitler, the party came to power in Germany in 1933 and governed by totalitarian methods until 1945.

*See* https://www.britannica.com/topic/Nazi-Party.

72.   Merriam Webster Dictionary's definition of Swastika provides the following:

(1) A symbol or ornament in the form of a Greek cross with the ends of the arms extended at right angles all in the same rotary direction; (2) a swastika used a symbol of anti-Semitism or of Nazism.

*See* https://www.merriam-webster.com/dictionary/swastika.

73.   Ms. Dehen is not a member of the National Socialist German Workers' Party (colloquially known as the Nazi Party), nor the Ku Klux Klan (colloquially known as the KKK).

74.   Further, Ms. Dehen has no relatives that were involved in either the National Socialist German Workers' Party or the Ku Klux Klan.

75.   Ms. Dehen's late grandfather was Captain John D. Raikos, awarded the following decorations for his role in the 83rd Infantry of the United States Army in World War II: Combat Infantryman Badge, Silver Star Medal, Bronze Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good Conduct, American Campaign Medal, WWII Victory Medal, and the EAME Campaign Medal with 5 Bronze Stars for the Five Campaigns. *See* Exhibit 1 or visit http://www.normandytothebulge.be/83rd_JRaikos.html.

76.   Notably, Ms. Dehen's late grandfather, Captain John D. Raikos, was honored with the esteemed citation from Yom H'ashowa Holocaust Remembrance for his role with the 83rd Division's liberation of

15

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

Nazi concentration camps. *See* Exhibit 1 or visit

http://www.normandytothebulge.be/83rd_JRaikos.html.

77.   Upon information, belief, and research into Ms. Dehen's family tree, Ms. Dehen has at least one relative who was Jewish, *i.e.*, Ms. Dehen is technically part Jewish.

78.   Ms. Dehen volunteered as a Summer Camp Counselor at the Tucson Jewish Community Center ("TJCC") in 2004 and her family continued and continues to keep a relationship with the TJCC.

79.   During Mr. President Donald J. Trump's State of the Union Address on January 30, 2018, he stated, "[w]e must be clear – terrorists are not merely criminals; they are unlawful enemy combatants." (*Please see* Mr. President Donald J. Trump's 2018 State of the Union Address).

80.   President Donald J. Trump also stated, "[i]n the past, we have foolishly released hundreds and hundreds of dangerous terrorists, only to meet them again on the battlefield, including the ISIS leader al-Baghdadi, who we captured, who we had, who we released." (*Id.*)

## Copyrighted Works

81.   On June 20, 2013, Plaintiff created Photograph 1, titled, "Tiffany Pro," in Scottsdale, Arizona and published to LinkedIn 06/20/2013. *See* Exhibit 2.

82.   "Tiffany Pro," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany Pro," is assigned Registration Number: VA 2-069-923, with April 01, 2017 as the Effective Date of Registration. *Please see* Exhibit 68.

16

83. On April 2, 2016, Plaintiff created Photograph 2, titled, "Tiffany DC," in front of Trump Tower in Washington D.C, and published to Twitter on 04/02/2016, and Facebook on 09/15/2016. *See* Exhibit 3.

84. "Tiffany DC," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany DC," is assigned Registration Number: VA 2-073-279, with March 31, 2017 as the Effective Date of Registration. *Please see* Exhibit 69.

85. On April 28, 2016, Plaintiff created Photograph 3, titled, "Tiffany MAGA," in front of the Trump rally in Orange County, California, and posted to Twitter on 04/28/2016. *See* Exhibit 4.

86. "Tiffany MAGA," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany MAGA," is assigned Registration Number: VA 2-069-924, with April 01, 2017 as the Effective Date of Registration. *Please see* Exhibit 70.

87. On December 18, 2016, Plaintiff created Photograph 4, titled, "Tiffany Christmas MAGA," in Pacific Beach, California, and posted to Instagram, Facebook, and Twitter on 12/23/2016. *See* Exhibit 5.

88. "Tiffany Christmas MAGA," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany Christmas MAGA," is assigned Registration Number: VA 2-069-747, with April 01, 2017 as the Effective Date of Registration. *Please see* Exhibit 71.

**Twitter Account With Domain @tiffanydehen**

17

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

89.  On or about January 26, 2017, John Doe(s) created a Twitter account with the domain @tiffanydehen, with the description, "[p]arody account; Fiction and political satire about Republican white women", yet used Tiffany Dehen's legal name in the domain @tiffanydehen, and Ms. Dehen's copyrighted photos. *See* Exhibit 9.

90.  The natures of the posts, described below, are so egregious as to deny Doe(s)'s protection under the First Amendment, further explained below.

91.  Due to the ongoing terrorism investigation led by the Federal Bureau of Investigation, and on advice of the FBI, Tiffany Dehen was no longer using the domain @tiffanydehen in connection with her social media accounts.

92.  On or about January 26, 2017, Doe(s), using the Twitter domain @tiffanydehen, followed various Twitter users including the following: "Helmut Pepe Thick @HelmutThick," "Vladamir Putin @realtalkputin," "Donald J. Trump @realDonaldTrump," "Ann Coulter @AnnCoulter," "Paul Ryan @SpeakerRyan," "Bill O'Reilly @oreillyfactor," "Sean Hannity @seanhannity," "The White House @WhiteHouse," "Eric Trump @EricTrump," "Kellyanne Conway @KellyannePolls," "Donald Trump Jr. @DonaldJTrumpJr," "Ivanka Trump @IvankaTrump," "Mike Pence @mike_pence," "Dr. Ben Carson @RealBenCarson," "Fox News @FoxNews," "Milo Yiannopoulous @DontGoAwayM4d," "Adolf Hitler @AdolfHitlerFuhr," "Vladamir Putin @realtalkputin," "Donald J. Trump @realDonaldTrump," "Klu Klux Klan @TheeKluKluxKlan," "klu klux klan @FuckTheNiggers," and "Breitbart News @BreitbartNews."

*See* Exhibits 6-8, and 44-47.

93.  On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "@realDonaldTrump is gonna stop these alien abductions plaguing our nation y'all. These anal probes gotsa stop. #MakeAmericaGreatAgain #ufos". *See* Exhibit 43.

94.  On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted "I'm all for building that wall over mexico but the

18

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

real aliens come from above #buildthatwall #MakeAmericaGreatAgain @realDonaldTrump #ufos". *See* Exhibits 42-44.

95.   On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "The only better time to be a woman in America beside 2day was the day Jesus was crucified #witness #amen #Jesusfirst #MakeAmericaGreatAgain". *See* Exhibits 42-43.

96.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Me+my girls today. If you can't bring back an 80's dye job, U DON'T DESERVE TO BE AMERICAN!!! #MakeAmericaGreatAgain #SexyLikeCockatoos #grl". *See* Exhibit 41.

97.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "My gawd Who is that lucky lady? @POTUS @realDonaldTrump My pastor wouldn't be happy with my inside-outies right now? #MakeAmericaGreatAgain". *See* Exhibit 40.

98.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "TO HELL WITH MUSLIMS WHO WANT TO BAN OUR AMERICAN VALUES! U NEVER PUT ME IN A BURKA! #MuslimBan #MakeAmericaGreatAgain @POTUS #BuildTheWall". *See* Exhibit 39.

99.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Just found this lovely pic of our #firstladymelania Pearl necklaces 4 every girl about time @MELANIATRUMP @POTUS #MakeAmericaGreatAgain". *See* Exhibits 37-38.

100.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Have y'all noticed the blacks are on all the magazines nowadays? Time 4 change!! White women are the silent majority in the lamestream media". *See* Exhibits 35-36.

19

101.  On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Nothing like my own personal welcome team on Twitter.    Thanks    @AdolfHitlerFuhr    XOXO    Let's #MakeAmericaGreatAgain studcakes #MuslimBan", and included a photo stating, "Fuhrer welcomes you" showing the Adolf Hitler Twitter account that Doe followed using the Twitter domain @tiffanydehen. *See* Exhibits 35-36.

102.  On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Donated some eggs today! Don't know why sept they told me they were tax deductible! #MakeAmericaGreatAgain", with Infringing Work #1 (*see* Exhibit 34), which comprises of Photograph #2 titled, "Tiffany DC," (*see* Exhibit 3) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) altered with the word, "MURIKKKA!", and two drawn in Swastikas. *See* Exhibits 32-33.

103.  On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Throwing this dog over this cliff! Animals don't deserve    special    rights!    Down    with    special    interists! #MakeAmericaGreatAgain @POTUS", with Infringing Work #2 (*see* Exhibit 31), which comprises of Photograph #4 titled, "Tiffany Christmas MAGA," (*see* Exhibit 5) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the words, "DOWN WITH THEM SPESHUL INTRISTS!". *See* Exhibit 29-30.

104.  On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Saving myself for marriage! My man knows we can have sex 3 times: honeymoon, Trumps reelection, & jesus 2nd coming! #MakeAmericaGreatAgain", with Infringing Work #3 (*see* Exhibit 28),

which comprises of Photograph 3 titled, "Tiffany MAGA," (*see* Exhibit 4) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the top of Ms. Dehen's hat whited out with the words, "MAKE AMERICA GRATE AGAIN", written instead. *See* Exhibits 26-27.

105.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted "Why do the gays hate this hate? I thought they all liked fashion! #snowflakes #EndSpecialInterests #ReligiousFreedom #MakeAmericaGreatAgain", with Infringing Work #4 (*see* Exhibit 25), which, again, comprises of Photograph 3 titled, "Tiffany MAGA," (*see* Exhibit 4) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) and altered with the top of Ms. Dehen's hat whited out with the words, "BRING BACK (with a symbol that looks like a vagina)", written instead. *See* Exhibits 23-24.

106.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted "That'll teach them terrorist saudis! #MuslimBan #MakeAmericaGreatAgain my hero! @POTUS @realDonaldTrump", with a photo showing the countries of President Donald J. Trump's temporary ban on refugees. *See* Exhibits 21-22.

107.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "CNN is fake news! Serena won the Australian open!", with an article to CNN Breaking News @cnnbrk, "Roger Federer beats Rafael Nadal in a five-set match in the Australian Open Men's Final winning his 18th grand slam". *See* Exhibits 20-21.

