MICHAEL C. SULLIVAN (SBN 131817)
msullivan@paulplevin.com
JOANNE ALNAJJAR BUSER (SBN 295191)
jbuser@paulplevin.com
AMR A. SHABAIK (SBN 288109)
ashabaik@paulplevin.com
**PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone:  619-237-5200
Facsimile:   619-615-0700

Attorneys for Defendant UNIVERSITY
OF SAN DIEGO

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY DEHEN, an individual on behalf of herself,<br><br>              Plaintiff,<br><br>        v.<br><br>JOHN DOES 1-100; TWITTER, INC.; UNIVERSITY OF SAN DIEGO and PERKINS COIE, LLP,<br><br>              Defendants. | Case No. 3:17-cv-00198-LAB-WVG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNIVERSITY OF SAN DIEGO'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**[Fed. R. Civ. P. 41(b); 12(b)(6)]**<br><br>Judge:          Hon. Larry A. Burns<br>Courtroom:    14A<br>Mag. Judge:  Hon. William V. Gallo<br>Courtroom:    Suite 2125<br>Trial Date:    Not Set |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    PROCEDURAL BACKGROUND ............................................................ 2

III.   ALLEGATIONS IN THE SAC ................................................................ 3

IV.    APPLICABLE STANDARD FOR MOTION TO DISMISS ...................... 6

    A.    Applicable Standard For Rule 41(b) Dismissal. .................................... 6

    B.    Applicable Standard For Rule 12(b)(6) Dismissal. ............................... 6

V.     THE SAC FAILS TO MEET RULE 8 PLEADING STANDARDS ............. 7

VI.    PLAINTIFF FAILS TO PLEAD ANY PLAUSIBLE INJURIES;
       THUS, NONE OF HER CLAIMS ARE RIPE ........................................... 9

VII.   PLAINTIFF FAILS TO STATE ANY PLAUSIBLE CLAIMS .................. 9

    A.    Plaintiff's Breach of Contract Claim Fails Because There Is No
             Enforceable Agreement, And Plaintiff Fails To Plausibly
             Connect John Does' Actions To USD. ............................................ 9

        1.    Plaintiff fails to plead any facts supporting the plausible
                   existence of an enforceable contract. ...................................... 10

        2.    Plaintiff fails to plead any specific promise made by USD
                   to her. ................................................................................... 12

        3.    Plaintiff fails to plead any plausible facts that USD acted
                   unlawfully or breached any purported contract with her. .......... 13

    B.    Plaintiff's IIED and NIED Claims Fail. ......................................... 13

        1.    Plaintiff's IIED claim fails because the SAC does not
                   attempt to plead any facts, nonetheless plausible ones, that
                   support such a claim. .............................................................. 13

        2.    Plaintiff's NIED claim fails to plead any facts establishing
                   that USD owed her a duty of care. .......................................... 14

        3.    Plaintiff's NIED claim fails because there is no plausible
                   allegation that USD breached a duty of care to Plaintiff,
                   based on the activities of the John Does. .................................. 17

    C.    Plaintiff's RICO Act Claim Fails. .................................................. 17

    D.    Plaintiff's Claims for Extortion and Conspiracy to Commit
             Extortion Fail. ............................................................................. 18

VIII.  THE COURT SHOULD NOT GRANT PLAINTIFF LEAVE TO
       FURTHER AMEND BECAUSE ANY AMENDMENT WOULD BE
       FUTILE .............................................................................................. 19

IX.    USD IS ENTITLED TO COSTS .................................................................. 20

X.    CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................ 1, 7, 13

*Bancard Servs., Inc. v. E*Trade Access, Inc.*
  292 F. Supp. 2d 1235 (D. Or. 2003) .......................................... 11

*Banga v. Kanios*
  No. 16-CV-04270-RS, 2016 WL 7230870 (N.D. Cal. Dec. 14, 2016) .......... 10, 12

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ................................................................ passim

*Berger v. Home Depot U.S.A., Inc.*
  476 F. Supp. 2d 1174 (C.D. Cal. 2007) ...................................... 12

*Brodeur v. Claremont Sch. Dist.*
  626 F. Supp. 2d 195 (D.N.H. 2009) ........................................ 11, 12

*Cadkin v. Loose*
  569 F.3d 1142 (9th Cir. 2009) .................................................. 20

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*
  637 F.3d 1047, 1059 (9th Cir. 2011) .......................................... 8

*Cedric Kushner Promotions, Ltd. v. King*
  533 U.S. 158 (2001) ................................................................ 18

*Desaigoudar v. Meyercord*
  223 F.3d 1020 (9th Cir. 2000) .................................................. 18

*Dove v. PNS Stores, Inc.*
  982 F. Supp. 1420 (C.D. Cal. 1997) .......................................... 14

*Erie Railroad Co. v. Tompkins*
  304 U.S. 64 (1938) .................................................................. 12

*Ewing v. Integrity Capital Sols., Inc.*
  No. 16-CV-1469 JLS MDD, 2017 WL 758402 (S.D. Cal. Feb. 27, 2017) ....................................................................................... 18

*Gibson v. Walden Univ., LLC*
  66 F. Supp. 3d 1322 (D. Or. 2014) ........................................................ 11, 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
  896 F.2d 1542 (9th Cir. 1989) .................................................................. 4

*Hatch v. Reliance Ins. Co.*
  758 F.2d 409 (9th Cir. 1985) .................................................................... 8

*In re MannKind Sec. Actions*
  835 F. Supp. 2d 797 (C.D. Cal. 2011) ...................................................... 4

*Kendall v. Visa U.S.A., Inc.*
  518 F.3d 1042 (9th Cir. 2008) .................................................................. 7

*McHenry v. Renne*
  84 F.3d 1172 (9th Cir. 1996) .................................................................... 8

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*
  339 F.3d 1087 (9th Cir. 2003) ................................................................ 19

