1   Julie E. Schwartz, Bar No. 260624
2   JSchwartz@perkinscoie.com
    PERKINS COIE LLP
3   3150 Porter Drive
    Palo Alto, CA  94304-1212
4   Telephone:  650.838.4300
    Facsimile:  650.838.4350
5
6   Attorneys for Defendant
    Twitter, Inc.
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  TIFFANY DEHEN,                    Case No. 17-cv-00198-LAB-WVG

12              Plaintiff,            **MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT OF
13        v.                          TWITTER, INC.'S MOTION TO DISMISS**

14  JOHN DOE, TWITTER, INC.,
    and UNIVERSITY OF SAN
15  DIEGO,                            Hon. Larry Alan Burns

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................. 1

II.  BACKGROUND .................................................................................. 2

    A.  Plaintiff's Allegations Against Twitter .................................... 2

    B.  Procedural History ..................................................................... 3

    C.  Twitter's Terms of Service and Policies ................................... 5

III.  LEGAL STANDARD .......................................................................... 7

IV.  ARGUMENT ....................................................................................... 8

    A.  Twitter's Motion to Dismiss Should Be Granted ................... 8

        1.  The Communications Decency Act Bars All of
           Plaintiff's Account-Related Claims ............................... 8

           a.  Section 230 Applies to Plaintiff's Account-
              Related Claims .................................................. 8

              i.  Twitter Provides an Interactive Computer
                  Service ................................................... 9

              ii.  Plaintiff's Claims Treat Twitter as a
                  Publisher ............................................. 10

              iii.  The Content Was Posted by Another
                   Information Content Provider ............................. 13

              b.  Section 230 of the CDA is Constitutional ..................... 14

           2.  Plaintiff Has Not Alleged Any Viable Claim
           Against Twitter ................................................................ 16

              a.  Plaintiff Cannot Obtain the Remedy of
               Rescission ....................................................... 16

               i.  Plaintiff Has Not Alleged a Breach of
                   Contract ................................................ 16

               ii.  Plaintiff Has Not Plausibly Alleged Fraud .......... 17

**TABLE OF CONTENTS**
**(continued)**

Page

           b.    Twitter Cannot Be Liable for Negligent Infliction of Emotional Distress Because Twitter Owed Plaintiff No Duty and Plaintiff Has Alleged No Breach ................................... 18

           c.    Plaintiff's RICO Claims Fail Because She Has Not Alleged A Distinct "Enterprise" ...................... 19

           d.    Twitter Cannot Be Liable For Extortion Because There is No Private Right of Action Under the Statutes Cited by Plaintiff and Her Allegations Are Implausible ............................. 19

    3.    Plaintiff's Derivative Declaratory Relief Claim Fails .......................................................... 20

  B.    Plaintiff Should Be Denied Leave to Amend ...................................... 21

V.    CONCLUSION ............................................. 22

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGES**

*Alder v. Drudis,*
   30 Cal. 2d 372 (1947) ........................................................ 16

*Anthony v. Yahoo Inc.,*
   421 F. Supp. 2d 1257 (N.D. Cal. 2006) ................................. 17

*Archer v. City of Taft,*
   No. 1:12-CV-00261-AWI, 2012 WL 1458136 (E.D. Cal. Apr. 26,
   2012) .................................................................................... 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................... 7, 17

*Audette v. Int'l Longshoremen's & Warehousemen's Union,*
   195 F.3d 1107 (9th Cir. 1999) .............................................. 21

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.,*
   88 F. Supp. 3d 543 (E.D. Va.), *aff'd,* 624 F. App'x 81 (4th Cir.
   2015) .................................................................................... 11

*Ballard v. Chase Bank USA, NA,*
   No. 10cv790 L POR, 2010 WL 5114952 (S.D. Cal. Dec. 9, 2010) ................... 20

*Barnes v. Yahoo!, Inc.,*
   570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ............. 9, 11, 12, 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................... 7, 20

*Camofi Master LDC v. Associated Third Party Adm'rs,*
   No. 16-cv-00855-FMC, 2016 WL 6834585 (N.D. Cal. Nov. 21,
   2016) .................................................................................... 16

*Caraccioli v. Facebook, Inc.,*
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ........................... 17, 18, 19

*Cedric Kushner Promotions, Ltd. v. King,*
   533 U.S. 158 (2001) ............................................................ 19

*Central Hardware Co. v. NLRB,*
  407 U.S. 539 (1972) ......................................................................... 15

*Cohen v. Facebook, Inc.,*
  252 F. Supp. 3d 140 (E.D.N.Y.) ....................................................... 15

*Cross v. Facebook, Inc.,*
  14 Cal. App. 5th 190 (2017) ....................................................... 12, 13

*Doe v. Am. Online, Inc.,*
  783 So. 2d 1010 (Fla. 2001) ............................................................. 14

*Doe v. MySpace, Inc.,*
  528 F.3d 413 (5th Cir. 2008) .............................................................. 9

*Dowbenko v. Google Inc.,*
  991 F. Supp. 2d 1219 (S.D. Fla. 2013)............................................... 14

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
  521 F.3d 1157 (9th Cir. 2008) ............................................................. 8

*Fiedler v. Clark,*
  714 F.2d 77 (9th Cir. 1983) ............................................................... 21

*Fields v. Twitter, Inc.,*
  217 F. Supp. 3d 1116 (N.D. Cal. 2016)...................................... 9, 13, 14

*Frenken v. Hunter,*
  No. 17-CV-02667-HSG, 2018 WL 1964893 (N.D. Cal. Apr. 26,
  2017).......................................................................................... 9, 10, 12

*Gaston v. Facebook, Inc.,*
  No. 3:12-cv-0063-ST, 2012 WL 629868 (D. Or. Feb. 2, 2012) ......... 11

*Giebel v. Sylvester,*
  244 F.3d 1182 (9th Cir. 2001) ........................................................... 15

*Goddard v. Google, Inc.,*
  640 F. Supp. 2d 1193 (N.D. Cal. 2009)............................................. 13

*Gonzalez v. Google, Inc.,*
  282 F. Supp. 3d 1150 (N.D. Cal. 2017)............................................. 15

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003) ........................................................................9, 14, 15

*Green v. YouTube, Inc.*,
    No. 18 CV 203 PB (D.N.H.), Dkt. # 1 ................................................................15

*Howard v. AOL*,
    208 F.3d 741 (9th Cir. 2000) .............................................................................16

*Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015).................................................................18

