1   Julie E. Schwartz, Bar No. 260624
    JSchwartz@perkinscoie.com
2   PERKINS COIE LLP
    3150 Porter Drive
3   Palo Alto, California  94304-1212
    Telephone:  650.838.4300
4   Facsimile:  650.838.4350

5   Attorneys for Defendant
    Twitter, Inc.
6

7

8                 UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11  TIFFANY DEHEN,                      Case No.  17-cv-00198-LAB-WVG

12              Plaintiff,              **REPLY IN SUPPORT OF
                                        TWITTER, INC.'S MOTION
13        v.                            TO DISMISS**

14  JOHN DOE, TWITTER, INC.,            Hon. Larry Alan Burns
    UNIVERSITY OF SAN DIEGO, and
15  PERKINS COIE LLP,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Reply ISO Motion to Dismiss SAC              No. 17-cv-00198-LAB-WVG

1

## I.    INTRODUCTION

2    Plaintiff's Notice of Opposition and Opposition to Twitter's Motion to

3    Dismiss both confirm that her Second Amended Complaint ("SAC" or

4    "Complaint") should be dismissed without leave to amend.

5        Plaintiff's arguments make clear that her Complaint arises solely from

6    Twitter's request for Plaintiff's identification as part of its investigation into

7    Plaintiff's report that John Doe was impersonating her using the @tiffanydehen

8    account (the "Account").  Opposition ("Opp."), Dkt. 60-1, at 3-5.  Plaintiff believes

9    that this request for identification, and Twitter's "delay" of a few days in removing

10   the Account while Twitter conducted its investigation, made the damage caused by

11   John Doe worse.  *Id.* at 5.  Without any factual support whatsoever, Plaintiff

12   attempts to connect this delay to a conspiracy against her by Twitter and its counsel,

13   Perkins Coie LLP, apparently of a political nature.  *Id.* at 11-14.

14       Twitter's investigation into and decisions regarding the removal of the

15   Account are quintessential publisher conduct, which is immunized from liability by

16   the Communications Decency Act ("CDA"), 47 U.S.C. § 230.  Plaintiff's claims

17   regarding the constitutionality of the CDA are meritless and, in any event, Plaintiff

18   lacks standing to challenge the statute's constitutionality.  Regardless of CDA

19   immunity, Plaintiff's Opposition makes clear that she cannot plead the essential

20   elements of *any* of her claims.

21       Plaintiff is wrong that she should be given leave to amend because the statute

22   of limitations on her claims has not run.  Plaintiff has shown that amendment would

23   be futile—she failed to comply with the Court's requirement that she address the

24   deficiencies Twitter identified in her complaint, allege specific facts to support her

25   claims, and remove her conclusory allegations.  *See* Order Granting Leave to

26   Amend ("Order"), Dkt. 54.  In fact, she added fanciful allegations and theories in

27   her Opposition.  If allowed to proceed, Plaintiff would likely do so again.

28

Reply ISO Motion to Dismiss SAC          -1-          No. 17-cv-00198-LAB-WVG

1    Accordingly, Twitter's Motion should be granted, and Plaintiff's Complaint

2    should be dismissed with prejudice and without leave to amend.

3                              **II.    ARGUMENT**

4    **A.    Plaintiff's Complaint Should Be Dismissed with Prejudice**

5           **1.    The CDA Bars Plaintiff's Account-Related Claims, Which Target
               Twitter's Conduct as a Publisher of Online Content**
6

7           In her Opposition, Plaintiff disputes only one of the three requirements for

8    CDA immunity—that her claims treat Twitter as the "publisher" or "speaker" of the

9    Account.  Notice of Opp. ("Notice"), Dkt. 60, at 2.  Plaintiff's Opposition confirms,

10   however, that she targets publisher conduct—Twitter's review and removal

11   decisions regarding user content.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th

12   Cir. 2009) ("[P]ublication involves reviewing, editing, and deciding whether to

13   publish or to withdraw from publication third-party content.").  Plaintiff does not

14   allege in the SAC, or even raise in her Opposition, any conduct by Twitter outside

15   of that role, instead focusing on Twitter's purported delay in removing the

16   Account.[1]

17          Plaintiff attempts to plead around CDA immunity by arguing that her claims

18   for rescission of contract, declaratory relief, negligent infliction of emotional

19   distress, and violations of RICO (the "Account-Related Claims") relate to Twitter's

20   purported fraudulent misrepresentations, breach of the Terms of Service ("Terms"),

21   furtherance of a racketeering scheme, and causing emotional distress.  Notice at 2.