108.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, retweeted a post from Paul Ryan @SpeakerRyan, "RT if you agree It's time to rebuild our partnership with #Israel and reaffirm our

21

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

commitment to her security", but Doe added, "I agree with @SpeakerRyan do what you can to keep them Jews out of our Christian country!! #AmericaFirst #MakeAmericaGreatAgain #Muslim Ban". *See* Exhibit 20.

109. On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Fuck throwing this dog off a cliff. Ima eat him instead! What a #snowflake @peta #MakeAmericaGreatAgain Animals don't deserve extra rights!", with Infringing Work #5 (*see* Exhibit 19), which, again, comprises of Photograph 4 titled, "Tiffany Christmas MAGA," (*see* Exhibit 5) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account), and altered with the words "DOWN WITH THEM SPESHUL INTRISTS!". *See* Exhibits 16-18.

110. On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "I'm so excited for my audition for TV! I can't wait to make America proud! #MakeAmericaGreatAgain #AmericaFirst #AmericaFirstOnly @POTUS", with a photo of Tomi Lahren and the word "TIFF" added, and added text above the photograph that reads, "BRAVO'S The Real Housewives of Nazi-Occupied Russian Territory Formerly Known as America *twirls* "If he's not Aryan, we're not marryin'!" *See* Exhibits 15-16.

111. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Here's my mom and her bible study sisters being saved from an evil Muslim palace. If I'm not her spitting image... GO TRUMP GO! @POTUS", with a photo of President Donald J. Trump and three women. *See* Exhibit 14.

112. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "All ready for my job interview. Too much??? #AmericaFirst #AmericaFirstOnly Help me fashion queens!!!

22

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

---

Deleted:

Formatted: Font color: Black

Formatted: Font:12 pt

Moved (insertion) [8]

Formatted: Font color: Black

Deleted: 91.

Formatted: Font color: Black

Deleted: ,

Formatted: Font color: Black

---

Deleted:

Formatted: Font color: Black

Formatted: Font:12 pt

Moved (insertion) [9]

Deleted: 92.

Formatted: Font color: Black

Deleted: ,

Formatted: Font color: Black

Formatted: Font color: Black

---

Deleted:

Formatted: Font color: Black

Formatted: Font:12 pt

Deleted: 93.

Formatted: Font color: Black

Deleted: ,

Formatted: Font color: Black

Deleted:

Formatted: Font color: Black

Deleted:

Formatted: Font color: Black

Formatted: Font:12 pt

Deleted: 94.

Formatted: Font color: Black

Deleted: ,

Formatted: Font color: Black

Deleted:

Formatted: Font color: Black

Deleted: 1 .

@MELANIATRUMP @KellannePolls", with Infringing Work #6 (*see* Exhibit 13), which comprises of Photograph 1 titled, "Tiffany Pro," (*see* Exhibit 2) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's LinkedIn account this time), altered with a black headband containing a Swastika drawn in, as well as a red Swastika added to Ms. Dehen's chest. *See* Exhibits 11-12.

113. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, retweeted one of Ms. Dehen's personal tweets where she posted an article from *Drudge Report*, and wrote, "That's right @tiffanysundevil we should just get rid of all those countries that aren't america! #AmericaFirst #AmericaFirstOnly." *See* Exhibits 10-11.

114. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "We don't need a justice department! fuck impartiality! #MakeAmericaGreatAgain", with a retweet from *Drudge Report* @DRUDGE_REPORT that says, "TRUMP FIRES ACTING ATTORNEY GENERAL", with a link to an article. *See* Exhibit 10.

115. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "ONLY WHITE PEOPLE DESRVE BENEFITS! america should be great to win I no knowledge of it! #MakeAmericaGreatAgain @POTUS @realDonaldTrump", with a retweet from a post by Thomas Paine @Thomas1774Paine that said, "Hey DOJ & #Yates, welcome back to the real America where you get fired for screwing up like the rest of us. #Obama's Country Club is closed". *See* Exhibits 9-10.

116. On January 30, 2017 around 9:50 p.m., Plaintiff became aware of the account due to the retweet of Plaintiff's tweet referenced above, and the fact that Doe "liked" 10 of Ms. Dehen's Tweets. *See* Exhibits 10-11, and 54.

23

Deleted:
Formatted: Font color: Black
Formatted: Font:12 pt
Moved (insertion) [10]
Formatted: Font color: Black
Deleted: 95.
Formatted: Font color: Black
Deleted: ,
Formatted: Font color: Black
Deleted:
Formatted: Font color: Black
Formatted: Font:12 pt
Deleted: 96.
Deleted: ,
Formatted: Font color: Black
Formatted: Font color: Black

Deleted:
Formatted: Font color: Black
Formatted: Font:12 pt
Moved (insertion) [11]
Formatted: Font color: Black
Deleted: 97.
Formatted: Font color: Black
Deleted: ,
Formatted: Font color: Black

Deleted:
Formatted: Font color: Black
Formatted: Font:12 pt
Deleted: 98.
Formatted: Font color: Black
Deleted:
Formatted: Font color: Black
Formatted: Font:12 pt

Deleted: 1 .

117. Upon inspection of the Twitter account, Plaintiff sought immediate removal of the impersonating account by utilizing Twitter's Impersonation Policy through completion of the provided form to "report an account for impersonation."

118. Plaintiff submitted the report for impersonation for Doe(s)'s defaming Twitter account in the username @tiffanydehen to Twitter on 01/30/2017, thus fulfilling all conditions, covenants, and promises required on her part to be performed in accordance with the terms and conditions of the user agreement. *See* Exhibit 48.

119. On January 30, 2017 at 9:56 p.m., Twitter responded to Plaintiff's request to Case # 50854043 with the following:

Hello,

Thanks for sending your report regarding impersonation on Twitter. Our next steps: First, we need to confirm your identity. Below you'll find instructions and a link you can use to upload a copy of your valid government-issued photo ID. Then we'll review and process your report. We can't review your report until the documentation is received.

Your next steps: Review the instructions below and upload the requested documentation. Please make sure to upload a legible copy so we can review the full name and photo on the ID. This information will be kept confidential and your documentation will be deleted.

Instructions: Click on the link below and upload a copy of your valid government issued photo ID (e.g., driver's license or passport). If you are reporting an account that is not using the name that appears on your government-issued photo ID, you must also include documentation demonstrating that the name used by the account you're reporting is associated with you (e.g., proof of registration of your trade name or pseudonym).

Upload                                                    link:
https://twitterinc.secure.force.com/u?e=tiffany.dehen@gmail.com&c
n=50854043

Please note that accounts in compliance with Twitter's parody, commentary, and fan accounts policy (https://support.twitter.com/entries/106373) are not considered in violation of our impersonation policy (https://support.twitter.com/articles/18366).

Thank you,

Twitter

*See* Exhibit 48.

---

24

120.  On February 1, 2017 Ms. Dehen was involved in an automobile collision on the I-5 freeway southbound on her way to Federal Court to commence suit that she luckily walked away from with only neck and back pains felt at the time. *See* Exhibits 57-58.

121.  Fearing for her personal safety and under severe emotional distress, Ms. Dehen first submitted the initial complaint with the Court in order to get the alleged conduct on federal record.

122.  Thereafter Ms. Dehen went to the emergency room, where she submitted the requested proof of identity via photo of her state issued driver's license to Twitter, in completion of the additional action Twitter requested in order to enforce its stated policies. *See* Exhibit 49.

123.  On February 1, 2017 around 4:30 p.m., Doe, using the Twitter domain @tiffanydehen, tweeted, "Black history month? More like "excuse to complain more" month." *See* Exhibit 50.

124.  On February 2, 2017 at 8:51 a.m., Twitter replied to the second report Ms. Dehen submitted for Impersonation (Case # 50854043), with the following:

> Thanks for bringing this to our attention.  Parody, newsfeed, commentary and fan accounts are permitted on Twitter so long as they comply with our policy for such accounts.  In response to your complaint, we're providing the user with instructions on how to comply with our policy. Please allow 48 hours from the receipt of this email if you'd like to file a follow-up complaint about the account.  Note that Twitter will not proactively monitor the account, but will respond to all valid follow-up complaints.

*See* Exhibit 51.

125.  After receiving Plaintiff's second Impersonation Request, it took Twitter more than 12 additional hours to suspend the tweets on the account, which also could have been due in part or in whole to the fact that Plaintiff had already commenced this action, as Plaintiff found her initial

25

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

complaint posted on Twitter the day prior, February 2, 2017. *See* Exhibits 72-73.

126. Ms. Dehen checked Twitter around 5 a.m. on February 3, 2017, and the offending account was still active.

127. When Ms. Dehen checked the account again around 10 a.m. on February 3, 2017, the account was disabled with the main profile photo still visible and the account still accessible through a search on Twitter.

128. The main account page stayed active for days following the disabling of the tweets. Days later, Plaintiff noticed the account was taken down altogether.

129. Twitter is in a better position than Ms. Dehen to present to the Court the exact timeframe of the creation and disabling of the defaming Twitter account through discovery because that information is now unavailable to Plaintiff.

130. Plaintiff can and will show monetary damages as well as reputational and emotional damages, in addition to the statutory and punitive damages she is entitled under the law. For example, Plaintiff was so intimidated, frightened and ashamed in the immediate days after finding the offending Twitter account that she missed an attorney networking event which she was supposed to be a volunteer witness for the week of 1/31/17. *Please see* Exhibit 94.

## RELEVANT FACTS AFTER COMMENCING SUIT

131. On February 1, 2017, Plaintiff Ms. Dehen rushed to file suit out of fear for her safety and well-being due to the aforementioned terroristic behavior; including threats to her personal safety and the safety of Ms. Dehen's dog, Mitty, in order to ensure there was in fact a federal record started somewhere, as Ms. Dehen previously thought the FBI was

26

1  taking care of it but became worried the FBI did not have the threat under

2  control as Ms. Dehen was still being subjected to escalating illegal

3  threatening conduct continuing to harm her.