*Moore v. Kayport Package Exp., Inc.*
  885 F.2d 531 (9th Cir. 1989) .................................................................. 18

*Navarro v. Block*
  250 F.3d 729 (9th Cir. 2001) .................................................................. 10

*Nevijel v. N. Coast Life Ins. Co.*
  651 F.2d 671 (9th Cir. 1981) ................................................................. 7, 8

*Reddy v. Litton Indus., Inc.*
  912 F.2d 291 (9th Cir. 1990) ............................................................... 7, 20

*Robertson v. Dean Witter Reynolds, Inc.*
  749 F.2d 530 (9th Cir. 1984) .................................................................... 6

*Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*
  446 F. Supp. 2d 1108 (N.D. Cal. 2006) .................................................. 10

*Smith v. Hurd*
  699 F. Supp. 1433 (D. Haw. 1988), *aff'd*, 985 F.2d 574 (9th Cir.
  1993) ....................................................................................................... 19

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) .................................................................... 7

*Wolfson v. Brammer*
   616 F.3d 1045 (9th Cir. 2010) ................................................................. 9

**STATE CASES**

*Cabral v. Ralphs Grocery Co.*
   51 Cal. 4th 764 (2011) ........................................................................... 15

*Carter v. CB Richard Ellis, Inc.*
   122 Cal. App. 4th 1313 (2004) ............................................................... 12

*Castellon v. U.S. Bancorp*
   220 Cal. App. 4th 994 (2013) ................................................................. 14

*Davidson v. City of Westminster*
   32 Cal.3d 197 (1982) ............................................................................. 15

*Delfino v. Agilent Techs., Inc.*
   145 Cal. App. 4th 790 (2006) ................................................................. 16

*Ladas v. Cal. State Auto. Ass'n*
   19 Cal. App. 4th 761 (1993) ................................................................... 12

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*
   48 Cal. 3d 583 (1989) ............................................................................. 14

*Regents of Univ. of California v. Superior Court*
   413 P.3d 656 (Cal. 2018) ........................................................................ 15

*Steven F. v. Anaheim Union High Sch. Dist.*
   112 Cal. App. 4th 904 (2003), *as modified on denial of reh'g* (Oct.
   22, 2003) ................................................................................................. 16

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

18 U.S.C. § 1961 ............................................................................................. 17

28 U.S.C. § 1652 ............................................................................................. 12

Fed. R. Civ. P. 8(a) ................................................................................. 6, 7, 8

Fed. R. Civ. P. 8(d) .................................................................................... 6, 7

Fed. R. Civ. P. 10(c) ....................................................................................... 3

Fed. R. Civ. P. 12(b)(1) .................................................................................. 3

Fed. R. Civ. P. 12(b)(6) ...............................................................2, 3, 4, 6, 16

Fed. R. Civ. P. 41(b) ...........................................................................2, 6, 7, 9

Fed. R. Civ. P. 54(d)(1) ...................................................................................20

RICO ........................................................................................1, 2, 17, 18, 19

# I.   INTRODUCTION

*Pro per* Plaintiff Tiffany Dehen's ("Plaintiff" or "Dehen") Second Amended Complaint ("SAC") is replete with the same deficiencies of her First Amended Complaint ("FAC"), which previously were identified by the University of San Diego ("USD") in its Motion to Dismiss the FAC.  Despite yet another opportunity to fix the deficiencies in her complaint, as well as specific guidance to Plaintiff from this Court in its March 20, 2018 Order (Doc. No. 54), Plaintiff has again failed to raise a right to relief against USD "above the speculative level."  Plaintiff's rambling 70-page SAC asserts five causes of action against USD:  breach of contract, negligent infliction of emotional distress ("NIED"), intentional infliction of emotional distress ("IIED"), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), and extortion and conspiracy to commit extortion. As set forth below, each of Plaintiff's claims against USD fail because they do not come close to satisfying the pleading requirements of Rule 8, the Court's March 20, 2018 Order, or the "plausibility" standard.  Fed. R. Civ. P. 8; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the Court should dismiss the SAC against USD with prejudice and deny any leave to further amend.

Plaintiff's SAC again alleges that USD is somehow responsible for the actions of two unidentified John Does' alleged "terroristic threats," "stalking" and the creation of a parody Twitter account created by an unknown John Doe six months following her law school graduation from USD.  Plaintiff clumsily attempts in the SAC to "connect the dots" for the Court by pleading new facts that allege John Does' off-campus "stalking" of Plaintiff and creation of the Twitter account in January 2017, months after Plaintiff's graduation from USD, are somehow related to USD's alleged shutting down of federal and state investigations of "terroristic threats" made by unnamed USD students in 2015 and 2016.  Critically, the SAC is deficient because it does not raise "more than a sheer possibility" that USD acted

unlawfully and is critically devoid of any factual allegations establishing that USD either prompted, participated in, or condoned any of the John Does' conduct.

With respect to her contract claim, Plaintiff has not pled the existence of an enforceable agreement she entered into with USD that USD breached.  Importantly, Plaintiff attempts, and fails, to connect USD to the alleged actions of the unidentified John Does through speculative and far-reaching allegations.  Plaintiff fails to plausibly establish that USD condoned or controlled the alleged actions of the John Does.

Similarly, Plaintiff's claim for NIED fails because Plaintiff does not plead any plausible facts that USD owed Plaintiff a duty of care at any time, or that USD breached any such duty of care by failing to control the actions of unidentified persons, particularly after her graduation.  Plaintiff's IIED, RICO, and extortion claims also fail because Plaintiff makes no effort to allege any plausible theory of liability in regards to these claims.

Further, the SAC fails for lack of any plausible injury Plaintiff experienced as a result of USD's actions.  There is not a single injury in the SAC that Plaintiff can plausibly ascribe to USD.  Her claims against USD are not ripe whatsoever, and any action by this Court would result in an improper advisory opinion.