*Joude v. WordPress Found.*,
    No. C 14-01656 LB, 2014 WL 3107441 (N.D. Cal. July 3, 2014) .....................16

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ............................................................................11

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
    701 F.2d 1276 (9th Cir. 1983) ..............................................................................7

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.D.C. 2014) ......................................................................10, 11

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..............................................................................5

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017)..................................................................14

*Ladd v. Cnty. of San Mateo*,
    412 Cal. 4th 913 (1996)........................................................................................18

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) .....................................................................16

*Levitt v. Yelp! Inc.*,
    No. C-10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011),
    *aff'd*, 765 F.3d 1123 (9th Cir. 2014) .................................................................11

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) ...............................................................................19

*Middleton v. Pan,*
  No. CV 16-5224-SVW (AGR), 2017 WL 7053936, at *6 (C.D. Cal.
  Dec. 18, 2017) ....................................................................................... 20

*Moore v. Kayport Package Express, Inc.,*
  885 F.2d 531 (9th Cir. 1989) ............................................................... 17

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
  591 F.3d 250 (4th Cir. 2009) ........................................................... 8, 13

*O'Kroley v. Fastcase, Inc.,*
  831 F.3d 352 (6th Cir. 2016) ............................................................... 15

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
  460 U.S. 37 (1983) .............................................................................. 15

*Prager Univ. v. Google LLC,*
  No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26,
  2018) ..................................................................................................... 15

*Price v. Gannett Co.,*
  No. 2:11-cv-00628, 2012 WL 1570972 (S.D. W. Va. May 1, 2012) ................ 13

*Rae v. Union Bank,*
  725 F.2d 478 (9th Cir. 1984) ............................................................... 19

*Rutman Wine Co. v. E. & J. Gallo Winery,*
  829 F.2d 729 (9th Cir. 1987) ............................................................... 22

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.,*
  144 F. Supp. 3d 1088 (N.D. Cal. 2015) ............................................... 10

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ................................................................. 6

*Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.,*
  No. 12-CV-2079-GPC-KSC, 2014 WL 2511448 (S.D. Cal. June 4,
  2014) ..................................................................................................... 20

*Young v. Facebook, Inc.,*
  2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ...................................... 16

*Young v. Facebook, Inc.,*
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ............................................... 18

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .......................................................................... 10, 11

**STATUTES**

18 U.S.C. § 875 ................................................................................................ 20

Cal. Civ. Code § 1572 .................................................................................... 5, 17

Cal. Civ. Code § 1573 ......................................................................................... 5

Cal. Civil Code § 51 ......................................................................................... 16

Communications Decency Act, 47 U.S.C. § 230 ............................................. *passim*

Declaratory Judgment Act, 28 U.S.C. § 2201 ................................................. 21

First Amendment and Lanham Act .................................................................. *passim*

Hobbs Act, 18 U.S.C. § 1951 ........................................................................... 20

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §
    1962 ........................................................................................................... 5, 19

**OTHER AUTHORITIES**

Rule 11 ............................................................................................................ 4, 5

Rule 12 .............................................................................................................. 6

Rule 15 .............................................................................................................. 4

# I.    INTRODUCTION

Despite having two opportunities to amend her complaint, Plaintiff Tiffany Dehen ("Plaintiff") has not stated—and cannot state—any claims as to Defendant Twitter, Inc. ("Twitter").  The Court should grant Twitter's Motion to Dismiss the Second Amended Complaint ("SAC") without leave to amend.

Plaintiff alleges that she reported an account impersonating her to Twitter.  Twitter immediately responded to Plaintiff's report, asking for additional information in order to investigate her claims.  Twitter actually disabled the impersonation account *within days*, and removed it entirely just *days later*.  Plaintiff nevertheless brings claims against Twitter based on Twitter's alleged failure to remove the account immediately upon receiving her report.

Plaintiff also alleges that she was involved in a car accident after Twitter removed the impersonation account and that an unknown woman she met at the courthouse harassed her several months after that.  Without alleging any connection to Twitter, Plaintiff faults Twitter for these incidents too, claiming that these allegations entitle her to relief under federal law.

All of Plaintiff's claims fail.  The Communications Decency Act, 47 U.S.C. § 230 ("CDA"), bars all of Plaintiff's claims relating to the impersonation account because those claims target Twitter's exercise of editorial discretion and improperly attempt to hold Twitter liable for the conduct of the account creator.

And regardless of CDA immunity, Plaintiff has not stated any claim against Twitter.  The Court ordered Plaintiff to delete meritless claims and irrelevant material from her complaint and support the claims she believes are meritorious with specific factual allegations.  She did not do so.  Instead, she added irrelevant factual allegations to her complaint and asserted additional baseless claims against Twitter.

Plaintiff has shown she is unable to address the deficiencies in her claims, and the Court should dismiss her claims with prejudice as to Twitter.

## II.   BACKGROUND

### A.   Plaintiff's Allegations Against Twitter

Twitter is an online platform that allows users all over the world to communicate through short messages called "Tweets" using unique account names called "handles."  *See generally* Plaintiff's SAC, Dkt. 55 ¶ 2.  Twitter is a free user-directed service, and users can find Tweets they are interested in reading in a number of ways, including by "following" the Twitter accounts of other users.  *See id* ¶¶ 2, 92.

Plaintiff alleges that, on January 26, 2017, John Doe created a Twitter account using @tiffanydehen as its handle (the "Account").  *Id.* ¶ 89.  John Doe styled the Account as a "Parody account; Fiction and political satire about Republican white women" and used a photograph of Plaintiff for the profile.  *Id.*  He used the Account to "follow" multiple controversial Twitter accounts, including those of Vladimir Putin, the Ku Klux Klan, and Adolf Hitler, and published Tweets that ascribed certain contentious views to Plaintiff.  *See*, *e.g.*, *id.* ¶¶ 92-115; Exs. 6-47.

On January 30, 2017, Plaintiff became aware of the Account and completed and transmitted Twitter's form for reporting an impersonation account.  Twitter responded to Plaintiff six minutes later.  *Id.* ¶¶ 118-119; Ex. 48.  For its investigation into the Account, Twitter asked Plaintiff to "confirm [her] identity" by "upload[ing] a copy of [her] valid government-issued photo ID," providing instructions about how to do so.  *Id.* ¶ 119; Ex. 48.  Plaintiff did not upload her identification to Twitter until two days later, on February 1, 2017 at 4:10 p.m., after she was involved in an automobile collision "on her way to Federal Court to commence suit."  *Id.* ¶¶ 120-122.