22   _____

23   [1] Nowhere did Twitter promise to undertake certain procedures in investigating and
     removing impersonation accounts or to complete its review in a certain amount of
     time.  *Cf. Barnes*, 570 F.3d at 1099 (holding that the CDA was inapplicable to a

24   promissory estoppel claim where Yahoo!'s Director of Communications personally
     promised the plaintiff to remove certain content immediately but failed to do

25   so).  To the contrary, Twitter's Terms of Service and policies enshrine Twitter's
     editorial discretion and disclaim any liability for user content.  *See, e.g.*, Declaration

26   of Julie E. Schwartz in Support of Twitter, Inc.'s Motion to Dismiss ("Schwartz
     Decl."), Dkt. 58-2, Ex. A § 4 ("We may . . . remove or refuse to distribute any

27   Content on the Services . . . without liability to you.") (emphasis added); *id.* § 5
     (disclaiming liability for third party content and cautioning users that using the

28   service is "at your own risk").

1  This argument fails.  Indeed, "what matters is not the name of the cause of action—
2  [but] whether the cause of action inherently requires the court to treat the defendant
3  as the 'publisher or speaker' of the content provided." *Barnes*, 570 F.3d at 1101-
4  02.  All of Plaintiff's Account-Related Claims treat Twitter as a publisher, and that
5  should be the end of the analysis.

6       Plaintiff also cannot circumvent CDA immunity by arguing that the CDA
7  violates the First Amendment.  *See* Opp. at 8-11.  As set out in Twitter's Motion,
8  the CDA is content- and viewpoint-neutral and therefore consistent with the First
9  Amendment.[2]  *See* Mot. at 15.  No court has held otherwise.  In any case, Plaintiff
10  lacks standing to challenge the CDA's constitutionality because she does not allege
11  that Twitter based its decisions about the Account on its content or viewpoint.
12  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

13       And even if Plaintiff *had* alleged content or viewpoint discrimination, the
14  First Amendment applies only to state action and thus has no bearing on *a private*
15  *technology company's* decision whether or not to remove content from its service.
16  *See Cent. Hardware Co. v. NLRB*, 407 U.S. 539, 547 (1972); *see also Howard v.*
17  *AOL*, 208 F.3d 741, 754 (9th Cir. 2000) (AOL is not a state actor).  Twitter Chief
18  Executive Officer Jack Dorsey's political views are irrelevant to the analysis, and
19  Facebook Chief Executive Officer Mark Zuckerberg's April 2018 testimony before
20  Congress is less relevant still.  *See* Opp. at 7, 10-11.

21       Because the CDA bars Plaintiff's claims against Twitter, the Court should
22  dismiss the Complaint with prejudice.

23       **2.**    **Plaintiff Has Not Sufficiently Pled Any Claim Against Twitter**
24       Plaintiff's Opposition fails to rebut Twitter's arguments regarding the
25  pleading deficiencies of her claims for rescission for fraud, negligent infliction of

26
27
28

---

[2] Plaintiff also argues that CDA immunity does not apply to Twitter because
Twitter is "no longer a neutral public forum able to claim protection."  Opp. at 11.
Plaintiff alleges no facts in support of this argument, and in any event, this is not a
requirement for CDA immunity.  *Barnes*, 570 F.3d at 1100-01.

1   emotional distress, civil conspiracy, extortion, and declaratory relief.  To the
2   contrary, it confirms that her allegations do not and cannot support any plausible
3   claim for relief.

4           **a.     Plaintiff Has Not Pled a Rescission for Fraud Claim**

5          Plaintiff's rescission for fraud claim rests on a flawed argument that Twitter
6   breached an obligation to her under its Terms.  Opp. at 3-5.  But Plaintiff has not
7   identified any obligation that Twitter supposedly breached, and therefore has not
8   alleged (and cannot allege) a claim for rescission for fraud.  *See Alder v. Drudis*, 30
9   Cal. 2d 372, 381-82 (1947) (rescission requires alleging a breach of contract).

10        Further, Plaintiff does not address any of Twitter's authority holding that
11   where an online service's contract "place[s] restrictions on users' behavior" but
12   does not "create affirmative obligations," the contract cannot form the basis for a
13   breach of contract claim.  *See Caraccioli v. Facebook, Inc*., 167 F. Supp. 3d 1056,
14   1064 (N.D. Cal. 2016) (dismissing a breach of contract claim against Facebook
15   because its terms of service did not place affirmative obligations on Facebook)
16   (citation omitted); *Joude v. WordPress Found*., No. C 14-01656 LB, 2014 WL
17   3107441, at *5 (N.D. Cal. July 3, 2014) ("A plaintiff cannot predicate a breach of
18   contract claim on a defendant's terms of service where those terms did not commit
19   the defendant to performing any particular action.") (citation omitted).