4      132.  On February 2, 2017, Ms. Dehen's initial complaint she filed

5  under duress went public to her surprise.  Ms. Dehen became apprised of

6  the fact that her complaint went public when she received harassing

7  messages and tweets on Twitter in response to her lawsuit.  Plaintiff

8  requests the record to reflect that the Twitter account in question with

9  domain @TiffanyDehen was still public at this time that her initial

10  complaint was public, and was only taken down by Twitter *after* a copy of

11  Ms. Dehen's initial complaint was all over Twitter.

12      133.  On February 2, 2017, out of continued fear for her personal

13  safety, Ms. Dehen went straight to Federal Court to attempt to be seen by

14  the Judge.  Unsuccessful, Ms. Dehen left a rushed note for the Judge under

15  duress.  Ms. Dehen then went straight to the Federal Bureau of

16  Investigation and refused to leave the premises until an agent came down to

17  notate the new information pertaining to a case which Ms. Dehen thought

18  was ongoing with the FBI regarding the aforementioned terroristic threats

19  to Ms. Dehen personally and to the United States.  The FBI made clear to

20  Ms. Dehen that in spite of the new intel revealing continued threats and

21  harassment, the bureau was still under no duty whatsoever to disclose any

22  updates regarding the ongoing investigation, or Ms. Dehen's safety, to Ms.

23  Dehen, unless her name was picked up as "terrorism chatter" by "known

24  terrorists".

25      134.  After the February 2, 2017 meeting with the FBI, Ms. Dehen

26  noticed Mohammed's Instagram account (the student who self-proclaimed

27

28

Moved (Insertion) [19]
Formatted: Font:Not Bold, Font color: Black

Moved (Insertion) [20]
Formatted: Font:Not Bold, Font color: Black

Deleted: 1

27

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

himself to be an enemy combatant of the United States, *i.e.*, in an ISIS Sleeper Cell) was finally taken down.

135.   On February 3, 2017, the day after Ms. Dehen's initial complaint went public, Mr. Mike Masnick with Tech Dirt published a biased negative news article on Ms. Dehen without the correct facts and without any attempt whatsoever by Mr. Masnick to contact Ms. Dehen for facts. *Please see* https://www.techdirt.com/articles/20170202/16511636619/recent-law-school-grad-sues-twitter-because-someone-made-parody-twitter-account.shtml.

136.   On February 6, 2017, four days after Ms. Dehen's initial complaint went public, Mr. Dorian Hargrove with the San Diego Reader published an article on Ms. Dehen's initial filing without any attempt to reach out to Ms. Dehen for comment. *Please see* https://www.sandiegoreader.com/news/2017/feb/06/ticker-fake-twitter-account-prompts-lawsuit/#.

137.   On February 9, 2017, seven days after Ms. Dehen's initial complaint went public, Ms. Kristina Davis with the San Diego Union Tribune published an article on Ms. Dehen's initial filing without any attempt to reach out to Ms. Dehen for comment. *Please see* http://www.sandiegouniontribune.com/news/courts/sd-me-twitter-lawsuit-20170209-story.html.

138.   On February 17, 2017, Ms. Dehen's friend helped her create a website using the domain www.TiffanyDehen.com, where she made clear she was not backing down with her lawsuit.

139.   On February 17, 2017, Ms. Dehen received a letter from "Adolf hitter" with the email address Mod@aol.com and phone number of

28

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

142.   On February 20, 2017, 18 days after Plaintiff Ms. Dehen's infant complaint went public, Ms. Dehen was involved in a serious automobile collision in Pacific Beach that totaled her car and left her with serious back and neck injuries, for which she sought medical treatment for almost a year, and continues to seek alternative pain management treatments. *Please see* Exhibits 59, 77 - 82. The San Diego Police Department refused to record an incident report regarding the accident, even after requested by Ms. Dehen. *Please see* Exhibits 81 & 82.

143.   On February 21, 2017, Ms. Dehen, in excruciating back and neck pain, went to the San Diego Police Department to again, request for them to file a police report regarding the serious collision the day prior. San Diego Police Department refused. Ms. Dehen called the FBI outside of the Police Department and relayed all of the information regarding the automobile collision to the Bureau, out of fear and suspicion that the

Deleted: 1

29

SECOND AMENDED COMPLAINT         No.: 17-cv-00198-LAB-WVG

1    8585676545 at 8:07:24 PM that said, "Heil hitter u racist dumb broad".

2    *Please see* Exhibit 74.

3        140.   On February 18, 2017 at 9:38 a.m., www.TiffanyDehen.com

4    had 4444 views. *Please see* Exhibit 75.

5        141.   On February 18, 2017 at 10:53:21 a.m., a John Doe claiming

6    the name "Anon" with the email address anon@anon.co sent Ms. Dehen a

7    message through her website contact that stated the following:

8            You are seriously an idiot. It's called the 1st amendment.
9    Maybe your law school allows idiots in, maybe it's just you. The account
     said parody. Good luck finding an attorney willing to pursue such a
10   frivolous claim. Makes sense that you supported Trump; which is much
     different than just voting for the idiot. Your shit-stained eyes can't tell
11   parody from defamation with a disclaimer! Maybe get your head out of
     your ass? –An IP Attorney
12

accident was intentional and related to either the underlying threatening terroristic behavior or the freshly filed federal complaint Ms. Dehen filed 19 days prior, or both. Plaintiff Ms. Dehen respectfully requests the Court to compel from the FBI a copy of the recording of her phone call to the Bureau on February 21, 2017 to enter into evidence.

144.   On February 22, 2017, a professor from USD reached out to Ms. Dehen via the contact form on her website.

145.   On February 24, 2017 at 10:35:38 a.m., a Mr. John Roberts, C.J. with the claimed email address of Roberts@supremecourt.gov and phone number of 202-228-7343 sent a message to Ms. Dehen through her website contact form that said the following:

You do realize that you will never get a legal job after filing that complaint?  The complaint demonstrates that you learned nothing in law school.  Nothing.  It also demonstrates that you are many sandwiches short of a picnic basket.  Seek therapy.

*Please see* Exhibit 83.

146.   On February 24, 2017 at 11:37:35 a.m. a Mr. Ben Hayes with the email address bthayes125@gmail.com and phone number 434-284-3221 sent a message to Ms. Dehen through her website contact form that said the following:

Hello Ms. Dehen, Your lawsuit came to my attention through the blog, Above the Law.  In reading it, one thing in particular caught my eye.  I was just curious if you are now aware that Adolf Hitler was not a "socialist communist" dictator.  He was the leader of the Nazi party, which was National Socialist Democratic German Workers Party.  There are pretty significant differences in the two, and I would be happy to send resources to aid in your understanding, but I am first genuinely curious to see if you know this or not.  Best, Ben.

*Please see* Exhibit 84.

147.   On February 28, 2017, William Vogeler, Esq. with Find Law published a biased negative news article on Plaintiff Ms. Dehen without the

Deleted: 1 .

30

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1    correct facts and without any attempt whatsoever by Mr. Vogeler to reach

2    out to Ms. Dehen for facts. *Please see*

3    http://blogs.findlaw.com/greedy_associates/2017/02/jd-sues-twitter-and-

4    her-alma-mater.html?utm_source=dlvr.it&utm_medium=twitter.

5         148.   On March 25, 2017, a second professor from USD reached out

6    to Ms. Dehen via the contact form on her website.

7         149.   While Ms. Dehen would like to believe that the two

8    aforementioned professors who reached out to Ms. Dehen did so out of

9    fondness for Ms. Dehen as their student, in light of the surrounding

10   circumstances Ms. Dehen chose to be cautious. Ms. Dehen has not

11   communicated with either of the two professors who reached out to her

12   about any of the events at school leading up to this cause of action. After

13   they reached out to Ms. Dehen, she decided not to talk to them directly

14   regarding the case or any claims against USD in order not to taint the

15   evidence since both professors would have testimony that Ms. Dehen

16   alleges shed light on the illegal conduct complained of herein.

17        150.   Ms. Dehen asked the FBI to reach out to the first professor

18   during her home interview with the FBI because Ms. Dehen was briefly

19   enrolled in a class taught by this professor in which the student who

20   declared himself to be an enemy combatant of the United States was also a

21   student (before he made the alarming statements to Ms. Dehen). In this

22   class, as Ms. Dehen relayed to the FBI, she specifically remembers this

23   student going off on an Islam rant, though did not have any reason *at the*

24   *time* to be alarmed by the statements made in class.

25        151.   As for the second professor who reached out to Ms. Dehen,

26   Ms. Dehen alleges that immediately following the university sponsored

27   event during which the student proclaimed himself to be an enemy

Moved (insertion) [24]

Formatted: Font color: Black

Deleted: 1

31

SECOND AMENDED COMPLAINT         No.: 17-cv-00198-LAB-WVG

combatant of the United States, Ms. Dehen walked into class late with one
other student from the Dean's Mixer and was yelled at by this particular
professor. This was a memorable evening for Ms. Dehen since she had just
been told by a fellow law student that he was "in an ISIS sleeper cell"
"until he's activated" and then was yelled at by one of her favorite
professors for being late which was out of the ordinary because Ms. Dehen
was never late to this class. Ms. Dehen did not take hardly any notes
during this class period completely out of character for Ms. Dehen and
appeared visibly distraught throughout the entire class period. This
particular professor approached Ms. Dehen the following class to
apologize, conceding the fact that he had been harsh on her especially since
her conduct was out of the norm for Ms. Dehen.

152. On May 9, 2017 at 6:04:59 p.m., a John Doe claiming the
name "Sad!" with an email address of johnsmith@yahoo.com wrote the
following to Plaintiff Ms. Dehen through her website contact form:

Fuck off. You're a sad excuse for a person if you support that
asswipe of a President, and a terrible excuse for a wanna-be lawyer. You
think you stand for the constitution and 'Merican values? What a laugh- I
would be my LIFE on the fact that you couldn't beat me in court regarding
any aspect of our Constitution. Enjoy these words, from someone who's
actually a member of the bar in their state. Idiot.

*Please see* Exhibit 85.

153. On June 22, 2017, Mr. Vogeler published a second biased
negative news article on Ms. Dehen. *Please see*
http://blogs.findlaw.com/greedy_associates/2017/06/law-grad-sues-her-
law-school-and-twitter.html#more.