Accordingly, USD respectfully requests the Court dismiss Plaintiff's five causes of action against USD in their entirety, pursuant to Federal Rules of Civil Procedure 41(b) and 12(b)(6).  Further, any request for leave to further amend the SAC should be denied because Plaintiff has had two opportunities to amend her complaint, and she cannot establish the existence of any plausible facts to support a viable claim against USD.

## II.     PROCEDURAL BACKGROUND

Over one year ago, on February 1, 2017, Plaintiff filed a Complaint against Defendants USD; Twitter, Inc.; and an unknown John Doe.  *See* Doc. No. 1.  On April 17, 2017, the Court accepted for filing Plaintiff's "Motion for Leave to File

1   Amended Complaint," which attached Plaintiff's lengthy and confusing FAC.  Doc.

2   No. 13.

3   　　　In response to the FAC being accepted as the operative pleading, USD spent

4   considerable resources sifting through the FAC to prepare and file a motion to

5   dismiss pursuant to Rules 12(b)(1) and 12(b)(6) on August 21, 2017.  Doc. No. 29.

6   Judge Benetiz took USD's motion under submission, but recused in January 2018.

7   Doc. No. 41.  After the Clerk's office reassigned the case to this Court, on or around

8   February 12, 2018, Plaintiff moved this Court to file a SAC.  Doc. No. 45.  On or

9   around February 13, 2018, Plaintiff filed a brief in support of her motion, which

10  USD opposed.  Doc. Nos. 47-48.

11  　　　After taking Plaintiff's motion under submission, on March 20, 2018, this

12  Court granted Plaintiff's motion to file her SAC and denied USD's motion to

13  dismiss the FAC as moot.  Doc. No. 54.  The Court's Order made clear that Plaintiff

14  must, among other things:  (1) ensure that her SAC strictly complies with the

15  pleading standards set forth in Rule 8; (2) ensure that her SAC includes facts that

16  show she can plausibly allege the elements for each cause of action she asserts; and

17  (3) review USD's motion to dismiss, and its oppositions to her motion for leave to

18  amend, to ensure she has fixed any problems USD identified.

19  　　　On April 6, 2018, Plaintiff filed her SAC, alleging causes of action against

20  John Does 1-100; Twitter, Inc.; USD; and Perkins Coie, LLP, as the operative

21  pleading.  *See* Doc. No. 55.

22  ### III.   ALLEGATIONS IN THE SAC

23  　　　Plaintiff is a former USD law student who "earned her Juris Doctor . . . in 2.5

24  years."  Doc. No. 55, ¶ 19.  Plaintiff graduated in July 2016.  *Id.* at ¶ 227; Exhibit 60

25  to the SAC.[1]

26

27  [1]   An exhibit attached to a pleading is a "part of the pleading for all purposes."

28  Fed. R. Civ. P. 10(c).  Thus, documents attached to the complaint and incorporated

Plaintiff alleges that while attending law school at USD, in 2015 and 2016, Plaintiff, and other USD students, were subjected to "terroristic" behavior by two unnamed USD students who "openly" declared themselves to be engaging in terrorism and who called Plaintiff a Nazi.  Doc. No. 55, ¶¶ 27, 28, 48, 49.  In support of this theory, Plaintiff attaches Exhibits 94-139 to her SAC, which consist of a mish-mash of approximately 230 pages of emails and texts regarding Plaintiff's concern over the health of a student, Plaintiff's baffling allegation that the student's health condition was a "distraction" to allow another student to conduct a terrorist attack, and USD's addressing of false rumors about threats to the university.  Doc. No. 55, Exh. 96 p. 67; Exh. 106 p. 111; Exh. 130 p. 272.

Plaintiff alleges, without any plausible facts, that USD "shut down" local and federal law enforcement from carrying out investigations relating to these "terroristic threats."  Doc. No. 55, ¶ 51.  Plaintiff baldly alleges that due to USD's failure to address the situation, one of the John Does "stalked" her at her personal residence by parking his car on the street near her apartment.  Doc. No. 55, ¶ 53; Exh. 132, p. 274.

Plaintiff also clumsily pleads that USD's "failure to act," ultimately led to this litigation and the central allegation of her FAC:  an unidentified John Doe's creation of a parody Twitter account in January 2017.  Doc. No. 55, ¶¶ 30, 55.  Specifically, months after Plaintiff's graduation from USD, on or around January 26, 2017, Dehen alleges an unidentified John Doe created a Twitter account with the username @tiffanydehen.  Doc. No. 55, ¶ 89.  The @tiffanydehen Twitter account allegedly

---

therein by reference are treated as part of the complaint when ruling on a 12(b)(6) motion.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555, fn. 19 (9th Cir. 1989).  Here, the Court should consider Plaintiff's reference to, and incorporation of, Exhibit 60 attached to her SAC indicating the date of her graduation from USD.  *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 821 (C.D. Cal. 2011) ("there exists 'no inflexible rule' governing the sort of 'written instruments' that may be attached to a pleading").

4

included the following description of the account:  "[p]arody account; [f]iction and political satire about Republican white women."  *Id.*  The fictitious, parody @tiffanydehen Twitter account allegedly used photographs published by Plaintiff on her own social media accounts, including her LinkedIn profile, which she alleges are copyrighted works.  *Id.* at ¶¶ 102-105, 109, 112.  These photographs were allegedly altered by the operator of the @tiffanydehen Twitter account by adding words such as "MURIKKA!" and images such as swastikas; the photographs allegedly were posted online over a six day period along with tweets which parodied the political views of a fictitious Donald Trump supporter.[2]  *Id.* at ¶¶ 93-115.