The next day, February 2, 2017, at 8:51 a.m., Twitter informed Plaintiff it was "providing the user [who published the impersonation account] with instruction on how to comply with [the Parody policy]."  *Id.* ¶ 124.  Twitter explained that it

would not "proactively monitor the account" but that it would "respond to all valid follow-up complaints." *Id*. The specific Tweets that Plaintiff had reported to Twitter were taken down shortly thereafter. *Id*. ¶ 125. The Account was then disabled by 10 a.m. on February 3, 2017. *Id*. ¶ 127. And then, just days later, Plaintiff noticed that the Account was taken down altogether. *Id*. ¶ 128.

At bottom, with respect to her allegations regarding the Account, Plaintiff complains that Twitter required her to provide identification as part of the investigation process into an impersonation account, thereby allowing the Account to remain active for a matter of days. *See, e.g.*, *id*. ¶ 245 ("Twitter had no intention of investigating the reported account unless and until Plaintiff provided . . . government issued identification card.").

Plaintiff's SAC also adds new allegations that Twitter "attempted to intimidate and extort Ms. Dehen into dropping her legal claims against Twitter." *Id*. ¶ 158. Twitter allegedly did this by sending "an elderly woman in a wheelchair" to federal court to "harass and intimidate" Plaintiff so that she would not pursue her claims against Twitter. *See id*. ¶ 154. Additionally, seventeen days after Twitter took down the Account, Plaintiff was involved in a second car accident that "totaled her car and left her with serious back and neck injuries." *Id*. ¶ 142. Plaintiff alleges a connection between the second car accident and Twitter, characterizing it as "attempted intimidation" by Twitter of Plaintiff as well as "actual physical harm" perpetrated by Twitter against Plaintiff. *Id*. ¶ 327. Plaintiff alleges no facts that connect Twitter to these incidents.

## B. Procedural History

On February 1, 2017, Plaintiff sued Twitter, the University of San Diego ("USD"), and John Doe in connection with alleged USD student, John Doe's, creation of the Account. She faulted Twitter for failing to immediately remove the Account upon receiving Plaintiff's request—only two days prior. *See* Dkt. 1.

1   Plaintiff alleged $1,000,000 in damages, which she sought to recover jointly and
2   severally from the three defendants.  *Id.*

3       On April 17, 2017, Plaintiff moved to file an amended complaint, which she
4   subsequently served on Twitter.  *See* Dkt. 13.  At 57 pages long, the first amended
5   complaint included thirteen causes of action and 61 exhibits, again relating to
6   Twitter's failure to remove the Account.  *Id.*  Plaintiff's new complaint admitted
7   that Twitter had immediately responded to Plaintiff's request to remove the
8   Account and that it had completely removed it within six days of the initial
9   request.  Twitter timely moved to dismiss the amended complaint on the basis that
10  the CDA immunized it from the types of claims brought by Plaintiff and that
11  Plaintiff had not alleged the necessary elements of each of her claims against
12  Twitter.  *See* Dkt. 30.

13      Thereafter, Judge Benitez recused himself from the case, the case was re-
14  assigned to this Court, and Plaintiff moved to file a second amended
15  complaint.  *See* Dkt. 41, 45.  Twitter opposed the amendment.  *See* Dkt.
16  48.  Plaintiff's proposed second amended complaint, which was 71 pages long and
17  included 68 exhibits, added even more causes of action, added Twitter's counsel
18  Perkins Coie, LLP, as a defendant, and included allegations of extortion relating to,
19  among other things, the defendants' purported involvement in a car accident
20  Plaintiff suffered after the complaint was filed.  *See* Dkt. 45.

21      Citing Rule 15's liberal amendment standard, the Court granted Plaintiff's
22  motion to amend the complaint, on several conditions, including that the complaint
23  contain "a short and plain statement" showing Plaintiff is entitled to relief;  that
24  "each allegation . . . be simple, concise, and direct;" that Plaintiff "fix[] any
25  problems the Defendants identified" in the pending motions to dismiss; that
26  Plaintiff "delet[e] meritless claims or irrelevant material, and add[] specific factual
27  allegations to support claims she believes are meritorious;" and that Plaintiff
28  comply with Rule 11, which requires "a nonfrivolous legal basis for her

claims." Dkt. 54.  The Court also set forth a scheduling order for briefing on Defendants' motions to dismiss the new complaint.  *Id.*

Plaintiff filed her Second Amended Complaint on April 6, 2018 (the "SAC").  *See* Dkt. 55.  The SAC is only two pages shorter, it includes all of the original allegations from the FAC, it does not address the arguments in the defendants' motions, and it retains the extortion claim against Twitter for which Plaintiff has no factual support.  *Id.*  Plaintiff also separately filed 149 exhibits, more than twice the amount filed with her first amended complaint.  Dkt. 55-2.

Accordingly, the SAC asserts claims against Twitter for rescission of contract for fraud (Cal. Civ. Code §§ 1572, 1573), declaratory relief, negligent infliction of emotional distress, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c), and extortion and conspiracy to commit extortion.  SAC ¶¶ 240-55, 256-58, 273-76, 282-96, 325-27.  Plaintiff also "reserves the right" to bring claims against Twitter for libel and violations of the First Amendment, and she asserts a civil conspiracy claim against unspecified defendants.  SAC ¶¶ 277-280, 161, 297-98.  Plaintiff seeks damages and injunctive relief against Twitter.

## C.    Twitter's Terms of Service and Policies

To create a Twitter account, a user must accept Twitter's Terms of Service ("TOS") and Privacy Policy, which refer and link to Twitter's other policies and rules (collectively, "Terms").  Declaration of Julie E. Schwartz in Support of Motion to Dismiss ("Schwartz Decl."), Exs. A-F.[1]  Plaintiff confirms that when she

---

[1] The Court may consider Twitter's Terms and the Twitter web pages that address its policies concerning impersonation accounts without converting the motion to dismiss into a motion for summary judgment.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if no one disputes their authenticity, they are referred to in the plaintiff's complaint, and they are central to her claim).  Twitter's statements in its Terms and in other online documents are central to Plaintiff's claims, and Plaintiff herself references Twitter's online statements about impersonation in her complaint.  SAC ¶¶ 58-68.  Plaintiff cannot cherry-pick only

signed up for a Twitter account on October 9, 2015, she agreed to the Terms.  SAC ¶ 56, Ex. 53.