20        So too here, Twitter's Terms do not create any binding obligations.  Twitter
21   did not promise to remove content—it only reserved the right to do so.  *See*
22   Schwartz Decl., Ex. A §§ 4-5.  And in its impersonation policy and associated help
23   center articles, Twitter said only that it "may" suspend violative accounts, not that it
24   would definitely do so.  *Id.*, Exs. F, G.  Lastly, nowhere did Twitter promise to
25   investigate impersonation reports in any particular manner or in a set amount of
26   time.  *Id*., Ex. G; *see also* Opp. at 12; SAC ¶ 179.

27        Plaintiff also has not alleged the facts required to support fraud as a basis for
28   rescission—that Twitter made a "false statement" or "[a] promise . . . without any

intention of performing it." Cal. Civ. Code § 1572.4; *Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1145 (S.D. Cal. 2008). Here, Plaintiff's allegations that Twitter never intended to investigate Plaintiff's impersonation report, or that it intentionally made a false statement by promising to do so, are implausible given that Twitter did, in fact, investigate the report and act on its findings. *See* SAC ¶¶ 119-128.[3]

Specifically, Plaintiff alleges that Twitter sent her emails in response to her impersonation report (the first of which was a mere six minutes after her report), *id.* ¶¶ 119, 124, requested her identification, *id.* ¶ 119, stated that it reviewed the Account, *id.* ¶ 124, said that it provided the Account holder with instructions about how to comply with Twitter's policies, *id.* ¶ 124, and, ultimately, disabled and removed the Account, *id.* ¶¶ 127-28. Plaintiff's apparent misunderstanding of the nature of Twitter's investigation cannot support a claim for fraud. In fact, Plaintiff's allegations demonstrate that Twitter's conduct was timely and effective.

Plaintiff argues that Twitter's failure to remove the Account more quickly may have cost her employment opportunities, including with President Trump, and contends that "[a] day is an eternity when it comes to social media," Opp. at 5, suggesting that Twitter should have removed the Account sooner, *see id.* at 2. However, Twitter did not owe Plaintiff a duty to remove content at all, let alone within a certain period of time. *See* Mot. at 17. Plaintiff's characterization of events also ignores that Plaintiff did not submit her identification until two days after Twitter requested it. *See* SAC ¶¶ 48-49. Regardless, Plaintiff's lost opportunities are relevant to damages, not liability, which Plaintiff has failed to establish.

---

[3] Moreover, her arguments that Twitter has not complied with its obligations to produce her information are meritless. Opp. at 6. Plaintiff has served no discovery requests, nor could she, given that the parties have not had their Rule 26(f) conference.

1
2
### b.   Plaintiff Has Not Pled a Negligent Infliction of Emotional Distress Claim

3   Plaintiff offers no response to Twitter's arguments regarding her negligent

4   infliction of emotional distress claim, other than to state her position that asking for

5   identification in response to an impersonation report contradicts Twitter's

6   policies.  *See* Opp. at 3-5.  As detailed above, however, Twitter does not owe

7   Plaintiff the duty she claims, and her cause of action therefore fails as a matter of

8   law.  *See Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1126 (E.D. Cal. 2014)

9   (dismissing negligent infliction of emotional distress claim where "the complaint

10   allege[d] no facts to support defendant's' actionable duty owed to plaintiffs and in

11   turn grounds to support a negligence recovery"); *see also Young v. Facebook, Inc.*,

12   790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) ("Young does not identify any

13   contractual basis for these alleged duties, and she cites no legal authority for any

14   non-contractual duty that would give rise to a tort claim.").

15   ### c.   Plaintiff Has Not Pled a "RICO" Claim

16   Liability under 18 U.S.C. § 1962(c) requires the existence of "two distinct

17   entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person'

18   referred to by a different name." *Living Designs, Inc. v. E.I. Dupont de Nemours &*

19   *Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks omitted).  Plaintiff

20   argues, without any citation or explanation, that she has "alleged the existence of an

21   enterprise in Twitter's racketeering scheme."  Notice at 3.  She has not.  Plaintiff's

22   SAC casts Twitter as both a RICO "person," SAC ¶ 284, and as a RICO

23   "enterprise," *id.* ¶ 285.  "If [Twitter] is the enterprise, it cannot also be the RICO

24   defendant." *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984).  In any event,

25   all of these allegations are wholly implausible.  Plaintiff's "RICO" claim should be

26   dismissed.