154. On June 23, 2017, Plaintiff Ms. Dehen submitted documents
related to this case with the Southern District of California, where she met
an elderly woman in a wheelchair whom she helped wheel downstairs and

Deleted: 1

32

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

ate lunch with. *Please see* Exhibit 88. Ms. Dehen became uncomfortable when it appeared as though this woman was interested in learning details about Ms. Dehen's case not yet disclosed and tried pushing Ms. Dehen to work on her case at her "office" in downtown San Diego. After Ms. Dehen left the presence of this woman, the woman contacted Ms. Dehen about ten or more times the next two days, to the point where Ms. Dehen had to block this woman from further contact via blocking her phone number. *Please see* Exhibits 89 – 92. Plaintiff alleges the fact relevant that this woman's daughter works for Jones Day. *Please see* Exhibit 93. Plaintiff alleges collusion between Perkins Coie LLP and this woman in an attempt to extort and intimidate Ms. Dehen because Ms. Dehen alleges this woman was sent as an agent of Perkins Coie to harass and intimidate Ms. Dehen from pursuing her claims in court.

155. On or around December 11, 2017, Plaintiff Ms. Dehen was contacted by a reporter with Bloomberg News, who asked Ms. Dehen to send her a copy of her second amended complaint before she filed it with the Court. *Please see* Exhibit 86.

156. Plaintiff respectfully requests the record reflect she reserves the right to raise any and all issues related to collusion, intimidation, extortion, and other claims against all named and unnamed defendants should discovery reveal direct evidence of such.

## CDA § 230 IS UNCONSTITUTIONAL

157. Perkins Coie LLP, on behalf of Twitter, asserted CDA § 230 bars jurisdiction of United States Federal District Court over this case, *please see* Perkins Coie LLP's Answer to Plaintiff's First Amended Complaint on behalf of Twitter Inc. The fact that Perkins Coie LLP already tried to assert CDA § 230 as a bar to Plaintiff's claims against Twitter

Moved (insertion) [25]

Deleted: 1

merely provides further evidence in favor of Plaintiff's argument that CDA § 230 is unconstitutional and needs to be stricken down by this Court immediately.

158.   CDA § 230 does not bar claims arising from breach of contract, *please see Baldino's Lock & Key Service, Inc. v. Google LLC*, 2018 WL 400755 at *1 (D.D.C., 2018), nor does CDA § 230 bar claims arising from promissory estoppel, *please see Barnes v. Yahoo!*, 570 F.3d 1096 (9th Cir. 2009).  Contrary to Perkins Coie LLP's absurd assertion, Plaintiff's claims against Defendant Twitter are not barred by CDA § 230 as Plaintiff alleges claims against Defendant Twitter for actions taken by Twitter, not that of a third party, which consist of fraud in the form of fraudulent misrepresentation to Plaintiff personally on more than one occasion, indicating a pattern of racketeering in violation of 18 U.S.C. § 1962, further explained below.  Twitter then attempted to intimidate and extort Ms. Dehen into dropping her legal claims against Twitter, again, not considered activity of a third party for which CDA § 230 is used to bar.

**CDA § 230 Exceeds Legislative Power**

159.   Plaintiff respectfully requests that the record reflect she reserves the right to argue the CDA § 230 exceeds legislative power should this Court not strike down CDA § 230 as unconstitutional for violating the First Amendment.

**CDA § 230 Violates The First Amendment**

160.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

161.   As the plaintiffs in *American Freedom Defense Initiative, et al., v. Loretta Lynch* 2016 WL 3881116 (D.D.C.) argue, Plaintiff argues CDA § 230 is in violation of the First Amendment of the United States

34

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Moved (insertion) [26]

Moved (insertion) [27]

Moved (insertion) [28]

Moved (insertion) [29]

Deleted: 1 .

Constitution.  Should this case uphold the constitutionality of CDA § 230.
Plaintiff reserves the right to bring claims against Twitter and Perkins Coie,
LLP for First Amendment violations against Plaintiff.

162.   Section 230 of the CDA, facially and as applied, is a content
and viewpoint based restriction on speech in violation of the First
Amendment.

163.   Section 230 of the CDA, facially and as applied, is vague and
overbroad and lacks any objective criteria for suppressing speech in
violation of the First Amendment.  In *O'Kroley v. Fastcase, Inc.*, 831 F.3d
352, 355 (6th Cir. 2016), the Sixth Circuit reasoned that "the CDA
immunizes a search engine's 'automated editorial acts.'"  *Baldino's Lock &
Key Service, Inc. v. Google LLC*, 2018 WL 400755 at *5 (D.D.C., 2018)
citing *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016).
Plaintiff argues 'automated editorial acts' could and does include editorial
acts which are discriminatory against a certain viewpoint based on the
content in violation of the First Amendment, such as censorship alleged
against Twitter, YouTube, Facebook, Google, whether it be intentional or
through their algorithms.

164.   The Sixth Circuit continued, "[w]hen a search engine re-
publishes information originally created by a third party, CDA immunity
applies even when confusion may result." *Baldino's Lock & Key Service,
Inc. v. Google LLC*, 2018 WL 400755 at *5 (D.D.C., 2018) citing *O'Kroley
v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016).  In "common sense
terms", no companies should be given free reign over censoring American
citizens' freedom of speech in exchange for no risk of liability, extending
all the way to barring any potential causes of action.  No policy interest
here outweighs the importance of free speech.  Plaintiff alleges her freedom

35

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Deleted: 1

of speech has been censored and suppressed via intimidation through express terroristic threats made against herself and her dog which was then exacerbated by Twitter's fraudulent misrepresentations and failure to uphold its contractual obligations.

165.   Section 230 of the CDA, facially and as applied, permits Twitter and similar companies such as Facebook, YouTube and Google to engage in government-sanctioned discrimination and censorship of free speech in violation of the First Amendment, such as alleged in *American Freedom Defense Initiative, et al., v. Loretta Lynch* 2016 WL 3881116 (D.D.C.).   These same companies are alleged to make similar fraudulent misrepresentations as Twitter without enforcing their expressly stated promises, such as alleged against YouTube for example in *Prager University v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, (N.D. Cal. Mar. 26, 2018).

166.   Section 230 of the CDA, facially and as applied, permits Twitter and similar companies such as Facebook, YouTube and Google to engage in government-sanctioned discrimination that would otherwise violate California Civil Code § 51.  *Please see American Freedom Defense Initiative, et al., v. Loretta Lynch* 2016 WL 3881116 (D.D.C.).

167.   Section 230 of the CDA, facially and as applied, permits Twitter and similar companies such as Facebook, YouTube and Google to engage in government-sanctioned censorship of speech that would otherwise violate Article I, section 2 of the California Constitution. *Id.*

168.   Section 230 of the CDA, facially and as applied, confers broad powers of censorship upon Twitter and similar companies like Facebook, YouTube and Google officials, who can censor constitutionally protected speech and engage in discriminatory business practices with impunity by

Moved (Insertion) [30]

Moved (Insertion) [31]

Deleted: 1 .

virtue of this power conferred by the federal government in violation of the First Amendment. *Id.*

169.    Section 230 of the CDA, facially and as applied, grants Twitter and similar companies like Facebook, YouTube and Google and their officers, agents, and employees unbridled discretion to censor speech such that their decisions to limit speech are not constrained by objective criteria, but may rest on ambiguous and subjective reasons in violation of the First Amendment. *Id.*

170.    Plaintiff argues if large online companies such as Twitter, Facebook, and Google don't have the manpower to appropriately respond to illegal conduct harming American citizens as *they explicitly promise to do,* these international companies should not be able to use their large size as an excuse or shield protecting them from civil liability. Plaintiff does not take issue with the size of the company, rather Plaintiff takes issue with these companies citing impossibility as a valid concern contributing to their unfair unilateral unconstitutional protection afforded by the CDA.

171.    The United States Constitution does not guarantee freedom of speech to *citizens of the world,* or any of the powers vested therein. The United States Constitution grants freedom of speech to citizens of the United States. *Please see* U.S. Const. Am. 1. As just a few examples, Facebook claiming protection of CDA § 230 used the safe harbor to bar allegations that Facebook allowed Palestinian terrorist organization and its members to operate accounts to further their aims. *Please see Cohen v. Facebook, Inc.,* 252 F. Supp. 3d 140, 146 (E.D.N.Y. 2017). Google successfully asserted immunity under CDA § 230 against claims brought by family members of deceased victim of terrorist attack under Anti-Terrorism Act alleging Google provided material support to ISIS. *Please*

Moved (insertion) [32]

Deleted: 1

37

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

*see Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150 (N.D. Cal. 2017). American citizens' freedom of speech are being suppressed for their content and viewpoint by these same companies under CDA § 230. *Please see Green v. YouTube Inc. et al.*, No. 18-CV-203-PB (D.N.H. 2018).

172. The unconstitutional CDA is wasting precious judicial resources. There are countless cases pending before various federal and state courts, in addition to numerous published cases alleging wrongdoing of companies which fall under the broad scope of the CDA, a fraction of which are cited in this complaint. On Westlaw there are 7,000 cases that cite to CDA § 230. *Please see* Exhibit 87.

**IF THIS COURT ERRONEOUSLY HOLDS CDA § 230
CONSTITUTIONAL, IT DOES NOT APPLY IN THIS CASE**

173. "[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." *Baldino's Lock & Key Service, Inc. v. Google LLC*, 2018 WL 400755 (D.D.C., 2018), quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014). Plaintiff avers that the operating word in that sentence is "neutral," of which Plaintiff alleges Twitter is not. Plaintiff alleges Twitter does not provide a neutral means by which third parties can post information of their own independent choosing online, but Twitter is actually quite the opposite.

174. "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). (A publisher is one who "reviews material submitted for publication, perhaps edits it for style or technical fluency, and then decides whether to publish it."); *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016) ("Jane Doe's failure

38
SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

to warn claim has nothing to do with Internet Brands' efforts, or lack thereof, to edit, monitor or remove user generated content.").

175.   Contrary to Perkins Coie LLP's claims on behalf of Twitter in response to Plaintiff's First Amended Complaint, "Plaintiff's claims target Twitter's exercise of editorial discretion and improperly attempt to hold Twitter liable for the conduct of the account creator," (*see generally* Twitter's Motion to Dismiss Plaintiff's First Amended Complaint), Plaintiff's claims against Twitter do not attempt to hold Twitter liable for the conduct of the account creator.