Plaintiff pled that she learned of the fictitious, parody @tiffanydehen Twitter account on January 30, 2017.  Doc. No. 55, ¶ 116.  Also around this time, Plaintiff pled she checked to see the individuals who had viewed her LinkedIn profile in the days leading up to the creation of the fictitious Twitter account, and found "two individuals from USD Law School viewed [her] LinkedIn profile."  *Id.* at ¶ 30.  Plaintiff confusingly and conclusorily alleges that John Doe (or the "persons who comprise John Does") might be students or alumni of USD, and the same students who engaged in "terroristic threats," because LinkedIn showed that some unknown persons from USD viewed her LinkedIn profile.  *Id.* at ¶¶ 30, 52.  Critically, the SAC is devoid of any factual allegation establishing that USD either prompted the unidentified John Does to use Plaintiff's publicly-available LinkedIn photographs, or that USD participated in, condoned, or had any knowledge of the unidentified John Doe's operation of the @tiffanydehen Twitter account.

/ / /

---

[2]   The parody Twitter account messages identified by Plaintiff include, *e.g.*: "@realDonaldTrump is gonna stop these alien abductions plaguing our nation y'all.  These anal probes gotsa stop.  #MakeAmericaGreatAgain #ufos" and "Saving myself for marriage!  My man knows we can have sex 3 times:  honeymoon, Trumps reelection, & jesus 2nd coming!  #MakeAmericaGreatAgain."  *See*, *e.g.*, Doc. No. 55, ¶¶ 93-115.

On February 3, 2017, after Plaintiff submitted a report about the fictitious, parody @tiffanydehen account to Twitter, the account was disabled and "[d]ays later . . . was taken down altogether."  Doc. No. 55, ¶¶ 127, 128.

Plaintiff's SAC also adds a "relevant facts after commencing suit" section, which consists of several paragraphs of irrelevant and confusing allegations that do not establish any plausible theory of liability in regards to USD.  These allegations relate to articles published about her filed complaint from various media outlets, email messages she has received from unknown sources, emails she alleges she received from USD professors who reached out to her "out of fondness for Ms. Dehen," and an encounter Ms. Dehen had with an elderly woman in a wheelchair at the courthouse.  Doc. No. 55, ¶¶ 131-156.  In this section, Plaintiff also confusingly alleges that a car accident she suffered on February 21, 2017 in Pacific Beach, was related to the "underlying threatening terroristic behavior" she alleges occurred at USD.  Doc. No. 55, ¶ 143.

## IV.   APPLICABLE STANDARD FOR MOTION TO DISMISS

### A.   Applicable Standard For Rule 41(b) Dismissal.

Rule 41(b) permits a motion to dismiss where a complaint fails to comply with a court's order or the Federal Rules of Civil Procedure – including the pleading standards set forth in Rule 8.  Fed. R. Civ. P. 41(b).  Rule 8 requires the complaint to contain " a short and plain statement" that shows Plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a).  Rule 8 also requires that each allegation must be "simple, concise, and direct."  Fed. R. Civ. P. 8(d).

### B.   Applicable Standard For Rule 12(b)(6) Dismissal.

Additionally, Rule 12(b)(6) permits a motion to dismiss where the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Court may dismiss a complaint as a matter of law either for lack of a cognizable legal theory or for the absence of sufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

1    In order to survive dismissal for failure to state a claim, a complaint must

2    contain more than a "formulaic recitation of the elements of a cause of action"; it

3    must contain factual allegations sufficient to "raise a right to relief above the

4    speculative level." *Twombly*, 550 U.S. at 555.  A plaintiff must plead "enough facts

5    to state a claim to relief that is plausible on its face," and raise "more than a sheer

6    possibility that a defendant has acted unlawfully."  *Id.*; *Iqbal*, 556 U.S. at 678.

7    Conclusory allegations need not be accepted as true and cannot state a claim.  *See*

8    *Twombly*, 550 U.S. at 555-57 ("more than labels and conclusions" are required);

9    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Rather, a

10   plaintiff must allege "evidentiary facts which, if true, will prove the elements" of the

11   claim.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

12   Where, as here, Plaintiff has already had two opportunities to fix the

13   deficiencies in her complaint and failed, and because there is a reasonable certainty

14   that Plaintiff is not entitled to relief under any set of provable facts against USD,

15   dismissal under Rule 12 should be with prejudice and without leave to further

16   amend.  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

17   **V.      THE SAC FAILS TO MEET RULE 8 PLEADING STANDARDS**

18   USD's motion to dismiss should be granted under Rule 41(b) for failing to

19   comply with Rule 8 and for failing to comply with the Court's March 20, 2018

20   Order.  Fed. R. Civ. P. 41(b).  ("If the plaintiff fails to . . . comply with these rules or

21   a court order, a defendant may move to dismiss the action or any claim against it . . .

22   [and] a dismissal under this subdivision . . . operates as an adjudication on the

23   merits"); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981) ("A

24   complaint which fails to comply with [R]ules 8(a) and 8(e) may be dismissed with

25   prejudice pursuant to [R]ule 41(b).")

26   Rule 8 requires the complaint to contain " a short and plain statement" that

27   shows Plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a).  Rule 8 also requires that

28   each allegation must be "simple, concise, and direct."  Fed. R. Civ. P. 8(d).  The

Court's order of March 20, 2018, made the requirements of Rule 8 crystal clear to Plaintiff.  *See* Doc. No. 54.  The Court also reminded Plaintiff that she could not allege conclusions, "reserve the right" to make other claims, or include extraneous materials in her SAC.

Rule 8(a) has "been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011); *see, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996) (upholding a Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (upholding a Rule 8(a) dismissal of a complaint that "exceeded 70 pages in length, [and was] confusing and conclusory"); *Nevijel*, *supra*, 651 F. 2d at 674 (upholding a Rule 8(a) dismissal of 48-page complaint that was "verbose, confusing and almost entirely conclusory" and that contained an additional 23 pages of addenda and exhibits).