Twitter's Terms undertake no obligation to remove content at a user's request and affirmatively disclaim any liability for user generated content.  The TOS says, "We *may* . . . remove or refuse to distribute any Content on the Services, [and] suspend or terminate users . . . without liability to you."  Schwartz Decl. Ex. A § 4; *see also id.*, Ex. A § 5 ("Your access to and use of the Services or any Content are *at your own risk. . . .* [Twitter] *disclaim[s] all responsibility and liability* for . . . harm that results from your access to or use of the Services or any Content") (emphasis added); *id.*, Ex. A § 4 ("Any feedback, comments, or suggestions you may provide regarding Twitter, or the Services is entirely voluntary and we will be free to use such feedback, comments or suggestions as we see fit and *without any obligation to you*.") (emphasis added).

The TOS refers users to the Twitter Rules to better understand "what is prohibited on the Twitter Services."  *Id.* at § 4.  The Twitter Rules prohibit certain user content, including "impersonat[ing] others through the Twitter service in a manner that is intended to or does mislead, confuse, or deceive others."  Schwartz Decl., Ex. E ("In order to protect the experience and safety of people who use Twitter, there are some limitations on the type of content and behavior that we allow.").

The Twitter Rules also link to Twitter's Impersonation Policy, which states that "Twitter accounts portraying another person in a confusing or deceptive manner *may* be permanently suspended."  *Id.*, Ex. F (emphasis added); *see also* SAC ¶ 61.  "Upon receipt of an impersonation report," Twitter says, "we will

those portions that best support her claims and bar Twitter from referencing other portions.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (noting the incorporation by reference doctrine "[p]revent[s] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based") (internal ellipsis and citation omitted).

investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules." *See* Schwartz Decl., Ex. G. "Accounts determined to be in violation of our impersonation policy, or those not in compliance with our parody, commentary, and fan account policy, will either be suspended or asked to update the account(s) so they no longer violate our policies." *Id.*; *see also* SAC ¶ 63.

Twitter's Terms are clear: Twitter is not responsible for what Twitter users publish. The TOS states that "*[a]ll Content is the sole responsibility of the person who originated such Content.*" Schwartz Decl., Ex. A at § 3 (emphasis added). Twitter also explains that "[w]e may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content." *Id.* Finally, the TOS disclaims any warranty or representation about the service and responsibility for any "harm that results from [users'] access to or use of" Twitter. *Id.* at § 5.

### III.   LEGAL STANDARD

To state a claim upon which relief can be granted, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, denying leave to amend is appropriate when amendment would be "futil[e]." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).

# IV.  ARGUMENT

## A.  Twitter's Motion to Dismiss Should Be Granted

Plaintiffs' claims for rescission of contract, declaratory relief, negligent infliction of emotional distress, and for violations of RICO (the "Account-Related Claims") all arise out of allegations about how Twitter responded to Plaintiff's request to remove the Account.  *See* SAC ¶¶ 240-55, 256-58, 273-76, 282-96.  The CDA bars these Account-Related Claims because they attempt to hold Twitter liable for publisher activity—Twitter's exercise of discretion to remove content.

Further, *none* of Plaintiff's purported causes of actions against Twitter state a claim for which relief can be granted.  Plaintiff's claims against Twitter should therefore be dismissed in their entirety, with prejudice.

### 1.  The Communications Decency Act Bars All of Plaintiff's Account-Related Claims

#### a.  Section 230 Applies to Plaintiff's Account-Related Claims

Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  This provision immunizes providers "against liability arising from content created by third parties."  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).  Courts apply Section 230 immunity broadly "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles."  *Id.* at 1175; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (because "immunity is an immunity from suit rather than a mere defense to liability," courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case") (emphasis omitted) (internal quotation marks and citation omitted).

1    Under the CDA, a defendant is entitled to immunity if (1) it provides an

2    "interactive computer service," (2) plaintiff's claim treats the defendant as the

3    "publisher" or "speaker" of the offending content, and (3) the content was

4    "provided by another information content provider."  *Barnes v. Yahoo!, Inc.*, 570

5    F.3d 1096, 1100-01 (9th Cir. 2009), *as amended* (Sept. 28, 2009).  As set forth

6    below, Twitter satisfies these three requirements and is entitled to immunity from

7    suit as to all of the Account-Related Claims.[2]

8                    **i.    Twitter Provides an Interactive Computer Service**

9    The first requirement is met because Twitter provides an interactive

10   computer service, which is "any information service, system, or access software

11   provider that provides or enables computer access by multiple users to a computer

12   server."  47 U.S.C. § 230(f)(2).  An "access software provider" is "a provider of

13   software (including client or server software), or enabling tools that do any one or

14   more of the following: [] filter, screen, allow, or disallow content; [] pick, choose,

15   analyze, or digest content; or [] transmit, receive, display, forward, cache, search,

16   subset, organize, reorganize, or translate content."  *Id*. § 230(f)(4).

17   Twitter fits this definition because it is a website that hosts content and

18   allows communications, including communications of Plaintiff and John Doe.  *See*

19   SAC ¶ 2; *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016)

20   (holding that Twitter is an interactive computer service); *see also Barnes*, 570 F.3d

21   at 1101 (holding that Yahoo! is a provider of an interactive computer service

22   because it allowed users to post public profiles on the Internet); *Doe v. MySpace,*

23   *Inc.*, 528 F.3d 413, 415 (5th Cir. 2008) (treating MySpace as an interactive

24   computer service); *Green v. Am. Online (AOL)*, 318 F.3d 465, 469 (3d Cir. 2003)

---

25
26   [2] Indeed, the Northern District of California recently dismissed with prejudice on
     CDA grounds another lawsuit against Twitter seeking to hold Twitter liable for
27   allegedly failing to remove a user's Tweets.  *Frenken v. Hunter*, No. 17-CV-02667-
     HSG, 2018 WL 1964893, at *2-4 (N.D. Cal. Apr. 26, 2018).  This case warrants the
28   same result.

1   (finding that AOL is "undisputed[ly]" an interactive computer service); *Sikhs for*

2   *Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015)

3   (holding that Facebook is a provider of an interactive computer service because it

4   "provides or enables computer access by multiple users to a computer service").