27
28

### d.    Plaintiff Has Not Pled Extortion

Plaintiff does not dispute in her Notice or Opposition, and thus concedes, that there is no civil right of action under the federal extortion statutes that she cites in the SAC.  *See* SAC ¶¶ 322-27 (citing 18 U.S.C. §§ 875, 1951); *Archer v. City of Taft*, No. 1:12-CV-00261-AWI, 2012 WL 1458136, at *6 & n.2 (E.D. Cal. Apr. 26, 2012) (no private right of action under 18 U.S.C. § 875); *Middleton v. Pan*, No. CV 16-5224-SVW (AGR), 2017 WL 7053936, at *6 (C.D. Cal. Dec. 18, 2017) (no private right of action under the Hobbs Act, 18 U.S.C. § 1951), *report and recommendation adopted*, 2018 WL 582324 (C.D. Cal. Jan. 25, 2018).

Plaintiff also confirms that her extortion claims are implausible, describing the car accident she attributed to Twitter in the SAC as allegedly caused by a "Rachel Wasserman" who "t-boned Plaintiff's car" when "looking down at her phone."  Opp. at 8.  Plaintiff does not explain how Twitter could possibly have been responsible for an unrelated individual's alleged distracted driving accident.  She similarly does not explain how Twitter is related to the woman in a wheelchair that she claims harassed her by telephone.  *See* SAC ¶¶ 142, 154.  Plaintiff's extortion claims are entirely implausible, and should be dismissed with prejudice.

### e.    Plaintiff Has Not Pled a Declaratory Relief Claim

Because Plaintiff's other claims fail, her declaratory relief claim fails as well.  *See Ballard v. Chase Bank USA, NA*, No. 10-cv-790 L POR, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'" (citation omitted)).  Plaintiff does not dispute this clearly established principle.

### 3.    Plaintiff Should Be Denied Leave to Amend

Plaintiff has not rebutted Twitter's showing that her Complaint should be dismissed with prejudice and without leave to amend.  A court need not grant leave to amend where it would be futile.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  That the statute of limitations has not yet run on

Plaintiff's claims (even if true) is irrelevant to the standard for deciding whether to permit additional amendments. *See* Notice at 3.

In amending her Complaint for the second time, Plaintiff failed to comply with the requirements issued by the Court when it granted her leave to amend. *See* Order at 2. Rather than "deleting meritless claims" and "irrelevant material" and adding "specific factual allegations to support claims she believes are meritorious," *id.*, Plaintiff's SAC reiterates the same theory of liability that Twitter already showed to be barred by the CDA and includes additional claims for racketeering and extortion for which she has no factual support. This failure to cure any of the defects in her Complaint after three tries is evidence enough that Plaintiff cannot allege any actionable conduct against Twitter and should be denied leave to amend.

That Plaintiff "reserves the right" to bring claims—civil conspiracy, First Amendment violations, and libel—against Twitter does not change the analysis. These "reserved" claims (which the Court directed Plaintiff to remove) are subject to CDA immunity because they would treat Twitter, an interactive computer service, as a publisher, and attempt to hold Twitter liable for John Doe's content. There also cannot be any set of facts to support these claims. As shown by Plaintiff's own allegations, Twitter did not breach any obligations to her, acted consistently with its policies, and resolved Plaintiff's complaint expeditiously.

No amendment could cure the defects of Plaintiff's claims against Twitter, and, therefore, the Court should dismiss the Complaint as to Twitter with prejudice.

### III.   CONCLUSION

For the reasons set forth in Twitter's moving papers and the reasons above, Twitter respectfully requests that the Court dismiss this case with prejudice.

1

DATED:  May 18, 2018                    **PERKINS COIE LLP**

2

3                                        By: *s/ Julie E. Schwartz*
                                            Julie E. Schwartz, Bar No. 260624
                                            JSchwartz@perkinscoie.com
4

5                                        Attorneys for Defendant
                                         Twitter, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply ISO Motion to Dismiss SAC        -9-        No. 17-cv-00198-LAB-WVG

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on May 18, 2018 to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5.4(d).  Plaintiff, who is *pro se*, will be served via overnight delivery at the following address:

Tiffany Dehen
1804 Garnet Avenue #239
San Diego, CA 92109

*s/ Julie E. Schwartz*
Julie E. Schwartz