176.   As explained further below, Plaintiff's claims against Twitter attempt to hold Twitter liable for Twitter's conduct including, but not limited to, express contractual obligations and explicit promises, and not that of the account creator, John Doe.  Plaintiff also alleges fraud, conspiracy to commit fraud, and violations of the RICO act against Twitter, none of which are barred by the CDA.

### CDA § 230 Does Not Bar Claims Brought Under The Federal RICO Act

177.   Claims of Twitter engaging in a criminal enterprise under the definition of the RICO act are not barred by CDA § 230 because operating a criminal enterprise in violation of the RICO Act is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Breach of Contract Claims

178.   Twitter breaching its contract with Ms. Dehen is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Fraud Claims

179.  Twitter engaging in fraud is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

180.  Similarly, Twitter fraudulently misrepresenting in its posted Terms of Use is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Extortion Claims

181.  Twitter engaging in extortion is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Conspiracy Claims

182.  Twitter engaging in a criminal and/or civil conspiracy is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets as a publisher.

183.  Plaintiff further reserves the right to allege that Twitter illegally conspired as a co-conspirator in the fraudulent scheme amounting to a violation of the Sherman Act, a conspiracy in the restraint of trade in interstate commerce, with both Perkins Coie LLP and social media companies including, but not limited to, Facebook and Google.

### FIRST CAUSE OF ACTION
### Willful Copyright Infringement
### Against John Doe(s)

184.  Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

185.  Plaintiff is, and at all relevant times has been, the legal copyright owner, under U.S. Copyright Law, 17 U.S.C. § 201(a), of the

40
SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

copyrighted photographs referenced above. Registration Numbers have been officially issued by the U.S. Copyright Office of the copyright registrations identified in Exhibits 68, 69, 70, and 71 attached hereto, which is the subject of a valid Certificate of Copyright Registration issued by the United States Copyright Office.

186. Registration is a prerequisite to filing a lawsuit for copyright infringement involving a U.S. work. *See* 17 U.S.C. § 411(a); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 132 S. Ct. 1962, 1977 (2014) ("Although registration is 'permissive,' both the certificate and the original work must be on file with the Copyright Office before a copyright owner can sue for infringement."); *Alaska Stock, LLC. v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 678 (9th Cir. 2014) ("Though an owner has property rights without registration, he needs to register the copyright to sue for infringement.").

187. Plaintiff submitted federal copyright registration applications for all four photographs on 03/31/2017 and 04/01/2017, which she is entitled to do under 17 U.S.C. § 410 within five years after first publication of the works.

188. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act is the exclusive right to reproduce the Copyrighted Works and to distribute the Copyrighted Works to the public.

189. Plaintiff is informed and believes and thereon alleges that John Doe(s), without the permission or consent of Plaintiff, produced the six Infringing Works, which are substantially similar, not to mention extremely damaging, reproductions of the four Copyrighted Works referenced above.

190. Plaintiff is informed and believes and thereon alleges that Doe(s) distributed the Copyrighted Works to the public, and/or made the

41

Copyrighted Works available for distribution to others, and publicly displayed the Infringing Works, including via the Twitter account @tiffanydehen, on Twitter, a social media website with over 313 million active monthly users.

191. Through the conduct alleged herein, Doe(s) directly infringed Plaintiff's rights in the Copyrighted Works, including by reproducing, distributing, and publicly displaying the Copyrighted Works, in violation of Sections 106 and 501 of the Copyright Act 17 U.S.C. §§ 106 and 501.

192. Defendant Doe(s)'s actions constitute direct infringement of Plaintiff's copyrights and exclusive rights under U.S. Copyright Law.

193. Doe(s)'s acts of infringement are willful, intentional and purposeful, in reckless disregard of and with indifference to Plaintiff's rights.

194. Doe(s) is/are not entitled to the affirmative defense of fair use in this case because Doe(s)'s use of the infringing works is in the same market as Plaintiff and actually damaging Plaintiff's economic prospects in that market. Doe(s)'s use of the Copyrighted Works does not constitute social commentary, criticism, or news reporting because Doe(s) used Ms. Dehen's legal name as the author of the posts, leading the public to believe Ms. Dehen was responsible for the Twitter account. 124. The artistic nature of the Copyrighted Works weighs against fair use, as do the facts that, Doe(s) used the Copyrighted Works in their entirety and Doe's use is negatively impacting the potential market for the Copyrighted Works.

195. By means of the actions complained of herein, Doe(s) willfully infringed and may continue to infringe Plaintiff's Copyrighted Works outlined above, by publishing, reproducing, copying, distributing, and using, in whole or in part, Plaintiff's Copyrighted Works.

42

196. As a direct and proximate result of Defendant Doe(s)'s infringement of Plaintiff's copyrights and exclusive rights in the Copyrighted Works under U.S. Copyright Law, Plaintiff is entitled to recover actual damages, pursuant to 17 U.S.C. § 504(b), for her lost profits as a result of Defendant's infringement, in an amount to be proven at trial.

197. Had Plaintiff registered her copyright three days earlier than 04/01/2017 in the work titled, "Christmas MAGA," Plaintiff would further be entitled to statutory damages in an amount to be determined by the trier of fact, attorneys' fees and costs pursuant to 17 U.S.C. §§ 412(c), 504, 505 since the date the infringement began was 01/29/2017. Plaintiff would have also been entitled to an enhancement of her statutory damages award, up to $150,000 for each infringement, pursuant to 17 U.S.C. § 504(c)(2).

198. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

199. Plaintiff is informed and believes and on that basis alleges that unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's rights in the Copyrighted Works and cause Plaintiff irreparable injury that cannot be fully compensated.

200. Therefore, pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct, including, but not limited to, an order prohibiting Defendant Doe(s) from further infringing Plaintiff's copyrights and directing Defendant to destroy the Infringing Works and all identical and substantially similar copies thereof made in violation of Plaintiff's exclusive rights.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

## SECOND CAUSE OF ACTION

### Malicious Defamation Through Libel Per Se

### Against John Doe

201.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

202.   Doe(s)'s intentional publications by Internet were and are false, unprivileged, have a natural tendency to injure, and cause special damage, and thus constitute defamation per se under California Civil Code sections 44, 45, and under the common law and case law of California.

203.   Plaintiff is informed and believes, and thereon alleges, that Doe(s) intentionally created the Twitter account using the domain @tiffanydehen, knowing that he was not in fact, Ms. Dehen, and deliberately posted each one of the aforementioned defaming Tweets.

204.   Doe(s) expressly referred to Plaintiff in each Tweet because he used Plaintiff's true and legal name as the username.   Further, Defendant used actual photographs of Ms. Dehen to represent Ms. Dehen and retweeted Ms. Dehen's personal Twitter account.

205.   Doe(s) claimed to be a parody account of "Republican White Women," yet posted no other tweets from any "Republican White Women" other than Ms. Dehen.

206.   Doe(s)'s actions are clearly intentional, as evidenced by the fact that Doe(s) expended a considerable amount of time and effort creating the false Twitter account, following the aforementioned 22 Twitter users, meticulously downloading and altering the 4 copyrighted photos from both Twitter and LinkedIn, publishing the six Infringing Works, and posting the 24 defaming tweets.

207.   The defamatory tweets were not privileged.

44

208.  Doe(s) did not engage in a one-time piece of snideness, but rather a campaign against Ms. Dehen with defamatory accusations that tarnish and disparage her and hurt her reputation and economic interests.

209.  Doe(s) deliberately published the Infringing Works with the defaming Swastikas drawn in, with the intent to refer to the National Socialist German Workers' Party, evidenced by the fact he followed Adolf Hitler Fuhr through the Twitter account.

210.  Plaintiff is informed and believes, and thereon alleges, that the publication by Internet is a communication to the public, and to third parties, who reasonably understood that the defaming tweets and photographs were about Ms. Dehen or posted by Ms. Dehen, and that such third parties further reasonably understood the statements to mean that either Doe(s) or Ms. Dehen wrote the statements in fact, and not merely as a matter of Doe(s)'s opinion.

211.  Doe(s) did not lead the public to believe that the defaming account was a parody of Ms. Dehen, but rather a parody of Republican White Women in general, yet only used Ms. Dehen's true name and only drew Swastikas on Ms. Dehen's photographs, thereby contradicting the true nature of the Twitter account.

212.  Although there were only three followers at the time Ms. Dehen found the account, Ms. Dehen has no way to know how many people actually saw the offending account and various tweets.

213.  The defaming account actually did cause confusion in the marketplace because at least one of Ms. Dehen's actual followers followed the account, @BrittTaylorGOP, who is Ms. Dehen's follower of her personal Twitter account @tiffanysundevil. *See* Exhibit 56.

45
SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

214.   The representation of Ms. Dehen on the Twitter account is false, as Ms. Dehen is not a supporter of the National Socialist German Workers' Party, nor a supporter of the Ku Klux Klan.

215.   The tweets are not legitimate criticism, they are not parody, they are not joking, and they are not ironic.

216.   The defaming statements are particularly malicious and harmful, as Doe(s)'s attacks actually constitute an attack on an aspect of Ms. Dehen's heritage and Ms. Dehen's late grandfather, Captain John D. Raikos suffered extreme emotional distress the duration of his life from what he saw in the war related to the 83rd Infantry's liberation of Nazi concentration camps.

217.   Further, Doe(s)'s statements have the potential to damage actual professional relationships that exists between Plaintiff and the Tucson Jewish Community Center and between Plaintiff and the State Bar of California.

218.   Had John Doe(s) acted in good faith, a simple Google search of Ms. Dehen would have shown Doe(s) that Ms. Dehen's late grandfather was Captain John D. Raikos, who was awarded the following decorations for his role in the 83rd Infantry of the United States Army in World War II: Combat Infantryman Badge, Silver Star Medal, Bronze Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good Conduct, American Campaign Medal, WWII Victory Medal, and the EAME Campaign Medal with 5 Bronze Stars for the Five Campaigns.  *See* Exhibit 1 or visit http://www.normandytothebulge.be/83rd_JRaikos.html.