Here, Plaintiff has clearly failed to abide by the requirements of either Rule 8 or this Court's prior Order, and her SAC should be dismissed on that basis. Plaintiff's SAC is over 70 pages of argumentative, conclusory, and confused rambling that includes several paragraphs dedicated to irrelevant factual allegations (*see*, *e.g.*, Doc. No. 55, ¶¶ 17, 69-80, 131-156); conclusory statements (*see*, *e.g.*, Doc. No. 55, ¶¶ 29-31, 303, 315); confusing allegations (*see*, *e.g.*, Doc. No. 55, ¶¶ 143, 334); and inappropriate legal arguments (*see*, *e.g.*, Doc. No. 55, ¶¶ 157-183). Additionally, in direct contravention of this Court's March 20, 2018 order, the SAC again "reserves the right" to bring additional claims against USD (*see, e.g.*, Doc. No. 55, ¶¶ 7, 9, 156, 254, 278, 279).  Plaintiff's SAC also includes *over 300 pages* of unorganized, difficult to read, extraneous exhibits which is hardly a "simple, concise and direct" statement establishing any plausible theory of recovery.

/ / /

1    Accordingly, USD's motion to dismiss should be granted under Federal Rule

2    of Civil Procedure 41(b).

3    **VI.   PLAINTIFF FAILS TO PLEAD ANY PLAUSIBLE INJURIES; THUS,**

4    **NONE OF HER CLAIMS ARE RIPE**

5    Plaintiff alleges that USD's act of "shutting down the local law enforcement

6    investigation" and refusal to "cooperate with federal law enforcement" in regards to

7    the "terroristic" threats of the John Does is somehow connected to one of the John

8    Does "stalking" her at her residence. Doc. No. 55, ¶¶ 53-54. Despite Plaintiff's

9    best efforts to connect USD to the alleged off-campus actions of the John Doe(s),

10   Plaintiff fails to identify any plausible injuries she experienced ***as a result of*** USD's

11   actions or that USD caused through the actions of the John Doe(s). Accordingly,

12   none of her claims are ripe for adjudication and should be dismissed. *See Wolfson v.*

13   *Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (claims are constitutionally ripe only

14   when they present injuries that are "definite and concrete, not hypothetical or

15   abstract") (internal citations omitted). Any action by this Court related to Plaintiff's

16   abstract injuries would result in an improper advisory opinion.

17   Because Plaintiff has not pled any cognizable injuries caused by USD, either

18   during her enrollment or after graduation from USD, all of Plaintiff's claims should

19   be dismissed for failure to state a claim.

20   **VII.   PLAINTIFF FAILS TO STATE ANY PLAUSIBLE CLAIMS**

21   **A.   Plaintiff's Breach of Contract Claim Fails Because There Is No**

22   **Enforceable Agreement, And Plaintiff Fails To Plausibly Connect**

23   **John Does' Actions To USD.**

24   With respect to the thirteenth cause of action, Plaintiff alleges USD breached

25   "several contracts between USD and Plaintiff" because it failed to uphold its

26   promise to "provide a safe campus." Doc. No. 55, ¶¶ 315-316.

27   At a minimum, a plaintiff suing in contract must allege: (1) existence of an

28   enforceable contract, (2) performance by the plaintiff or excuse for nonperformance,

(3) breach by the defendant, and (4) resulting damages to plaintiff.  *See Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*, 446 F. Supp. 2d 1108, 1114 (N.D. Cal. 2006).  Plaintiff's SAC does nothing to resolve the deficiencies of the breach of contract claim in her FAC, and she again relies on a clumsy attempt to "create" an enforceable contract between herself and USD based on statements muddled together from USD's Code of Conduct and various USD websites.  *See* Doc. No. 55, ¶¶ 35–46.  Plaintiff has not pled the existence of an enforceable agreement she entered into with USD that USD breached.  She also has not alleged any plausible damages connected to any alleged breach of an enforceable contract by USD through the actions of unidentified John Does.  Thus, Plaintiff's breach of contract claim must be dismissed.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ("A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory").

## 1.  Plaintiff fails to plead any facts supporting the plausible existence of an enforceable contract.

Plaintiff alleges that she and USD entered into a written contract "pursuant to the aforementioned Code of Conduct when Ms. Dehen enrolled in the USD School of Law in August 2013 and again in January 2015."  Doc. No. 55, ¶ 47.  Plaintiff alleges that in exchange for her tuition, USD "promised" to provide a safe learning environment.  *Id.*  Plaintiff does not allege who made this promise or when this promise was made to her, and bases her contract claim on USD's Code of Student Conduct and the various policies compiled from USD's website.

However, as several courts have held, there is no express or implied contract between a school and a student as a result of a code of conduct or a general policy. *See Banga v. Kanios*, No. 16-CV-04270-RS, 2016 WL 7230870, at *5 (N.D. Cal. Dec. 14, 2016) (dismissing breach of contract claim by student against his former law school because plaintiff failed to plead any facts indicating the law school's

student catalog created an enforceable contract); *see also*, *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 (D. Or. 2014) (holding that private university's handbook did not create an enforceable contract with students and, thus, did not provide a student with a cause of action for breach of contract given that the handbook was generally applicable to all students and not specific to a particular student); *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 217-218 (D.N.H. 2009) (holding there was no express or implied contract between schools and their students as a result of a student handbook).

Additionally, Plaintiff graduated in July 2016 and has failed to plead any facts sufficient to support the plausible existence of any *continuing* contract between herself and USD that could establish any plausible theory of USD's liability for Plaintiff's alleged "fear of danger" due to John Does' actions and the creation of the Twitter account following her graduation from USD.  Doc. No. 55, ¶¶ 52, 54.

Even assuming Plaintiff's enrollment at USD resulted in Plaintiff entering into a contract with USD pursuant to the Student Code of Conduct (which USD does not contend), such a contract would not run into perpetuity; logic and common sense dictate the alleged contract would have expired promptly upon Plaintiff's graduation from USD.  Simply put, Plaintiff has not, and cannot, present any evidence to indicate the terms of the Student Code of Conduct would extend beyond her graduation to form the basis of any plausible theory of liability for unknown events that occurred after her graduation.  *See Bancard Servs., Inc. v. E\*Trade Access, Inc.*, 292 F. Supp. 2d 1235, 1248 (D. Or. 2003) ("perpetual agreements are disfavored" and will only be "upheld when a  contract contains clear and unambiguous terms describing its perpetual nature").