5                    **ii.    Plaintiff's Claims Treat Twitter as a Publisher**

6          The second requirement is also met because Plaintiff's Account-Related

7   Claims treat Twitter as a publisher—they target Twitter's actions in deciding

8   whether to remove content.  *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359

9   (D.D.C. 2014) ("[T]he very essence of publishing is making the decision whether to

10  print or retract a given piece of content—the very actions for which Klayman seeks

11  to hold Facebook liable."); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 332-33 (4th

12  Cir. 1997) ("The computer service provider must decide whether to publish, edit, or

13  withdraw the posting.  In this respect, Zeran seeks to impose liability on AOL for

14  assuming the role for which § 230 specifically proscribes liability—the publisher

15  role.").  The crux of Plaintiff's claims against Twitter is that Twitter allowed "the

16  continued publication of Doe's harmful conduct to persist."  SAC ¶ 275; *see also*

17  SAC ¶¶ 116-30 (alleging Twitter failed to remove the Account and offending

18  content with sufficient rapidity), ¶ 132 ("[T]he Twitter account in question . . . was

19  still public at th[e] time that [Plaintiff's] initial complaint was public, and was only

20  taken down by Twitter *after* a copy of [Plaintiff]'s initial complaint was all over

21  Twitter.").  This is quintessential publisher activity.  *See Frenken*, 2018 WL

22  1964893, at *2.

23         Plaintiff attempts to evade CDA immunity by arguing that the CDA

24  categorically can never apply to the causes of action she has asserted.  *Id.*

25  ¶¶ 177-83.  She is incorrect.  What matters "is not the name of the cause of action—

26  [but] whether the cause of action inherently requires the court to treat the defendant

27

28

as the 'publisher or speaker' of the content provided."[3]  *Barnes*, 570 F.3d at 1101-02.  "[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, section 230(c)(1) precludes liability."  *Barnes*, 570 F.3d at 1101-02.  Here, under each cause of action, Plaintiff's claims treat Twitter as a publisher.

Plaintiff also attempts to shoehorn some of her claims into a contractual theory of relief, apparently because she interprets *Barnes* to preclude Section 230 from applying to such claims.  *See, e.g.*, SAC ¶¶ 240-55 (alleging "rescission for fraud" and arguing that "CDA § 230 does not bar causes of action that arise out of breach of contract").  But *Barnes* cannot save Plaintiff's claims.  SAC ¶ 255.  In *Barnes*, Yahoo!'s Director of Communications personally promised the plaintiff he would remove content, but Yahoo! failed to do so for two months.  570 F.3d at 1099.  The court held that the CDA did not bar the plaintiff's promissory estoppel claim because the court treated Yahoo! as a counterparty that undertook a legal obligation, not a publisher.  *Id.* at 1107.  The court, however, made clear that "*a general monitoring policy*, or even an attempt to help a particular person . . . *does not suffice for contract liability*."  *Id.* at 1108 (emphasis added).  And where there is a contract, an interactive computer service "need only disclaim any intention to be bound" in order "to avoid liability."  *Id.*

---

[3] This includes the types of claims that Plaintiff asserts.  *See, e.g.*, *Klayman*, 753 F.3d at 1355 (breach of contract and negligence); *Zeran*, 129 F.3d at 332 (negligence); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (civil RICO); *Gaston v. Facebook, Inc.*, No. 3:12-cv-0063-ST, 2012 WL 629868, at *1-2 (D. Or. Feb. 2, 2012) (defamation); *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 547 (E.D. Va. 2015) (RICO violations), *aff'd*, 624 F. App'x 81 (4th Cir. 2015); *Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011 WL 5079526, at *8-9 (N.D. Cal. Oct. 26, 2011) (extortion), *aff'd*, 765 F.3d 1123 (9th Cir. 2014).

1    Plaintiff's reliance on *Barnes* is misplaced.  *See Cross v. Facebook, Inc.*, 14

2   Cal. App. 5th 190, 202 (2017) ("Knight has no promissory estoppel claim—and

3   *Barnes* no applicability here.").  Unlike the plaintiff in *Barnes*, Plaintiff here does

4   not allege—nor could she—that Twitter personally promised her it would remove

5   the Account.  To the contrary, Twitter's Terms—to which Plaintiff concedes she

6   agreed—explicitly disclaim any obligation to remove content and any liability for

7   third-party content posted on the Twitter platform.[4]  *See, e.g.*, *Frenken*, 2018 WL

8   1964893, at *3 ("Contrary to Plaintiff's reading of *Barnes*, Twitter is not liable

9   under a promissory estoppel theory. . . . The rules upon which Plaintiff relies, i.e.,

10   Twitter's 'enforcement' options for removing content or accounts, are phrased in

11   discretionary terms.").

12    As the court in *Frenken* recognized, at most, the Terms enshrine Twitter's

13   discretion to investigate and remove content.  SAC ¶ 63 ("Upon receipt of an

14   impersonation report, we will investigate the reported accounts . . . Accounts

15   determined to be in violation of our [policies], will either be suspended or asked to

16   update the account(s) so they no longer violate our policies."); *see also Cross*, 14

17   Cal. App. 5th at 201-02 ("[E]ven if statements in Facebook's terms could be

18   construed as obligating Facebook to remove the pages—which plaintiffs have not

19   demonstrated—it would not alter the reality that the source of Knight's alleged

20

21   ---

   [4] *See, e.g.*, Schwartz Decl., Ex. A at § 4 ("We *may* . . . remove or refuse to
   distribute any Content on the Services . . . without liability to you.") (emphasis

22   added); *id.*, Ex. A at § 5 ("Your access to and use of the Services or any Content are
   *at your own risk*. . . . [Twitter] *disclaim[s] all responsibility and liability* for . . .

23   harm that results from your access to or use of the Services or any Content . . . .")
   (emphasis added); *see also id.*, Ex. A at § 4 ("Please review the Twitter Rules,

24   which are part of the User Agreement and outline *what is prohibited* on the

25   Services.") (emphasis added); *id.*, Ex. A at § 4 ("Any feedback, comments, or
   suggestions you may provide regarding Twitter, or the Services is entirely

26   voluntary and we will be free to use such feedback, comments or suggestions as we
   see fit and *without any obligation to you*.") (emphasis added); *id.*, Ex. E ("In order

27   to protect the experience and safety of people who use Twitter, there are some
   limitations on the type of content and behavior *that we allow*.") (emphasis added).

28

injuries, the basis for his claim, is the content of the pages and Facebook's decision not to remove them . . . .").