219.   Plaintiff contends Doe(s)'s actions fall outside the protection of the First Amendment, even for purposes of anonymous speech, which can't be remedied by a simple disclaimer of "parody account," while using Ms.

SECOND AMENDED COMPLAINT         No.: 17-cv-00198-LAB-WVG

Dehen's true legal name as the username, publishing Ms. Dehen's copyrighted photographs altered with disparaging Swastikas, and expressly suggesting Ms. Dehen is affiliated with the National Socialist German Workers' Party or the Ku Klux Klan.

220.  The defamatory statements Doe(s) published on Twitter were of and concerning Plaintiff, cast Ms. Dehen in a false light, were attacks on her reputation which discouraged members of the public from having a positive opinion of her, and exposed Ms. Dehen to potential verbal, physical, and mental abuse.

221.  The defaming Twitter account is adverse to Plaintiff's profession and business and the defamatory publications foreseeably caused substantial damage to her business, career, reputation and her actual and prospective economic relationships.

222.  Plaintiff's reputation is subjected to scrutiny in the legal profession, as well as in the Bar application process.

223.  The injurious character of the defamatory statements on Twitter is self-evident and constitutes defamation per se.

224.  Plaintiff is not required to allege special damages because Doe's statements are defamatory on their face, such that the statements malign the Plaintiff's profession and business.

225.  The nature of the Twitter account, related tweets and photographs are so obscene as to lead Plaintiff to allege Doe(s) published the aforementioned tweets maliciously with the intent to cause pain and suffering to Ms. Dehen and to destroy her professional reputation and to cause her to lose clients and job prospects.

226.  Doe(s)'s intent to act with malice is evidenced by the injurious nature of each of the tweets, the misspelling on the various tweets and

photographs, the fact Doe used Ms. Dehen's true and legal name, and the inherently injurious nature of the Twitter accounts Doe followed, such as the Ku Klux Klan and Adolf Hitler.

227. Further, Doe(s) knew, or should have known, that Ms. Dehen was actively seeking bar admittance and a position in the legal industry, as evidenced on Ms. Dehen's Twitter account and LinkedIn, both of which he deliberately referenced to obtain Ms. Dehen's personal information and photographs. *See* Exhibits 60-61.

228. Upon information and belief, Doe(s) even went to such lengths to create false Facebook accounts and harass Ms. Dehen with several friend requests in an attempt to gain more personal information on Ms. Dehen.

229. Plaintiff believes the actions by Doe(s) may reduce her chances of passing the bar, which will prevent her from being admitted to the bar, and thus, could limit her prospects in the legal industry.

230. Plaintiff was in the process of pursuing several business ventures which would rely upon her reputation, and which have been damaged and put on hold by the injury that led to this cause of action, and may even limit the future revenue generated by these business ventures.

231. Plaintiff's credit has been negatively impacted, which may affect her ability to finance assets and obtain employment, thus potentially negatively impacting her quality of life.

232. In attempting to defend her name in Court, Plaintiff has been subjected to widespread criticism and condemnation from various members of the legal community, as well as certain classmates, family, friends and acquaintances, in addition to harassment and abuse by some members of the public.

48

SECOND AMENDED COMPLAINT     No.: 17-cv-00198-LAB-WVG

233. Doe(s)'s statements have not only caused damage to Ms. Dehen's reputation and economic interests, but have also resulted in emotional distress. *See* Seventh Cause of Action below.

234. As a result of Doe(s)'s conduct, Plaintiff has been damaged in an amount to be proven at trial.

235. Doe(s)'s intentional and knowing per se defamation of Ms. Dehen constitutes malice and oppression under California Civil Code section 3294, and therefore Plaintiff is entitled to punitive damages against Twitter in an amount sufficient to punish and set an example of him, which amount is to be proven at trial.

### THIRD CAUSE OF ACTION

### Violation of Cal. Penal Code § 528.5

### Against John Doe(s)

236. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

237. Plaintiff alleges Doe(s) is criminally liable under Cal. Penal Code § 528.5, because Doe credibly impersonated Ms. Dehen, an actual person, online, and without Ms. Dehen's consent, for the purposes of harming, intimidating, or threatening her, which pursuant to Cal. Penal Code § 528.5(e), entitles Ms. Dehen to compensatory damages and injunctive relief, as well as other equitable relief because she suffered damage and loss.

238. Upon information and belief, John Doe(s) engaged in a predatory scheme aimed at harming, humiliating, threatening, and intimidating Plaintiff leading up to and including the injury that led to this cause of action.

239. Due to the injurious nature of the tweets and photographs, Plaintiff alleges Doe(s) impersonated Ms. Dehen with the intent to cause Ms.

49

Deleterharm to her personal reputation, professional reputation, economic interests, and profession.

## FOURTH CAUSE OF ACTION

## Rescission For Fraud In Violation of Cal. Civil Code § 1572 or § 1573

## Against Twitter

240.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

241.   Pursuant to California Civil Code § 1689, an alleged contract may be rescinded if all the parties thereto consent or if the consent of the party rescinding was given by mistake, or obtained through fraud, or exercised by or with the connivance of the party as to whom it rescinds.

242.   Rescission under California Civil Code § 1689 is also appropriate where the purported contract was induced by fraud, misrepresentation, and/or fraudulent misrepresentation, or where there is failure of consideration.

243.   On October 9, 2015, Twitter fraudulently misrepresented to Plaintiff that Twitter would investigate reported accounts to determine if the accounts are in violation of the Twitter Rules upon receipt of an impersonation report by Plaintiff.

244.   Twitter violated California Civil Code § 1572 by promising to investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules in the Impersonation Policy, without any intention of performing the aforementioned investigation upon receipt of an impersonation report.

245.   Plaintiff alleges Twitter had no intention of investigating the reported account unless and until Plaintiff provided additional information in the form of a government issued identification card.

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

246.   In addition, there is a failure of consideration with respect to the revised Impersonation Policy in that they are illusory, and lack mutuality because Plaintiff relied upon Twitter's fraudulent misrepresentation that it would investigate offending accounts upon receipt of an impersonation report when she entered into the user agreement with Twitter; Plaintiff has been harmed by a result of that reliance. Under basic contracts principles Twitter is not allowed to change its contractual terms unilaterally after partial performance.

247.   Plaintiff alleges Twitter failed to disclose material terms of the user agreement by purposely not disclosing the fact Twitter would need a government issued photograph identification in order to proceed with an investigation into an account reported to be in clear violation of the Impersonation Policy under the Twitter Rules.

248.   Twitter benefitted from the concealment of the true impersonation process by, *inter alia*, the advertising revenues Twitter earned off of the impersonating account.

249.   Upon information and belief, Plaintiff alleges that at such time as these representations were made, Twitter intended that Plaintiff would rely on their representations.

250.   Plaintiff was harmed, and similarly situated plaintiffs continue to be harmed, by their reliance upon the representation of Twitter that it will take down impersonating accounts upon receipt of an impersonation report.

251.   The false representation of Twitter was a substantial factor in causing harm to Plaintiff in the form of economic injury and emotional distress.

252.   If Twitter's actions do not amount to actual fraud under California Civil Code § 1572, which is a question of fact for the fact finder,

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

Moved up [39]: 179.
Deleted:
Formatted: Font color: Black

Deleted:
Formatted: Font color: Black

Formatted: Font:12 pt

Moved up [40]: 180.
Deleted:
Formatted: Font color: Black

Formatted: Font:12 pt

Moved up [41]: 181.
Deleted:
Formatted: Font color: Black

Deleted:
Formatted: Font:12 pt

Moved up [42]: 182.
Deleted:
Formatted: Font color: Black

Formatted: Font:12 pt

Deleted: 183.
Formatted: Font color: Black

Formatted: Font:12 pt

Moved up [43]: 184.
Formatted: Font color: Black
Deleted:
Formatted: Font color: Black
Formatted: Font:12 pt

Moved up [44]: 185.
Formatted: Font color: Black
Deleted:
Formatted: Font color: Black

Deleted: 1 .

California Civil Code § 1573 because even lacking fraudulent intent, Twitter gained an advantage through advertising revenues off of the impersonation of Plaintiff, for which Twitter promised to remove upon receipt of an impersonation report, and Plaintiff relied on and was harmed by Plaintiff's failure to do so.

253. Plaintiff intends service of the Summons and Complaint in this action to serve as notice of rescission of the additional impersonation policy imposed on Plaintiff after Plaintiff performed.

254. Plaintiff reserves the right to add a class of Plaintiffs which might be similarly situated to this cause of action as the lead Plaintiff, in the interest of justice if so required, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

255. Plaintiff contends Twitter cannot successfully assert Communications Decency Act (CDA) § 230 as a defense to this action, as CDA § 230 does not bar causes of action that arise out of breach of contract. The Ninth Circuit held, and reaffirmed, that the CDA does not declare "a general immunity against all claims derived from third-party content." *See Barnes v. Yahoo!, Inc.*, 570 F.3d at 1100; *see also Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016).

## FIFTH CAUSE OF ACTION
### Declaratory Relief
### Against Twitter

256. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

257. An actual, justiciable controversy has arisen and now exists between Plaintiff and Twitter, relating to their respective legal rights, duties

52

and obligations, such that it is necessary for the Court to determine the parties' respective rights , duties and obligations.

258.   Plaintiff therefore respectfully requests that this Court enter an Order, pursuant to 28 U.S.C. § 1692:

a) That the Terms of Use Agreement set forth above are void *ab initio*;

b) In the alternative, order that the contract between Plaintiff and Twitter is unenforceable on the grounds that it is illusory, lacks mutuality, fails of consideration;

c) In the alternative, order that the contract between Plaintiff and Twitter is rescinded pursuant to California Civil Code §1689 on the grounds that they were mutually rescinded, Plaintiff's consent was given by mistake, obtained through fraud, concealment and misrepresentation, and/or exercised by or with the connivance of Twitter, and there is failure of consideration;

d) Order that Plaintiff is under no legal obligation to compensate or pay Twitter under the terms of the contract between Twitter and Plaintiff as it is void *ab initio*, unenforceable, and/or rescinded; and

(e) Ordering the parties restored to their former positions and requiring them to return whatever they received, if anything, under the revised contract pursuant to California Civil Code § 1692.