/ / /

/ / /

/ / /

/ / /

### 2. Plaintiff fails to plead any specific promise made by USD to her.

As a matter of California[3] law, a contract will not be enforceable if it is too vague or indefinite. *See Carter v. CB Richard Ellis, Inc.*, 122 Cal. App. 4th 1313, 1328 (2004); *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993). Specifically, a court must be able to ascertain the scope of duties in a contract, and any limits on performance, in order to "provide a rational basis for the assessment of damages." *Ladas*, 19 Cal. App. 4th at 770. Here, other than a vague allegation that USD "promised" to provide a safe learning environment through various online postings, Plaintiff has not identified any specific promise made by USD *to her* that USD also breached. Plaintiff cites the Student Code of Conduct and various policies which prohibited certain conduct by students and which subjected a violating student to disciplinary action; those policies did not create any specific promise *to Plaintiff*. Doc. No. 55, ¶¶ 35-46.

Absent any evidence of a definite promise, the Court cannot be sufficiently definite about the "scope of duties" and "limits on performance" to enforce any alleged contract. Plaintiff cannot presume to rely on vague promises that she construes from the Student Code of Conduct and random quotes from various USD webpages. *Berger v. Home Depot U.S.A., Inc.* 476 F. Supp. 2d 1174, 1176 (C.D. Cal. 2007) (dismissing breach of contract claim where plaintiff failed to identify specific contract term that was breached); *Banga*, 2016 WL 7230870, at *5; *Gibson*, 66 F. Supp. 3d at 1324; *Brodeur*, 626 F. Supp. 2d at 217-218. Accordingly, Plaintiff cannot point to any specific promise USD made to her in either the Student Code of Conduct or the various quotes from USD webpages that was enforceable.

/ / /

---

[3]   Federal courts deciding state law claims shall apply state law as the "rule of decision." *See* 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

**3.      Plaintiff fails to plead any plausible facts that USD acted unlawfully or breached any purported contract with her.**

Plaintiff's SAC confusingly and conclusorily alleges that USD breached the purported contract with her by not adequately addressing the unlawful actions of John Does and by "shutting down the local law enforcement investigation" and "refusing to cooperate with federal law enforcement."  Doc. No. 55, ¶ 51.  Plaintiff's SAC does not raise "more than a sheer possibility that [USD] acted unlawfully" because Plaintiff has not plead any fact that USD either prompted John Does' alleged actions, or that USD participated in or condoned any of the John Does' actions.  Without pleading any plausible facts connecting USD to the John Does' allegedly unlawful actions (other than alleging the John Does were USD students), USD cannot – under any theory – be liable for the breach of contract claim.

Finally, as discussed in Section VI, *supra*, Plaintiff's breach of contract claim fails for lack of pleading any plausible injures she experienced as a result of USD's actions.

In sum, Plaintiff's SAC fails to resolve the fundamental inadequacies in her FAC, and her breach of contract claim cannot be rectified by further amendment. No matter how Plaintiff styles her complaint, she cannot meet the plausibility standard required by *Iqbal* and *Twombly*.  Accordingly, the Court should dismiss Plaintiff's breach of contract claim against USD without leave to further amend.

**B.      Plaintiff's IIED and NIED Claims Fail.**

**1.      Plaintiff's IIED claim fails because the SAC does not attempt to plead any facts, nonetheless plausible ones, that support such a claim.**

Plaintiff's SAC adds an IIED claim against USD to her fourteenth cause of action.  Doc. No. 55, ¶ 318.  A claim of IIED requires Plaintiff to plausibly allege the following elements:  (1) extreme and outrageous conduct by USD; (2) with the intention of causing, or reckless disregard of the probability of causing, emotional

1   distress; (3) Plaintiff's suffering severe or extreme emotional distress; and (4) actual

2   and proximate causation of the emotional distress by USD's outrageous conduct.

3   *Dove v. PNS Stores, Inc.*, 982 F. Supp. 1420, 1424 (C.D. Cal. 1997).

4       While Plaintiff adds an IIED claim, her SAC does not even attempt to include

5   any facts that show USD's "extreme and outrageous conduct," or that USD acted

6   with any intent to cause her distress, nor does she plausibly allege that USD's

7   actions were the "actual and proximate causation" of the alleged distress.  Thus,

8   Plaintiff's IIED claim against USD should be dismissed.

9           **2.    Plaintiff's NIED claim fails to plead any facts establishing**

10                  **that USD owed her a duty of care.**

11      As an initial matter, Plaintiff's fourteenth cause of action only conclusorily

12  addresses her NIED claim.  Doc. No. 55, ¶¶ 317-321.  Plaintiff alleges that USD

13  owed her a duty of care to "prevent Plaintiff from being injured as a result of Doe's

14  conduct," and that USD breached its duty of care to Plaintiff by breaching its

15  contract with Plaintiff.  Doc. No. 55, ¶¶ 319-320.  To state a claim for NIED,

16  Plaintiff must plausibly show USD owed Plaintiff a legal duty at the time of any of

17  the John Does' alleged conduct – whether it was the alleged "terroristic threats" in

18  2015 and 2016, the alleged stalking in 2016, or the alleged creation of the Twitter

19  account in January 2017, months after her graduation; that USD breached its duty;

20  and USD's breach proximately caused Plaintiff's injury.  *Castellon v. U.S. Bancorp*,

21  220 Cal. App. 4th 994, 998 (2013).  Because Plaintiff fails to plead any plausible

22  duty of care that USD breached and that caused her injury, Plaintiff's NIED claim

23  should be dismissed.

24      Whether a defendant owes a duty of care is a question of law that depends on

25  the foreseeability of a risk and policy considerations for and against imposition of

26  liability.  *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588

27  (1989).  A duty of care is limited in scope to "exclud[e] the remote and unexpected."