Indeed, Plaintiff's own allegations confirm that Twitter acted consistent with its policies—it investigated her complaint, resulting in the removal of the Account in a matter of days.  SAC ¶¶ 117-28.  *Barnes* does not apply.  *See Cross*, 14 Cal. App. 5th at 203-04, 206-07 (rejecting the argument that Facebook's terms and policies created binding obligations to remove content, and finding CDA immunity barred claims targeting Facebook's failure to remove content); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1201 (N.D. Cal. 2009) (holding that neither Google's Advertiser Terms nor its Content Policy "contain[ed] any promise *by Google* to enforce its terms of use or otherwise to remove noncompliant advertisements" (emphasis in original)); *see also Fields*, 217 F. Supp. 3d at 1125-26 (finding *Barnes* inapplicable because "plaintiffs . . . allege[d] no promise made or breached by Twitter).

At bottom, Plaintiff bases her claims on the premise that Twitter failed to promptly comply with Plaintiff's request that Twitter remove John Doe's Twitter account.  Decisions whether to remove content are quintessentially publisher conduct, and Twitter satisfies the second requirement of CDA immunity.

### iii.    The Content Was Posted by Another Information Content Provider

Finally, Twitter satisfies the third requirement because John Doe, the creator of the Account, is the "information content provider."  *See* SAC ¶¶ 89-115 (alleging that Doe(s) created the Account and posted the offending information); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) ("[P]laintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online."); *Price v. Gannett Co.*, No. 2:11-cv-00628, 2012 WL 1570972, at *2 (S.D. W. Va. May 1, 2012) (concluding this element was satisfied

1   because the plaintiffs "admitted in the complaint that the unknown individuals

2   provided the statements, not Topix").

3          Plaintiff cannot show otherwise.  *See Dowbenko v. Google Inc.*, 991 F. Supp.

4   2d 1219, 1220 (S.D. Fla. 2013) (rejecting as "simply implausible" the notion that

5   Google executives were responsible for defamatory content posted via Google

6   services).  Again, Plaintiff bases her claims against Twitter on the theory that

7   Twitter allowed the Account to remain active while Twitter investigated, not that

8   Twitter created the Account or was the speaker.  Accordingly, each of the three

9   elements of Section 230(c)(1) is met, and Twitter is immune from liability for

10  Plaintiff's claims.

11             **b.     Section 230 of the CDA is Constitutional**

12         In the two decades since Congress enacted the CDA, no court has held

13  Section 230 unconstitutional.  *See, e.g.*, *La'Tiejira v. Facebook, Inc.*, 272 F. Supp.

14  3d 981, 994 (S.D. Tex. 2017) (rejecting the plaintiff's arguments that Section 230

15  denies her due process, contravenes the full faith and credit clause of the U.S.

16  Constitution, and infringes upon access to the courts); *see also Doe v. Am. Online,*

17  *Inc.*, 783 So. 2d 1010, 1027 (Fla. 2001) (recognizing that Section 230 "has not been

18  invalidated" even though "the Supreme Court later deemed unconstitutional those

19  portions of the CDA which prohibited the transmission of indecent

20  material").  Plaintiff nonetheless argues that Section 230 violates the First

21  Amendment.  SAC ¶¶ 157-76.

22         At best, the authority Plaintiff cites is inapposite, and most of it supports the

23  constitutionality and applicability of Section 230.  For example, *American Freedom*

24  *Defense Initiative* and *Green* are both complaints, not court decisions.  *See* SAC

25  ¶¶165, 166, 171.  The *American Freedom Defense Initiative* complaint challenged

26  the constitutionality of Section 230 and was dismissed for lack of standing.  *Am.*

27  *Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d 100, 101 (D.D.C. 2016), *aff'd*

28  *sub nom. Am. Freedom Def. Initiative v. Sessions*, 697 F. App'x 7 (D.C. Cir.

2017).  The *Green* complaint was filed just last month by plaintiffs who were upset that their accounts had been terminated by YouTube and others.  *Green v. YouTube, Inc.*, No. 18 CV 203 PB (D.N.H.), Dkt. # 1.  The other cases that Plaintiff cites do not involve challenges to the constitutionality of Section 230 and instead show the breadth of the CDA's protection.[5]

Setting aside the lack of authority, Plaintiff's unconstitutionality argument fails of its own accord.  Plaintiff argues in her SAC that Section 230 is unconstitutional because it permits content- and viewpoint-based discrimination.  SAC ¶¶ 161-69.  But Plaintiff does not allege that Twitter based its decisions here on content or viewpoint, so she lacks standing to assert this argument.  *See* SAC ¶¶ 117-28 (describing the removal process).  Even if she had standing, Section 230 is content- and viewpoint-neutral.  *See* 47 U.S.C. § 230(c); *cf. Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)) ("'Content discrimination' occurs when the government 'choos[es] the subjects' that may be discussed, while 'viewpoint discrimination' occurs when the government prohibits 'speech by particular speakers,' thereby suppressing a particular view about a subject.").  And that content or viewpoint might motivate a private party to handle certain content differently on its own website is irrelevant because the First Amendment applies only to state action.  *Central Hardware Co. v. NLRB*, 407 U.S. 539, 547 (1972).  In the online context, courts have uniformly rejected the notion

---

[5] *See O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 354 (6th Cir. 2016) (Section 230 immunizes Google from liability "for the way it displayed search results"); *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *5-13 (N.D. Cal. Mar. 26, 2018) (noting Google's Section 230 argument but declining to address it in dismissing the plaintiff's First Amendment and Lanham Act claims); *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 155-58 (E.D.N.Y.) (Section 230 immunizes Facebook from claims based on Hamas's use of the platform); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1163-66 (N.D. Cal. 2017) (Section 230 immunizes YouTube from claims based on ISIS's use of the platform).

that an Internet company can be categorized as a state actor. *See, e.g.*, *Howard v. AOL*, 208 F.3d 741, 754 (9th Cir. 2000) (AOL not subject to the First Amendment); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631-32 (D. Del. 2007) (Google not subject to the First Amendment); *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010) (Facebook is not a state actor).

Similarly, Plaintiff argues that Section 230 permits conduct that "would otherwise violate" California public accommodations law, *see* SAC ¶¶ 166-67, but Plaintiff has not alleged that Twitter discriminated against her based on any protected status. *See* Cal. Civil Code § 51. To the contrary, she alleges that Twitter responded promptly to her request to remove the Account and then removed it. SAC ¶¶ 117-28. In sum, there is no merit to Plaintiff's argument that the CDA is unconstitutional or otherwise unenforceable.