## SIXTH CAUSE OF ACTION

### Intentional Interference With Actual and/or Prospective Economic Relations

### Against John Doe(s)

259.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

53

260.  Plaintiff alleges intentional interference with actual and prospective economic relations against John Doe(s).

261.  Plaintiff has numerous business ventures in place she is currently pursuing, including admittance to the California Bar, a job in the legal profession, as well as various business ventures that probably would have resulted in a future economic benefit to Plaintiff.

262.  John Doe(s) knew, at the very least, that Plaintiff was currently seeking admittance to the State Bar of California through direct evidence including, but not limited to, Plaintiff's various social media profiles Doe used in creating the Twitter account and content, notably Plaintiff's LinkedIn profile which specifically references the fact that Plaintiff was enrolled at the University of San Diego Law School as a Juris Doctor Candidate 2016, which is the social media profile Doe found the photograph titled, "Tiffany Pro." as Plaintiff alleges, upon information and belief, that LinkedIn is the only social media platform which she posted the photograph titled, "Tiffany Pro."

263.  John Doe(s) intended to disrupt Plaintiff's admittance to the State Bar of California by engaging in the wrongful conduct referenced above.

264.  John Doe(s) failed to act with reasonable care and engaged in wrongful conduct, referenced above.

265.  Doe(s)'s actions were intentionally made and were foreseeably and substantially certain to cause interference with Plaintiff's actual and/or prospective business relationships by damaging Plaintiff's good name and reputation, and deterring persons and entities from doing business with her.

266.  Doe(s)'s conduct alleged herein actually interfered with Plaintiff's actual and/or prospective business relationships as referenced

54

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

above. Plaintiff has an actual business relationship with the Tucson Jewish Community Center, of which is reasonably foreseen to be damaged as a result of Doe(s)'s despicable conduct.

### SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against John Doe

267. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

268. At all times relevant to the matters alleged in this Complaint, John Doe(s) owed a duty of care to prevent Plaintiff from being injured as a result of Doe(s)'s conduct.

269. Doe(s) intentionally, willfully and maliciously breached the aforesaid duty of care owed to the Plaintiff and engaged in extreme and outrageous conduct by viciously impersonating and defaming Plaintiff.

270. John Doe(s) engaged in this extreme and outrageous conduct with the intent of causing, or in reckless disregard of the probability of causing, severe emotional distress to the Plaintiff.

271. As a direct and proximate result of Doe(s)'s extreme and outrageous conduct, Plaintiff has suffered extreme mental and emotional distress. Plaintiff feared, and continues to fear, for her physical safety. Plaintiff will likely incur medical expenses, including expenses for psychiatric care and psychological counseling services.

272. Plaintiff will seek leave to amend this complaint once the identity/identities of John Doe(s) is/are confirmed to include additional harassment which Plaintiff suspects occurred in connection with the injuries stated herein.

### EIGHTH CAUSE OF ACTION

55

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

**Negligent Infliction of Emotional Distress**

**Against Twitter**

273.  Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

274.  At all times relevant to the matters alleged in this Complaint, Twitter owed a duty of care to prevent Plaintiff from being injured as a result of Twitter's conduct.

275.  Twitter breached the aforesaid duty of care owed to the Plaintiff by breaching its contract with Plaintiff and then allowing the continued publication of Doe's harmful conduct to persist after breaching its contract with Plaintiff.

276.  As a direct and proximate result of Twitter's negligent conduct, Plaintiff has suffered extreme mental and emotional distress.  Plaintiff feared, and continues to fear, for her physical safety, and that she will be wrongly accused in the public view.  Plaintiff will likely incur medical expenses, including expenses for psychiatric care and psychological counseling services.

**NINTH CAUSE OF ACTION**

**Civil Conspiracy**

277.  Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

278.  Plaintiff reserves the right to bring any and all additional causes of action including but not limited to, a cause of action for civil conspiracy amongst any or all of the named and unnamed defendants.

279.  Plaintiff reserves the right to bring a cause of action for civil conspiracy, as well as amend the above Causes of Actions accordingly, if discovery reveals that it is probable that more than one individual engaged

56

in the procurement, constructing, or publishing of the Twitter account with domain @tiffanydehen and Infringing Works, in any capacity whatsoever to Defendants' economic benefit and Plaintiff's economic harm.

280.   Plaintiff reserves the right to bring any and all additional causes of action against any or all defendants who conspired together, or acted alone, in illegally extorting and/or exploiting Plaintiff to Plaintiff's harm and Defendant's benefit.

281.   Plaintiff reserves the right to bring additional claims including, but not limited to, claims relating to conflicts of interest against Perkins Coie LLP.  For the record, Plaintiff alleges Perkins Coie LLP attempted to exploit and extort her illegally for their client's illegal gains.  Plaintiff goes so far as to allege that discovery will prove that Perkins Coie LLP is guilty of violating numerous federal laws including, but not limited to, conspiring in the restraint of trade in violation of the Sherman Act, obstructing justice, impeding federal law enforcement investigations, contempt of court, treason, conspiracy to commit treason, racketeering activity in violation of the RICO statute mentioned above including operating a criminal enterprise, engaging in patterns of fraud, extortion, exploitation and blackmail.  It would not be the first time Perkins Coie LLP was accused of aiding and abetting its clients in the commission of crimes, as Perkins Coie is currently at the center of a wide scale United States investigation which includes possible claims of treason, jeopardizing the ethical standards of the entire international law firm.  *Please see* the recently declassified Nunes Memo available here: https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=85 6.

## TENTH CAUSE OF ACTION

## Violation of 18 U.S. Code § 1962

Deleted: 216.  Plaintiff requests leave to amend this complaint.

Formatted: Font color: Black
Formatted: Level 1, Line spacing:  exactly 24 pt
Formatted: Font:12 pt, Not Bold
Formatted: Font color: Black
Formatted: Font:12 pt, Not Bold
Formatted: Line spacing:  exactly 24 pt
Deleted: 1

**Against Twitter**

282.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

283.   Plaintiff brings a Cause of Action under 18 U.S. Code § 1964 against Twitter for the injuries sustained by Plaintiff, and all other individuals similarly situated if justice permits or requires pursuant to the Federal Rules of Civil Procedure Rule 23, as a result of Twitter's fraudulent misrepresentations and scheme to defraud in violation of 18 U.S. Code § 1962(C).

284.   At all relevant times, Defendant Twitter was a "person" within the meaning of 18 U.S.C. § 1961(3) because it was "capable of holding a legal or beneficial interest in property."

285.   Twitter is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which Defendant Twitter conducted the pattern of racketeering activity described herein.  Throughout its existence, Twitter engaged in, and its activities affected interstate commerce because it involved commercial activities across state lines, including national marketing campaigns and the solicitation and receipt of money in the form of advertising revenues from victims located throughout the country.

286.   Plaintiff alleges Twitter participated in a pattern of racketeering activity, as defined by 18 U.S.C. § 1962(5), consisting of numerous and repeated uses of interstate wire communications to execute a scheme to defraud in violation of 18 U.S.C. § 1962(c).

287.   The fraudulent express misrepresentations by Twitter of the terms of the Twitter User Agreement was created and/or used as a tool to carry out the Scheme and pattern of racketeering activity.

58

288. Plaintiff alleges Defendant Twitter has committed at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. § 1343, within the past ten years. The multiple acts of racketeering activity that they committed and/or conspired to, or aided and abetted in the commission of, were related to each other, pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."

289. Defendant Twitter's predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1) include, but are not limited to:

(a) Wire Fraud: Defendant Twitter violated 18 U.S.C. § 1343, by transmitting and receiving, or causing to be transmitted or received, materials by wire for the purpose of executing the Scheme, which amounts to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions. The materials transmitted and/or received include but are not limited to, interstate credit card transactions, publication by Internet promoting the Scheme, and the fraudulent misrepresentation in Twitter's Terms of Use.

290. Defendant Twitter knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose. Defendant Twitter either knew or recklessly disregarded that these were material misrepresentations and omissions.

291. Defendant Twitter obtained money and property belonging to Plaintiff, and the Class as a result of these violations. Plaintiff alleges Plaintiff and other Class Members been injured in their business or property by Defendant Twitter's overt acts of wire fraud.

292. Plaintiff and the Class have been injured in their property by reason of Twitter's violations of 18 U.S.C. § 1962, including the damage

59

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

done to Plaintiff's reputation as a result of relying on Twitter's fraudulent misrepresentation, which collectively amounts to tens of millions of dollars, plus the advertising revenues Twitter obtained off the fraudulent misrepresentations. In the absence of Defendant Twitter's violations of 18 U.S.C. § 1962, Plaintiff and the Class would not have incurred these losses.

293. Plaintiff's and the Class's injuries were directly and proximately caused by Defendant Twitter's racketeering activity.

294. Twitter knew and intended that Plaintiff and the Class would rely on the Scheme's fraudulent misrepresentations and omissions. Defendant Twitter knew and intended Plaintiff, and the Class, would enter into the terms of use, and pay advertising fees, as a result of the same.

295. Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover their treble damages, the costs of bringing this suit and reasonable attorneys' fees.

296. Defendant Twitter is accordingly liable to Plaintiff and the Class for three times their actual damages as proved at trial plus interest and attorneys' fees.

## ELEVENTH CAUSE OF ACTION

### Libel

### Against Twitter

297. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

298. Plaintiff reserves the right to bring a cause of action against Twitter for libel in violation of California Civil Code § 45 in light of the fact that plaintiffs in a case on appeal in the D.C. Circuit are currently seeking a permanent injunction from the Attorney General to declare CDA § 230

60
SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

unconstitutional. *See American Freedom Defense Initiative et al. v. Lynch*,

No. 16-cv-1437, 2016 WL 6635634 (D.D.C. Nov. 9, 2016).

## TWELFTH CAUSE OF ACTION

### Violation of 18 U.S. Code § 1962

### Against USD

299.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

300.   Plaintiff brings a Cause of Action under 18 U.S. Code § 1964 against USD for the injuries sustained by Plaintiff.

301.   At all relevant times, Defendant USD was a "person" within the meaning of 18 U.S.C. § 1961(3) because it was "capable of holding a legal or beneficial interest in property."