28  *Id.* at 589.  Additionally, "one owes no duty to control the conduct of another, nor to

warn those endangered by such conduct." *Davidson v. City of Westminster*, 32 Cal.3d 197, 203 (1982). Plaintiff's SAC fails to address these same deficiencies that were present in her FAC and, again, attempts to allege a duty of care based on a remote and unexpected risk. There is no plausible allegation that USD owed Plaintiff any cognizable duty of care either during her enrollment or after her graduation from USD, or that USD condoned or controlled the actions of unnamed students who allegedly engaged in "terroristic threats" and "stalking" or condoned or controlled the action of John Doe's social media activities. Neither theory amounts to plausibility "above the speculative level." *Twombly*, 550 U.S. at 555-57. Such vague, conclusory assertions are not sufficient to survive a motion to dismiss.

Universities, like USD, may owe a duty of care in the limited situation of protecting students from foreseeable violence while they are engaged in activities that are "part of the school's curriculum or closely related to [the university's] delivery of educational services." *Regents of Univ. of California v. Superior Court*, 413 P.3d 656, 660, 667 (Cal. 2018). This duty does not extend to unknown student behavior over which the university has no significant degree of control. *Id*. at 669. Universities do not have control over how students behave off campus or their social activities unrelated to school, or after graduation, and thus have no duty to students in those situations. *Id.* at 668.

Here, Plaintiff has not plead any plausible facts indicating that there was a reasonable foreseeable risk of violence to her, that USD plausibly knew any alleged violence was targeted at her, or that she experienced any alleged violence during curricular activities. Plaintiff's allegations of the unidentified John Does declaring themselves to be "terrorists" and calling USD students Nazis, does not establish any duty of care on USD, and definitely does not lead to the foreseeability of the off-campus stalking by an unknown person or the creation of a Twitter account months after graduation. Additionally, Plaintiff has failed to plead any plausible injury that is directly and closely related to any of USD's actions or inactions. *See Cabral v.*

1     *Ralphs Grocery Co.*, 51 Cal. 4th 764, 779 (2011)("where the injury suffered is

2     connected only distantly and indirectly to the defendant's negligent act, the risk of

3     that type of injury from the category of negligent conduct at issue is likely to be

4     deemed unforeseeable.")

5         Plaintiff's allegations that she "continues to live in grave fear" (Doc. No. 55,

6     ¶ 54) because of the John Does' actions do nothing to save her claim.  Plaintiff has

7     already graduated from USD, and there is no plausible evidence that her continued

8     fear or the fictitious, parody Twitter account arose out of, or is in any way connected

9     with, USD's actions.  *See Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790,

10    795-96 (2006) (holding that plaintiff's claim for NIED based on anonymous threats

11    over the Internet was not viable).  Plaintiff's vague, conclusory assertions are not

12    sufficient to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 555-57 ("more

13    than labels and conclusions" are required).  There is no allegation that USD

14    condoned or controlled the actions of the unidentified John Does such that any duty

15    of care can be established.

16         Further, Plaintiff does not plead any significant policy of preventing future

17    harm that would result from a finding of duty; to the contrary, a finding of duty here

18    might have a significant chilling effect upon free speech and might encourage

19    extreme school oversight of off-campus student activities.  *See Steven F. v. Anaheim*

20    *Union High Sch. Dist.*, 112 Cal. App. 4th 904, 918 (2003), *as modified on denial of*

21    *reh'g* (Oct. 22, 2003) (finding that imposing such a duty on a school would turn the

22    culture of the school "into a virtual police state").

23         Accordingly, Plaintiff has failed to plead any duty of care owed to her by

24    USD either during her enrollment or after her graduation, and Plaintiff's NIED

25    claim should be dismissed under Rule 12(b)(6).

26    / / /

27    / / /

28    / / /

**3.    Plaintiff's NIED claim fails because there is no plausible allegation that USD breached a duty of care to Plaintiff, based on the activities of the John Does.**

Plaintiff does not plead any plausible facts that USD owed Plaintiff a duty of care *following her graduation*, or that USD breached any such duty of care by failing to control the actions of an unidentified person off-campus, or even that USD breached any duty of care during her enrollment at USD.  Plaintiff's allegation of "terroristic threats" and off-campus "stalking" by John Does do not support any plausible theory that USD is liable for the actions of unidentified John Does.  There is no allegation that USD knew of any alleged stalking of Plaintiff, or that any alleged "terroristic threats" were targeted at Plaintiff to make it foreseeable that Plaintiff would experience distress.

Additionally, Plaintiff had already graduated from USD at the time of John Does' alleged creation of the Twitter account, and there is no evidence that the complained-of parody account arose out of, or was in any way connected with, USD other than the allegation that John Doe may have been a student or alumni at USD at some point in time, based solely on the unidentified John Doe's affiliation as stated on LinkedIn.  Like its predecessor, Plaintiff's SAC is wholly devoid of plausibility, and her motion must be dismissed.

Furthermore, as discussed in Section VI, *supra*, Plaintiff's NIED claim fails for lack of pleading any plausible injures she experienced as a result of USD's actions.  Accordingly, the NIED claim should be dismissed.

**C.    Plaintiff's RICO Act Claim Fails.**

Plaintiff's twelfth cause of action makes a new, vague and confusing allegation that USD engaged in racketeering in "violation(s) of the RICO Act" by "fraudulent express misrepresentations" of USD's stated policies of public safety. Doc. No. 55, ¶¶ 302-304.  The RICO Act, 18 U.S.C. § 1961, *et seq.,* makes it "'unlawful for any person employed by or associated with any enterprise . . . to

conduct or participate . . . in the conduct of such enterprise's affairs through the commission of two or more statutorily defined crimes—which RICO calls 'a pattern of racketeering activity.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160 (2001).  Plaintiff has not alleged any sufficient factual material to establish a plausible violation of the RICO Act by USD, let alone any "pattern of racketeering activity" to survive a motion to dismiss.  *See Ewing v. Integrity Capital Sols., Inc.*, No. 16-CV-1469 JLS MDD, 2017 WL 758402, at *3 (S.D. Cal. Feb. 27, 2017) (plaintiff's bare assertions of RICO allegations were insufficient to survive motion to dismiss).