### 2. Plaintiff Has Not Alleged Any Viable Claim Against Twitter

#### a. Plaintiff Cannot Obtain the Remedy of Rescission

##### i. Plaintiff Has Not Alleged a Breach of Contract

Plaintiff cannot obtain the remedy of rescission because she has not alleged a breach of contract. *See Alder v. Drudis*, 30 Cal. 2d 372, 381-82 (1947) ("It is well settled in this state that *one who has been injured by a breach of contract* has an election to pursue any of three remedies," including "treat[ing] the contract as rescinded and . . . recover[ing] upon a quantum meruit so far as he has performed") (emphasis added) (internal quotation marks and citation omitted); *see also Camofi Master LDC v. Associated Third Party Adm'rs*, No. 16-cv-00855-FMC, 2016 WL 6834585 at *3 (N.D. Cal. Nov. 21, 2016) (noting that rescission "is a remedy," "not a cause of action") (citation omitted)).

Indeed, "[a] plaintiff cannot predicate a breach of contract claim on a defendant's terms of service where those terms did not commit the defendant to performing any particular action." *Joude v. WordPress Found.*, No. C 14-01656

LB, 2014 WL 3107441, at *5 (N.D. Cal. July 3, 2014) (citing *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1260-61 (N.D. Cal. 2006)).  Thus, where an online service contract "place[s] restrictions on users' behavior," but does not "create affirmative obligations," it cannot form the basis for a user's breach of contract claim.  *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) (dismissing a breach of contract claim against Facebook because its Terms of Service did not place affirmative obligations on Facebook) (citation omitted).

By this same logic, Plaintiff cannot predicate a rescission claim on Twitter's Terms.  As discussed *supra* Section IV.A.1(b), Twitter's Terms merely "place restrictions on users' behavior."  *Id.*; *see* Schwartz Decl. Ex. A at § 4; *id.*, Ex. E.  And the Terms undertake no obligation to Plaintiff to remove content, and, further, disclaim any liability for third-party content.  *See* Schwartz Decl. Ex. A at §§ 4-5.  In explaining its impersonation policies, Twitter further makes clear that it *may* suspend violative accounts, but it nowhere undertakes an obligation to do so.  *See id.*, Exs. E-F.

Because Twitter did not undertake any enforceable obligations to Plaintiff, there is no contract to rescind.

### ii.   Plaintiff Has Not Plausibly Alleged Fraud

Plaintiff's rescission claim also fails because she has not plausibly alleged fraud.  *See Iqbal*, 556 U.S. at 679 (holding that a complaint's well-pleaded allegations, if taken as true, must "plausibly give rise to an entitlement to relief"); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (holding that "mere conclusory allegations of fraud are insufficient" to state a claim for fraud).  In the contractual context, fraud includes "[a] promise made without any intention of performing it."  Cal. Civ. Code § 1572.4.

Plaintiff's conclusory allegations that "Twitter fraudulently misrepresented to Plaintiff that Twitter would investigate reported accounts to determine if the accounts are in violation of the Twitter Rules upon receipt of an impersonation by

1   Plaintiff" are belied by Plaintiff's own allegations.  SAC ¶ 243.  Indeed, Plaintiff
2   alleges that Twitter investigated and the Account that Plaintiff reported was
3   removed within a short period of time—a mere matter of days.  *See id*. ¶¶ 117-128.

4          Finally, Plaintiff's allegations that Twitter intentionally misrepresented its
5   "true impersonation process" by not disclosing that it would request Plaintiff's
6   identification because it wanted to earn "advertising revenues off . . . the
7   impersonating account" defy common sense.  *See id*. ¶ 248.  Plaintiff admits that
8   Twitter simply requested a photo of her driver's license to confirm her identity.  *Id*.
9   ¶¶ 119, 122.  This request is entirely consistent with Twitter's stated policy to
10  investigate claims of impersonation, since any impersonation investigation
11  necessarily requires sorting out who is the real individual and who is the
12  impersonator.[6]  Without some verification of identity, Twitter could not reasonably
13  be expected to know if an account was indeed impersonating someone.  Plaintiff's
14  rescission claim should therefore be dismissed with prejudice.

15                    **b.    Twitter Cannot Be Liable for Negligent Infliction of
                              Emotional Distress Because Twitter Owed Plaintiff No Duty
16                            and Plaintiff Has Alleged No Breach**

17         Plaintiff's negligent infliction of emotional distress claim is likewise
18  deficient.  "Negligent infliction of emotional distress is a species of negligence"
19  that requires, among other things, that "the defendant owed a legal duty to use due
20  care."  *Caraccioli*, 167 F. Supp. 3d at 106 (citing *Ladd v. Cnty. of San Mateo*, 412
21  Cal. 4th 913, 917 (1996)).

22         Plaintiff's conclusory allegation that "Twitter owed a duty of care to prevent
23  Plaintiff from being injured as a result of Twitter's conduct" is contradicted by
24  Twitter's Terms (*see supra* Section IV.A.1(b)).  SAC ¶ 274; *Young v. Facebook,*

25  _____
26  [6] For this reason, even if Plaintiff had established that Twitter owed her a
    contractual duty, her claim would fail for failure to allege breach.  *See Song fi Inc.*
27  *v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (holding that Plaintiff
    "cannot state a claim for breach of the Terms of Service . . . because conduct
28  authorized by a contract cannot give rise to a claim for breach of the agreement).

*Inc.*, 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) (dismissing negligent infliction of emotional distress claim where plaintiff did not "identify any contractual basis for these alleged duties, and . . . cite[d] no legal authority for any non-contractual duty that would give rise to a tort claim"). Moreover, the allegations establish that Twitter did not breach its Terms by requesting Plaintiff's identification and removing the Account, and thus Twitter did not breach any duty of care owed to Plaintiff. *See* SAC ¶ 275 ("Twitter breached the aforesaid duty of care owed to Plaintiff by breaching its contract with Plaintiff"). Because Twitter owes no duty to Plaintiff, and has breached no duty to Plaintiff, her negligent infliction of emotional distress claim should be dismissed with prejudice. *See Caraccioli*, 167 F. Supp. 3d at 1064 (dismissing negligence claim because Facebook owed the plaintiff no duty).