302.   USD is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which Defendant USD conducted the pattern of racketeering activity described herein.  Throughout its existence, the USD enterprise engaged in, and its activities affected interstate commerce because it involved commercial activities across state lines, including national marketing campaigns and the solicitation and receipt of money in the form of tuition, including federal student loans from the federal government, from victims located throughout the country.   Defendant USD exercised substantial control over the affairs of the USD Enterprise.

303.   Plaintiff alleges USD participated in a pattern of racketeering activity, as defined by 18 U.S.C. § 1962(5), consisting of numerous and repeated uses of interstate wire communications to execute a scheme to defraud in violation of 18 U.S.C. § 1962(c).

304.   The fraudulent express misrepresentations by USD of the terms and stated policies of the University and Department of Public Safety were

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Formatted: Font color: Black
Formatted: Font:12 pt
Moved up [71]: 233.
Deleted: Plaintiff requests leave to amend this complaint.
Formatted: Font color: Black
Formatted: Font color: Black
Formatted: Level 1, Line spacing:  exactly 24 pt
Deleted: 1

created and/or used as tools to carry out the Scheme and pattern of racketeering activity.

305. Plaintiff alleges Defendant USD has committed at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. § 1343, within the past ten years. The multiple acts of racketeering activity that they committed and/or conspired to, or aided and abetted in the commission of, were related to each other, pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."

306. Defendant USD's predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1) include, but are not limited to:

(a) Wire Fraud: Defendant USD violated 18 U.S.C. § 1343, by transmitting and receiving, or causing to be transmitted or received, materials by wire for the purpose of executing the Scheme, which amounts to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions. The materials transmitted and/or received include but are not limited to, interstate credit card transactions, publication by Internet promoting the Scheme, and the fraudulent misrepresentation in USD's expressly stated policies.

307. Defendant USD knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose. Defendant USD either knew or recklessly disregarded that these were material misrepresentations and omissions.

308. Defendant USD obtained money and property belonging to Plaintiff, and the Class as a result of these violations. Plaintiff alleges Plaintiff and other Class Members been injured in their business or property by Defendant USD's overt acts of wire fraud.

Deleted: 1

62

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

309.   Plaintiff and the Class have been injured in their property by reason of USD's violations of 18 U.S.C. § 1962, including the damage done to Plaintiff's reputation as a result of relying on USD's fraudulent misrepresentation, which collectively amounts to tens of millions of dollars, plus the tuition revenues USD obtained off the fraudulent misrepresentations.  In the absence of Defendant USD's violations of 18 U.S.C. § 1962, Plaintiff and the Class would not have incurred these losses.

310.   Plaintiff's and the Class's injuries were directly and proximately caused by Defendant USD's racketeering activity.

311.   USD knew and intended that Plaintiff and the Class would rely on the Scheme's fraudulent misrepresentations and omissions.  Defendant USD knew and intended Plaintiff, and the Class, would attend its university and pay tuition, as a result of the same.

312.   Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover their treble damages, the costs of bringing this suit and reasonable attorneys' fees.

313.   Defendant USD is accordingly liable to Plaintiff and the Class for three times their actual damages as proved at trial plus interest and attorneys' fees.

## THIRTEENTH CAUSE OF ACTION
### Breach of Contract
### Against University of San Diego

314.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

315.   Plaintiff alleges USD breached several contracts between USD and Plaintiff, as well as between USD and all other individuals similarly situated.

63

316.   Not only did USD breach several contractual duties it expressly promised to Plaintiff and all other individuals similarly situated such as the several express contractual duties stated above, but Plaintiff relied on these promises made by USD to her detriment.  Specifically, Plaintiff relied on the promise that USD would provide a safe campus, as referenced above.  Not only did USD fail to uphold its express promises made to Plaintiff and all other individuals similarly situated, USD gave preferential treatment to individuals whom Plaintiff alleges violated federal terrorism laws.

## FOURTEENTH CAUSE OF ACTION

### Intentional and/or Negligent Infliction of Emotional Distress
### Against USD

317.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

318.   Plaintiff brings a cause of action against USD for intentional and negligent infliction of emotional distress under California law.

319.   Plaintiff alleges that at all times relevant to the matters alleged in this Complaint, USD owed a duty of care to prevent Plaintiff from being injured as a result of Doe's conduct.

320.   USD breached the aforesaid duty of care owed to Plaintiff by breaching its contracts with Plaintiff, negligently resulting in Doe's despicable conduct.

339.   As a direct and proximate result of USD's negligent conduct, Plaintiff suffered extreme mental and emotional distress.  Plaintiff feared, and continues to fear, for her physical safety, and for the safety of her close family and friends, in addition to the fear that she will continue to be wrongly accused in the public view due to Doe's conduct.  Plaintiff will likely incur

64

medical expenses, including expenses for psychiatric care and psychological counseling services.

321. Plaintiff respectfully reserves the right to further amend this complaint.

## EXTORTION AND HOBBS ACT VIOLATIONS

322. 18 U.S.C. § 875(d) states:

Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

*Please see* 18 U.S.C. § 875(d).

323. 18 U.S.C. § 1951(a) states:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

*Please see* 18 U.S.C. § 1951(a).

324. Subsection (b) continues

As used in this section –

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

*Please see* 18 U.S.C. § 1951(b).

## FIFTEENTH CAUSE OF ACTION

### Extortion & Conspiracy to Commit Extortion Against Twitter

325. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

65
SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

326. Plaintiff alleges violations of 18 U.S.C. § 875(d) and 18 U.S.C. § 1951 against Twitter including actual extortion as defined under 18 U.S.C. § 1951(b) through the wrongful use of actual and threatened force, violence, and fear, conspiracy to commit extortion, and transmission in interstate commerce communication containing threats to injure the property and reputation of Plaintiff.

327. As explained above, Plaintiff alleges Twitter working in conjunction with Perkins Coie, LLP and/or USD, attempted intimidation against Plaintiff in the form of actual physical harm of Plaintiff in the serious 02/20/2017 automobile collision and threatened harm to Plaintiff physically, financially and reputationally, with actual harm resulting to Plaintiff.

### SIXTEENTH CAUSE OF ACTION

### Extortion & Conspiracy to Commit Extortion Against Perkins Coie LLP

328. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

329. Plaintiff alleges violations of 18 U.S.C. § 875(d) and 18 U.S.C. § 1951 against Perkins Coie, LLP including actual extortion as defined under 18 U.S.C. § 1951(b) through the wrongful use of actual and threatened force, violence, and fear, conspiracy to commit extortion, and transmission in interstate commerce communication containing threats to injure the property and reputation of Plaintiff.

330. As explained above, Plaintiff alleges Perkins Coie, LLP working in conjunction with Twitter and/or USD, attempted intimidation against Plaintiff in the form of actual physical harm of Plaintiff in the serious 02/20/2017 automobile collision and threatened harm to Plaintiff

66

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Deleted: 1

physically, financially and reputationally, with actual harm resulting to Plaintiff.

331.   Perkins Coie, LLP has come under public scrutiny recently for engaging in criminal acts on behalf of and in conjunction with its clients. Plaintiff alleges Perkins Coie threatened and intimidated her personally.

## SEVENTEENTH CAUSE OF ACTION
### Extortion & Conspiracy to Commit Extortion Against USD

332.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

333.   Plaintiff alleges violations of 18 U.S.C. § 875(d) and 18 U.S.C. § 1951 against USD including actual extortion as defined under 18 U.S.C. § 1951(b) through the wrongful use of actual and threatened force, violence, and fear, conspiracy to commit extortion, and transmission in interstate commerce communication containing threats to injure the property and reputation of Plaintiff.

334.   As explained above, Plaintiff alleges USD working in conjunction with Twitter and/or Perkins Coie, LLP, attempted intimidation against Plaintiff in the form of actual harm of Plaintiff from the negative news articles, as well as threatened harm to Plaintiff financially and reputationally, with actual harm resulting to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.   Accept jurisdiction over this action;

2.   For the Court to compel Twitter to provide the email address John Doe used to sign up for the offending Twitter account so that Plaintiff may request the Court to authorize service of the summons and complaint on Defendant Doe by email to his "published and last known valid email

address without requirement of return receipt under Federal Rules of Civil Procedure 4(f)(3) and 4(h)(2);

3. That Defendant Doe(s) be permanently enjoined from infringing Plaintiff's copyrights in any manner, specifically those related to the Infringing Works;

4. That Defendant Doe(s) be permanently enjoined from publishing defamatory statements about Plaintiff such as those set forth herein;

5. That Defendant Twitter be permanently enjoined from publishing the fraudulent misrepresentation in its Terms of Use;

6. That Defendant USD be permanently enjoined from publishing the fraudulent misrepresentations on its website;

7. That Defendant USD, and all American Universities operating on or off American soil receiving federal funds, such as in the form of federal student loans, be ordered to comply with United States Federal law, particularly in regards to terroristic threats and terroristic activities which could reasonably foreseeably harm American and foreign students on American soil;

8. That Defendants Perkins Coie LLP, Twitter, Inc., and University of San Diego be permanently enjoined, fined and the attorneys at Perkins Coie sanctioned for engaging in Hobbs Act violations.

9. For economic damages according to proof at trial;

10. For punitive damages according to proof at trial;

11. For prejudgment interest to the extent recoverable by law;

12. For attorney's fees to the extent recoverable by law or contract;

13. For costs of suit; and

68

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

14.   For such other and further relief as the Court may deem just and proper.

15.   Plaintiff reserves the right to bring additional claims against including but not limited to the Democratic National Committee, the FBI, the DOJ, San Diego Police Department, the City of San Diego, Homeland Security, and the State Department.

## DEMAND FOR TRIAL BY JURY

A TRIAL BY JURY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38 AND CONSTITUTIONAL AMENDMENT SEVEN IS HEREBY DEMANDED.

Dated: April 6, 2018

Respectfully submitted,

Tiffany L. Dehen

1804 Garnet Avenue, #239

Pacific Beach, CA 92109

Tel. 858-262-0052

Tiffany.Dehen@Gmail.com

Pro Se Plaintiff.

69

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on April 6, 2018 by express delivery with signature confirmation, postage pre-paid, to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5.4(d).

**Dated April 6, 2018**

Tiffany L. Dehen

Pro Se Plaintiff.

Deleted: 1