Moreover, under Rule 9(b), allegations of fraudulent predicate acts supporting a claim under RICO must be pled with particularity, and allegations that are vague or conclusory are insufficient to satisfy the "particularity" required by Rule 9(b). Fed. R. Civ. P. 9(b); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (applying the particularity requirements of Rule 9(b) to RICO claims); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000) (elements of fraud complaints must be pled with a "high degree of meticulousness").  Plaintiff's SAC does not plead *any* specific fraud elements, *e.g.*, it does not make any specific factual allegations regarding the *dates* of the alleged fraud, *who* perpetrated the fraud, or any *intent* to defraud on the part of USD.  Accordingly, the Court should dismiss Plaintiff's improperly pled twelfth cause of action.  *See Twombly*, 550 U.S. at 555-57 ("more than labels and conclusions" are required).

## D.  Plaintiff's Claims for Extortion and Conspiracy to Commit Extortion Fail.

Plaintiff's seventeenth cause of action alleges USD engaged in "actual extortion" through the "wrongful use of actual and threatened force, violence, fear, conspiracy to commit extortion, and transmission in interstate commerce communication containing threats to injure the property and reputation of Plaintiff," and that USD worked in conjunction with Twitter and/or Perkins Coie, LLP to

1  intimidate Plaintiff in the form of "negative news articles" and threatened harm.

2  Doc. No. 55, ¶¶ 333-334.

3       Plaintiff has no basis, nevertheless a plausible one, to allege this cause of

4  action.  Plaintiff has not, and cannot, allege any facts that USD obtained property

5  from her through use of actual or threatened force, violence, or fear.  Plaintiff

6  attempts to solve this deficiency by confusingly alluding to "negative news articles"

7  published by various media outlets about her and her lawsuit.  Other than making

8  this vague allegation, Plaintiff does not even attempt to plead any facts that connect

9  USD to these "negative news articles" or even how these "negative news articles"

10  were involved in the actual or threatened use of force, violence, or fear by USD.

11       Plaintiff's far-reaching and preposterous allegations of extortion and

12  conspiracy should be dismissed with prejudice.

13  **VIII.  THE COURT SHOULD NOT GRANT PLAINTIFF LEAVE TO**

14  **FURTHER AMEND BECAUSE ANY AMENDMENT WOULD BE FUTILE**

15       Where a complaint advances a legal theory supported by "no legal authority,"

16  and contrary to all established precedent, dismissal with prejudice is the appropriate

17  remedy.  *Smith v. Hurd*, 699 F. Supp. 1433, 1437 (D. Haw. 1988), *aff'd*, 985 F.2d

18  574 (9th Cir. 1993); *see also*, *McKesson HBOC, Inc. v. N.Y. State Common Ret.*

19  *Fund, Inc.*, 339 F.3d 1087, 1096 (9th Cir. 2003) (holding that dismissal with

20  prejudice, and without leave to amend, is appropriate where "deficiencies in

21  [plaintiff's] claims cannot be cured by amendment").

22       Here, Plaintiff has already had two opportunities to rectify the deficiencies in

23  her complaint, yet she fails to identify any plausible cause of action against USD.

24  The sole issue is whether USD can plausibly be liable for the acts of unidentified

25  John Does, and Plaintiff cannot meet her burden of showing her SAC can be cured by

26  further amendment.  Plaintiff's SAC is still wholly lacking any plausible theory of

27  breach of contract, IIED, NIED, violation of the RICO act, or extortion.  As to USD,

28  further amendments of the FAC would be futile.

1    For example, Plaintiff cannot plausibly plead any facts showing the existence

2  of any enforceable contract she entered with USD and which was breached by USD

3  in connection with the conduct of the persons who comprise John Doe.  Similarly,

4  Plaintiff cannot plausibly plead any facts establishing a duty of care owed by USD to

5  Plaintiff for off-campus conduct or after her graduation in relation to the actions of

6  the unidentified John Does, nor can she show that USD breached any such alleged

7  duty.  Finally, Plaintiff cannot plausibly plead any facts showing that USD engaged

8  in a pattern of racketeering or engaged in acts of extortion.  *See Reddy*, 912 F.2d at

9  296-97 (affirming dismissal with prejudice because amendment would not cure

10  deficiencies in the complaint).

11    Because Plaintiff cannot point to any plausible facts to support her claims

12  against USD, leave to further amend would be futile and should be denied.

13                    **IX.    USD IS ENTITLED TO COSTS**

14    If this Court grants USD's motion to dismiss with prejudice on the merits,

15  USD is entitled to costs pursuant to Rule 54.  Fed. R. Civ. P. 54(d)(1) ("costs . . .

16  should be allowed to the prevailing party"); *Cadkin v. Loose*, 569 F.3d 1142, 1150

17  (9th Cir. 2009) ("[A] defendant is a prevailing party following dismissal of a claim

18  if the plaintiff is judicially precluded from refiling the claim against the defendant in

19  federal court.").

20                      **X.    CONCLUSION**

21    For the foregoing reasons, USD respectfully requests that its motion to

22  dismiss be granted without leave to further amend, the SAC be dismissed with

23  prejudice as against USD, and that USD be awarded its costs for defending against

24  the SAC.

25  / / /

26  / / /

27  / / /

28  / / /

1   Dated:  April 27, 2018

2

PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP

3

By:   /s/ Joanne Alnajjar Buser

4   MICHAEL C. SULLIVAN
    JOANNE ALNAJJAR BUSER

5   AMR A. SHABAIK

6   Attorneys for Defendant University of San
    Diego

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28