### c.  Plaintiff's RICO Claims Fail Because She Has Not Alleged A Distinct "Enterprise"

Plaintiff's RICO claims also require dismissal. RICO applies to "person[s]" who are "employed by or associated with" the "enterprise." § 1962(c); *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Thus, liability under § 1962(c) requires the existence of "two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Cedric*, 533 U.S. at 161). Here, Plaintiff casts Twitter both as a RICO "person," SAC ¶ 284, as well as a RICO "enterprise," *id.* ¶ 285. But "[i]f [Twitter] is the enterprise, it cannot also be the RICO defendant." *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984). Plaintiff's failure to identify an enterprise distinct from Twitter is fatal to her claim.

### d.  Twitter Cannot Be Liable For Extortion Because There is No Private Right of Action Under the Statutes Cited by Plaintiff and Her Allegations Are Implausible

Plaintiff's extortion claim is both deficient and implausible. First, neither of the federal criminal statutes upon which Plaintiff relies for her extortion claims

provide a private right of action.  *See* SAC ¶¶ 322-27 (citing 18 U.S.C. §§ 875, 1951); *Archer v. City of Taft*, No. 1:12-CV-00261-AWI, 2012 WL 1458136, at *6 & n.2 (E.D. Cal. Apr. 26, 2012) (no private right of action under 18 U.S.C. § 875); *Middleton v. Pan*, No. CV 16-5224-SVW (AGR), 2017 WL 7053936, at *6 (C.D. Cal. Dec. 18, 2017) (no private right of action under the Hobbs Act, 18 U.S.C. § 1951), *report and recommendation adopted* 2018 WL 582324 (C.D. Cal. Jan. 25, 2018). Plaintiff's extortion claim therefore fails as a matter of law and should be dismissed with prejudice.

Second, Plaintiff's extortion claim is unsupported by any of the factual allegations in her complaint.  Liberally construed, Plaintiff alleges two instances of alleged extortion: the first when Plaintiff suffered injuries in a car accident seventeen days after Twitter removed the Account, and the second when "an elderly woman in a wheelchair" at the courthouse became unusually interested in Plaintiff's legal action and continued contacting her to get together for days after.  SAC ¶¶ 142, 154.  Besides Plaintiff's conclusory assertion that Twitter "attempted intimidation against Plaintiff in the form of actual physical harm of Plaintiff in the serious 02/20/2017 automobile collision," *id.* ¶ 327, she does not—and cannot—support her claim that Twitter bears responsibility for, or indeed, has any connection at all to, either incident.  Thus, Plaintiff's extortion claim is not only legally unsound, but it rests on allegations that fail to meet the "requirement of plausibility," requiring dismissal.  *Twombly*, 550 U.S. at 560.

### 3.    Plaintiff's Derivative Declaratory Relief Claim Fails

Plaintiff's claim for declaratory relief must be dismissed because it is dependent upon the survival of Plaintiff's other claims, which all fail for the reasons above.  *Ballard v. Chase Bank USA, NA*, No. 10-cv-790 L POR, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims'" (citation omitted)); *see also Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*, No. 12-CV-2079-GPC-KSC, 2014 WL

1    2511448, at *3 (S.D. Cal. June 4, 2014) (a declaratory relief claim "does not by

2    itself state a claim" and cannot stand without a substantive cause of action).

3            Indeed, when a plaintiff otherwise fails to state a claim upon which relief can

4    be granted, the plaintiff's "claim" for declaratory relief must be dismissed. *See*

5    *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1111

6    n.2 (9th Cir. 1999) (excluding cause of action for "declaratory judgment" because it

7    merely sought relief rather than stating a claim); *see also Fiedler v. Clark*, 714 F.2d

8    77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an

9    independent jurisdictional basis for suits in federal court.  It only permits the district

10   court to adopt a specific remedy when jurisdiction exists." (citation omitted)).

11           Because Plaintiff has not adequately pleaded any claim, the Court should

12   dismiss Plaintiff's claim for declaratory relief as well.

13   **B.    Plaintiff Should Be Denied Leave to Amend**

14           Plaintiff has already twice had the opportunity to amend her complaint and

15   should be denied a third bite at the apple.  This Court permitted Plaintiff to file the

16   SAC on the condition that Plaintiff comply with a number of requirements that she

17   did not follow.  *See* Order Granting Leave to Amend ("Order"), Dkt. 54.  In

18   particular, Plaintiff did not "delet[e] meritless claims" and "irrelevant material" or

19   add "specific factual allegations to support claims she believes are

20   meritorious."  *Id.*  To the contrary, in her 69-page SAC, which she filed with 312

21   pages of exhibits, Plaintiff retained *all* of her claims against Twitter that were in the

22   FAC, included no new factual allegations as to those claims, and *added* new claims

23   for RICO violations and extortion for which she provided zero factual support.  Her

24   response to Twitter's CDA defense was both to attack the constitutionality of

25   Section 230, which for twenty years has never been held unconstitutional, and to

26   implausibly accuse Twitter of extortion based on speculation alone.

27           Plaintiff's SAC therefore confirms that she cannot allege any actionable

28   conduct against Twitter and she should be denied leave to amend.  "Denial of leave

to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). Three complaints in this case make clear that any further amendment would be an exercise in futility. Twitter has legal immunity under the CDA from Plaintiff's claims, did not breach of any obligations to Plaintiff, and acted consistent with its policies.

That Plaintiff "reserves the right" to bring certain claims—civil conspiracy, First Amendment violations, and libel—against Twitter does not change the analysis. The Court explicitly ordered Plaintiff to remove such claims from the SAC if she could not allege facts to support them, which she did not do. *See* Order at 2. In any case, these "reserved" claims are all subject to CDA immunity because, as with the other claims, they would treat Twitter, an interactive computer service, as a publisher, and attempt to hold Twitter liable for John Doe's content.

Nor are there facts supporting any of these claims. To the contrary, the only facts Plaintiff can allege tell the whole story: Twitter investigated a claim by Plaintiff and responded to address her concern, and the situation was resolved within days. These facts cannot support any of Plaintiff's claims and, therefore, Plaintiff's lawsuit should be dismissed as to Twitter, without leave to amend.

## V.   CONCLUSION

For the foregoing reasons, Twitter respectfully requests that the Court dismiss Plaintiff's claims against Twitter with prejudice.

DATED:  April 27, 2018

Respectfully submitted,

*/s/ Julie E. Schwartz*
Julie E. Schwartz

Attorneys for Defendant
Twitter, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on April 27, 2018 to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5.4(d). Plaintiff, who is *pro se*, will be served via overnight delivery at the following address:

Tiffany Dehen
1804 Garnet Avenue #239
San Diego, CA 92109


*s/ Julie E. Schwartz*
Julie E. Schwartz