TIFFANY DEHEN J.D.
1804 GARNET AVENUE #239
SAN DIEGO, CA 92109
858-262-0052
tiffany.dehen@gmail.com

Pro Se Plaintiff

NUNC PRO TUNC
8/20/2018

**FILED**

Aug 27 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            s/ Josepht            DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIFFANY DEHEN**, an individual on behalf of herself,<br><br>Plaintiff,<br><br>v.<br><br>**JOHN DOES 1-100, TWITTER, INC., UNIVERSITY OF SAN DIEGO, AND PERKINS COIE, LLP.,**<br><br>Defendants. | Case No.: 17-cv-00198-LAB-WVG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE PLAINTIFF'S THIRD AMENDED COMPLAINT** |

PLEASE TAKE NOTICE that Pro Se Plaintiff, Tiffany L. Dehen, moves this Court for leave to file Plaintiff's Third Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2) concurrently with her August 20, 2018 briefing.

*Please see* attached memorandum of points and authorities in support of Plaintiff's motion to file her third amended complaint, as well as an attached proposed redlined draft version of Plaintiff's third amended

1

MOTION TO FILE
THIRD AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1  complaint, which Plaintiff respectfully requests leave of court to take

2  additional time to edit and file due to circumstances which Plaintiff has

3  recently become apprised of, and continues to become apprised of, which are

4  material facts to her case.

5

6  **Dated: August 20, 2018**

7                                              Respectfully submitted,

8

9                                              Tiffany L. Dehen

10                                             1804 Garnet Avenue, #239

11                                             Pacific Beach, CA 92109

12                                             Tel. 858-262-0052

13                                             Tiffany.Dehen@Gmail.com

14

15                                             Pro Se Plaintiff.

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO FILE
THIRD AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on August 20, 2018 by express delivery with signature confirmation, postage pre-paid, to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5.4(d).

**Dated August 20, 2018**

Tiffany L. Dehen

Pro Se Plaintiff.

MOTION TO FILE
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

# TABLE OF AUTHORITIES

**Federal Statutes**

Fed. R. Civ. P. 15(a)(2)
Fed. R. Civ. P. 21
Fed. R. Civ. P. 23
15 U.S.C. § 1
15 U.S.C. § 2
17 U.S.C. § 106
17 U.S.C. § 201(a)
17 U.S.C. § 410(c)
17 U.S.C. § 410(d)
17 U.S.C. § 411(a)
17 U.S.C. § 501
17 U.S.C. § 502
17 U.S.C. § 503
17 U.S.C. § 504
17 U.S.C. § 505
18 U.S.C. § 241
18 U.S.C. § 371
18 U.S.C. § 875(d)
18 U.S.C. § 1343
18 U.S.C. § 1403
18 U.S.C. § 1505
18 U.S.C. § 1512
18 U.S.C. § 1513
18 U.S.C. § 1951(b)
18 U.S.C. § 1961
18 U.S.C. § 1962
18 U.S.C. § 1964
18 U.S.C. § 2381
28 U.S.C. § 1331
28 U.S.C. § 1332
28 U.S.C. § 1338(a)
28 U.S.C. § 1367
28 U.S.C. § 1391
28 U.S.C. § 1400(a)
47 U.S.C. § 230

1

# RULES

Fed. R. Civ. P. 4(d)(3)
Fed. R. Civ. P. 7(a)
Fed. R. Civ. P. 8
Fed. R. Civ. P. 11
Fed. R. Civ. P. 12(b)(6)

## California Statutes

California Code of Civil Procedure § 474
California Penal Code § 528.5
California Civil Code § 44
California Civil Code § 51
California Civil Code § 1473
California Civil Code § 1549
California Civil Code § 1550
California Civil Code § 1572
California Civil Code § 1573
California Civil Code § 1574
California Civil Code § 1689
California Civil Code § 1692
California Civil Code § 1700
California Civil Code § 1708
California Civil Code § 1709
California Civil Code § 1710
California Civil Code § 1711
California Civil Code § 1714
California Civil Code § 3294
California Civil Code § 3333
California Business & Professional Code § 17200

## Federal Case Law

*Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988)

*Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x 680 (9th Cir. 2014

2

*Alexandre v. Phibbs,*
116 F.3d 482 (9th Cir. 1997)

*American Freedom Defense Initiative et a., v. Lynch,* No. 16-cv-1437, 2016
    WL 6635634 (D.D.C. Nov. 9, 2016)
*Anthony v. Yahoo!,* 421 F.Supp.2d 1257 (N.D.Cal. 2016)
*Apple Inc. v. Motorola Mobility, Inc.,* No. 12CV355 DMC (BLM), 2012
    WL 12846983 (S.D.Cal. July 17, 2012)

*Archer v. City of Taft,*
No. 1:12-CV-00261-AWI-JLT, 2012 WL 1458136 (E.D. Cal.
Apr. 26, 2012)

*Art of Living Found. V. Does 1-10,* No. 10-5022, 2011 WL 5444622 (N.D.
Ca. Nov. 9, 2011)

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

*Bailey v. BAC Home Loan Servicing, LP,*
No. 11-00648 LEK-BMK, 2012 WL 589414 (D. Haw. Feb. 21,
2012)

*Baldino's Lock & Key Service, Inc. v. Google LLC,* 2018 WL 400755
    (D.D.C., 2018).
*Barnes v. Yahoo!,* 570 F.3d 1096 (9th Cir. 2009)
*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)

*Black v. Sciver,*
No. 1:16-CV-00841-DAD-JLT, 2016 WL 4594981 (E.D. Cal.
Sept. 2, 2016)

*Brantley v. NBC Universal Inc.,*
675 F.3d 1192 (9th Cir. 2012)

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047
(9th Cir. 2011)

3

*Cedric Kushner Promotions, Ltd. v. King,*
533 U.S. 158 (2001)

*Cent. Hardware Co. v. NLRB,*
407 U.S. 539 (1972)

*Clements v. Chapman,*
189 F. App'x 688 (10th Cir. 2006)

*Cohen v. Facebook, Inc.,* 252 F. Supp. 3d 140, 146 (E.D.N.Y. 2017)

*Cox v. Ashcroft,*
603 F. Supp. 2d 1261 (E.D. Cal. 2009)

*Cty. of Tuolumne v. Sonora Cmty. Hosp.,*
236 F.3d 1148 (9th Cir. 2001)

*Dalkilic v. Titan Corp.,* 516 F.Supp.2d 1177 (S.D. Cal. 2007)

*Delacruz v. State Bar of Cal.,*
No. 5:14-CV-05336-EJD, 2015 WL 5697365 (N.D. Cal. Sept. 29, 2015)

*Doe v. Internet Brands, Inc.,* 824 F.3d 846, 852 (9th Cir. 2016)
*Erie v. Railroad Co. v. Tompkins,* 304 U.S. 64 (1938)
*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521
    F.3d 1157 (9th Cir. 2008)

*Fed. Trade Comm'n v. Enforma Nat. Prod., Inc.,*
362 F.3d 1204 (9th Cir. 2004)

*Fields v. Twitter, Inc.,* 217 F. Supp. 3d 1116 (N.D. Cal. 2016)

*Gardner v. Martino,*
563 F.3d 981 (9th Cir. 2009)

*Gonzalez v. Google, Inc.,* 282 F. Supp. 3d 1150 (N.D. Cal. 2017)
*Green v. YouTube, Inc. et al.,* No. 18-CV-203-PB (D.N.H., 2018)

4

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1 | *Harrell v. 20th Century Ins. Co.*,
934 F.2d 203 (9th Cir. 1991)
2

3 | *Harris-Scott v. Obama*,
No. CV 09-2641 ODW (SSX), 2009 WL 10675180 (C.D. Cal.
4 | July 17, 2009)

5 | *Hearns v. San Bernardino Police Dep't*,
6 | 530 F.3d 1124 (9th Cir. 2008)

7 | *Hunter v. Dutch Gold Res., Inc.*,
8 | No. 1:11-CV-01450-CL, 2012 WL 1279474 (D. Or. Apr. 13, 2012)

9 | *In re Anonymous Online Speakers*, 661 F. 3d 1168, 1173 (9th Cir. 2011)
10

11

12 | *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
701 F.2d 1276 (9th Cir. 1983)
13

14

15 | *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).

16 | *Kraft v. Old Castle Precast Inc.*,
No. LA CV 15-00701-VBF, 2015 WL 4693220 (C.D. Cal. Aug. 5,
17 | 2015)

18 | *Leibman v. Prupes*,
19 | No. 2:14-CV-09003-CAS, 2015 WL 898454 (C.D. Cal. Mar. 2,
20 | 2015)

21 | *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005)
22

23

24 | *Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013)
*Makaeff v. Trump University, LLC*, 309 F.R.D. 631 (S.D. Cal. 2015)
25

26 | *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)

27

28

5

*McKinney v. Martinez,*
No. 3:16-CV-000448-MMD-VPC, 2016 WL 8504499 (D. Nev.
Nov. 21, 2016)

*Middleton v. Pan,*
No. CV 16-5224-SVW (AGR), 2017 WL 7053936 (C.D. Cal.
Dec. 18, 2017)

*Music Group Macao Commercial Offshore Ltd., et al., v. John Does I-IX,*
2015 WL 75073 (N.D. Cal. January 6, 2015)

*Najarro v. Wollman,*
No. C 12-1925 PJH, 2012 WL 1945502 (N.D. Cal. May 30, 2012)

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC,*
156 F. Supp. 3d 1094 (C.D. Cal. 2015)

*Ocasio v. United States,* 136 S.Ct. 1423, 1427 (U.S., 2016)
*O'Kroley v. Fastcase, Inc.,* 831 F.3d 352, 355 (6th Cir. 2016)

*Pena v. Gardner,*
976 F.2d 469 (9th Cir. 1992)

*Perkins v. LinkedIn,* 53 F. Supp. 3d 1222 (N.D. Cal. 2014)

*Ponvanit v. Superior Court of California,*
No. CV 17-4054-FMO (JEM), 2018 WL 1135380 (C.D. Cal.
Jan. 31, 2018)

*Prager Univ. v. Google LLC,* No. 17-CV-06064-LHK, 2018 WL 1471939,
(N.D. Cal. Mar. 26, 2018)

*Red Nation P'ship v. Kiga,*
51 F. App'x 630 (9th Cir. 2002)

6

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)

*Roberts v. AT&T Mobility LLC*,
877 F.3d 833 (9th Cir. 2017)

*Robinson v. Joya*,
No. 1:08-1339 JLS (BLM), 2010 WL 890437 (E.D. Cal. Mar. 8,
2010)

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987)

*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393 (2003)

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998)

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)

*Shetty v. Am.'s Wholesale Lender*, No. 16-CV-05846 NC, 2017 WL
3387467 (N.D. Cal. Aug. 7, 2017)

*Smythe v. Does 1-10*, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016)

*Symantec Corp. v. Global Impact, Inc.*,
559 F.3d 922 (9th Cir. 2009)

*Thomas v. Bryant*,
No. C09-5189-RBL, 2009 WL 2473662 (W.D. Wash. Aug. 7,
2009)

*Twit, LLC, et al., v. Twitter, Inc.*, 2018 WL 2470942 (N.D. Cal. June 1, 2018)

*Twitter, Inc., v. Eric Holder, et al.*, 183 F. Supp. 3d 1007 (N.D. Cal. 2016)

*Twitter, Inc., v. Sessions, et al.*, 263 F. Supp. 3d 803 (N.D. Cal. 2017)

7

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

*Twitter, Inc. v. Sessions, et al.*, 2017 WL 5751299 (N.D. Cal. Nov. 28, 2017)

*Twitter, Inc. v. Loretta E. Lynch, et al.*, 139 F. Supp. 3d 1075 (N.D. Cal. 2015)

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)

*United States v. Brank*,
No. 15-50467, ___ F. App'x ___, 2018 WL 732704 (9th Cir.
Feb. 6, 2018)

*United States v. Garcia-Santana*,
774 F.3d 528 (9th Cir. 2014)

*United States v. Korab*,
893 F.2d 212 (9th Cir. 1989)

*United States v. Loveland*,
825 F.3d 555 (9th Cir. 2016)

*United States v. Lynch*,
437 F.3d 902 (9th Cir. 2006)

*United States v. Nardello*, 393 U.S. 286, 296 (1969)

*United States v. Orlando*,
819 F.3d 1016 (7th Cir. 2016)

*United States v. Teofl Brank*, 2018 WL 732704 (9th Cir. Feb. 6, 2018)

*United States v. Tormos-Vega*,
959 F.2d 1103 (1st Cir. 1992)

*Vachon v. Reverse Mortg. Sols., Inc.*,
No. EDCV 16-02419-DMG (KES), 2017 WL 6628103 (C.D. Cal.
Aug. 11, 2017)

*Volis v. Hous. Auth. of the City of Los Angeles (HACLA)*,

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

No. CV 14-08747 DDP (PLAx), 2016 WL 5745079 (C.D. Cal. Sept. 30, 2016)

*Williams v. Anderson,*
No. 1:18-CV-00183-AWI-SKO, 2018 WL 1806462 (E.D. Cal. Apr. 17, 2018

*Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402 (8th Cir. 1999)

*Young v. U.S. ex rel. Vuitton et Fils S.A.,*
481 U.S. 787 (1987)

*Zucco Partners, LLC v. Digimarc Corp.,*
552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009)


**California Case Law**

*Baldwin v. Zoradi,* 123 Cal. App. 4th 199 (2006)
*Davidson v. City of Westminster,* 32 Cal.3d 197 (Cal., 1982)
*Facebook, Inc., et al., v. Superior Court of the City and County of San Francisco, et al.,* 233 Cal. Rptr. 3d 77 (S. Ct., May 24, 2018)

*Trerice v. Blue Cross of Cal,* 209 Cal.App.3d 878 (Cal., 1989)


**Other Authorities**

Aly, Mohammed, *Aly: Create an OC Housing Trust Fund to End Homelessness,* Voice of OC, (June 12, 2018), https://voiceofoc.org/2018/06/aly-create-an-oc-housing-trust-fund-to-end-homelessness/ (last visited June 28, 2018).

9

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Blake, Andrew, *ACLU to represent American detained overseas enemy combatant,* The Washington Times, (Jan. 6, 2018), https://www.washingtontimes.com/news/2018/jan/6/aclu-challenge-detention-american-ISIS-overseas/ (last visited June 27, 2018).

Santa Ana River Homeless Advocates, https://sites.google.com/view/sarha (last visited June 27, 2018).

Bokhari, Allum, *Project Veritas Video Shows Former Twitter Employees Discussing 'Shadow Banning' Users,* Breitbart, (Jan. 11, 2018), http://www.breitbart.com/tech/2018/01/11/project-veritas-video-shows-former-twitter-employees-discussing-shadow-banning-users/ (last visited June 27, 2018).

Bokhari, Allum, *Twitter Bans Conservative Commentator Gavin McInnes,* Breitbart, (August 10, 2018), https://www.breitbart.com/tech/2018/08/10/twitter-bans-conservative-commentator-gavin-mcinnes/ (last visited August 19, 2018).

Carlson, Tucker, *Tucker Carlson Tonight – August 17, 2018 – Fox News – 08/17/18 – August 17th, 2018, Fox News,* (Published August 17, 2018 from *Real News* YouTube channel since *Fox News* did not publish full Tucker clip), https://www.youtube.com/watch?v=FGcMh4Ki4YE (last visited August 19, 2018).

Charles, Sydney, *The Fight To Empower The Neglected,* Insight Magazine, (May 16, 2018), http://www.insightmag.org/2018/05/16/the-fight-to-empower-the-neglected/ (last visited June 28, 2018).

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1

2   Collins, Terry, *Anti-Defamation League, tech firms team to fight online hate*,

3   *CNET*,     (October     10,     2017),     https://www.cnet.com/news/adl-anti-

4   defamation-league-facebook-twitter-google-hate-speech/     (last     visited

5   August 19, 2018).

6

7   Comey, James, *The FBI and the ADL: Working Together to Fight Hate*,

8   *Federal     Bureau     of     Investigation*,     (May     8,     2017),

9   https://www.fbi.gov/news/speeches/the-fbi-and-the-adl-working-together-

10  to-fight-hate (last visited August 19, 2018).

11

12  CSUF News Service, *CSUF Hosts Symposium Seeking Solutions to*

13  *Homelessness*,     CSUF     News     Service,     (April     23,     2018),

14  http://news.fullerton.edu/2018sp/Advance-homelessness-

15  symposium%20.aspx (last visited June 28, 2018).

16

17  Do, Anh & Oreskes, Benjamin, *Hundreds of homeless face eviction or arrest*

18  *as O.C. clears encampment amid shelter bed shortage*, Los Angeles Times,

19  (Jan. 22, 2018, 4:40 PM PST), http://www.latimes.com/local/lanow/la-me-

20  ln-orange-county-homeless-sweep-20180122-story.html (last visited June

21  28, 2018).

22

23  Durden, Tyler, *In Stunning Admission, Jack Dorsey Acknowledges Twitter's*

24  *"Left-Leaning"     Bias*,     *Zero     Hedge*,     (August     19,     2018),

25  https://www.zerohedge.com/news/2018-08-19/shocking-admission-jack-

26  dorsey-admits-twitters-left-leaning-bias (last visited August 19, 2018).

27

28

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Fox News, *San Diego begins 'sanitary street washing' of downtown after pooping homeless people cause deadly hepatitis outbreak*, Fox News, (Sep. 12, 2017), http://www.foxnews.com/health/2017/09/12/san-diego-begins-sanitary-street-washing-to-combat-hepatitis-outbreak.html (last visited June 28, 2018).

Gaydos, Ryan, *Twitter apologizes after conservative commentator Candace Owens was briefly locked out of her account, Fox News*, (August 6, 2018), http://www.foxnews.com/entertainment/2018/08/06/twitter-apologizes-after-conservative-commentator-candace-owens-was-briefly-locked-out-her-account.html (last visited August 19, 2018).

Gerda, Nick, *Homeless Advocate Shuts Down OC Supervisors 'Meeting Over Children in Riverbed*, Voice of OC, (April 11, 2017), https://voiceofoc.org/2017/04/homeless-advocate-shuts-down-oc-supervisors-meeting-over-children-in-riverbed/ (last visited June 28, 2018).

Goulding, Susan Christian & Walker, Theresa, *Tustin counts four top 'influencers,' including homeless advocate Mohammed Aly*, The Orange County Register, (Jan. 2, 2018, 6:38 PM PST), https://www.ocregister.com/2018/01/02/tustin-counts-four-top-influencers-including-homeless-advocate-mohammed-aly/ (last visited June 29, 2018).

Green, Carla, *California city confiscates toilets from homeless residents – forcing them to use buckets*, The Guardian, (Sep. 8, 2017, 6:00 EDT), https://www.theguardian.com/us-news/2017/sep/08/anaheim-homeless-toilets-confiscated-public-health-crisis (last visited June 27, 2018).

12

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Green, Isaac, *Censorship of Conservative Voices and the Social Media Monopoly, Antischool,* (August 17, 2018), https://www.antischool.us/single-post/2018/08/17/Censorship-of-Conservative-Voices-and-the-Social-Media-Monopoly (last visited August 20, 2018).

Hasson, Peter, *Exclusive: Facebook, Amazon, Google and Twitter All Work With Left-Wing SPLC* (Southern Poverty Law Center), *The Daily Caller,* (June 6, 2018), http://dailycaller.com/2018/06/06/splc-partner-google-facebook-amazon/ (last visited August 19, 2018).

Hasson, Peter, *Report: FBI Has 'Ongoing' Relationship With Left-Wing SPLC, Which Once Put Ben Carson On An 'Extremist Watch List', The Daily Caller,* (July 28, 2018), http://dailycaller.com/2018/07/28/splc-fbi-partnership/ (last visited August 19, 2018).

Hoft, Jim, *TRUMP GOES OFF On Social Media 'Censorship' and 'Discrimination' Against Conservative Voices, The Gateway Pundit,* (August 18, 2018), https://www.thegatewaypundit.com/2018/08/trump-goes-off-on-social-media-censorship-and-discrimination-against-conservative-voices/ (last visited August 19, 2018).

Kew, Ben, *Milo Suspended Permanently By Twitter Minutes Before 'Gays For Trump' Party at RNC,* Breitbart, (July 19, 2018), https://www.breitbart.com/milo/2016/07/19/breaking-milo-suspended-twitter-20-minutes-party/ (last visited August 19, 2018).

13

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1  McCreary, Carol, *Hepatitis A and California's lack of public toilets*,

2  PHLUSH, (Sep. 22, 2017), https://www.phlush.org/2017/09/22/hepatitis-a-

3  and-californias-lack-of-public-toilets/ (last visited June 28, 2018).

4

5  Mulvihill, *Geoff & Taxin, Amy, As West Coast fights homelessness, kindness*

6  *is contentious*, Chicago Tribune, (Dec. 28, 2017 at 6:30 PM PST),

7  http://www.chicagotribune.com/sns-bc-us--homeless-crisis-saviors-or-

8  enablers-abridged-20171228-story,amp.html (last visited June 28, 2018).

9

10  Nash, Charlie, *Death Threats Made Towards Republican Senators Remain*

11  *On Twitter For Weeks Without Deletion*, Breitbart, (June 28, 2016),

12  https://www.breitbart.com/tech/2016/06/28/death-threats-made-to-

13  republican-senators-remain-for-weeks/ (last visited August 19, 2018).

14

15  Nash, Charlie, *Conservative Street Artist 'SABO' Banned From Twitter,*

16  *Breitbart,*              (April              13,              2018),

17  https://www.breitbart.com/tech/2018/04/13/conservative-street-artist-sabo-

18  banned-from-twitter/ (last visited August 19, 2018).

19

20  Nolan, Lucas, *Twitter Purges Accounts Across The Platform – Again,*

21  *Breitbart,*            (August            16,            2018),

22  https://www.breitbart.com/tech/2018/08/16/twitter-purges-accounts-across-

23  the-platform-again/ (last visited August 19, 2018).

24

25  O'Keefe, James, *Project Veritas, HIDDEN CAMERA: Twitter Engineers To*

26  *"Ban a Way of Talking" Through "Shadow Banning"*, Project Veritas,

27

28

14

(January 11, 2018), https://www.youtube.com/watch?v=64gTjdUrDFQ (last visited August 19, 2018).

Olson, Kyle, *Facebook Censors Diamond and Silk Again.  Blocks ad for upcoming movie.,  Diamond and Silk Inc.,* (August 18, 2018), https://www.diamondandsilkinc.com/tabletalknews/2018/8/18/facebook-censors-diamond-and-silk-again-blocks-ad-for-upcoming-movie (last visited August 19, 2018).

*Power Line, How the Left Is Outsourcing Censorship of the Internet, NewsWars.com,* (Sunday, August 19, 2018), https://www.newswars.com/how-the-left-is-outsourcing-censorship-of-the-internet/ (last visited August 20, 2018).

*RT, Alex Jones suspended from Twitter after tweet calling to end censorship, RT,* (August 15, 2018), https://www.rt.com/usa/435974-alex-jones-banned-twitter/ (last visited August 19, 2018).

*RT, Alex Jones suspended from Twitter after tweet calling to end censorship, NewsWars.com,* (August 15, 2018), https://www.newswars.com/alex-jones-suspended-from-twitter-after-tweet-calling-to-end-censorship/ (last visited August 20, 2018).

*RT, From 'menace' to assets: Soros now buying social media shares, NewsWars.com,* (August 16, 2018), https://www.newswars.com/from-menace-to-assets-soros-now-buying-social-media-shares/ (last visited August 20, 2018).

15

Santa Ana River Homeless Advocates, https://sites.google.com/view/sarha (last visited June 27, 2018).

Tarrant-Cornish, Taryn, *Donald Trump's Twitter account TAKEN DOWN by employee on their LAST DAY, Express* (November 3, 2017), https://www.express.co.uk/news/world/874903/Donald-Trump-Twitter-down-human-error-social-media-President-webiste (last visited August 19, 2018).

Walker, Theresa, *Orange County sees no need to increase measures to prevent hepatitis A outbreak amid homeless population*, Orange County Register, (Sep. 22, 2017 at 7:13 PM PST), https://www.ocregister.com/2017/09/22/orange-county-sees-no-need-to-increase-measures-to-prevent-hepatitis-a-outbreak-amid-homeless-population/ (last visited June 28, 2018).

Walker, Theresa, *Most Influential 2017: Mohammed Aly fights, loudly, for the homeless*, Orange County Register, (Dec. 28, 2017 at 5:45 AM PST), https://www.ocregister.com/2017/12/28/most-influential-2017-mohammed-aly-fights-loudly-for-the-homeless/ (last visited June 28, 2018).

Wang, Selina, *Twitter Ramps Up Fight Against Abuse and Malicious Bots*, Bloomberg, (June 26, 2018 12:00 PM PDT), https://www.bloomberg.com/news/articles/2018-06-26/twitter-ramps-up-fight-against-abuse-and-malicious-bots (last visited June 29, 2018).

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Watson, Steve, *Apple Says It Is 'Monitoring' The Infowars App; Threatens to Censor If It Becomes 'Harmful'*, Infowars.com, (August 9, 2018), https://www.newswars.com/apple-says-it-is-monitoring-the-infowars-app-threatens-to-censor-if-it-becomes-harmful/ (last visited August 20, 2018).

Wintrich, Lucian, *Conservative Comedian Owen Benjamin Banned From Twitter & YouTube: "my ability to make an income has been revoked."*, The Gateway Pundit, (April 5, 2018), https://www.thegatewaypundit.com/2018/04/conservative-comedian-owen-benjamin-banned-from-twitter-youtube-my-ability-to-make-an-income-has-been-revoked/ (last visited August 19, 2018).

Zagub, Mariam, *Hope for the homeless*, Coast Report Online, (Nov. 15, 2016), http://www.coastreportonline.com/campus_news/article_790f8168-ab81-11e6-87c2-33b1307bd3f6.html?mode=jqm (last visited June 28, 2018.

Zilber, Ariel, *Trump ally Roger Stone banned from Twitter FOR LIFE after attacking CNN anchors Don Lemon and Jake Tapper over the Russia probe*, DailyMail.com, (October 29, 2017), http://www.dailymail.co.uk/news/article-5028221/Trump-ally-Roger-Stone-banned-Twitter-LIFE.html (last visited August 19, 2018).

https://www.antischool.us/single-post/2018/08/17/Censorship-of-Conservative-Voices-and-the-Social-Media-Monopoly

**VIDEOS**

17

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Aly, Mohammed, *Arrest at #RiverbedRescue, 2/8/17,* (Published to YouTube Feb. 11, 2017), https://www.youtube.com/watch?v=AnW3fEKZN74&feature=youtu.be (last visited June 27, 2018).

Aly, Mohammed, *Speech to OC Board of Supervisors, 4/11/17,* (Published to YouTube April 13, 2017), https://www.youtube.com/watch?v=9iWmofRJclc&t=23s (last visited June 27, 2018).

OC Poverty, *Mohammed Aly Public Comment @ Board of Supervisors Meeting 8/8/17,* OC Poverty, (Published to YouTube Aug. 9, 2017), https://www.youtube.com/watch?v=yRfhTKFC4jM (last visited June 28, 2018).

Voice of OC video, *Reporter threatened with arrest while trying to film removal of activist from public meeting room,* (Published to YouTube April 14, 2017), https://www.youtube.com/watch?v=L3RBoM4gwg4 (last visited June 27, 2018).

Voice of OC video, *Public Comment – OCBOS – Jan. 23, 2018,* (Published to YouTube Feb. 13, 2018), https://www.youtube.com/watch?v=R9-ejOFWkRg (last visited June 28, 2018).

TABLE OF AUTHORITIES PLAINTIFF'S
THIRD AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1
TIFFANY DEHEN J.D.
1804 GARNET AVENUE #239
2
SAN DIEGO, CA 92109
858-262-0052
3
tiffany.dehen@gmail.com

4

5
Pro Se Plaintiff

6

7

8
### UNITED STATES DISTRICT COURT

9
### SOUTHERN DISTRICT OF CALIFORNIA

10

11
**TIFFANY DEHEN**, an individual
on behalf of herself,

12
              Plaintiff,

13

14
        v.

15
**JOHN DOES 1-100, TWITTER,
INC., UNIVERSITY OF SAN
DIEGO AND PERKINS COIE,
LLP.,**

16

17
              Defendants.

Case No.: 17-cv-00198-LAB-WVG

**PLAINTIFF'S SECOND AMENDED
COMPLAINT FOR:**

(1) VIOLATIONS OF THE U.S.
    COPYRIGHT ACT; 15 U.S.C.
    106, 501 et seq.;
(2) VIOLATIONS OF THE
    CALIFORNIA CIVIL CODE
    § 44 AND 45, et seq.;
(3) VIOLATION OF THE
    CALIFORNIA PENAL CODE
    § 528.5, et seq.;
(4) VIOLATION OF THE
    CALIFORNIA CIVIL CODE
    §§ 1572 or 1573, et seq.;
(5) DECLARATORY RELIEF
    UNDER CALIFORNIA CIVIL
    CODE § 1692, et seq.;
(6) INTENTIONAL
    INTERFERENCE WITH
    ACTUAL AND/OR
    PROSPECTIVE ECONOMIC
    RELATIONS;
(7) INTENTIONAL INFLICTION
    OF EMOTIONAL DISTRESS;
(8) NEGLIGENCT INFLICTION
    OF EMOTIONAL DISTRESS;
(9) CIVIL CONSPIRACY;
(10)      VIOLATIONS OF 18
    U.S.C. § 1962, et seq.;
(11)      VIOLATIONS OF
    CALIFORNIA CIVIL CODE §

18

19

20

21

22

23

24

25

26

27

28

1

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

**45;**
**(12)    CLAIMS OF EXTORTION AND CONSPIRACY TO COMMIT EXTORTION.**
**(13)    VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1.**

COMES NOW, the Plaintiff, TIFFANY DEHEN, and for cause of action against the Defendants, and each of them, seeking $100,000,000 in compensatory, punitive, and statutory damages, complains and alleges as follows:

**PARTIES**

1.      Plaintiff TIFFANY DEHEN, is and at all times herein mentioned, was an individual residing in the County of San Diego.  She brings this lawsuit on behalf of herself.

2.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendant TWITTER, INC. was and is a Corporation incorporated under the laws of the State of Delaware, with its principal place of business in San Francisco, California, doing business in San Diego County.  Twitter manages, operates, publishes, and censors Tweets written by users of its social media website.  Twitter has 313 million monthly active users, 1 billion unique visits monthly to sites with embedded Tweets, and 79% of its accounts are outside of the United States. *See* https://about.twitter.com/company.

2

3.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendant UNIVERSITY OF SAN DIEGO, hereinafter "USD," was and is a for-profit education institution located in San Diego County.  USD has 8,508 undergraduate, paralegal, graduate and law students, 36% of which are minority students and 9% of which are international students.  *See* https://www.sandiego.edu/about/facts.php.

4.     The true names and capacities, whether individual, corporate, associate or otherwise of Defendants, DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore, sues said defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the Defendants herein designated as a DOE is responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby as hereinafter alleged.

5.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendant PERKINS COIE, LLP., was and is an international for-profit law firm, with more than 1000 lawyers in 19 offices across the United States and Asia, including an office located in San Diego, California.  *See* https://www.perkinscoie.com/en/index.html.

6.     Plaintiff is informed and believes and thereon alleges that due to the nature of the claims against all defendants, each is jointly and severally liable to Plaintiff for the injuries sustained.

7.     Plaintiff reserves the right to bring additional claims against any and all named and unnamed defendants including, but not limited to, the Democratic National Committee, the Federal Bureau of Investigation, the Department of Justice, Homeland Security, the State Department, San Diego Police Department, the City of San Diego, and any individuals who

worked at or were affiliated with the aforementioned agencies during the relevant timeframe.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

9. Specifically, this Court has federal question jurisdiction in this matter in that Plaintiff seeks injunctive relief and damages against John Does 1-100 under the Copyright Act of 1976 (17 U.S.C. § 501-505, inclusive), under 18 U.S.C. § 1964, under 18 U.S.C. § 875, under 18 U.S.C. § 1951, and reserves the right to bring any and all related causes of action, both state and federal.

10. This Court has supplemental jurisdiction over all other claims that do not arise under a federal statute in that these supplemental claims involves a substantial federal question and each claim is so related to the federal claim in the action, arising from a common nucleus of operative facts, that they form part of the same case or controversy under Article III of the United States Constitution pursuant to 28 U.S.C. § 1967.

11. This Court has further jurisdiction pursuant to 28 U.S.C. § 1332.

12. Plaintiff avers that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs, and punitive damages.

13. This Court has personal jurisdiction over each of the Defendants because each resides in, is domiciled in and/or does systematic and continuous business in the State of California and in this judicial district.

14. Jurisdiction of this Court is proper because the events described herein and injuries to Plaintiff occurred within San Diego County, and/or

4

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

Defendants have caused injury to Plaintiff and to Plaintiff's intellectual property and other proprietary and economic interests within the State of California and in this judicial district.

15.   Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b) and (c) and under 28 U.S.C. § 1400(a).

## FACTUAL ALLEGATIONS

16.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 15 as though fully set forth herein.

17.   Since at least 2009, Plaintiff consistency held and continues to hold an online presence of around 5,000 followers across various social media websites including but not limited to Twitter, Facebook, Instagram, Snapchat, and LinkedIn.

18.   Plaintiff Ms. Dehen graduated *cum laude* from Arizona State University in 2011 with a Bachelor of Science in Marketing from the W.P. Carey School of Business, Minor in Mass Communications from the Walter Cronkite School of Journalism and Mass Communications and International Business Certificate from W.P. Carey School of Business.

19.   Ms. Dehen earned her Juris Doctor from the University of San Diego School of Law in 2.5 years with a dual concentration in Intellectual Property Law and Business & Corporate Law.

20.   While in law school Ms. Dehen externed for the USD Federal Tax Clinic assisting indigent clients in their tax disputes with the Internal Revenue Service.

21.   Plaintiff is self-employed and supported herself through law school by providing marketing and consulting services as an independent contractor, selling products online and obtaining federal student loans.

22.     Ms. Dehen invested $215,618.47 in student loans (*see* Exhibit 62) in addition to 4.5 years of her life to increase the value of her image, likeness, brand and services by preparing for and then earning her Juris Doctor from USD with the ultimate goal of admittance to the State Bar of California.

23.     Plaintiff spent the year before law school preparing and saving up for law school, took a semester off during law school to save money to complete law school, in addition to working the last 21 months and counting since completing law school to finance the costs associated with admittance to the State Bar of California.

24.     In the weeks leading up to the actions that led to this cause of action, Plaintiff was actively seeking a position in the legal industry. *Please see* Exhibits 142 - 149.

25.     Before, during, and after the injury that led to this cause of action, Ms. Dehen was, and still is, actively pursuing several business ventures which relied upon, continue to rely, and will rely upon her reputation.

26.     Plaintiff is actively seeking admittance to the State Bar of California, which includes a rigorous character and background check and a strenuous test, namely the Bar exam which Plaintiff has not been able to take since graduating from law school due to financial reasons directly related to the causes of action for which this dispute arose.

27.     While attending law school at USD, Ms. Dehen was subjected to harassing, terroristic behavior which ultimately led to intervention by the Federal Bureau of Investigation, hereinafter "FBI," through a federal criminal investigation due to the nature of terroristic statements made to

6

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

her and terroristic behavior aimed towards her and other USD students. *Please see* Exhibits 94 – 140.

28.   Ms. Dehen alleges the aforementioned criminal FBI investigation commenced in July 2016 due to alarming terroristic behavior that occurred in the several months leading up to and around the time of the Dallas Shooting in July 2016, *i.e.,* at the height of the ISIS terrorist attacks in the U.S. and around the world broadcast on an overwhelming majority of U.S. news outlets. *Please see* Exhibits 94 - 140.

29.   As further explained below, Photograph 2, titled, "Tiffany Pro," (*see* Exhibit 2), that John Doe(s) illegally used to create Infringing Work #6 (*see* Exhibit 13), was taken from Ms. Dehen's LinkedIn profile.

30.   To further corroborate the direct evidence regarding the identities of at least John Doe 1-2, two individuals from USD Law School viewed Ms. Dehen's LinkedIn profile in the immediate days leading up to the creation and execution of the unlawful Twitter account. *See* Exhibit 52.

31.   The conduct which ultimately resulted in direct intervention by the FBI including the aforementioned federal criminal investigation is linked to conduct that occurred on USD property, at USD sponsored events, and in connection with USD students.

**University of San Diego**

32.   USD ensnared Plaintiff in a fraudulent scheme nationwide to sell safe education.

33.   USD uniformly misled Plaintiff more than once that she would learn at USD in safety.

34.   USD promised a safe university, which it did not deliver.

7

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

35.     USD expressly set out to leverage its commitment for safety.
For example, on the USD website, USD expressly states it is, "[c]omitted
to safety through education." *See* https://www.sandiego.edu/safety/.

36.     The USD Public Safety webpage continues:
        The Department of Public Safety is located on the south
side of Hughes Administration Hall, and is open 24 hours a day, 7 days a
week.  The Department of Public Safety supports the mission and goals of
the University of San Diego by providing a full range of community-
oriented crime prevention and crime control services to contribute to the
safety and security of the campus community.  This is not a job that we can
do alone.  Your help is essential.

        *See* https://www.sandiego.edu/safety/.

37.     Defendant USD marketed USD as a safe university.

38.     USD expressly claims to keep a record of crime alerts
"provided to keep all members of the University of San Diego community
up to date with and aware of all ongoing criminal acts." *See*
https://www.sandiego/edu/safety/prevention/alerts.php.

39.     USD expressly states:
        Our Public Safety Officers are responsible for a wide
range of activities, including developing crime prevention programs, taking
crime and accident reports, initiating investigations, responding to medical
and fire emergencies, controlling parking and traffic, and enforcing certain
local and state laws, as well as rules developed by the University to address
campus-related concerns.  Emergencies on campus should be reported
directly to the Department of Public Safety by dialing extension x2222
from any on-campus phone, 24 hours a day.

        *See* https://www.sandiego.edu/safety/about/.

40.     USD expressly provides:
        The University of San Diego Department of Public
Safety is committed to the support of the University's greater mission of
excellence in education and service to the community.  As an integral part
of the University, we pledge ourselves to a continuing partnership with the
campus community to provide a safe and secure environment through
community based public safety.  We will achieve our goals by service to the
community that reflects respect for the law, dignity of all persons and pride
in our profession.

        *See* https://www.sandiego.edu/safety/about/mission.php.

41.     USD expressly provides its Department of Public Safety motto
as follows:

8

Service to Our Community.  People in our campus community are our most important customers.  Our motto: "Committed to Safety Through Education" is not just a slogan it is our way of life.  We pledge to work in partnership with the USD community and do our best to provide for its public safety needs.  Commitment to Integrity.  Integrity is our standard.  We are proud of our profession and will conduct ourselves in a manner that merits the respect of all people.  We will demonstrate honest, ethical behavior in all our interactions.  We must have the courage to always do what is right.  Respect for People.  The dignity of mankind is a value that we treasure.  We believe in treating all people with respect.  We show concern for the victims of crime and treat violators of the law with fairness at all times.  Commitment to Leadership.  Managers, supervisors and team leaders need to be leaders in their areas of responsibility.  Making certain that our values become part of our day to day work life is our mandate.  We encourage our employees to submit ideas, we listen to their suggestions, and we help them develop to their maximum potential.

*See* https://www.sandiego.edu/safety/about/mission.php.

42.     USD expressly provides:

Hate Crimes/Acts of Intolerance
USD is a diverse community of which we are proud.  Sometimes, some of our newer students come from environments that are not as rich in cultural and religious diversity.  Hateful speech and conduct against others of different backgrounds and cultures is unacceptable at a university which prides itself on the recognition of the dignity of each individual (USD Mission Statement).  "The university is committed to creating a welcoming, inclusive and collaborative community accentuated by a spirit of freedom and charity; and marked by protection of the rights and dignity of the individual.  The university values students, faculty and staff from different backgrounds and faith traditions and is committed to creating an atmosphere of trust, safety and respect in a community characterized by a rich diversity of people and ideas."  Harassment of others because of a persons race, religion, ancestry, national origin, disability, gender, sexual orientation, or because he/she perceives that the other person has one or more of these characteristics is against the law and will not be tolerated by the University.  Severe disciplinary action and possible criminal prosecution will follow.

*See* https://www.sandiego.edu/safety/reporting/hate-crimes/.

43.     University of San Diego provides a Code with Rules of Conduct outlining specific prohibitions, policies, and procedures that each student is responsible for understanding and following.

44.     USD Rules of Conduct can be found online at:

https://www.sandiego.edu/conduct/the-code/rules-of-conduct.php.

45.     The USD Rules of Conduct provide the following:
The following conduct is prohibited on University premises or at University events, wherever they may occur.  This same

9

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

conduct, though occurring off University premises and not at University events, may nonetheless be subject to University sanctions when it adversely affects the University, its educational mission or its community.  Violation of these standards, policies, and procedures may subject an individual or group to disciplinary action as determined by the Assistant Vice President for Student Affairs/Dean of Students or his or her designee, pursuant to the provisions of the Code.

46.   The Rules outlined in the Code of Conduct include, in relevant part, the following:

2. Disruption of teaching, research, administration, conduct proceedings or any other institutional activity.
3. Abuse of any person, including but not limited to physical abuse, threats, verbal intimidating, harassment, stalking, coercion and/or other conduct which threatens the health or safety of any person.
6. Conduct that is disorderly, lewd, indecent or obscene.

47.   Upon information and belief, Plaintiff and University of San Diego entered into a written contract pursuant to the aforementioned Code of Student Conduct when Ms. Dehen enrolled in the USD School of Law in August 2013 and again in January 2015 when Ms. Dehen re-enrolled in the USD School of Law.  Plaintiff alleges USD has a copy of a signed agreement in the form of signed acknowledgement of the student code of conduct and is better positioned to present the original copy to the Court during discovery.  In the absence of a signed contract, there is an implied contract that the students attending University of San Diego will abide by the Student Code of Conduct.

48.   In consideration of Plaintiff accepting USD's offer to attend USD law school, paying USD over a hundred thousand dollars for education and agreeing to abide by the student code of conduct, USD promised to provide a safe learning environment to Plaintiff, free of threat of physical harm and free of the school violating federal law to Plaintiff's harm.  Plaintiff alleges USD Law Financial Office expressly confirmed its alleged commitment to follow and abide by federal law both in writing and orally on numerous occasions to Plaintiff personally.

10

SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

**JOHN DOES**

48.     Plaintiff alleges that ~~in November~~on Tuesday, October 20,
2015 on USD campus during a USD sponsored event, the USD Law
School October "Dean's Mixer", a USD law student named Mr.
Mohammed Aly openly declared himself to be an enemy combatant of the
United States by openly declaring himself to be in an ISIS sleeper cell in
the presence of Plaintiff ~~and at least one other~~, another student. named Mr.
Kevin Snow, and a third student named Mr. Eidon Hamamlow whom got
distracted and spoke with a professor during Mr. Aly's ISIS comments.
*Please see* Exhibits 130 – 139. and Exhibit xxx.

~~49.     Plaintiff alleges a student witness of the terrorist remark
later~~Plaintiff alleges that on October 20, 2015, Mr. Aly (thought to
comprise John Doe 1) said to Plaintiff (in the presence of Mr. Kevin Snow),
"I'm in an ISIS Sleeper Cell."  Plaintiff was angered by this comment
which she presumed was made in retaliation of a prior Facebook
conversation in which she supported Mr. Donald J. Trump for President
that ended when Ms. Dehen blocked Mr. Aly after he made vicious lewd
comments directed towards Plaintiff.  Ms. Dehen replied to Mr. Aly, "what
do you mean by "sleeping"?"  To which Mr. Aly replied, "until I'm
activated," with a smug look of satisfaction on his face.  Mr. Snow, whom
Plaintiff did not know by name at the time, laughed at the exchange and
Mr. Hamamlow was conversing with a professor at the time of the
exchange.  Plaintiff's recollection of the event was true and accurate on
October 20, 2015 and remains true and accurate, as it was a memorable
event which inflicted extreme emotional distress on Plaintiff, so much so
that she was late to her Corporate Taxation class with Professor Howard
Abrams, prompting Professor Abrams to yell at Ms. Dehen out of

11

frustration to the point where Professor Abrams apologized to Ms. Dehen the following class period because the behavior was out of character. Directly after class on October 20, 2015, Ms. Dehen attempted to call several friends and family members to discuss the traumatizing event causing ongoing distress to Ms. Dehen.

49.   Plaintiff alleges the student witness of the terrorist remark, Mr. Kevin Snow, publicly declared himself to be actively engaging in terrorism in March 2016 after engaging in threatening behavior which disrupted the entire university and sent the law school student body and faculty into a widespread panic which interrupted normal business operations on campus for several days, weeks for some individuals, including Plaintiff. *Please see* Exhibits 94 – 139.

On Wednesday, March 9, 2016 at 8:38 p.m., Ms. Dehen emailed USD Law School Dean D'Angelo screenshots of her Facebook conversation with Mr. Kevin Snow from that day where Ms. Dehen said to Mr. Snow, "hey kevin I'm not sure if we have talked a whole lot but I just wanted to check in and see how you're doing. I went through a lot of stress last year so I can relate if you want to talk about anything? I'm worried about you". *Please see* Exhibit 97.

To which Mr. Snow responded, "Who the fuck are you????????? Fuck off Nazi bitch I'm better than I've ever been quit trying to make me someone that should give a shit about you the only reason you're my Facebook friend is because you're amazed at what I'm doing with my life. Fucking Nazi. Wtf. Don't pretend like I don't know you're on the deck right now.  She does nothing." *Please see* Exhibit 97.

Ms. Dehen responded, "I'm not on your deck I'm at my house. I am really worried about you." *Please see* Exhibit 97.  Mr. Snow responded, "If you want friends go join the Ben Carson campaign." *Id.*

On Thursday, March 10, 2016 at 7:14 a.m., Ms. Dehen emailed Dean D'Angelo, Dean Ferruolo and Professor Sichelman, "Obviously the matter has not been resolved and he is still not being helped.  "Liberation day" does not sound good.  Everyone is scared of his unpredictability.  I haven't been able to find one person who is close to him.  He is very antisocial.  Not good signs," with a .PNG image attached, further explained below. *Please see* Exhibit 103.

On or around March 10, 2016, Mr. Snow posted on Facebook, "I am Still building the bonfire for the 420Am roast and commencement of Russ. Today is day four.  The last day of attending class.  Liberation day.  Or as we like to say, Prude day because it's the last day of getting slut shamed by the virgin Catholics gøys and also the last day our/their Nazi Catholic kids are virgins.  #bitchimmadonna," and "Eight hours a night. [devil emoji] Ha [devil emoji] ha [devil emoji] ha [devil emoji] what is this a Nazi prom?" *Please see* Exhibit 104.

The threatening behavior consisted of, among other things, ~~the student calling all USD law~~Mr. Snow accosting students ~~Nazi's, as well as personally and directly calling Plaintiff a Nazi, and engaging in alarming~~on campus, disrupting classes for two weeks leading up to the incidents being publicly recognized by USD, threatening statements on social media made with the intent to incite mass hysteria on USD campus and making statements directed towards Plaintiff personally which, considered in totality of the circumstances, led Plaintiff to reasonably believe her safety,

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1   Mr. Snow's safety, and/or the safety of fellow USD students and faculty

2   were at stake.

3   To view a sampling of Mr. Snow's behavior ~~further shown in~~ and

4   statements, as well as a sampling of the email exchanges occurring between

5   students such as Plaintiff and the University of San Diego during this time

6   period, *please see* Exhibits 94 — 139.

7   On or around March 10, 2016, Mr. Snow posted on Facebook, "Has

8   Obama not delivered on his promises???? Ha. I just got the email excusing

9   me of terrorism. Ha. Omg. What do we have to do to appease these Nazis?

10  [fourteen car emoji's] ha". *Please see* Exhibit 114.

11  Ms. Dehen alleges various students expressed fear, to both Ms.

12  Dehen and to USD, that this student brought a bomb to school and/or was

13  planning to harm himself and/or USD students and faculty. *Please see*

14  Exhibits 94 - 139.

15  50.   In March 2016 Plaintiff ~~and~~ relayed, *on more than one*

16  *occasion, in addition to* several other students and faculty members at USD

17  ~~relayed, *on more than one occasion*~~ *for at least two weeks leading up to the*

18  *incident documented in Exhibits 94 – 139,* the alarming erratic behavior to

19  USD Law Administration, USD Administration, the President of USD,

20  USD Department of Public Safety, San Diego Police Department, as well

21  as various attempts to federal and state agencies by Plaintiff personally.

22  *Please see* Exhibits 94 - 139.

23  Plaintiff's mother, Mrs. Lili Dehen, was in contact with Mr. Snow's

24  mother, Mrs. Katherine Snow, in the days proceeding the March 2016

25  incident in which she expressed to Mrs. Dehen that USD would not help

26  her obtain medical or other help for her son. *Please see* Exhibits 125 - 128.

27

28

**Formatted:** Indent: First line: 0.5"

51.    Plaintiff alleges USD not only failed to adhere by federal law in dealing with sensitive allegations such as the ones Plaintiff personally relayed to USD, but USD went so far as to shut down the local law enforcement investigation and refused to cooperate with federal law enforcement to Plaintiff's detriment. *Please see* Exhibits 94 - 139.

52.    Not only did USD fail to adequately address the serious threats which threatened to harm and actually harmed Ms. Dehen as USD expressly represented it would, but USD gave preferential treatment to both aforementioned students, whom Plaintiff alleges comprise John Does 1 & 2 in this litigation.  Not only did neither student face disciplinary action, but *both students received preferential treatment to complete their schooling.* *Please see* Exhibits 94 – 139.

53.    Due to USD's failure to address the serious situations as it promised repeatedly it would do in its stated policies as well as express repeated promises made during the situations by agents of USD to Plaintiff and several other law students and faculty members, the situations escalated to the point where the Federal Bureau of Investigation intervened in July 2016 when one of the aforementioned self-proclaimed enemy combatants of the United States stalked Plaintiff at her residence in San Diego, California. *Please see* Exhibits 94 - 139.

54.    Plaintiff lived, and continues to live, in grave fear of danger to her personal body, safety, economic interests, personal relationships, family members' and friends' safety, among other injuries for which Plaintiff can and will prove to this Court through this litigation.

55.    Plaintiff alleges USD became aware of the serious allegations in March 2016.  Plaintiff alleges USD then owed a heightened duty to Plaintiff beginning in or around March 2016 when it was put on notice of

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1   the serious behavior in violation of both federal and state law, which it

2   failed to uphold, hence this litigation. *Please see* Exhibits 94 – 139.

 Formatted: Font color: Black

3       On Friday, July 8, 2016 at 10:51 p.m., Ms. Dehen emailed Professor

4   Sichelman, the professor who ultimately ensured Department of Public

5   Safety became involved with the Mr. Snow matter after disruption of the

6   MBE class, to inform him of Mr. Aly's ISIS sleeper cell comments made in

7   2015 after Ms. Dehen read an article from Drudge Report regarding ISIS

8   Sleeper Cells being activated. *Please see* Exhibit 130.

9       On July 9, 2016, when Plaintiff was still a student at USD Law

10   School and actively attending two summer school classes, Professional

11   Responsibility and an externship with the USD Federal Tax Clinic, Mr. Aly

12   stalked Ms. Dehen at her residence in Pacific Beach, CA no more than 8

13   hours after Ms. Dehen emailed Professor Sichelman regarding the

14   comments Mr. Aly made to Ms. Dehen in 2015. *Please see* Exhibit xxx.

15       Ms. Dehen saw Mr. Aly outside her building at or around 9:30 a.m.

16   on July 9, 2018 and immediately called Ms. Stephanie Myers, an

17   acquaintance of Ms. Dehen whom has federal clearances with the

18   Department of Defense and Homeland Security. *Please see* Exhibit xxx.

19       Ms. Dehen's neighbors witnessed Mr. Aly outside Ms. Dehen's

20   building at 6:30 a.m. sitting in his car with the engine running and

21   confirmed with Ms. Dehen on July 10, 2018.

22       On July 11, 2018, Ms. Dehen emailed the President of USD

23   requesting increased security presence on campus until the end of her

24   summer term at USD. *Please see* Exhibit xxx.

25       On July 12, 2018, Ms. Dehen emailed the Department of Public

26   Safety at USD, specifically Captain Quinton Kawahara, and Law Schools

27   Deans Dean Ferruolo and Dean D'Angelo. *Please see* Exhibit 132.

28

SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

On July 19, 2018, Ms. Dehen received the business card from Mr. Chuck Milks, Detective / Task Force Officer with the San Diego County Sheriff's Department, San Diego Joint Terrorism Task Force address at 10385 Via Sorrento Parkway, San Diego, CA 92121, same address as the Federal Bureau of Investigation. *Please see* Exhibit 133.

On July 20, 2018, Detective / Task Force Officer Milks interviewed Ms. Dehen at her residence at 4621 Lamont St. #5A, Pacific Beach, CA 92109. *Please see* Exhibit 135.

On or around July 21, 2018, Ms. Dehen found a blank card mailed to her on July 25, 2016 from San Diego with no return address and nothing written on in the inside. *Please see* Exhibit 140. Ms. Dehen alleges the handwriting is Mr. Aly's handwriting, which she is familiar with from Professor Brooks' Fall 2015 Civil Rights class. *Please see* Exhibit xxx.

[Mr. Aly has been licensed since December 2016 – put all newly discovered information from prior filings about Mr. Aly's arrests and subsequent illegal activities here.]

**Twitter**

56.    Ms. Dehen and Twitter entered into a written contract pursuant to the terms of Twitter's user agreement on ~~or about~~ October 9, 2015. *See* Exhibit 53.

57.    Ms. Dehen created her Twitter account, *i.e.*, entered into the user agreement with Twitter, with the reasonable expectation that Twitter would fulfill its own express promises and enforce its expressly stated policies and rules.

58.    Twitter provides a policy for restricting access to its business, titled, "The Twitter Rules," and can be found online at: https://support.twitter.com/articles/18311.

17

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

59. Pertaining to hateful conduct, Twitter's rules provide, in relevant part, the following:

> You may not promote violence against or directly attach or threaten other people on the basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age disability, or disease. We also do not allow accounts whose primary purpose is inciting harm towards others on the basis of these categories.

*See* https://support.twitter.com/articles/18311.

60. Twitter provides an Impersonation Policy that can be found online at: https://support.twitter.com/articles/18366.

61. Twitter's Impersonation Policy provides, in relevant part, the following:

> Impersonation is a violation of the Twitter Rules. Twitter accounts portraying another person in a confusing or deceptive manner may be permanently suspended under the Twitter impersonation policy.

*See* https://support.twitter.com/articles/18366.

62. Twitter's Impersonation Policy further provides, "[i]n order to be impersonation, the account must also portray another person in a misleading or deceptive manner."

*See* https://support.twitter.com/articles/18366.

63. In Twitter's Impersonation Policy, Twitter promises:

> *Upon receipt* of an impersonation report, we will investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules. Accounts determined to be in violation of our impersonation policy, or those not in compliance with our parody, commentary, and fan account policy, will either be suspended or asked to update the account(s) so they no longer violate our policies.

*See* https://support.twitter.com/articles/20170142.

64. Twitter provides a Hateful Conduct Policy, that can be found online at: https://support.twitter.com/articles/20175050.

65. Twitter's Hateful Conduct Policy provides, in relevant part, the following: "[w]e do not tolerate behavior that harasses, intimidates, or uses fear to silence another person's voice." *See* https://support.twitter.com/articles/20175050.

18

66.    Twitter's Hateful Conduct Policy provides the following:
Examples of what we do not tolerate includes, but is not limited to, behavior that harasses individuals or groups of people with: violent threats; wishes for the physical harm, death, or disease of individuals or groups; references to mass murder, violent events, or specific means of violence in which/with which such groups have been the primary targets or victims; behavior that incites fear about a protected group; repeated and/or non-consensual slurs, epithets, racist and sexist tropes, or other content that degrades someone.

*See* https://support.twitter.com/articles/20175050.

67.    Twitter's Hateful Conduct Policy further provides the following: "[w]e enforce policies when someone reports behavior that is abusive and targets an entire protected group and/or individuals who may be members." *See* https://support.twitter.com/articles/20175050.

68.    Plaintiff and Twitter entered into a written contract including the terms set forth above at the time Plaintiff accepted Twitter's Terms of Use and activated her account on October 9, 2015 at 11:11 p.m. *See* Exhibit 53.

Ironically, Plaintiff's overwhelming motivation for rejoining the flawed social networking platform she left years prior was to follow and tweet to then-Presidential Candidate Donald J. Trump and supporters of Mr. Trump's Make America Great Again movement, evidenced by her early tweets to and follows of Donald J. Trump (@realdonaldtrump), individuals close to him, and influential individuals supportive of him and his movement.

**Additional Background Facts**

69.    Upon information and belief, there is no other "Tiffany Dehen" in existence, nor is there any other individual using the name "Tiffany Dehen" to sell products or render consulting, marketing, or legal services anywhere in the United States, or anywhere in the world.

19

70.   Merriam Webster Dictionary's definition of Nazi provides the following:

(1) a member of a German fascist party controlling Germany from 1933 to 1945 under Adolf Hitler; (2) often not capitalized; (a) one who espouses the beliefs and policies of the German Nazis: Fascist; (b) one who is likened to a German Nazi: a harshly domineering, dictatorial, or intolerant person; a grammar nazi.

*See* https://www.meriam-webster.com/dictionary/Nazi.

71.   Encyclopedia Britannica's definition of Nazi Party provides the following:

Nazi Party, byname of National Socialist German Workers' Party, German Nationalsozialistische Deutsche Arbeiterpartei (NSDAP), a political part of the mass movement known as National Socialism.  Under the leadership of Adolf Hitler, the party came to power in Germany in 1933 and governed by totalitarian methods until 1945.

*See* https://www.britannica.com/topic/Nazi-Party.

72.   Merriam Webster Dictionary's definition of Swastika provides the following:

(1) A symbol or ornament in the form of a Greek cross with the ends of the arms extended at right angles all in the same rotary direction; (2) a swastika used a symbol of anti-Semitism or of Nazism.

*See* https://www.merriam-webster.com/dictionary/swastika.

73.   Ms. Dehen is not a member of the National Socialist German Workers' Party (colloquially known as the Nazi Party), nor the Ku Klux Klan (colloquially known as the KKK).

74.   Further, Ms. Dehen has no relatives that were involved in either the National Socialist German Workers' Party or the Ku Klux Klan.

75.   Ms. Dehen's late grandfather was ~~Captain~~Retired Colonel John D. Raikos, awarded the following decorations for his role in the 83rd Infantry of the United States Army in World War II: Combat Infantryman Badge, Silver Star Medal, Bronze Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good Conduct, American Campaign Medal, WWII Victory Medal, and the EAME Campaign Medal with 5

20

1   Bronze Stars for the Five Campaigns.  *See* Exhibit 1 or visit

2   http://www.normandytothebulge.be/83rd_JRaikos.html.

3       76.   Notably, Ms. Dehen's late grandfather, ~~Captain~~Retired Colonel

4   John D. Raikos, was honored with the esteemed citation from Yom

5   H'ashowa Holocaust Remembrance for his role with the 83rd Division's

6   liberation of Nazi concentration camps.  *See* Exhibit 1 or visit

7   http://www.normandytothebulge.be/83rd_JRaikos.html.

8       77.   Upon information, belief, and research into Ms. Dehen's

9   family tree, Ms. Dehen has at least one relative who was Jewish, *i.e.*, Ms.

10  Dehen is technically part Jewish.

11      78.   Ms. Dehen volunteered as a Summer Camp Counselor at the

12  Tucson Jewish Community Center ("TJCC") in 2004 and her family

13  continued and continues to keep a relationship with the TJCC.

14      79.   During Mr. President Donald J. Trump's State of the Union

15  Address on January 30, 2018, he stated, "[w]e must be clear – terrorists are

16  not merely criminals; they are unlawful enemy combatants."  (*Please see*

17  Mr. President Donald J. Trump's 2018 State of the Union Address).

18      80.   President Donald J. Trump also stated, "[i]n the past, we have

19  foolishly released hundreds and hundreds of dangerous terrorists, only to

20  meet them again on the battlefield, including the ISIS leader al-Baghdadi,

21  who we captured, who we had, who we released." (*Id.*)

22                          **Copyrighted Works**

23      81.   On June 20, 2013, Plaintiff created Photograph 1, titled,

24  "Tiffany Pro," in Scottsdale, Arizona and published to LinkedIn

25  06/20/2013. *See* Exhibit 2.

26      82.   "Tiffany Pro," is registered with the United States Copyright

27  Office, which constitutes, "prima facie evidence of the validity of the

28

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany Pro," is assigned Registration Number: VA 2-069-923, with April 01, 2017 as the Effective Date of Registration. *Please see* Exhibit 68.

83. On April 2, 2016, Plaintiff created Photograph 2, titled, "Tiffany DC," in front of Trump Tower in Washington D.C, and published to Twitter on 04/02/2016, and Facebook on 09/15/2016. *See* Exhibit 3.

84. "Tiffany DC," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany DC," is assigned Registration Number: VA 2-073-279, with March 31, 2017 as the Effective Date of Registration. *Please see* Exhibit 69.

85. On April 28, 2016, Plaintiff created Photograph 3, titled, "Tiffany MAGA," in front of the Trump rally in Orange County, California, and posted to Twitter on 04/28/2016. *See* Exhibit 4.

86. "Tiffany MAGA," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. §410(a). "Tiffany MAGA," is assigned Registration Number: VA 2-069-924, with April 01, 2017 as the Effective Date of Registration. *Please see* Exhibit 70.

87. On December 18, 2016, Plaintiff created Photograph 4, titled, "Tiffany Christmas MAGA," in Pacific Beach, California, and posted to Instagram, Facebook, and Twitter on 12/23/2016. *See* Exhibit 5.

88. "Tiffany Christmas MAGA," is registered with the United States Copyright Office, which constitutes, "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17

22

U.S.C. §410(a). "Tiffany Christmas MAGA," is assigned Registration Number: VA 2-069-747, with April 01, 2017 as the Effective Date of Registration. *Please see* Exhibit 71.

**Twitter Account With Domain @tiffanydehen**

89.    On or about January 26, 2017, John Doe(s) created a Twitter account with the domain @tiffanydehen, with the description, "[p]arody account; Fiction and political satire about Republican white women", yet used Tiffany Dehen's legal name in the domain @tiffanydehen, and Ms. Dehen's copyrighted photos. *See* Exhibit 9.

90.    The natures of the posts, described below, are so egregious as to deny Doe(s)'s protection under the First Amendment, further explained below.

91.    Due to the ongoing terrorism investigation led by the Federal Bureau of Investigation, and on advice of the FBI, Tiffany Dehen was no longer using the domain @tiffanydehen in connection with her social media accounts.

92.    On or about January 26, 2017, Doe(s), using the Twitter domain @tiffanydehen, followed various Twitter users including the following:
"Helmut Pepe Thick @HelmutThick,""Vladamir Putin @realtalkputin," "Donald J. Trump @realDonaldTrump," "Ann Coulter @AnnCoulter," "Paul Ryan @SpeakerRyan," "Bill O'Reilly @oreillyfactor," "Sean Hannity @seanhannity," "The White House @WhiteHouse," "Eric Trump @EricTrump," "Kellyanne Conway @KellyannePolls," "Donald Trump Jr. @DonaldJTrumpJr," "Ivanka Trump @IvankaTrump," "Mike Pence @mike_pence," "Dr. Ben Carson @RealBenCarson," "Fox News @FoxNews," "Milo Yiannopoulous @DontGoAwayM4d," "Adolf Hitler @AdolfHitlerFuhr," "Vladamir Putin @realtalkputin," "Donald J. Trump @realDonaldTrump," "Klu Klux Klan @TheeKluKluxKlan," "klu klux klan @FuckTheNiggers," and "Breitbart News @BreitbartNews."

*See* Exhibits 6-8, and 44-47.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

93. On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "@realDonaldTrump is gonna stop these alien abductions plaguing our nation y'all. These anal probes gotsa stop. #MakeAmericaGreatAgain #ufos". *See* Exhibit 43.

94. On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted "I'm all for building that wall over mexico but the real aliens come from above #buildthatwall #MakeAmericaGreatAgain @realDonaldTrump #ufos". *See* Exhibits 42-44.

95. On or about January 27, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "The only better time to be a woman in America beside 2day was the day Jesus was crucified #witness #amen #Jesusfirst #MakeAmericaGreatAgain". *See* Exhibits 42-43.

96. On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Me+my girls today. If you can't bring back an 80's dye job, U DON'T DESERVE TO BE AMERICAN!!! #MakeAmericaGreatAgain #SexyLikeCockatoos #grl". *See* Exhibit 41.

97. On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "My gawd Who is that lucky lady? @POTUS @realDonaldTrump My pastor wouldn't be happy with my inside-outies right now? #MakeAmericaGreatAgain". *See* Exhibit 40.

98. On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "TO HELL WITH MUSLIMS WHO WANT TO BAN OUR AMERICAN VALUES! U NEVER PUT ME IN A BURKA!    #MuslimBan    #MakeAmericaGreatAgain    @POTUS #BuildTheWall". *See* Exhibit 39.

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

99.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Just found this lovely pic of our #firstladymelania Pearl necklaces 4 every girl about time @MELANIATRUMP @POTUS #MakeAmericaGreatAgain".   *See* Exhibits 37-38.

100.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Have y'all noticed the blacks are on all the magazines nowadays? Time 4 change!! White women are the silent majority in the lamestream media". *See* Exhibits 35-36.

101.   On or about January 28, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Nothing like my own personal welcome team on Twitter. Thanks @AdolfHitlerFuhr XOXO Let's #MakeAmericaGreatAgain studcakes #MuslimBan", and included a photo stating, "Fuhrer welcomes you" showing the Adolf Hitler Twitter account that Doe followed using the Twitter domain @tiffanydehen. *See* Exhibits 35-36.

102.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Donated some eggs today!  Don't know why sept they told me they were tax deductible! #MakeAmericaGreatAgain", with Infringing Work #1 (*see* Exhibit 34), which comprises of Photograph #2 titled, "Tiffany DC," (*see* Exhibit 3) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's personal Twitter account,) altered with the word, "MURIKKKA!", and two drawn in Swastikas. *See* Exhibits 32-33.

103.   On or about January 29, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Throwing this dog over this cliff! Animals don't deserve special rights! Down with special interists!

1   #MakeAmericaGreatAgain @POTUS", with Infringing Work #2 (*see*
2   Exhibit 31), which comprises of Photograph #4 titled, "Tiffany Christmas
3   MAGA," (*see* Exhibit 5) copyrighted by Plaintiff, (presumed to be taken
4   directly from Ms. Dehen's personal Twitter account,) and altered with the
5   words, "DOWN WITH THEM SPESHUL INTRISTS!". *See* Exhibit 29-
6   30.

7       104.  On or about January 29, 2017, Doe(s), using the Twitter
8   domain @tiffanydehen, tweeted, "Saving myself for marriage!  My man
9   knows we can have sex 3 times: honeymoon, Trumps reelection, & jesus 2[nd]
10  coming! #MakeAmericaGreatAgain", with Infringing Work #3 (*see* Exhibit
11  28), which comprises of Photograph 3 titled, "Tiffany MAGA," (*see*
12  Exhibit 4) copyrighted by Plaintiff, (presumed to be taken directly from
13  Ms. Dehen's personal Twitter account,) and altered with the top of Ms.
14  Dehen's hat whited out with the words, "MAKE AMERICA GRATE
15  AGAIN", written instead. *See* Exhibits 26-27.

16      105.  On or about January 29, 2017, Doe(s), using the Twitter
17  domain @tiffanydehen, tweeted "Why do the gays hate this hate? I thought
18  they    all    liked    fashion!    #snowflakes    #EndSpecialInterests
19  #ReligiousFreedom #MakeAmericaGreatAgain", with Infringing Work #4
20  (*see* Exhibit 25), which, again, comprises of Photograph 3 titled, "Tiffany
21  MAGA," (*see* Exhibit 4) copyrighted by Plaintiff, (presumed to be taken
22  directly from Ms. Dehen's personal Twitter account,) and altered with the
23  top of Ms. Dehen's hat whited out with the words, "BRING BACK (with a
24  symbol that looks like a vagina)", written instead. *See* Exhibits 23-24.

25      106.  On or about January 29, 2017, Doe(s), using the Twitter
26  domain @tiffanydehen, tweeted "That'll teach them terrorist saudis!
27  #MuslimBan    #MakeAmericaGreatAgain    my    hero!    @POTUS
28

SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

1   @realDonaldTrump", with a photo showing the countries of President

2   Donald J. Trump's temporary ban on refugees. *See* Exhibits 21-22.

3       107.  On or about January 29, 2017, Doe(s), using the Twitter

4   domain @tiffanydehen, tweeted, "CNN is fake news! Serena won the

5   Australian open!", with an article to CNN Breaking News @cnnbrk,

6   "Roger Federer beats Rafael Nadal in a five-set match in the Australian

7   Open Men's Final winning his 18a grand slam". *See* Exhibits 20-21.

8       108.  On or about January 29, 2017, Doe(s), using the Twitter

9   domain @tiffanydehen, retweeted a post from Paul Ryan @SpeakerRyan,

10  "RT if you agree It's time to rebuild our partnership with #Israel and

11  reaffirm our commitment to her security", but Doe added, "I agree with

12  @SpeakerRyan do what you can to keep them Jews out of our Christian

13  country!! #AmericaFirst #MakeAmericaGreatAgain #Muslim Ban". *See*

14  Exhibit 20.

15      109.  On or about January 29, 2017, Doe(s), using the Twitter

16  domain @tiffanydehen, tweeted, "Fuck throwing this dog off a cliff. Ima

17  eat him instead! What a #snowflake @peta #MakeAmericaGreatAgain

18  Animals don't deserve extra rights!", with Infringing Work #5 (*see* Exhibit

19  19), which, again, comprises of Photograph 4 titled, "Tiffany Christmas

20  MAGA," (*see* Exhibit 5) copyrighted by Plaintiff, (presumed to be taken

21  directly from Ms. Dehen's personal Twitter account), and altered with the

22  words "DOWN WITH THEM SPESHUL INTRISTS!". *See* Exhibits 16-

23  18.

24      110.  On or about January 29, 2017, Doe(s), using the Twitter

25  domain @tiffanydehen, tweeted, "I'm so excited for my audition for TV! I

26  can't wait to make America proud! #MakeAmericaGreatAgain

27  #AmericaFirst #AmericaFirstOnly @POTUS", with a photo of Tomi

28

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

Lahren and the word "TIFF" added, and added text above the photograph that reads, "BRAVO'S The Real Housewives of Nazi-Occupied Russian Territory Formerly Known as America *twirls* "If he's not Aryan, we're not marryin'!" *See* Exhibits 15-16.

111. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "Here's my mom and her bible study sisters being saved from an evil Muslim palace. If I'm not her spitting image...GO TRUMP GO! @POTUS", with a photo of President Donald J. Trump and three women. *See* Exhibit 14.

112. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "All ready for my job interview. Too much??? #AmericaFirst #AmericaFirstOnly Help me fashion queens!!! @MELANIATRUMP @KellannePolls", with Infringing Work #6 (*see* Exhibit 13), which comprises of Photograph 1 titled, "Tiffany Pro," (*see* Exhibit 2) copyrighted by Plaintiff, (presumed to be taken directly from Ms. Dehen's LinkedIn account this time), altered with a black headband containing a Swastika drawn in, as well as a red Swastika added to Ms. Dehen's chest. *See* Exhibits 11-12.

113. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, retweeted one of Ms. Dehen's personal tweets where she posted an article from *Drudge Report*, and wrote, "That's right @tiffanysundevil we should just get rid of all those countries that aren't america! #AmericaFirst #AmericaFirstOnly." *See* Exhibits 10-11.

114. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "We don't need a justice department! fuck impartiality! #MakeAmericaGreatAgain", with a retweet from *Drudge*

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

*Report* @DRUDGE_REPORT that says, "TRUMP FIRES ACTING ATTORNEY GENERAL", with a link to an article. *See* Exhibit 10.

115. On or about January 30, 2017, Doe(s), using the Twitter domain @tiffanydehen, tweeted, "ONLY WHITE PEOPLE DESRVE BENEFITS! america should be great to win I no knowledge of it! #MakeAmericaGreatAgain @POTUS @realDonaldTrump", with a retweet from a post by Thomas Paine @Thomas1774Paine that said, "Hey DOJ & #Yates, welcome back to the real America where you get fired for screwing up like the rest of us. #Obama's Country Club is closed". *See* Exhibits 9-10.

116. On January 30, 2017 around 9:50 p.m., Plaintiff became aware of the account due to the retweet of Plaintiff's tweet referenced above, and the fact that Doe "liked" 10 of Ms. Dehen's Tweets. *See* Exhibits 10-11, and 54.

117. Upon inspection of the Twitter account, Plaintiff sought immediate removal of the impersonating account by utilizing Twitter's Impersonation Policy through completion of the provided form to "report an account for impersonation."

118. Plaintiff submitted the report for impersonation for Doe(s)'s defaming Twitter account in the username @tiffanydehen to Twitter on 01/30/2017, thus fulfilling all conditions, covenants, and promises required on her part to be performed in accordance with the terms and conditions of the user agreement. *See* Exhibit 48.

119. On January 30, 2017 at 9:56 p.m., Twitter responded to Plaintiff's request to Case # 50854043 with the following:
Hello,
Thanks for sending your report regarding impersonation on Twitter. Our next steps: First, we need to confirm your identity. Below you'll find instructions and a link you can use to upload a copy of your valid government-issued photo ID. Then we'll review and

29

process your report. We can't review your report until the documentation is received.

Your next steps: Review the instructions below and upload the requested documentation. Please make sure to upload a legible copy so we can review the full name and photo on the ID. This information will be kept confidential and your documentation will be deleted.

Instructions: Click on the link below and upload a copy of your valid government issued photo ID (e.g., driver's license or passport). If you are reporting an account that is not using the name that appears on your government-issued photo ID, you must also include documentation demonstrating that the name used by the account you're reporting is associated with you (e.g., proof of registration of your trade name or pseudonym).

Upload                                                              link:
https://twitterinc.secure.force.com/u?e=tiffany.dehen@gmail.com&c
n=50854043

Please note that accounts in compliance with Twitter's parody, commentary, and fan accounts policy (https://support.twitter.com/entries/106373) are not considered in violation of our impersonation policy (https://support.twitter.com/articles/18366).

Thank you,
Twitter

*See* Exhibit 48.

120. On February 1, 2017 Ms. Dehen was involved in an automobile collision on the I-5 freeway southbound on her way to Federal Court to commence suit that she luckily walked away from with only neck and back pains felt at the time. *See* Exhibits 57-58.

121. Fearing for her personal safety and under severe emotional distress, Ms. Dehen first submitted the initial complaint with the Court in order to get the alleged conduct on federal record.

122. Thereafter Ms. Dehen went to the emergency room, where she submitted the requested proof of identity via photo of her state issued driver's license to Twitter, in completion of the additional action Twitter requested in order to enforce its stated policies. *See* Exhibit 49.

123. On February 1, 2017 around 4:30 p.m., Doe, using the Twitter domain @tiffanydehen, tweeted, "Black history month? More like "excuse to complain more" month." *See* Exhibit 50.

30

1

2       124.   On February 2, 2017 at 8:51 a.m., Twitter replied to the
        second report Ms. Dehen submitted for Impersonation (Case # 50854043),

3       with the following:

4           Thanks for bringing this to our attention.  Parody, newsfeed,
            commentary and fan accounts are permitted on Twitter so long as

5           they comply with our policy for such accounts.  In response to your
            complaint, we're providing the user with instructions on how to

6           comply with our policy.  Please allow 48 hours from the receipt of
            this email if you'd like to file a follow-up complaint about the

7           account.  Note that Twitter will not proactively monitor the account,
            but will respond to all valid follow-up complaints.

8       *See* Exhibit 51.

9       125.   After receiving Plaintiff's second Impersonation Request, it

10      took Twitter more than 12 additional hours to suspend the tweets on the

11      account, which also could have been due in part or in whole to the fact that

12      Plaintiff had already commenced this action, as Plaintiff found her initial

13      complaint posted on Twitter the day prior, February 2, 2017.  *See* Exhibits

14      72-73.

15      126.   Ms. Dehen checked Twitter around 5 a.m. on February 3,

16      2017, and the offending account was still active.

17      127.   When Ms. Dehen checked the account again around 10 a.m.

18      on February 3, 2017, the account was disabled with the main profile photo

19      still visible and the account still accessible through a search on Twitter.

20      128.   The main account page stayed active for days following the

21      disabling of the tweets.  Days later, Plaintiff noticed the account was taken

22      down altogether.

23      129.   Twitter is in a better position than Ms. Dehen to present to the

24      Court the exact timeframe of the creation and disabling of the defaming

25      Twitter account through discovery because that information is now

26      unavailable to Plaintiff.

27

28

SECOND AMENDED COMPLAINT         No.: 17-cv-00198-LAB-WVG

130. Plaintiff can and will show monetary damages as well as reputational and emotional damages, in addition to the statutory and punitive damages she is entitled under the law. For example, Plaintiff was so intimidated, frightened and ashamed in the immediate days after finding the offending Twitter account that she missed an attorney networking event which she was supposed to be a volunteer witness for the week of 1/31/17. *Please see* Exhibit 94.

Ms. Dehen tweeted and continues to tweet to President Donald J. Trump all the time. Ms. Dehen literally only started using Twitter again because of Mr. President Donald J. Trump (then Presidential Candidate). The fact that John Doe tweeted damaging tweets to Mr. Donald J. Trump is significantly more damaging than the heinous nature of the illegal account to begin with because Plaintiff has been working towards working with Mr. President Donald J. Trump since he announced his presidential campaign in 2015. The amount of damages Plaintiff is entitled is not to be taken lightly, especially considering the fact Mr. President Donald J. Trump is a billionaire.

### RELEVANT FACTS AFTER COMMENCING SUIT

131. On February 1, 2017, Plaintiff Ms. Dehen rushed to file suit out of fear for her safety and well-being due to the aforementioned terroristic behavior, including threats to her personal safety and the safety of Ms. Dehen's dog, Mitty, in order to ensure there was in fact a federal record started somewhere, as Ms. Dehen previously thought the FBI was taking care of it but became worried the FBI did not have the threat under control as Ms. Dehen was still being subjected to escalating illegal threatening conduct continuing to harm her.

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

132.   On February 2, 2017, Ms. Dehen's initial complaint she filed under duress went public to her surprise. Ms. Dehen became apprised of the fact that her complaint went public when she received harassing messages and tweets on Twitter in response to her lawsuit. Plaintiff requests the record to reflect that the Twitter account in question with domain @TiffanyDehen was still public at this time that her initial complaint was public, and was only taken down by Twitter *after* a copy of Ms. Dehen's initial complaint was all over Twitter.

133.   On February 2, 2017, out of continued fear for her personal safety, Ms. Dehen went straight to Federal Court to attempt to be seen by the Judge. Unsuccessful, Ms. Dehen left a rushed note for the Judge under duress. Ms. Dehen then went straight to the Federal Bureau of Investigation and refused to leave the premises until an agent came down to notate the new information pertaining to a case which Ms. Dehen thought was ongoing with the FBI regarding the aforementioned terroristic threats to Ms. Dehen personally and to the United States. The FBI made clear to Ms. Dehen that in spite of the new intel revealing continued threats and harassment, the bureau was still under no duty whatsoever to disclose any updates regarding the ongoing investigation, or Ms. Dehen's safety, to Ms. Dehen, unless her name was picked up as "terrorism chatter" by "known terrorists".

134.   After the February 2, 2017 meeting with the FBI, Ms. Dehen noticed Mohammed's Instagram account (the student who self-proclaimed himself to be an enemy combatant of the United States, *i.e.,* in an ISIS Sleeper Cell) was finally taken down.

135.   On February 3, 2017, the day after Ms. Dehen's initial complaint went public, Mr. Mike Masnick with Tech Dirt published a

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

biased negative news article on Ms. Dehen without the correct facts and
without any attempt whatsoever by Mr. Masnick to contact Ms. Dehen for
facts. *Please see*
https://www.techdirt.com/articles/20170202/16511636619/recent-law-
school-grad-sues-twitter-because-someone-made-parody-twitter-
account.shtml.

136.   On February 6, 2017, four days after Ms. Dehen's initial
complaint went public, Mr. Dorian Hargrove with the San Diego Reader
published an article on Ms. Dehen's initial filing without any attempt to
reach out to Ms. Dehen for comment. *Please see*
https://www.sandiegoreader.com/news/2017/feb/06/ticker-fake-twitter-
account-prompts-lawsuit/#.

137.   On February 9, 2017, seven days after Ms. Dehen's initial
complaint went public, Ms. Kristina Davis with the San Diego Union
Tribune published an article on Ms. Dehen's initial filing without any
attempt to reach out to Ms. Dehen for comment. *Please see*
http://www.sandiegouniontribune.com/news/courts/sd-me-twitter-lawsuit-
20170209-story.html.

138.   On February 17, 2017, Ms. Dehen's friend helped her create a
website using the domain www.TiffanyDehen.com, where she made clear
she was not backing down with her lawsuit.

139.   On February 17, 2017, Ms. Dehen received a letter from
"Adolf hitter" with the email address Mod@aol.com and phone number of
8585676545 at 8:07:24 PM that said, "Heil hitter u racist dumb broad".
*Please see* Exhibit 74.

140.   On February 18, 2017 at 9:38 a.m., www.TiffanyDehen.com
had 4444 views. *Please see* Exhibit 75.

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

141.   On February 18, 2017 at 10:53:21 a.m., a John Doe claiming the name "Anon" with the email address anon@anon.co sent Ms. Dehen a message through her website contact that stated the following:

You are seriously an idiot.  It's called the 1st amendment. Maybe your law school allows idiots in, maybe it's just you.  The account said parody.  Good luck finding an attorney willing to pursue such a frivolous claim.  Makes sense that you supported Trump; which is much different than just voting for the idiot.  Your shit-stained eyes can't tell parody from defamation with a disclaimer!  Maybe get your head out of your ass? --An IP Attorney

*Please see* Exhibit 76.

142.   On February 20, 2017, 18 days after Plaintiff Ms. Dehen's initial complaint went public, Ms. Dehen was involved in a serious automobile collision in Pacific Beach that totaled her car and left her with serious back and neck injuries, for which she sought medical treatment for almost a year, and continues to seek alternative pain management treatments. *Please see* Exhibits 59, 77 - 82.  The San Diego Police Department refused to record an incident report regarding the accident, even after requested by Ms. Dehen. *Please see* Exhibits 81 & 82.

143.   On February 21, 2017, Ms. Dehen, in excruciating back and neck pain, went to the San Diego Police Department to again, request for them to file a police report regarding the serious collision the day prior. San Diego Police Department refused.  Ms. Dehen called the FBI outside of the Police Department and relayed all of the information regarding the automobile collision to the Bureau, out of fear and suspicion that the accident was intentional and related to either the underlying threatening terroristic behavior or the freshly filed federal complaint Ms. Dehen filed 19 days prior, or both.  Plaintiff Ms. Dehen respectfully requests the Court

1    to compel from the FBI a copy of the recording of her phone call to the

2    Bureau on February 21, 2017 to enter into evidence.

3         144.   On February 22, 2017, a professor from USD reached out to

4    Ms. Dehen via the contact form on her website.

5         145.   On February 24, 2017 at 10:35:38 a.m., a Mr. John Roberts,

6    C.J. with the claimed email address of Roberts@supremecourt.gov and

7    phone number of 202-228-7343 sent a message to Ms. Dehen through her

8    website contact form that said the following:

9         You do realize that you will never get a legal job after filing
     that complaint? The complaint demonstrates that you learned nothing in
10    law school. Nothing. It also demonstrates that you are many sandwiches
     short of a picnic basket. Seek therapy.
11
         *Please see* Exhibit 83.
12
         146.   On February 24, 2017 at 11:37:35 a.m. a Mr. Ben Hayes with
13
     the email address bthayes125@gmail.com and phone number 434-284-
14
     3221 sent a message to Ms. Dehen through her website contact form that
15
     said the following:
16
         Hello Ms. Dehen, Your lawsuit came to my attention through
17    the blog, Above the Law. In reading it, one thing in particular caught my
     eye. I was just curious if you are now aware that Adolf Hitler was not a
18    "socialist communist" dictator. He was the leader of the Nazi party, which
     was National Socialist Democratic German Workers Party. There are pretty
19    significant differences in the two, and I would be happy to send resources
     to aid in your understanding, but I am first genuinely curious to see if you
20    know this or not. Best, Ben.
21
22       *Please see* Exhibit 84.
23       147.   On February 28, 2017, William Vogeler, Esq. with Find Law
24    published a biased negative news article on Plaintiff Ms. Dehen without the
25    correct facts and without any attempt whatsoever by Mr. Vogeler to reach
26    out to Ms. Dehen for facts. *Please see*
27
28
                                      36
     ─────────────────────────────────────────────
     SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

http://blogs.findlaw.com/greedy_associates/2017/02/jd-sues-twitter-and-
her-alma-mater.html?utm_source=dlvr.it&utm_medium=twitter.

148.   On March 25, 2017, a second professor from USD reached out to Ms. Dehen via the contact form on her website.

149.   While Ms. Dehen would like to believe that the two aforementioned professors who reached out to Ms. Dehen did so out of fondness for Ms. Dehen as their student, in light of the surrounding circumstances Ms. Dehen chose to be cautious.  Ms. Dehen has not communicated with either of the two professors who reached out to her about any of the events at school leading up to this cause of action.  After they reached out to Ms. Dehen, she decided not to talk to them directly regarding the case or any claims against USD in order not to taint the evidence since both professors would have testimony that Ms. Dehen alleges shed light on the illegal conduct complained of herein.

150.   Ms. Dehen asked the FBI to reach out to the first professor during her home interview with the FBI because Ms. Dehen was briefly enrolled in a class taught by this professor in which the student who declared himself to be an enemy combatant of the United States was also a student (before he made the alarming statements to Ms. Dehen).  In this class, as Ms. Dehen relayed to the FBI, she specifically remembers this student going off on an Islam rant, though did not have any reason *at the time* to be alarmed by the statements made in class.

151.   As for the second professor who reached out to Ms. Dehen, Ms. Dehen alleges that immediately following the university sponsored event during which the student proclaimed himself to be an enemy combatant of the United States, Ms. Dehen walked into class late with one other student from the Dean's Mixer and was yelled at by this particular

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

professor.  This was a memorable evening for Ms. Dehen since she had just
been told by a fellow law student that he was "in an ISIS sleeper cell"
"until he's activated" and then was yelled at by one of her favorite
professors for being late which was out of the ordinary because Ms. Dehen
was never late to this class.  Ms. Dehen did not take hardly any notes
during this class period completely out of character for Ms. Dehen and
appeared visibly distraught throughout the entire class period.  This
particular professor approached Ms. Dehen the following class to
apologize, conceding the fact that he had been harsh on her especially since
her conduct was out of the norm for Ms. Dehen.

152.  On May 9, 2017 at 6:04:59 p.m., a John Doe claiming the
name "Sad!" with an email address of johnsmith@yahoo.com wrote the
following to Plaintiff Ms. Dehen through her website contact form:

> Fuck off.  You're a sad excuse for a person if you support that
> asswipe of a President, and a terrible excuse for a wanna-be lawyer.  You
> think you stand for the constitution and 'Merican values?  What a laugh- I
> would be my LIFE on the fact that you couldn't beat me in court regarding
> any aspect of our Constitution.  Enjoy these words, from someone who's
> actually a member of the bar in their state.  Idiot.

*Please see* Exhibit 85.

153.  On June 22, 2017, Mr. Vogeler published a second biased
negative news article on Ms. Dehen.  *Please see*
http://blogs.findlaw.com/greedy_associates/2017/06/law-grad-sues-her-
law-school-and-twitter.html#more.

154.  On June 23, 2017, Plaintiff Ms. Dehen submitted documents
related to this case with the Southern District of California, where she met
an elderly woman in a wheelchair whom she helped wheel downstairs and
ate lunch with.  *Please see* Exhibit 88.  Ms. Dehen became uncomfortable
when it appeared as though this woman was interested in learning details

38

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

about Ms. Dehen's case not yet disclosed and tried pushing Ms. Dehen to work on her case at her "office" in downtown San Diego. After Ms. Dehen left the presence of this woman, the woman contacted Ms. Dehen about ten or more times the next two days, to the point where Ms. Dehen had to block this woman from further contact via blocking her phone number. *Please see* Exhibits 89 – 92. Plaintiff alleges the fact relevant that this woman's daughter works for Jones Day. *Please see* Exhibit 93. Plaintiff alleges collusion between Perkins Coie LLP and this woman in an attempt to extort and intimidate Ms. Dehen because Ms. Dehen alleges this woman was sent as an agent of Perkins Coie to harass and intimidate Ms. Dehen from pursuing her claims in court.

155. On or around December 11, 2017, Plaintiff Ms. Dehen was contacted by a reporter with Bloomberg News, who asked Ms. Dehen to send her a copy of her second amended complaint before she filed it with the Court. *Please see* Exhibit 86.

On August 17, 2018, a Twitter user by the handle @That_AC "That Anonymous Coward – As seen on several dockets." who has been incessantly harassing Ms. Dehen since June 22, 2017 (*please see* Exhibit xxx), tweeted, "'MERIKA!" *Please see* Exhibit xxx.

156. Plaintiff respectfully requests the record reflect she reserves the right to raise any and all issues related to collusion, intimidation, extortion, and other claims against all named and unnamed defendants should discovery reveal direct evidence of such.

## COMMUNICATIONS DECENCY ACT § 230

Section 230 of the Communications Decency Act ("CDA") begins with a statement of findings and a statement of policy, in subsections 230(a) and (b), respectively. *See* 47 U.S.C. § 230.

The findings are rather general, but they illustrate Congress' appreciation for the Internet as a "forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad adventures for intellectual activity," which "ha[s] flourished, to the benefit of all Americans, with a minimum of government regulation." *See* 47 U.S.C. § 230(a)(3)-(4).

Congress further expressed, "[i]ncreasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services." *See* 47 U.S.C. § 230(a)(5).

CDA § 230 provides, in relevant part, as follows:

(c) Protection for "Good Samaritan" blocking and screening of offensive material.
(1) Treatment of publisher or speaker.  No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
(2) Civil liability.  No provider or user of an interactive computer service shall be held liable on account of—
(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1) [subparagraph (A)].

*See* 47 U.S.C. § 230(c).

Section 230 further provides the following in relevant part:

Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section.  No cause of action may be brought and no liability

40

may be imposed under any State or local law that is
inconsistent with this section.

*Id.* At § 230(e)(3).

Section 230 further states in relevant part as follows:

(1) Internet.  The term "Internet" means the international computer
network of both Federal and non-Federal interoperable packet
switched data networks.
(2) Interactive Computer Service.  The term "interactive computer
service" means any information service, system, or access software
provider that provides or enables computer access by multiple users
to a computer server, including specifically a service or system that
provides access to the Internet and such systems operated or services
offered by libraries or educational institutions.
(3) Information Content Provider.  The term "information content
provider" means any person or entity that is responsible, in whole or
in part, for the creation or development of information provided
through the Internet or any other interactive computer service.
(4) Access software provider.  The term "access software provider"
means a provider of software (including client or server software), or
enabling tools that do any one or more of the following:
(A) filter, screen, allow, or disallow content;
(B) pick, choose, analyze, or digest content; or
(C) transmit, receive, display, forward, cache, search, subset,
organize, reorganize, or translate content.

*See* 47 U.S.C. § 230(f).

## CDA § 230 IS UNCONSTITUTIONAL

157.   Perkins Coie LLP, on behalf of Twitter, asserted CDA § 230

bars jurisdiction of United States Federal District Court over this case,

*please see* Perkins Coie LLP's Answer to Plaintiff's First Amended

Complaint on behalf of Twitter Inc.  The fact that Perkins Coie LLP already

tried to assert CDA § 230 as a bar to Plaintiff's claims against Twitter

merely provides further evidence in favor of Plaintiff's argument that CDA

41

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1  § 230 is unconstitutional and needs to be stricken down by this Court

2  immediately.

3      158.   CDA § 230 does not bar claims arising from breach of

4  contract, *please see Baldino's Lock & Key Service, Inc. v. Google LLC*,

5  2018 WL 400755 at *1 (D.D.C., 2018), nor does CDA § 230 bar claims

6  arising from promissory estoppel, *please see Barnes v. Yahoo!*, 570 F.3d

7  1096 (9th Cir. 2009).  Contrary to Perkins Coie LLP's absurd assertion,

8  Plaintiff's claims against Defendant Twitter are not barred by CDA § 230

9  as Plaintiff alleges claims against Defendant Twitter for actions taken by

10  Twitter, not that of a third party, which consist of fraud in the form of

11  fraudulent misrepresentation to Plaintiff personally on more than one

12  occasion, indicating a pattern of racketeering in violation of 18 U.S.C. §

13  1962, further explained below.  Twitter then attempted to intimidate and

14  extort Ms. Dehen into dropping her legal claims against Twitter, again, not

15  considered activity of a third party for which CDA § 230 is used to bar.

16                    **CDA § 230 Exceeds Legislative Power**

17      159.   Plaintiff respectfully requests that the record reflect she

18  reserves the right to argue the CDA § 230 exceeds legislative power should

19  this Court not strike down CDA § 230 as unconstitutional for violating the

20  First Amendment.

21                    **CDA § 230 Violates The First Amendment**

22      160.   Plaintiff hereby incorporates by reference all stated paragraphs

23  as though fully set forth herein.

24      161.   As the plaintiffs in *American Freedom Defense Initiative, et*

25  *al., v. Loretta Lynch* 2016 WL 3881116 (D.D.C.) argue, Plaintiff argues

26  CDA § 230 is in violation of the First Amendment of the United States

27  Constitution.  Should this case uphold the constitutionality of CDA § 230,

28

                                        42

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1    Plaintiff reserves the right to bring claims against Twitter and Perkins Coie,

2    LLP for First Amendment violations against Plaintiff.

3        162.   Section 230 of the CDA, facially and as applied, is a content

4    and viewpoint based restriction on speech in violation of the First

5    Amendment.

6        163.   Section 230 of the CDA, facially and as applied, is vague and

7    overbroad and lacks any objective criteria for suppressing speech in

8    violation of the First Amendment. In *O'Kroley v. Fastcase, Inc.,* 831 F.3d

9    352, 355 (6th Cir. 2016), the Sixth Circuit reasoned that "the CDA

10   immunizes a search engine's 'automated editorial acts.'" *Baldino's Lock &*

11   *Key Service, Inc. v. Google LLC,* 2018 WL 400755 at *5 (D.D.C., 2018)

12   citing *O'Kroley v. Fastcase, Inc.,* 831 F.3d 352, 355 (6th Cir. 2016).

13   Plaintiff argues 'automated editorial acts' could and does include editorial

14   acts which are discriminatory against a certain viewpoint based on the

15   content in violation of the First Amendment, such as censorship alleged

16   against Twitter, YouTube, Facebook, Google, whether it be intentional or

17   through their algorithms.

18       164.   The Sixth Circuit continued, "[w]hen a search engine re-

19   publishes information originally created by a third party, CDA immunity

20   applies even when confusion may result." *Baldino's Lock & Key Service,*

21   *Inc. v. Google LLC,* 2018 WL 400755 at *5 (D.D.C., 2018) citing *O'Kroley*

22   *v. Fastcase, Inc.,* 831 F.3d 352, 355 (6th Cir. 2016). In "common sense

23   terms", no companies should be given free reign over censoring American

24   citizens' freedom of speech in exchange for no risk of liability, extending

25   all the way to barring any potential causes of action. No policy interest

26   here outweighs the importance of free speech. Plaintiff alleges her freedom

27   of speech has been censored and suppressed via intimidation through

28

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

express terroristic threats made against herself and her dog which was then
exacerbated by Twitter's fraudulent misrepresentations and failure to
uphold its contractual obligations.

165.   Section 230 of the CDA, facially and as applied, permits
Twitter and similar companies such as Facebook, YouTube and Google to
engage in government-sanctioned discrimination and censorship of free
speech in violation of the First Amendment, such as alleged in *American
Freedom Defense Initiative, et al., v. Loretta Lynch* 2016 WL 3881116
(D.D.C.). These same companies are alleged to make similar fraudulent
misrepresentations as Twitter without enforcing their expressly stated
promises, such as alleged against YouTube for example in *Prager
University v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939,
(N.D. Cal. Mar. 26, 2018).

166.   Section 230 of the CDA, facially and as applied, permits
Twitter and similar companies such as Facebook, YouTube and Google to
engage in government-sanctioned discrimination that would otherwise
violate California Civil Code § 51. *Please see American Freedom Defense
Initiative, et al., v. Loretta Lynch* 2016 WL 3881116 (D.D.C.).

167.   Section 230 of the CDA, facially and as applied, permits
Twitter and similar companies such as Facebook, YouTube and Google to
engage in government-sanctioned censorship of speech that would
otherwise violate Article I, section 2 of the California Constitution. *Id.*

168.   Section 230 of the CDA, facially and as applied, confers broad
powers of censorship upon Twitter and similar companies like Facebook,
YouTube and Google officials, who can censor constitutionally protected
speech and engage in discriminatory business practices with impunity by

1    virtue of this power conferred by the federal government in violation of the

2    First Amendment. *Id.*

3       169.   Section 230 of the CDA, facially and as applied, grants Twitter

4    and similar companies like Facebook, YouTube and Google and their

5    officers, agents, and employees unbridled discretion to censor speech such

6    that their decisions to limit speech are not constrained by objective criteria,

7    but may rest on ambiguous and subjective reasons in violation of the First

8    Amendment. *Id.*

9       170.   Plaintiff argues if large online companies such as Twitter,

10   Facebook, and Google don't have the manpower to appropriately respond

11   to illegal conduct harming American citizens as *they explicitly promise to*

12   *do*, these international companies should not be able to use their large size

13   as an excuse or shield protecting them from civil liability.  Plaintiff does

14   not take issue with the size of the company, rather Plaintiff takes issue with

15   these companies citing impossibility as a valid concern contributing to their

16   unfair unilateral unconstitutional protection afforded by the CDA.

17      171.   The United States Constitution does not guarantee freedom of

18   speech to *citizens of the world,* or any of the powers vested therein.  The

19   United States Constitution grants freedom of speech to <u>citizens of the</u>

20   <u>United States</u>. *Please see* U.S. Const. Am. 1.  As just a few examples,

21   Facebook claiming protection of CDA § 230 used the safe harbor to bar

22   allegations that Facebook allowed Palestinian terrorist organization and its

23   members to operate accounts to further their aims. *Please see Cohen v.*

24   *Facebook, Inc.,* 252 F. Supp. 3d 140, 146 (E.D.N.Y. 2017).  Google

25   successfully asserted immunity under CDA § 230 against claims brought

26   by family members of deceased victim of terrorist attack under Anti-

27   Terrorism Act alleging Google provided material support to ISIS.  *Please*

28

45

SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

1     *see Gonzalez v. Google, Inc.,* 282 F. Supp. 3d 1150 (N.D. Cal. 2017).

2     American citizens' freedom of speech are being suppressed for their

3     content and viewpoint by these same companies under CDA § 230.  *Please*

4     *see Green v. YouTube Inc. et al.,* No. 18-CV-203-PB (D.N.H. 2018).

5         172.   The unconstitutional CDA is wasting precious judicial

6     resources.  There are countless cases pending before various federal and

7     state courts, in addition to numerous published cases alleging wrongdoing

8     of companies which fall under the broad scope of the CDA, a fraction of

9     which are cited in this complaint.  On Westlaw there are 7,000 cases that

10    cite to CDA § 230.  *Please see* Exhibit 87.

11        Please see below a few examples of how the big tech companies

12    claiming protection of the CDA § 230 are censoring American citizens in

13    direct violation of the First Amendment through government action being

14    the enactment of the CDA § 230 (list compiled by Mr. Green and located at

15    www.antischool.us/single-post/2018/08/17/Censorship-of-Conservative-

16    Voices-and-the-Social-Media-Monopoly):

17        On June 28, 2016, *Breitbart* reported *Death Threats Made Towards*

18    *Republican Senators Remain On Twitter For Weeks Without Deletion.*

19    *Please see* https://www.breitbart.com/tech/2016/06/28/death-threats-made-

20    to-republican-senators-remain-for-weeks/.

21        On July 19, 2016, *Breitbart Tech* editor Milo Yiannopoulos was

22    permanently suspended from Twitter minutes before 'Gays For Trump'

23    party at the Republican National Convention.  *Please see*

24    https://www.breitbart.com/milo/2016/07/19/breaking-milo-suspended-

25    twitter-20-minutes-party/.

26        On October 29, 2017, *DailyMail.com* reported *Trump ally Roger*

27    *Stone banned from Twitter FOR LIFE after attacking CNN anchors Don*

28

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1  *Lemon and Jake Tapper over the Russia probe.  Please see*
2  http://www.dailymail.co.uk/news/article-5028221/Trump-ally-Roger-
3  Stone-banned-Twitter-LIFE.html.
4      On November 3, 2017, Mr. President Donald J. Trump's Twitter
5  account was taken down by an employee on their last day.  *Please see*
6  https://www.express.co.uk/news/world/874903/Donald-Trump-Twitter-
7  down-human-error-social-media-President-webiste.
8      On January 11, 2018, *Project Veritas* exposed Twitter "shadow-
9  banning" pro-Trump content in an undercover video investigation where
10  eight current and former Twitter employees are on camera explaining steps
11  the social media giant is taking to censor political content that they don't
12  like.  *Please see* https://www.youtube.com/watch?v=64gTjdUrDFQ.
13      On April 5, 2018, *The Gateway Pundit* reported *Conservative*
14  *Comedian Owen Benjamin Banned From Twitter & YouTube: "my ability*
15  *to make an income has been revoked."  Please see*
16  https://www.thegatewaypundit.com/2018/04/conservative-comedian-owen-
17  benjamin-banned-from-twitter-youtube-my-ability-to-make-an-income-
18  has-been-revoked/.
19      On April 13, 2018, *Breitbart* reported *Conservative Street Artist*
20  *'SABO' Banned From Twitter.  Please see*
21  https://www.breitbart.com/tech/2018/04/13/conservative-street-artist-sabo-
22  banned-from-twitter/.
23      On August 6, 2018, *Fox News* reported *Twitter apologizes after*
24  *conservative commentator Candace Owens was briefly locked out of her*
25  *account.  Please see*
26  http://www.foxnews.com/entertainment/2018/08/06/twitter-apologizes-
27
28

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1   after-conservative-commentator-candace-owens-was-briefly-locked-out-

2   her-account.html.

3        On August 9, 2018, *Infowars.com* reported *Apple Says It Is*

4   *'Monitoring' The Infowars App; Threatens To Censor If It Becomes*

5   *'Harmful'*, "App has shot to number one on the charts after big tech

6   censorship". *Please see* https://www.newswars.com/apple-says-it-is-

7   monitoring-the-infowars-app-threatens-to-censor-if-it-becomes-harmful/.

8        On August 10, 2018, *Breitbart* reported *Twitter Bans Conservative*

9   *Commentator Gavin McInnes*. *Please see*

10  https://www.breitbart.com/tech/2018/08/10/twitter-bans-conservative-

11  commentator-gavin-mcinnes/.

12       On August 15, 2018, *NewsWars.com*, an *InfoWars.com* outlet with

13  Mr. Alex Jones, reported, *Alex Jones suspended from Twitter after tweet*

14  *calling to end censorship*, "according to Twitter, a tweet by Jones one day

15  earlier was considered to be "targeted harassment."". *Please see*

16  https://www.newswars.com/alex-jones-suspended-from-twitter-after-tweet-

17  calling-to-end-censorship/ and https://www.rt.com/usa/435974-alex-jones-

18  banned-twitter/.

19       On August 16, 2018, *Breitbart* reported *Twitter Purges Accounts*

20  *Across The Platform – Again*. *Please see*

21  https://www.breitbart.com/tech/2018/08/16/twitter-purges-accounts-across-

22  the-platform-again/.

23       On August 16, 2018, *NewsWars.com* reported in *From 'menace' to*

24  *assets: Soros now buying social media shares* that, "News of Soros's

25  acquisitions have raised suspicions in circles that have long seen Soros as a

26  foe of copyrights". *Please see* https://www.newswars.com/from-menace-

27  to-assets-soros-now-buying-social-media-shares/.  The article continues,

28

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1   "Months after denouncing social media as a "menace to society,"

2   controversial billionaire George Soros is again investing into Facebook,

3   Twitter and streaming services Spotify and Pandora, while scaling back his

4   Google holdings." *Id.*

5         On August 18, 2018, *The Gateway Pundit* reported *TRUMP GOES*

6   *OFF On Social Media 'Censorship' and 'Discrimination' Against*

7   *Conservative Voices.*  *Please see*

8   https://www.thegatewaypundit.com/2018/08/trump-goes-off-on-social-

9   media-censorship-and-discrimination-against-conservative-voices/.

10        On August 18, 2018, *Diamond and Silk Inc.* reported Facebook

11  censors pro-Trump Diamond and Silk again and blocks ad for upcoming

12  movie. *Please see*

13  https://www.diamondandsilkinc.com/tabletalknews/2018/8/18/facebook-

14  censors-diamond-and-silk-again-blocks-ad-for-upcoming-movie.

15        On August 19, 2018, *Zero Hedge* reported Twitter CEO Jack Dorsey

16  admitted to *CNN*'s Brian Stelter (fake news) on Saturday that Twitter

17  employees have "more left-leaning" bias.  *Please see*

18  https://www.zerohedge.com/news/2018-08-19/shocking-admission-jack-

19  dorsey-admits-twitters-left-leaning-bias.

20        On Sunday, August 19, 2018, *NewsWars.com* reported *How the Left*

21  *Is Outsourcing Censorship of the Internet,* "So liberals have outsourced

22  censorship of the internet to the tech titans of Silicon Valley". *Please see*

23  https://www.newswars.com/how-the-left-is-outsourcing-censorship-of-the-

24  internet/.

25        Further evidence of bias by Twitter, made possible by government

26  action via enactment of the CDA § 230, includes the following:

27

28

49

SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

On June 6, 2018, *The Daily Caller* reported *Facebook, Amazon, Google and Twitter All Work With Left-Wing SPLC* (Southern Poverty Law Center). *Please see* http://dailycaller.com/2018/06/06/splc-partner-google-facebook-amazon/.

## IF THIS COURT ERRONEOUSLY HOLDS CDA § 230 CONSTITUTIONAL, IT DOES NOT APPLY IN THIS CASE

173.   "[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." *Baldino's Lock & Key Service, Inc. v. Google LLC*, 2018 WL 400755 (D.D.C., 2018), quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).  Plaintiff avers that the operating word in that sentence is "neutral," of which Plaintiff alleges Twitter is not.  Plaintiff alleges Twitter does not provide a neutral means by which third parties can post information of their own independent choosing online, but Twitter is actually quite the opposite.

174.   "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1102 (9th Cir. 2009).  (A publisher is one who "reviews material submitted for publication, perhaps edits it for style or technical fluency, and then decides whether to publish it.");  *Doe v. Internet Brands, Inc.,* 824 F.3d 846, 852 (9th Cir. 2016) ("Jane Doe's failure to warn claim has nothing to do with Internet Brands' efforts, or lack thereof, to edit, monitor or remove user generated content.").

Plaintiff provides the following evidence, and can provide additional evidence, proving that Twitter, Inc. is reviewing, editing, and deciding whether to publish or to withdraw from publication third-party

50

175.   Contrary to Perkins Coie LLP's claims on behalf of Twitter in response to Plaintiff's First Amended Complaint, "Plaintiff's claims target Twitter's exercise of editorial discretion and improperly attempt to hold Twitter liable for the conduct of the account creator," (*see generally* Twitter's Motion to Dismiss Plaintiff's First Amended Complaint), Plaintiff's claims against Twitter do not attempt to hold Twitter liable for the conduct of the account creator.

176.   As explained further below, Plaintiff's claims against Twitter attempt to hold Twitter liable for Twitter's conduct including, but not limited to, express contractual obligations and explicit promises, and not that of the account creator, John Doe.  Plaintiff also alleges fraud, conspiracy to commit fraud, and violations of the RICO act against Twitter, none of which are barred by the CDA.

### CDA § 230 Does Not Bar Claims Brought Under The Federal RICO Act

177.   Claims of Twitter engaging in a criminal enterprise under the definition of the RICO act are not barred by CDA § 230 because operating a criminal enterprise in violation of the RICO Act is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Breach of Contract Claims

178.   Twitter breaching its contract with Ms. Dehen is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

### CDA § 230 Does Not Bar Fraud Claims

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

179. Twitter engaging in fraud is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

180. Similarly, Twitter fraudulently misrepresenting in its posted Terms of Use is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

**CDA § 230 Does Not Bar Extortion Claims**

181. Twitter engaging in extortion is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets.

**CDA § 230 Does Not Bar Conspiracy Claims**

182. Twitter engaging in a criminal and/or civil conspiracy is not publishing under these definitions because it does not involve reviewing, editing or deciding whether to publish or withdraw tweets as a publisher.

183. Plaintiff further reserves the right to allege that Twitter illegally conspired as a co-conspirator in the fraudulent scheme amounting to a violation of the Sherman Act, a conspiracy in the restraint of trade in interstate commerce, with both Perkins Coie LLP and social media companies including, but not limited to, Facebook and Google.

**SHERMAN ANTITRUST ACT**

15 U.S.C. § 1 provides the following:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not

52

exceeding 10 years, or by both said punishments, in the discretion of the court.

See 15 U.S.C. § 1

## FIRST CAUSE OF ACTION
### Willful Copyright Infringement
### Against John Doe(s)

184.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

185.   Plaintiff is, and at all relevant times has been, the legal copyright owner, under U.S. Copyright Law, 17 U.S.C. § 201(a), of the copyrighted photographs referenced above.   Registration Numbers have been officially issued by the U.S. Copyright Office of the copyright registrations identified in Exhibits 68, 69, 70, and 71 attached hereto, which is the subject of a valid Certificate of Copyright Registration issued by the United States Copyright Office.

186.   Registration is a prerequisite to filing a lawsuit for copyright infringement involving a U.S. work. *See* 17 U.S.C. § 411(a); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 132 S. Ct. 1962, 1977 (2014) ("Although registration is 'permissive,' both the certificate and the original work must be on file with the Copyright Office before a copyright owner can sue for infringement."); *Alaska Stock, LLC. v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 678 (9th Cir. 2014) ("Though an owner has property rights without registration, he needs to register the copyright to sue for infringement.").

187.   Plaintiff submitted federal copyright registration applications for all four photographs on 03/31/2017 and 04/01/2017, which she is

entitled to do under 17 U.S.C. § 410 within five years after first publication of the works.

188.   Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act is the exclusive right to reproduce the Copyrighted Works and to distribute the Copyrighted Works to the public.

189.   Plaintiff is informed and believes and thereon alleges that John Doe(s), without the permission or consent of Plaintiff, produced the six Infringing Works, which are substantially similar, not to mention extremely damaging, reproductions of the four Copyrighted Works referenced above.

190.   Plaintiff is informed and believes and thereon alleges that Doe(s) distributed the Copyrighted Works to the public, and/or made the Copyrighted Works available for distribution to others, and publicly displayed the Infringing Works, including via the Twitter account @tiffanydehen, on Twitter, a social media website with over 313 million active monthly users.

191.   Through the conduct alleged herein, Doe(s) directly infringed Plaintiff's rights in the Copyrighted Works, including by reproducing, distributing, and publicly displaying the Copyrighted Works, in violation of Sections 106 and 501 of the Copyright Act 17 U.S.C. §§ 106 and 501.

192.   Defendant Doe(s)'s actions constitute direct infringement of Plaintiff's copyrights and exclusive rights under U.S. Copyright Law.

193.   Doe(s)'s acts of infringement are willful, intentional and purposeful, in reckless disregard of and with indifference to Plaintiff's rights.

194.   Doe(s) is/are not entitled to the affirmative defense of fair use in this case because Doe(s)'s use of the infringing works is in the same market as Plaintiff and actually damaging Plaintiff's economic prospects in

that market. Doe(s)'s use of the Copyrighted Works does not constitute social commentary, criticism, or news reporting because Doe(s) used Ms. Dehen's legal name as the author of the posts, leading the public to believe Ms. Dehen was responsible for the Twitter account. 124. The artistic nature of the Copyrighted Works weighs against fair use, as do the facts that, Doe(s) used the Copyrighted Works in their entirety and Doe's use is negatively impacting the potential market for the Copyrighted Works.

195. By means of the actions complained of herein, Doe(s) willfully infringed and may continue to infringe Plaintiff's Copyrighted Works outlined above, by publishing, reproducing, copying, distributing, and using, in whole or in part, Plaintiff's Copyrighted Works.

196. As a direct and proximate result of Defendant Doe(s)'s infringement of Plaintiff's copyrights and exclusive rights in the Copyrighted Works under U.S. Copyright Law, Plaintiff is entitled to recover actual damages, pursuant to 17 U.S.C. § 504(b), for her lost profits as a result of Defendant's infringement, in an amount to be proven at trial.

197. Had Plaintiff registered her copyright three days earlier than 04/01/2017 in the work titled, "Christmas MAGA," Plaintiff would further be entitled to statutory damages in an amount to be determined by the trier of fact, attorneys' fees and costs pursuant to 17 U.S.C. §§ 412(c), 504, 505 since the date the infringement began was 01/29/2017. Plaintiff would have also been entitled to an enhancement of her statutory damages award, up to $150,000 for each infringement, pursuant to 17 U.S.C. § 504(c)(2).

198. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

199. Plaintiff is informed and believes and on that basis alleges that unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's rights in the Copyrighted Works and cause Plaintiff irreparable injury that cannot be fully compensated.

200. Therefore, pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct, including, but not limited to, an order prohibiting Defendant Doe(s) from further infringing Plaintiff's copyrights and directing Defendant to destroy the Infringing Works and all identical and substantially similar copies thereof made in violation of Plaintiff's exclusive rights.

## SECOND CAUSE OF ACTION

### Malicious Defamation Through Libel Per Se

### Against John Doe

201. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

202. Doe(s)'s intentional publications by Internet were and are false, unprivileged, have a natural tendency to injure, and cause special damage, and thus constitute defamation per se under California Civil Code sections 44, 45, and under the common law and case law of California.

203. Plaintiff is informed and believes, and thereon alleges, that Doe(s) intentionally created the Twitter account using the domain @tiffanydehen, knowing that he was not in fact, Ms. Dehen, and deliberately posted each one of the aforementioned defaming Tweets.

204. Doe(s) expressly referred to Plaintiff in each Tweet because he used Plaintiff's true and legal name as the username. Further, Defendant

56

used actual photographs of Ms. Dehen to represent Ms. Dehen and retweeted Ms. Dehen's personal Twitter account.

205. Doe(s) claimed to be a parody account of "Republican White Women," yet posted no other tweets from any "Republican White Women" other than Ms. Dehen.

206. Doe(s)'s actions are clearly intentional, as evidenced by the fact that Doe(s) expended a considerable amount of time and effort creating the false Twitter account, following the aforementioned 22 Twitter users, meticulously downloading and altering the 4 copyrighted photos from both Twitter and LinkedIn, publishing the six Infringing Works, and posting the 24 defaming tweets.

207. The defamatory tweets were not privileged.

208. Doe(s) did not engage in a one-time piece of snideness, but rather a campaign against Ms. Dehen with defamatory accusations that tarnish and disparage her and hurt her reputation and economic interests.

209. Doe(s) deliberately published the Infringing Works with the defaming Swastikas drawn in, with the intent to refer to the National Socialist German Workers' Party, evidenced by the fact he followed Adolf Hitler Fuhr through the Twitter account.

210. Plaintiff is informed and believes, and thereon alleges, that the publication by Internet is a communication to the public, and to third parties, who reasonably understood that the defaming tweets and photographs were about Ms. Dehen or posted by Ms. Dehen, and that such third parties further reasonably understood the statements to mean that either Doe(s) or Ms. Dehen wrote the statements in fact, and not merely as a matter of Doe(s)'s opinion.

211.   Doe(s) did not lead the public to believe that the defaming account was a parody of Ms. Dehen, but rather a parody of Republican White Women in general, yet only used Ms. Dehen's true name and only drew Swastikas on Ms. Dehen's photographs, thereby contradicting the true nature of the Twitter account.

212.   Although there were only three followers at the time Ms. Dehen found the account, Ms. Dehen has no way to know how many people actually saw the offending account and various tweets.

213.   The defaming account actually did cause confusion in the marketplace because at least one of Ms. Dehen's actual followers followed the account, @BrittTaylorGOP, who is Ms. Dehen's follower of her personal Twitter account @tiffanysundevil. *See* Exhibit 56.

214.   The representation of Ms. Dehen on the Twitter account is false, as Ms. Dehen is not a supporter of the National Socialist German Workers' Party, nor a supporter of the Ku Klux Klan.

215.   The tweets are not legitimate criticism, they are not parody, they are not joking, and they are not ironic.

216.   The defaming statements are particularly malicious and harmful, as Doe(s)'s attacks actually constitute an attack on an aspect of Ms. Dehen's heritage and Ms. Dehen's late grandfather, ~~Captain~~Retired Colonel John D. Raikos suffered extreme emotional distress the duration of his life from what he saw in the war related to the 83rd Infantry's liberation of Nazi concentration camps.

217.   Further, Doe(s)'s statements have the potential to damage actual professional relationships that exists between Plaintiff and the Tucson Jewish Community Center and between Plaintiff and the State Bar of California.

218.   Had John Doe(s) acted in good faith, a simple Google search of Ms. Dehen would have shown Doe(s) that Ms. Dehen's late grandfather was ~~Captain~~Retired Colonel John D. Raikos, who was awarded the following decorations for his role in the 83rd Infantry of the United States Army in World War II: Combat Infantryman Badge, Silver Star Medal, Bronze Star Medal with Oak Leaf Cluster, Purple Heart with Oak Leaf Cluster, Good Conduct, American Campaign Medal, WWII Victory Medal, and the EAME Campaign Medal with 5 Bronze Stars for the Five Campaigns.   *See*   Exhibit   1   or   visit http://www.normandytothebulge.be/83rd_JRaikos.html.

219.   Plaintiff contends Doe(s)'s actions fall outside the protection of the First Amendment, even for purposes of anonymous speech, which can't be remedied by a simple disclaimer of "parody account," while using Ms. Dehen's true legal name as the username, publishing Ms. Dehen's copyrighted photographs altered with disparaging Swastikas, and expressly suggesting Ms. Dehen is affiliated with the National Socialist German Workers' Party or the Ku Klux Klan.

220.   The defamatory statements Doe(s) published on Twitter were of and concerning Plaintiff, cast Ms. Dehen in a false light, were attacks on her reputation which discouraged members of the public from having a positive opinion of her, and exposed Ms. Dehen to potential verbal, physical, and mental abuse.

221.   The defaming Twitter account is adverse to Plaintiff's profession and business and the defamatory publications foreseeably caused substantial damage to her business, career, reputation and her actual and prospective economic relationships.

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

222. Plaintiff's reputation is subjected to scrutiny in the legal profession, as well as in the Bar application process.

223. The injurious character of the defamatory statements on Twitter is self-evident and constitutes defamation per se.

224. Plaintiff is not required to allege special damages because Doe's statements are defamatory on their face, such that the statements malign the Plaintiff's profession and business.

225. The nature of the Twitter account, related tweets and photographs are so obscene as to lead Plaintiff to allege Doe(s) published the aforementioned tweets maliciously with the intent to cause pain and suffering to Ms. Dehen and to destroy her professional reputation and to cause her to lose clients and job prospects.

226. Doe(s)'s intent to act with malice is evidenced by the injurious nature of each of the tweets, the misspelling on the various tweets and photographs, the fact Doe used Ms. Dehen's true and legal name, and the inherently injurious nature of the Twitter accounts Doe followed, such as the Ku Klux Klan and Adolf Hitler.

227. Further, Doe(s) knew, or should have known, that Ms. Dehen was actively seeking bar admittance and a position in the legal industry, as evidenced on Ms. Dehen's Twitter account and LinkedIn, both of which he deliberately referenced to obtain Ms. Dehen's personal information and photographs. *See* Exhibits 60-61.

228. Upon information and belief, Doe(s) even went to such lengths to create false Facebook accounts and harass Ms. Dehen with several friend requests in an attempt to gain more personal information on Ms. Dehen.

229.   Plaintiff believes the actions by Doe(s) may reduce her chances of passing the bar, which will prevent her from being admitted to the bar, and thus, could limit her prospects in the legal industry.

230.   Plaintiff was in the process of pursuing several business ventures which would rely upon her reputation, and which have been damaged and put on hold by the injury that led to this cause of action, and may even limit the future revenue generated by these business ventures.

231.   Plaintiff's credit has been negatively impacted, which may affect her ability to finance assets and obtain employment, thus potentially negatively impacting her quality of life.

232.   In attempting to defend her name in Court, Plaintiff has been subjected to widespread criticism and condemnation from various members of the legal community, as well as certain classmates, family, friends and acquaintances, in addition to harassment and abuse by some members of the public.

233.   Doe(s)'s statements have not only caused damage to Ms. Dehen's reputation and economic interests, but have also resulted in emotional distress. *See* Seventh Cause of Action below.

234.   As a result of Doe(s)'s conduct, Plaintiff has been damaged in an amount to be proven at trial.

235.   Doe(s)'s intentional and knowing per se defamation of Ms. Dehen constitutes malice and oppression under California Civil Code section 3294, and therefore Plaintiff is entitled to punitive damages against Twitter in an amount sufficient to punish and set an example of him, which amount is to be proven at trial.

## THIRD CAUSE OF ACTION
### Violation of Cal. Penal Code § 528.5

61

**Against John Doe(s)**

236.  Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

237.  Plaintiff alleges Doe(s) is criminally liable under Cal. Penal Code § 528.5, because Doe credibly impersonated Ms. Dehén, an actual person, online, and without Ms. Dehen's consent, for the purposes of harming, intimidating, or threatening her, which pursuant to Cal. Penal Code § 528.5(e), entitles Ms. Dehen to compensatory damages and injunctive relief, as well as other equitable relief because she suffered damage and loss.

238.  Upon information and belief, John Doe(s) engaged in a predatory scheme aimed at harming, humiliating, threatening, and intimidating Plaintiff leading up to and including the injury that led to this cause of action.

239.  Due to the injurious nature of the tweets and photographs, Plaintiff alleges Doe(s) impersonated Ms. Dehen with the intent to cause Ms. Dehen harm to her personal reputation, professional reputation, economic interests, and profession.

**FOURTH CAUSE OF ACTION**

**Rescission For Fraud In Violation of Cal. Civil Code § 1572 or § 1573**

**Against Twitter**

240.  Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

241.  Pursuant to California Civil Code § 1689, an alleged contract may be rescinded if all the parties thereto consent or if the consent of the party rescinding was given by mistake, or obtained through fraud, or exercised by or with the connivance of the party as to whom it rescinds.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

242. Rescission under California Civil Code § 1689 is also appropriate where the purported contract was induced by fraud, misrepresentation, and/or fraudulent misrepresentation, or where there is failure of consideration.

243. On October 9, 2015, Twitter fraudulently misrepresented to Plaintiff that Twitter would investigate reported accounts to determine if the accounts are in violation of the Twitter Rules upon receipt of an impersonation report by Plaintiff.

244. Twitter violated California Civil Code § 1572 by promising to investigate the reported accounts to determine if the accounts are in violation of the Twitter Rules in the Impersonation Policy, without any intention of performing the aforementioned investigation upon receipt of an impersonation report.

245. Plaintiff alleges Twitter had no intention of investigating the reported account unless and until Plaintiff provided additional information in the form of a government issued identification card.

246. In addition, there is a failure of consideration with respect to the revised Impersonation Policy in that they are illusory, and lack mutuality because Plaintiff relied upon Twitter's fraudulent misrepresentation that it would investigate offending accounts upon receipt of an impersonation report when she entered into the user agreement with Twitter; Plaintiff has been harmed by a result of that reliance. Under basic contracts principles Twitter is not allowed to change its contractual terms unilaterally after partial performance.

247. Plaintiff alleges Twitter failed to disclose material terms of the user agreement by purposely not disclosing the fact Twitter would need a government issued photograph identification in order to proceed with an

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1   investigation into an account reported to be in clear violation of the

2   Impersonation Policy under the Twitter Rules.

3   248.  Twitter benefitted from the concealment of the true

4   impersonation process by, *inter alia*, the advertising revenues Twitter

5   earned off of the impersonating account.

6   249.  Upon information and belief, Plaintiff alleges that at such time

7   as these representations were made, Twitter intended that Plaintiff would

8   rely on their representations.

9   250.  Plaintiff was harmed, and similarly situated plaintiffs continue

10   to be harmed, by their reliance upon the representation of Twitter that it

11   will take down impersonating accounts upon receipt of an impersonation

12   report.

13   251.  The false representation of Twitter was a substantial factor in

14   causing harm to Plaintiff in the form of economic injury and emotional

15   distress.

16   252.  If Twitter's actions do not amount to actual fraud under

17   California Civil Code § 1572, which is a question of fact for the fact finder,

18   Plaintiff alleges Twitter engaged in constructive fraud in violation of

19   California Civil Code § 1573 because even lacking fraudulent intent,

20   Twitter gained an advantage through advertising revenues off of the

21   impersonation of Plaintiff, for which Twitter promised to remove upon

22   receipt of an impersonation report, and Plaintiff relied on and was harmed

23   by Plaintiff's failure to do so.

24   253.  Plaintiff intends service of the Summons and Complaint in this

25   action to serve as notice of rescission of the additional impersonation

26   policy imposed on Plaintiff after Plaintiff performed.

27

28

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

254. Plaintiff reserves the right to add a class of Plaintiffs which might be similarly situated to this cause of action as the lead Plaintiff, in the interest of justice if so required, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

255. Plaintiff contends Twitter cannot successfully assert Communications Decency Act (CDA) § 230 as a defense to this action, as CDA § 230 does not bar causes of action that arise out of breach of contract. The Ninth Circuit held, and reaffirmed, that the CDA does not declare "a general immunity against all claims derived from third-party content." *See Barnes v. Yahoo!, Inc.*, 570 F.3d at 1100; *see also Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016).

## FIFTH CAUSE OF ACTION

### Declaratory Relief

### Against Twitter

256. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

257. An actual, justiciable controversy has arisen and now exists between Plaintiff and Twitter, relating to their respective legal rights, duties and obligations, such that it is necessary for the Court to determine the parties' respective rights , duties and obligations.

258. Plaintiff therefore respectfully requests that this Court enter an Order, pursuant to 28 U.S.C. § 1692:

a) That the Terms of Use Agreement set forth above are void *ab initio*;

b) In the alternative, order that the contract between Plaintiff and Twitter is unenforceable on the grounds that it is illusory, lacks mutuality, fails of consideration;

65

c) In the alternative, order that the contract between Plaintiff and Twitter is rescinded pursuant to California Civil Code §1689 on the grounds that they were mutually rescinded, Plaintiff's consent was given by mistake, obtained through fraud, concealment and misrepresentation, and/or exercised by or with the connivance of Twitter, and there is failure of consideration;

d) Order that Plaintiff is under no legal obligation to compensate or pay Twitter under the terms of the contract between Twitter and Plaintiff as it is void *ab initio*, unenforceable, and/or rescinded; and

(e) Ordering the parties restored to their former positions and requiring them to return whatever they received, if anything, under the revised contract pursuant to California Civil Code § 1692.

**SIXTH CAUSE OF ACTION**

**Intentional Interference With Actual and/or Prospective Economic Relations**

**Against John Doe(s)**

259.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

260.   Plaintiff alleges intentional interference with actual and prospective economic relations against John Doe(s).

261.   Plaintiff has numerous business ventures in place she is currently pursuing, including admittance to the California Bar, a job in the legal profession, as well as various business ventures that probably would have resulted in a future economic benefit to Plaintiff.

262.  John Doe(s) knew, at the very least, that Plaintiff was currently seeking admittance to the State Bar of California through direct evidence including, but not limited to, Plaintiff's various social media

66

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

profiles Doe used in creating the Twitter account and content, notably Plaintiff's LinkedIn profile which specifically references the fact that Plaintiff was enrolled at the University of San Diego Law School as a Juris Doctor Candidate 2016, which is the social media profile Doe found the photograph titled, "Tiffany Pro," as Plaintiff alleges, upon information and belief, that LinkedIn is the only social media platform which she posted the photograph titled, "Tiffany Pro."

263.   John Doe(s) intended to disrupt Plaintiff's admittance to the State Bar of California by engaging in the wrongful conduct referenced above.

264.   John Doe(s) failed to act with reasonable care and engaged in wrongful conduct, referenced above.

265.   Doe(s)'s actions were intentionally made and were foreseeably and substantially certain to cause interference with Plaintiff's actual and/or prospective business relationships by damaging Plaintiff's good name and reputation, and deterring persons and entities from doing business with her.

266.   Doe(s)'s conduct alleged herein actually interfered with Plaintiff's actual and/or prospective business relationships as referenced above.  Plaintiff has an actual business relationship with the Tucson Jewish Community Center, of which is reasonably foreseen to be damaged as a result of Doe(s)'s despicable conduct.

## SEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### Against John Doe

267.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

268.  At all times relevant to the matters alleged in this Complaint, John Doe(s) owed a duty of care to prevent Plaintiff from being injured as a result of Doe(s)'s conduct.

269.  Doe(s) intentionally, willfully and maliciously breached the aforesaid duty of care owed to the Plaintiff and engaged in extreme and outrageous conduct by viciously impersonating and defaming Plaintiff.

270.  John Doe(s) engaged in this extreme and outrageous conduct with the intent of causing, or in reckless disregard of the probability of causing, severe emotional distress to the Plaintiff.

271.  As a direct and proximate result of Doe(s)'s extreme and outrageous conduct, Plaintiff has suffered extreme mental and emotional distress.  Plaintiff feared, and continues to fear, for her physical safety. Plaintiff will likely incur medical expenses, including expenses for psychiatric care and psychological counseling services.

272.  Plaintiff will seek leave to amend this complaint once the identity/identities of John Doe(s) is/are confirmed to include additional harassment which Plaintiff suspects occurred in connection with the injuries stated herein.

**EIGHTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress**

**Against Twitter**

273.  Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

274.  At all times relevant to the matters alleged in this Complaint, Twitter owed a duty of care to prevent Plaintiff from being injured as a result of Twitter's conduct.

SECOND AMENDED COMPLAINT          No.: 17-cv-00198-LAB-WVG

1    275. Twitter breached the aforesaid duty of care owed to the
2    Plaintiff by breaching its contract with Plaintiff and then allowing the
3    continued publication of Doe's harmful conduct to persist after breaching
4    its contract with Plaintiff.

5    276. As a direct and proximate result of Twitter's negligent
6    conduct, Plaintiff has suffered extreme mental and emotional distress.
7    Plaintiff feared, and continues to fear, for her physical safety, and that she
8    will be wrongly accused in the public view. Plaintiff will likely incur
9    medical expenses, including expenses for psychiatric care and
10   psychological counseling services.

### NINTH CAUSE OF ACTION

#### Civil Conspiracy

13   277. Plaintiff hereby incorporates by reference all stated paragraphs
14   as though fully set forth herein.

15   278. Plaintiff reserves the right to bring any and all additional
16   causes of action including but not limited to, a cause of action for civil
17   conspiracy amongst any or all of the named and unnamed defendants.

18   279. Plaintiff reserves the right to bring a cause of action for civil
19   conspiracy, as well as amend the above Causes of Actions accordingly, if
20   discovery reveals that it is probable that more than one individual engaged
21   in the procurement, constructing, or publishing of the Twitter account with
22   domain @tiffanydehen and Infringing Works, in any capacity whatsoever
23   to Defendants' economic benefit and Plaintiff's economic harm.

24   280. Plaintiff reserves the right to bring any and all additional
25   causes of action against any or all defendants who conspired together, or
26   acted alone, in illegally extorting and/or exploiting Plaintiff to Plaintiff's
27   harm and Defendant's benefit.

28

281.   Plaintiff reserves the right to bring additional claims including, but not limited to, claims relating to conflicts of interest against Perkins Coie LLP.  For the record, Plaintiff alleges Perkins Coie LLP attempted to exploit and extort her illegally for their client's illegal gains.  Plaintiff goes so far as to allege that discovery will prove that Perkins Coie LLP is guilty of violating numerous federal laws including, but not limited to, conspiring in the restraint of trade in violation of the Sherman Act, obstructing justice, impeding federal law enforcement investigations, contempt of court, treason, conspiracy to commit treason, racketeering activity in violation of the RICO statute mentioned above including operating a criminal enterprise, engaging in patterns of fraud, extortion, exploitation and blackmail.  It would not be the first time Perkins Coie LLP was accused of aiding and abetting its clients in the commission of crimes, as Perkins Coie is currently at the center of a wide scale United States investigation which includes possible claims of treason, jeopardizing the ethical standards of the entire international law firm.  *Please see* the recently declassified Nunes              Memo              available              here: https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=85 6.

## TENTH CAUSE OF ACTION
### Violation of 18 U.S. Code § 1962
### Against Twitter

282.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

283.   Plaintiff brings a Cause of Action under 18 U.S. Code § 1964 against Twitter for the injuries sustained by Plaintiff, and all other individuals similarly situated if justice permits or requires pursuant to the

70

1  Federal Rules of Civil Procedure Rule 23, as a result of Twitter's
2  fraudulent misrepresentations and scheme to defraud in violation of 18 U.S.
3  Code § 1962(C).

4     284.  At all relevant times, Defendant Twitter was a "person" within
5  the meaning of 18 U.S.C. § 1961(3) because it was "capable of holding a
6  legal or beneficial interest in property."

7     285.  Twitter is an "enterprise" within the meaning of 18 U.S.C.
8  § 1961(4), through which Defendant Twitter conducted the pattern of
9  racketeering activity described herein.  Throughout its existence, Twitter
10  engaged in, and its activities affected interstate commerce because it
11  involved commercial activities across state lines, including national
12  marketing campaigns and the solicitation and receipt of money in the form
13  of advertising revenues from victims located throughout the country.

14     286.  Plaintiff alleges Twitter participated in a pattern of
15  racketeering activity, as defined by 18 U.S.C. § 1962(5), consisting of
16  numerous and repeated uses of interstate wire communications to execute a
17  scheme to defraud in violation of 18 U.S.C. § 1962(c).

18     287.  The fraudulent express misrepresentations by Twitter of the
19  terms of the Twitter User Agreement was created and/or used as a tool to
20  carry out the Scheme and pattern of racketeering activity.

21     288.  Plaintiff alleges Defendant Twitter has committed at least two
22  acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. § 1343,
23  within the past ten years. The multiple acts of racketeering activity that
24  they committed and/or conspired to, or aided and abetted in the
25  commission of, were related to each other, pose a threat of continued
26  racketeering activity, and therefore constitute a "pattern of racketeering
27  activity."

28

289. Defendant Twitter's predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1) include, but are not limited to:

(a) Wire Fraud: Defendant Twitter violated 18 U.S.C. § 1343, by transmitting and receiving, or causing to be transmitted or received, materials by wire for the purpose of executing the Scheme, which amounts to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions. The materials transmitted and/or received include but are not limited to, interstate credit card transactions, publication by Internet promoting the Scheme, and the fraudulent misrepresentation in Twitter's Terms of Use.

290. Defendant Twitter knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose. Defendant Twitter either knew or recklessly disregarded that these were material misrepresentations and omissions.

291. Defendant Twitter obtained money and property belonging to Plaintiff, and the Class as a result of these violations. Plaintiff alleges Plaintiff and other Class Members been injured in their business or property by Defendant Twitter's overt acts of wire fraud.

292. Plaintiff and the Class have been injured in their property by reason of Twitter's violations of 18 U.S.C. § 1962, including the damage done to Plaintiff's reputation as a result of relying on Twitter's fraudulent misrepresentation, which collectively amounts to tens of millions of dollars, plus the advertising revenues Twitter obtained off the fraudulent misrepresentations. In the absence of Defendant Twitter's violations of 18 U.S.C. § 1962, Plaintiff and the Class would not have incurred these losses.

293.   Plaintiff's and the Class's injuries were directly and proximately caused by Defendant Twitter's racketeering activity.

294.   Twitter knew and intended that Plaintiff and the Class would rely on the Scheme's fraudulent misrepresentations and omissions. Defendant Twitter knew and intended Plaintiff, and the Class, would enter into the terms of use, and pay advertising fees, as a result of the same.

295.   Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover their treble damages, the costs of bringing this suit and reasonable attorneys' fees.

296.   Defendant Twitter is accordingly liable to Plaintiff and the Class for three times their actual damages as proved at trial plus interest and attorneys' fees.

## ELEVENTH CAUSE OF ACTION

### Libel

### Against Twitter

297.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

298.   Plaintiff reserves the right to bring a cause of action against Twitter for libel in violation of California Civil Code § 45 in light of the fact that plaintiffs in a case on appeal in the D.C. Circuit are currently seeking a permanent injunction from the Attorney General to declare CDA § 230 unconstitutional. *See American Freedom Defense Initiative et al. v. Lynch*, No. 16-cv-1437, 2016 WL 6635634 (D.D.C. Nov. 9, 2016).

## TWELFTH CAUSE OF ACTION

### Violation of 18 U.S. Code § 1962

### Against USD

73

299.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

300.   Plaintiff brings a Cause of Action under 18 U.S. Code § 1964 against USD for the injuries sustained by Plaintiff.

301.   At all relevant times, Defendant USD was a "person" within the meaning of 18 U.S.C. § 1961(3) because it was "capable of holding a legal or beneficial interest in property."

302.   USD is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which Defendant USD conducted the pattern of racketeering activity described herein.  Throughout its existence, the USD enterprise engaged in, and its activities affected interstate commerce because it involved commercial activities across state lines, including national marketing campaigns and the solicitation and receipt of money in the form of tuition, including federal student loans from the federal government, from victims located throughout the country.  Defendant USD exercised substantial control over the affairs of the USD Enterprise.

303.   Plaintiff alleges USD participated in a pattern of racketeering activity, as defined by 18 U.S.C. § 1962(5), consisting of numerous and repeated uses of interstate wire communications to execute a scheme to defraud in violation of 18 U.S.C. § 1962(c).

304.   The fraudulent express misrepresentations by USD of the terms and stated policies of the University and Department of Public Safety were created and/or used as tools to carry out the Scheme and pattern of racketeering activity.

305.   Plaintiff alleges Defendant USD has committed at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. § 1343, within the past ten years.  The multiple acts of racketeering activity that

74

1  they committed and/or conspired to, or aided and abetted in the
2  commission of, were related to each other, pose a threat of continued
3  racketeering activity, and therefore constitute a "pattern of racketeering
4  activity."

5      306. Defendant USD's predicate acts of racketeering within the
6  meaning of 18 U.S.C. § 1961(1) include, but are not limited to:

7      (a) Wire Fraud: Defendant USD violated 18 U.S.C. § 1343, by
8      transmitting and receiving, or causing to be transmitted or received,
9      materials by wire for the purpose of executing the Scheme, which
10     amounts to a material scheme to defraud and obtain money on false
11     pretenses, misrepresentations, promises, and/or omissions. The
12     materials transmitted and/or received include but are not limited to,
13     interstate credit card transactions, publication by Internet promoting
14     the Scheme, and the fraudulent misrepresentation in USD's
15     expressly stated policies.

16     307. Defendant USD knowingly and intentionally made these
17 misrepresentations, acts of concealment and failures to disclose. Defendant
18 USD either knew or recklessly disregarded that these were material
19 misrepresentations and omissions.

20     308. Defendant USD obtained money and property belonging to
21 Plaintiff, and the Class as a result of these violations. Plaintiff alleges
22 Plaintiff and other Class Members been injured in their business or
23 property by Defendant USD's overt acts of wire fraud.

24     309. Plaintiff and the Class have been injured in their property by
25 reason of USD's violations of 18 U.S.C. § 1962, including the damage
26 done to Plaintiff's reputation as a result of relying on USD's fraudulent
27 misrepresentation, which collectively amounts to tens of millions of
28

1  dollars, plus the tuition revenues USD obtained off the fraudulent

2  misrepresentations. In the absence of Defendant USD's violations of 18

3  U.S.C. § 1962, Plaintiff and the Class would not have incurred these losses.

4    310. Plaintiff's and the Class's injuries were directly and

5  proximately caused by Defendant USD's racketeering activity.

6    311. USD knew and intended that Plaintiff and the Class would

7  rely on the Scheme's fraudulent misrepresentations and omissions.

8  Defendant USD knew and intended Plaintiff, and the Class, would attend

9  its university and pay tuition, as a result of the same.

10   312. Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is

11 entitled to bring this action and to recover their treble damages, the costs of

12 bringing this suit and reasonable attorneys' fees.

13   313. Defendant USD is accordingly liable to Plaintiff and the Class

14 for three times their actual damages as proved at trial plus interest and

15 attorneys' fees.

16          **THIRTEENTH CAUSE OF ACTION**

17              **Breach of Contract**

18          **Against University of San Diego**

19   314. Plaintiff hereby incorporates by reference all stated paragraphs

20 as though fully set forth herein.

21   315. Plaintiff alleges USD breached several contracts between USD

22 and Plaintiff, as well as between USD and all other individuals similarly

23 situated.

24   316. Not only did USD breach several contractual duties it

25 expressly promised to Plaintiff and all other individuals similarly situated

26 such as the several express contractual duties stated above, but Plaintiff

27 relied on these promises made by USD to her detriment. Specifically,

28

                    76

SECOND AMENDED COMPLAINT       No.: 17-cv-00198-LAB-WVG

1   Plaintiff relied on the promise that USD would provide a safe campus, as

2   referenced above.  Not only did USD fail to uphold its express promises

3   made to Plaintiff and all other individuals similarly situated, USD gave

4   preferential treatment to individuals whom Plaintiff alleges violated federal

5   terrorism laws.

6                          **FOURTEENTH CAUSE OF ACTION**

7            **Intentional and/or Negligent Infliction of Emotional Distress**

8                                    **Against USD**

9            317.   Plaintiff hereby incorporates by reference all stated paragraphs

10   as though fully set forth herein.

11           318.   Plaintiff brings a cause of action against USD for intentional

12   and negligent infliction of emotional distress under California law.

13           319.   Plaintiff alleges that at all times relevant to the matters alleged

14   in this Complaint, USD owed a duty of care to prevent Plaintiff from being

15   injured as a result of Doe's conduct.

16           320.   USD breached the aforesaid duty of care owed to Plaintiff by

17   breaching its contracts with Plaintiff, negligently resulting in Doe's

18   despicable conduct.

19           339.   As a direct and proximate result of USD's negligent conduct,

20   Plaintiff suffered extreme mental and emotional distress.  Plaintiff feared,

21   and continues to fear, for her physical safety, and for the safety of her close

22   family and friends, in addition to the fear that she will continue to be

23   wrongly accused in the public view due to Doe's conduct.  Plaintiff will

24   likely incur medical expenses, including expenses for psychiatric care and

25   psychological counseling services.

26           321.   Plaintiff respectfully reserves the right to further amend this

27   complaint.

28

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

## EXTORTION AND HOBBS ACT VIOLATIONS

322.   18 U.S.C. § 875(d) states:

Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

*Please see* 18 U.S.C. § 875(d).

323.   18 U.S.C. § 1951(a) states:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

*Please see* 18 U.S.C. § 1951(a).

324.   Subsection (b) continues

As used in this section –

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

*Please see* 18 U.S.C. § 1951(b).

### FIFTEENTH CAUSE OF ACTION

### Extortion & Conspiracy to Commit Extortion Against Twitter

325.   Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

326.   Plaintiff alleges violations of [18 U.S.C. § 875(d) and 18 U.S.C. § 1951] against Twitter including actual extortion as defined under 18 U.S.C. § 1951(b) through the wrongful use of actual and threatened force, violence, and fear, conspiracy to commit extortion, and transmission

78

1   in interstate commerce communication containing threats to injure the

2   property and reputation of Plaintiff.

3       327.   As explained above, Plaintiff alleges Twitter working in

4   conjunction with Perkins Coie, LLP and/or USD, attempted intimidation

5   against Plaintiff in the form of actual physical harm of Plaintiff in the

6   serious 02/20/2017 automobile collision and threatened harm to Plaintiff

7   physically, financially and reputationally, with actual harm resulting to

8   Plaintiff.

9       Plaintiff further alleges @That_AC harassment crosses the line into

10   defamation. *Please see* Exhibits xxx. At the very least, it is reasonable for

11   Ms. Dehen to believe that @That_AC is somehow related to one of the

12   defendants in the case due to the fact that he has been incessantly harassing

13   her for over a year even though she blocked him on Twitter out of

14   desperation to keep the CDA § 230 from being overturned.  On June 24,

15   2018, @That_AC publicly requested an interview with Mr. Aly, Ms. Dehen

16   alleges to taunt and intimidate Ms. Dehen as an agent of defendant(s).

17       @That_AC seems to have a pattern of intimidating individuals on

18   social media, although he somehow remains anonymous. Ms. Dehen

19   alleges @That_AC is actually an agent of Perkins Coie, LLP or Twitter,

20   and is actively working to censor potential plaintiffs from exercising their

21   rights in a court of law.  Ms. Dehen alleges @That_AC attempts to gain

22   information through non-disclosure agreements which require his identity

23   remain anonymous so that he can continue illegally extorting and defaming

24   individuals, such as Ms. Dehen here, into dropping their case on behalf of

25   Twitter and/or Perkins Coie, LLP.  If @That_AC is not an agent through

26   payment, consultation, or any sort of inside connection, then it should be a

27   non-issue in discovery.

28

SECOND AMENDED COMPLAINT    No.: 17-cv-00198-LAB-WVG

1

2                    **SIXTEENTH CAUSE OF ACTION**

3         **Extortion & Conspiracy to Commit Extortion Against Perkins**

4                               **Coie LLP**

5         328.   Plaintiff hereby incorporates by reference all stated paragraphs

6    as though fully set forth herein.

7         329.   Plaintiff alleges violations of 18 U.S.C. § 875(d) and 18

8    U.S.C. § 1951 against Perkins Coie, LLP including actual extortion as

9    defined under 18 U.S.C. § 1951(b) through the wrongful use of actual and

10   threatened force, violence, and fear, conspiracy to commit extortion, and

11   transmission in interstate commerce communication containing threats to

12   injure the property and reputation of Plaintiff.

13        330.   As explained above, Plaintiff alleges Perkins Coie, LLP

14   working in conjunction with Twitter and/or USD, attempted intimidation

15   against Plaintiff in the form of actual physical harm of Plaintiff in the

16   serious 02/20/2017 automobile collision and threatened harm to Plaintiff

17   physically, financially and reputationally, with actual harm resulting to

18   Plaintiff.

19        331.   Perkins Coie, LLP has come under public scrutiny recently for

20   engaging in criminal acts on behalf of and in conjunction with its clients.

21   Plaintiff alleges Perkins Coie threatened and intimidated her personally.

22                   **SEVENTEENTH CAUSE OF ACTION**

23         **Extortion & Conspiracy to Commit Extortion Against USD**

24        332.   Plaintiff hereby incorporates by reference all stated paragraphs

25   as though fully set forth herein.

26        333.   Plaintiff alleges violations of 18 U.S.C. § 875(d) and 18

27   U.S.C. § 1951 against USD including actual extortion as defined under 18

28

                                    80
     SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1  U.S.C. § 1951(b) through the wrongful use of actual and threatened force,

2  violence, and fear, conspiracy to commit extortion, and transmission in

3  interstate commerce communication containing threats to injure the

4  property and reputation of Plaintiff.

5      334.   As explained above, Plaintiff alleges USD working in

6  conjunction with Twitter and/or Perkins Coie, LLP, attempted intimidation

7  against Plaintiff in the form of actual harm of Plaintiff from the negative

8  news articles, as well as threatened harm to Plaintiff financially and

9  reputationally, with actual harm resulting to Plaintiff.

10  **EIGHTEENTH CAUSE OF ACTION**

11  **Violation of 15 U.S.C. § 1 Against Twitter, Inc.**

12      Plaintiff hereby incorporates by reference all stated paragraphs as

13  though fully set forth herein.

14      On May 8, 2017, then-Director of the Federal Bureau of

15  Investigation James B. Comey, issued a statement titled *The FBI and the*

16  *ADL: Working Together to Fight Hate*.  *Please see*

17  https://www.fbi.gov/news/speeches/the-fbi-and-the-adl-working-together-

18  to-fight-hate.

19      On July 28, 2018, *The Daily Caller* reported that the FBI has an

20  ongoing relationship with the left-wing SPLC (Southern Poverty Law

21  Center), which once put 2016 Republican Presidential Candidate Dr. Ben

22  Carson on an 'Extremist Watch List'.  *Please see*

23  http://dailycaller.com/2018/07/28/splc-fbi-partnership/.

24      On October 10, 2017, *CNET* reported in *Anti-Defamation League,*

25  *tech firms team to fight online hate* that Facebook, Twitter, Google and

26  Microsoft are among the companies joining forces with the advocacy group

27  to curb cyberhate.  *Please see* https://www.cnet.com/news/adl-anti-

28

81

SECOND AMENDED COMPLAINT    No.: 17-cv-00198-LAB-WVG

defamation-league-facebook-twitter-google-hate-speech/.  The article reported. "[t]hey'll exchange ideas and develop strategies to try to curb hate speech and abuse on the companies' various platforms and across the internet." *Id.*

On August 17, 2018, Mr. Tucker Carlson with *Fox News* reported, "recently many of the biggest tech companies joined in a coordinated effort to censor content from broadcaster Alex Jones.  Apple, Facebook, Spotify, Vimeo, YouTube, Twitter, all of them, pulled or froze Jones' accounts on the grounds that his views are too dangerous to be heard publicly." *Please see* https://www.youtube.com/watch?v=FGcMh4Ki4YE.

Plaintiff alleges Twitter is engaged in a conspiracy to restrain trade in the form of information with viewpoints it does not like, which becomes a First Amendment violation due to Congress enacting CDA § 230, which Twitter claims bars all types of lawsuits against it for otherwise actionable illegal conduct.  Twitter is involved in this conspiracy with various big tech companies, such as Facebook, YouTube, Google, Apple, and maybe even governmental agencies such as the FBI.

Plaintiff alleges an illegal conspiracy in the restraint of trade between Twitter, Inc., and its law firm, Perkins Coie, LLP.

Plaintiff alleges she sustained direct injuries from Twitter's conspiracy in the restraint of trade with its law firm, Perkins Coie, LLP.

Plaintiff alleges Twitter, Inc. is conspiring with its law firm, Perkins Coie, LLP, other tech companies, and agents of various agencies, such as the Federal Bureau of Investigation, and political organizations such as the Democratic National Committee, and certain donors, co-conspirators, investors such as Billionaire George Soros.

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

Plaintiff alleges Twitter is conspiring in the restraint of trade against
Plaintiff personally by conspiring with each other to use the CDA § 230 to
justify their illegal fraudulent behavior of misrepresenting in Twitter's
Terms of Use

### NINETEENTH CAUSE OF ACTION

### Violation of 15 U.S.C. § 1 Against Perkins Coie, LLP

Plaintiff hereby incorporates by reference all stated paragraphs as
though fully set forth herein.

In *Green v. YouTube* (Case No.: 18-CV-00203-PB in District Court
for the District of New Hampshire), attorneys Timothy J. McLaughlin and
Ryan Mrazik, represented Twitter, Inc., and YouTube, LLC citing the CDA
§ 230 against Mr. Green's claims which include claims regarding the fact
that he has been illegally censored, banned, and shut down on two different
YouTube accounts and his Twitter account, among other things (further
described when Plaintiff amends and files Third Amended Complaint).
Please see Exhibit xxx.

Mr. Mrazik with Perkins Coie, LLP, attempted to represent Twitter,
Inc. pro hac vice in this case, which Judge Benitez denied. *Please see* Mr.
Mrazik's Pro Hac Vice application.

Plaintiff alleges a conspiracy between Perkins Coie, agents of
Perkins Coie, and its clients, such as Twitter here in this case. Agents of
Perkins Coie are conspiring with each other and Perkins Coie is conspiring
with its clients to assist, maybe even perpetuate, illegal conduct which
directly harmed, and continues to harm, Ms. Dehen.

Plaintiff respectfully requests additional time to develop these claims
and file her Third Amended Complaint.

### TWENTIETH CAUSE OF ACTION

83

**Violation of 15 U.S.C. § 1 Against University of San Diego**

Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

Agents of USD are conspiring together, and USD is conspiring with various law enforcement agencies in the restraint of trade, against Plaintiff by conspiring to cover up illegal activity, which USD is at least negligently liable for, with the intention to prevent Ms. Dehen from having her day in Court to recover significant damages for monetary and emotional injuries she sustained, and continues to sustain, due to the conspiracies in the restraint of trade.

Plaintiff needs additional time to develop this claim and respectfully requests leave of court to amend this complaint and file her Third Amended Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.   Accept jurisdiction over this action;

2.   For the Court to compel Twitter to provide the email address John Doe used to sign up for the offending Twitter account so that Plaintiff may request the Court to authorize service of the summons and complaint on Defendant Doe by email to his "published and last known valid email address without requirement of return receipt" under Federal Rules of Civil Procedure 4(f)(3) and 4(h)(2);

3.   That Defendant Doe(s) be permanently enjoined from infringing Plaintiff's copyrights in any manner, specifically those related to the Infringing Works;

84

SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

4.     That Defendant Doe(s) be permanently enjoined from publishing defamatory statements about Plaintiff such as those set forth herein;

5.     That Defendant Twitter be permanently enjoined from publishing the fraudulent misrepresentation in its Terms of Use;

6.     That Defendant USD be permanently enjoined from publishing the fraudulent misrepresentations on its website;

7.     That Defendant USD, and all American Universities operating on or off American soil receiving federal funds, such as in the form of federal student loans, be ordered to comply with United States Federal law, particularly in regards to terroristic threats and terroristic activities which could reasonably foreseeably harm American and foreign students on American soil;

8.     That Defendants Perkins Coie LLP, Twitter, Inc., and University of San Diego be permanently enjoined, fined and the attorneys at Perkins Coie sanctioned for engaging in Hobbs Act violations.

9.     For economic damages according to proof at trial;

10.    For punitive damages according to proof at trial;

11.    For prejudgment interest to the extent recoverable by law;

12.    For attorney's fees to the extent recoverable by law or contract;

13.    For costs of suit; and

14.    For such other and further relief as the Court may deem just and proper.

15.    Plaintiff reserves the right to bring additional claims against including but not limited to the Democratic National Committee, the FBI,

1  the DOJ, San Diego Police Department, the City of San Diego, Homeland
2  Security, and the State Department.
3  **DEMAND FOR TRIAL BY JURY**
4  A TRIAL BY JURY PURSUANT TO FEDERAL RULE OF CIVIL
5  PROCEDURE 38 AND CONSTITUTIONAL AMENDMENT SEVEN IS
6  HEREBY DEMANDED.
7
8  **Dated: April 6, 2018**
9                                                  Respectfully submitted,
10
11                                                  Tiffany L. Dehen
12                                                  1804 Garnet Avenue, #239
13                                                  Pacific Beach, CA 92109
14                                                  Tel. 858-262-0052
15                                                  Tiffany.Dehen@Gmail.com
16
17                                                  Pro Se Plaintiff.
18
19
20
21
22
23
24  **CERTIFICATE OF SERVICE**
25      The undersigned hereby certifies that a true and correct copy of the
26  foregoing document has been served on April 6, 2018 by express delivery
27  with signature confirmation, postage pre-paid, to all current and/or
28
                                    86
SECOND AMENDED COMPLAINT        No.: 17-cv-00198-LAB-WVG

1  opposing counsel of record, if any to date, who are deemed to have

2  consented to electronic service via the Court's CM/ECF system per Local

3  Rule 5.4(d).

4

5  **Dated April 6, 2018**

6

7

8                              Tiffany L. Dehen

9

10                             Pro Se Plaintiff.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT      No.: 17-cv-00198-LAB-WVG

SAN DIEGO REGIONAL
OFFICER'S REPORT

| | | | INCIDENT NUMBER 160700160013 |
|---|---|---|---|
| **OFFICER'S REPORT ONLY** | | PAGE 1 of 2 | CASE NUMBER 16028680 |
| CODE SECTION AND DESCRIPTION ZZ / 981153 / MISCELLANEOUS REPORTS - 153 | DATE 07/09/2016 | DAY OF WEEK Saturday | TIME 09:54 |
| LOCATION OF INCIDENT (OR ADDRESS) 4621 LAMONT ST #5A | | CITY SAN DIEGO | BEAT 122 |
| Body Camera: Body Camera Evidence Collected | | | |

## OFFICER'S NARRATIVE:

On 07-09-16 at about 1000 hours, I responded to a radio call to investigate a possible act of terrorism. The reporting party Stephanie Meyers called police advising a Middle Eastern male, who her friend Tiffany knows, was at Tiffany's residence and claimed to be part of ISIS. The location of the incident occurred at 4621 Lamont St. #5A, San Diego, Ca. 92109 (incident number 160700160).

Upon arrival, I checked the surrounding area of the apartment complex for the male along with his vehicle which was described on the radio call. I could not locate either at the time of my investigation.

I spoke with the second reporting party at the location of the incident who I identified as Tiffany Dehen via a California ID. Dehen advised me an aquantaince she attends law school with was standing in front of her apartment complex and was part of ISIS which made her fearful for her safety (See Dehen's full statement below).

As Dehen was speaking, she was speaking very loudly and frantically about the situation. Dehen later regained her composure and left her apartment to go stay with her friend Meyers until the incident was resolved.

## STATEMENT OF TIFFANY LEIGH DEHEN (REPORTING PARTY):

Dehen advised me a couple minutes prior to my arrival, a Middle Eastern male named Mohammed Aly which she knows was standing in front of her apartment complex near his vehicle. Aly did not say anything to her or do anything but was only standing near his vehicle. Dehen stated he later was attempting to get something out of his vehicle but she did not know what it was.

Dehen advised me she knew Aly through school. They are both third year law school students at the University of San Diego. Dehen advised me the reason why she was fearful of Aly was because in October of this year, Aly told her at a law school event "mixer" that he was an ISIS sleeper cell and was awaiting to be activated.

Dehen described Aly as a Middle Eastern male, black long curly hair, brown eyes, 5'07, and 150lbs, small beard, unknown date of a birth but believed him to be about 26-27 years in age. He was seen wearing no shirt and dark shorts. Dehen did not know Aly's address but stated his parents used to rent a place at 401 W. Main St., El Cajon, Ca. Dehen described Aly's vehicle as a white Honda (unknown license plate).

Approved By: A/Sgt. Sanders #6611

| REPORTING OFFICER JOSEPH ELISMA | I.D. # 7378 | DIVISION N1 | AGENCY SDPD | DATE OF REPORT 7/9/2016 | TIME 12:24 |
|---|---|---|---|---|---|
| (Revised 09/2013 Electronic) | | | | | |

| CONTINUED FROM<br>OFFICER'S REPORT ONLY | SAN DIEGO REGIONAL<br>OFFICER'S REPORT | PAGE<br>2 of 2 | INCIDENT NUMBER<br>16070016013<br>CASE NUMBER<br>16028680 |
|---|---|---|---|

I certify that the information requested will be used solely for those limited purposes stated and will not be used to harass, degrade or humiliate any person. The requesting person or person hereby agrees to indemnify and hold harmless the City of San Diego Police Department and the City of San Diego for any liability arising on of the improper use of the information provided.

| REPORTING OFFICER<br>JOSEPH ELISMA | I.D. #<br>7378 | DIVISION<br>N1 | AGENCY<br>SDPD | DATE OF REPORT<br>7/9/2016 | TIME<br>12:24 |
|---|---|---|---|---|---|

(Revised 09/2013 Electronic)

 **That Anonymous Coward - As seen on several dockets** @Tha... · Aug 17 ⌄
'MERIKA!

**Tommy Chong**  @tommychong
This is the state that had me incarcerated for 9 months for shipping Bongs
across state lines to the DEA. twitter.com/Newsweek/statu...

◯　　　↻　　　♡　　　✉

 **That Anonymous Coward - As seen on several dockets** @Tha... · Aug 17 ⌄
These notices are totally legit... thats why we pay top dollar to get them & the
experts (who have multiple failed piracy efforts in their past) to testify b/c a
Judge thinks accusations are actual evidence.

 **RIAA Paid Handsomely for BitTorrent Piracy Eviden...**
Anti-piracy outfit Rightscorp has profited handsomely
from the music industry's efforts to hold ISPs
accountable for pirating subscribers. According to a
torrentfreak.com

◯　　　↻　　　♡　　　✉

Case 1:18-cv-00203-PB   Document 25   Filed 05/08/18   Page 1 of 2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| ISAAC GREEN, | Civil No. 18-CV-203-PB |
|     Plaintiff, | |
|     v. | |
| YOUTUBE, INC., ET AL., | |
|     Defendants. | |

## DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Defendants Google LLC ("Google") and YouTube, LLC ("YouTube")[1] move jointly, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint in its entirety or, in the alternative, and pursuant to 28 U.S.C. § 1404(a), that the Court transfer the case to the United States District Court for the Northern District of California. In support of this motion, Google and YouTube state as follows:

    1.  Google and YouTube have today filed a Memorandum of Points and Authorities in Support of this Motion.

    2.  A proposed order is attached hereto.

WHEREFORE, Google and YouTube respectfully request that the Court grant this motion.

---

[1] Plaintiff named "Google, Inc." as a defendant. The entity's correct name is "Google LLC." Plaintiff also named "YouTube, Inc." as a defendant. The entity's correct name is "YouTube, LLC."

Case 1:18-cv-00203-PB   Document 25   Filed 05/08/18   Page 2 of 2

Respectfully submitted,

*Counsel for Defendants Google LLC and YouTube, LLC,*

May 8, 2018

/s/ Timothy J. McLaughlin
Timothy J. McLaughlin (NH Bar # 19570)
107 Storrs Street
Concord, NH 03301
1 (603) 225-7262
tmclaughlin@shaheengordon.com

Ryan Mrazik (*motion for pro hac vice admission to be filed*)
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
RMrazik@perkinscoie.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing was served by the Court's electronic filing system on all counsel and parties of record as well as parties not registered on the Court's CM/EFC system by U.S. mail.

/s/ Timothy J. McLaughlin
Timothy J. McLaughlin

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

ISAAC GREEN,

              Plaintiff,

     v.                                 Civil No. 18-CV-203-PB

YOUTUBE, INC., ET AL.

              Defendants.

---

**JOINT OBJECTIONS OF TWITTER, INC. AND YOUTUBE, LLC TO**
**PLAINTIFF'S MOTION TO REINSTATE AND ALLOW LAWFUL ACCESS (DKT. 9)**

**I.     INTRODUCTION**

Defendants Twitter, Inc. ("Twitter") and YouTube, LLC ("YouTube") (collectively,

"Defendants") request that the Court deny Plaintiff Isaac Green's ("Plaintiff") Motion to

Reinstate & Allow Lawful Access ("Motion"), Dkt. 9.  Plaintiff appears to be seeking

preliminary injunctive relief in the form of access to online accounts on Twitter and YouTube—

he wants "restoration of his virtual property" and to be allowed "virtual access to live streaming

with an audience."  This Motion fails and should be denied because Plaintiff has not shown the

strong likelihood of success on the merits or irreparable harm necessary to obtain preliminary

injunctive relief.

**II.     FACTUAL BACKGROUND**

Plaintiff filed his Complaint on March 5, 2018, Dkt. 1, and also filed at least three

motions that day. *See* Dkts. 2-3, 5.  On May 8, 2018, Defendants moved to dismiss Plaintiff's

Complaint and responded to the motions. *See* Dkts. 24-25.  Plaintiff separately filed the instant

Motion alleging that (1) "YouTube, and Twitter have prevented the Plaintiff from 'live

streaming,'" and (2) "YouTube has also closed a channel, tampered with a 2nd channel, and put

1

an unlawful warning on a newly listed video." *See* Dkt. 9 at 1. In the Motion, Plaintiff asks "that

the court reinstate Plaintiff's virtual property and lawful access to the services of all sites," and

for "the restoration of his virtual property, with sanctions ordered if [Defendants] tamper with it

again, and that he be left alone to virtual access to live streaming with an audience." *Id.*

## III.   ARGUMENT

Plaintiff's Motion appears to seek preliminary injunctive relief in the form of (1) access

to the purported "livestreaming" features of Defendants' online services or (2) access to his

YouTube account.[1] Regardless of whether the relief sought is a preliminary injunction or

temporary restraining order, it should be denied. Plaintiff has not shown a strong likelihood of

success on the merits of his claims—as set out in Defendants' Motions to Dismiss, Dkts. 24-25,

Plaintiff's Complaint is meritless—or the irreparable harm necessary for preliminary injunctive

relief.

**A.   Plaintiff's Motion Seeking Preliminary Injunctive Relief Should Be Denied Because Plaintiff Has Not Shown a Strong Likelihood of Success or Irreparable Harm.**

**1.   Legal Standard for Preliminary Injunctive Relief**

A party seeking preliminary injunctive relief "bears the burden of showing that the

circumstances of the case justify the exercise of the court's discretion." *Respect Maine PAC v.

McKee*, 622 F.3d 13, 15 (1st Cir. 2010) (citing *Nken v. Holder*, 556 U.S. 418, 432-433 (2009)).

Courts consider four factors: "(1) whether the applicant has made a strong showing that he is

likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent relief;

(3) whether issuance of relief will substantially injure the other parties interested in the

proceeding; and (4) where the public interest lies." *Id.* (citing *Nken*, 556 U.S. at 426); *see also

Nw. Bypass Grp. v. U.S. Army Corps of Engineers*, 453 F. Supp. 2d 333, 337 (D.N.H. 2006) ("To

---

[1] It is unclear what exactly Plaintiff is claiming. Defendants have done their best to address the issues raised and apparent relief sought, but reserve the right to address additional issues later.

determine whether to issue a temporary restraining order, this Court applies the same four-factor analysis used to evaluate a motion for preliminary injunction.").[2]

"The first two factors are the most critical. Both require a showing of more than mere possibility. Plaintiffs must show a strong likelihood of success, and they must demonstrate that irreparable injury will be likely absent an injunction." *Respect Maine PAC*, 622 F.3d at 15 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)); *see also Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004) ("In most cases[,] . . . irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief." A plaintiff must "demonstrate a realistic prospect of irreparable harm[.]") (citing *Phillips v. Marsh*, 687 F.2d 620, 622 (2d Cir. 1982)). "[T]raditional economic damages can be remedied by compensatory awards, and thus do not rise to the level of being irreparable." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) (citing *Puerto Rico Hosp. Supply, Inc. v. Boston Scientific Corp.*, 426 F.3d 503, 507 (1st Cir. 2005)). "[T]he predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem" to determine whether injunctive relief is warranted. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996).

## 2. Plaintiff's Claim that Defendants Have Prevented "Live Streaming"

Plaintiff alleges in his Motion that Defendants have "prevented" him "from 'live streaming'" and that "this access has been stripped, and unlawfully denied to the Plaintiff." Dkt. 9 at 1. From there, he argues that the "first Amendment [sic] protects the Plaintiff with his own free speech" and that Defendants do not "have any lawful or federal ability to prevent live

---

[2] To the extent Plaintiff is seeking a temporary restraining order, he has not complied with Rule 65(b), which requires him to provide "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and . . . the movant's attorney [t]o certif[y] in writing any efforts made to give notice and the reasons why it should not be required."

streaming, nor to take hold of his channel." *Id.* This appears to be tied to Plaintiff's claim in his Complaint that YouTube violated the First Amendment by restricting his access to and use of its service. There is no corresponding claim against Twitter—the only claim against Twitter is that it automatically unsubscribed followers from Plaintiff's account. Dkt 1. ¶ 6. Regardless, Plaintiff now asks the Court to order Defendants to "restore" his ability to livestream on YouTube and Twitter. *See id.* ("that he be left alone to virtual access to live streaming with an audience").

As set out in Defendants' respective motions to dismiss, however, Plaintiff cannot show a strong likelihood of success on the merits of his claims against either Twitter or YouTube.

First, as to Twitter, the only allegation in the Complaint is that Twitter automatically unsubscribed followers from Plaintiff's account, *see* Dkt 1. ¶ 6, so there is no factual basis whatsoever for Plaintiff's current claim that Twitter is preventing him from "livestreaming."

Second, as to YouTube, Plaintiff says in his Complaint that YouTube limited access to his account or channel (and, therefore, presumably to any livestreaming features), and asserts that YouTube is therefore liable for constitutional violations. YouTube cannot, however, be held liable for constitutional violations because it is not a state actor. *See* Dkt. 24-1 at 7-8; Dkt. 25-1 at 7-8. Further, to the extent Plaintiff is asking the Court to force YouTube to allow content on its site (i.e., Plaintiff's livestreaming videos), any such order would run afoul of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, and violate YouTube's own First Amendment rights to decide what content is displayed on its platforms. *See* Dkt. 25-1 at 14-17.[3]

---

[3] To the extent Plaintiff is now ascribing the same or similar conduct to Twitter, Twitter joins in the arguments presented by YouTube. Plaintiff did not make such claims as to Twitter in his Complaint, however, claiming only that Twitter unsubscribed followers from his account.

Lastly, to the extent this request for preliminary injunctive relief is based on a different cause of action against either Twitter or YouTube, it fails because there are no viable causes of action in Plaintiff's Complaint (indeed, many of his claims are not even causes of action).

Additionally, Plaintiff has made no showing of irreparable harm. Plaintiff must show more than a mere "possibility" of irreparable harm. He must "demonstrate that irreparable injury is likely [unless the Court orders immediate relief]." *Winter*, 555 U.S. at 22. "Speculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007). Plaintiff claims only that he has been unable to livestream, but has not explained—nor can he—how this alleged deprivation irreparably harmed him.

### 3.    Plaintiff's Claim that YouTube Closed or Tampered with His Accounts

Plaintiff claims in his Motion that YouTube has "closed a channel, tampered with the 2nd channel, and put an unlawful warning on a newly listed video." Dkt. 9 at 1. As set out in Google's and YouTube's Motion to Dismiss, however, any claims based on these facts (or similar ones) are meritless. *See* Dkt. 25. Most of the claims Plaintiff brings are not even causes of action; Plaintiff has not pled the elements of any remaining claims; Google and YouTube cannot be liable for any purported constitutional violations because they are not state actors; and any claims against Google or YouTube arising out of their editorial decisions to remove content or close accounts are barred by the CDA and First Amendment in any event. *See* Dkt. 25-1 at 5-19.

And once again, Plaintiff has made no showing of irreparable harm, which requires more than a mere "possibility" of harm. He must show the injury is "likely" absent immediate relief, *Winter*, 555 U.S. at 22, and cannot rely on "[s]peculative injury," *In re Excel Innovations, Inc.*, 502 F.3d at 1098. Plaintiff claims only that YouTube has "closed" one channel, "tampered" with another, and put a warning on a video he does not identify. Notably absent is any explanation

about how these alleged actions irreparably harmed Plaintiff. And to the extent this claim (or any other) is related only to having lost money, that type of harm is not irreparable. *See Vaqueria Tres Monjitas*, 587 F.3d at 485 ("traditional economic damages" that, if proven could "be remedied by compensatory awards" . . . "do not rise to the level of being irreparable.").

**B.    The Court Should Deny Plaintiff's Request for Sanctions.**

Plaintiff also asks for "sanctions" against Defendants if they "tamper with [his accounts] again." Dkt. 9 at 1. There is no legal or factual basis for a preliminary injunction, let alone for sanctions, particularly based on speculative, uncertain future conduct. This request should be denied.

## IV.    CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's Motion.

Respectfully submitted,

*Counsel for Defendants Twitter, Inc. and YouTube, LLC*

May 22, 2018

/s/ Timothy J. McLaughlin
Timothy J. McLaughlin (NH Bar # 19570)
107 Storrs Street, P.O. Box 2703
Concord, NH 03301
(603) 225-7262
tmclaughlin@shaheengordon.com

Ryan Mrazik (*motion for pro hac vice admission to be filed*)
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Rmrazik@perkinscoie.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing was served by the Court's electronic filing system on all counsel and parties of record as well as parties not registered on the Court's CM/ECF system by U.S. mail.

/s/ Timothy J. McLaughlin
Timothy J. McLaughlin



**THE STATE BAR**
**OF CALIFORNIA**

OFFICE OF CHIEF TRIAL COUNSEL
INTAKE UNIT
Melanie J. Lawrence, Interim Chief Trial Counsel

845 SOUTH FIGUEROA STREET, LOS ANGELES, CALIFORNIA 90017-2515

TELEPHONE: (213) 765-1000
FAX: (213) 765-1168
http://www.calbar.ca.gov

August 3, 2018

Tiffany Dehen
1804 Garnet Avenue, #239
San Diego, CA 92109

RE:   Inquiry Number:   18-20845
      Respondent:       Mohammed Aly

Dear Ms. Dehen:

The State Bar's Office of Chief Trial Counsel has reviewed your complaint against Mohammed Aly to determine whether there are sufficient grounds to prosecute a possible violation of the State Bar Act and/or Rules of Professional Conduct.

You have stated that Mr. Aly stalked and harassed you in law school, and told you that he was an enemy combatant of the United States and in an ISIS sleeper cell. You further alleged that Mr. Aly that was the subject of a criminal investigation with the FBI. You explained that you sued Mr. Aly in federal court. You also stated that Mr. Aly has terrorized you personally and is unfit to practice law. Your complaint stated that Mr. Aly has held himself out as homeless, which you do not believe to be true. You also alleged that Mr. Aly has a criminal record. It appears that Mr. Aly was convicted of misdemeanor trespassing in 2017.

Based on our evaluation of the information provided, we are closing your complaint. In order to investigate allegations of attorney misconduct, the State Bar needs specific facts which, if proved, would establish a violation of the attorney's ethical duties. Conclusions based on speculation and not supported by facts are insufficient to warrant investigation. Although you have generally stated that you do not believe Mr. Aly is fit to practice law, based on your belief that he is a terrorist and the subject of an FBI investigation, the material provided does not present sufficient facts to support an investigation into a potential violation of the State Bar Act and/or Rules of Professional Conduct. Whether Mr. Aly's actions constitute criminal conduct is a question that the criminal prosecutorial agency of appropriate jurisdiction is most qualified to investigate. The allegations you have made do not support a finding that the attorney violated the State Bar Act or the Rules of Professional Conduct.

For these reasons, the State Bar is closing this matter.

If you have new facts and circumstances that you believe may change our determination to close your complaint, you may submit a written statement with the new information to the Intake Unit for review. If you have any questions about this process, you may call Deputy Trial Counsel Kelly Gerner at (213) 765-1293. If you leave a voice message, be sure to clearly identify the lawyer complained of, the inquiry number assigned, and your telephone number including the area code. We should return your call within two business days.

Tiffany Dehen
August 3, 2018
Page 2

If you are not aware of new facts or circumstances but otherwise disagree with the decision to close your complaint, you may submit a request for review by the State Bar's Complaint Review Unit, which will review your complaint and the Intake Unit's decision to close the complaint. The Complaint Review Unit may reopen your complaint if it determines that your complaint was inappropriately closed or that you presented new, significant evidence to support your complaint. To request review by the Complaint Review Unit, you must submit your request **in writing**, together with any new evidence you wish to be considered, post-marked within **90 days of the date of this letter,** to:

> The State Bar of California
> Complaint Review Unit
> Office of General Counsel
> 180 Howard Street
> San Francisco, CA 94105-1617

The State Bar cannot give you legal advice. If you wish to consult an attorney about any other remedies available to you, a certified lawyer referral service can provide the names of attorneys who may be able to assist you. In order to find a certified lawyer referral service, you may call our automated Lawyer Referral Services Directory at 1-866-442-2529 (toll free in California) or 415-538-2250 (from outside California) or access the State Bar's website at www.calbar.ca.gov and look for information on lawyer referral services.

We would appreciate if you would complete a short, anonymous survey about your experience with filing your complaint. While your responses to the survey will not change the outcome of the complaint you filed against the attorney, the State Bar will use your answers to help improve the services we provide to the public. The survey can be found at http://bit.ly/StateBarSurvey1.

Thank you for bringing your concerns to the attention of the State Bar.

Very truly yours,

Kelly Gerner
Deputy Trial Counsel

KG/kg

University of San Diego

Tiffany Dehen <tiffanydehen@sandiego.edu>

---

## Reminder: Dean's October Mixer is today, Tuesday, October 20, 2015

1 message

---

**University of San Diego School of Law** <lawstudentaffairs@sandiego.edu>    Tue, Oct 20, 2015 at 10:06 AM
Reply-To: lawstudentaffairs@sandiego.edu
To: Tiffany Dehen <tiffanydehen@sandiego.edu>

web version    follow | tweet | like | forward

### DEAN'S OCTOBER MIXER

Dean's Mixer Image, University of San Diego School of Law



Current Students Landing Page | Student Events Calendar

Dear Tiffany,

Dean Ferruolo invites you to the October Mixer. Come mingle with the dean, faculty and students while enjoying some festive Oktoberfest fare. While you're there, protect yourself this winter season with a flu shot. Flu shots will be available to students, faculty and staff during the mixer. They will be free for students and $20 for faculty and staff.

### Tuesday, October 20, 2015

4 – 6 p.m.
Warren Hall Back Patio
(Flu shots in The Writs)

We hope to see you there!



## OFFICE FOR LAW STUDENT AFFAIRS

University of San Diego
School of Law
5998 Alcalá Park
San Diego, CA 92110-2492

This message was intended for: tiffanydehen@sandiego.edu
You were added to the system September 12, 2013.
For more information click here.

Update your preferences | Unsubscribe

Powered by
**bluehornet**

## Security

1 message

**Tiffany Dehen** <tiffanydehen@sandiego.edu>
To: president@sandiego.edu

Mon, Jul 11, 2016 at 1:31 PM

Dear Mr. President,

In light of recent personal events which I would prefer not to disclose, may I please request increased security presence in Warren Hall during my Professional Responsibility class as well as increased security presence around the USD legal clinics?

I only have to come to campus for a couple more weeks while I finish up summer school but I would really appreciate the increased security presence to feel safe on campus these last few weeks of class.

Thank you,

**Tiffany Dehen**
Legal Intern
USD Federal Tax Clinic
TiffanyUSDClinic@gmail.com
5998 Alcala Park, BA-305
San Diego, CA 92110
Phone: 619-260-7470
Fax: 619-260-7425



**That Anonymous Coward - As see...**
@That_AC

Follow

@TimCushing So what do you think are the chances of someone on Team Sociopath (Team TAC!) having connections into Orange County ACLU? Tiff dropped his name & job so I want to get his take on his time at USD & Tiff & write something up compared to my guesses about human nature

10:38 PM - 24 Jun 2018

1 Like 

💬 1          ⟲          ♡ 1          ✉

 Tweet your reply

**That Anonymous Coward - As seen on several dockets** @Th... · Jun 24
Plus the lovely irony of the self described immortal sociopath being saner than 1 of the participants...

💬          ⟲          ♡          ✉

**That Anonymous Cowa...**
@That_AC

| Tweets | Following | Followers | Likes | Moments |
|--------|-----------|-----------|-------|---------|
| 38.2K  | 187       | 507       | 1,268 | 1       |

Ask those nice people being stopped in the 100 mile Constitution Free Zone asked for their papers, searched for drugs, having their stuff arrested.
They were sure it would never happen to them, only "bad people"™

♡ 1

---

**That Anonymous Coward - As seen on several dockets** @Tha... · Jun 24  ⌄
Replying to @NotPeoriaMayor
I think I found the flaw in your thought...
decency isn't really a word they understand.

---

**That Anonymous Coward - As seen on several dockets** @Tha... · Jun 24  ⌄
Replying to @marcorandazza @NotPeoriaMayor
When "We" do it, it is perfectly fine.
When "They" do it, it is an attack of 'Merica!!

Imagine someone disliked something you did & decided this was the best way to deal with it... of course you can't because in your imagination you would never offend anyone... idiots.

---

**That Anonymous Coward - As seen on several dockets** @Tha... · Jun 24  ⌄
Replying to @NotPeoriaMayor
Maybe he needed to get tased to get there.

---

**That Anonymous Coward - As seen on several dockets** @Tha... · Jun 24  ⌄
Replying to @WreckItBKLYN
I know my S1 is trying my patience...

♡ 1



**Not Jim Ardis**
@NotPeoriaMayor

| Tweets | Following | Followers | Likes | Lists |
|--------|-----------|-----------|-------|-------|
| 67.6K | 1,028 | 1,288 | 2,457 | 2 |



**Verbal abuse hurled at NYPD in yet another videotaped tirade**
Warning: Graphic language Cops are increasingly being subjected to vicious verbal abuse on New York City streets — and doing next-to-noth...
nypost.com

◯ 23    ⟲ 19    ♡ 202    ✉

**Not Jim Ardis** @NotPeoriaMayor · 3h
This isn't really a win, just a chance to lose again.



**Keith Lee** @associatesmind
Another win for @twitter & @jack in the war against trolls - appellate court affirms that Twitter is free to decide who remains on their platform & Twitter is not a publisher Section 230.

◯    ⟲    ♡ 2    ✉

⟲ Not Jim Ardis Retweeted



**Scott Greenfield** @ScottGreenfield · 3h
Times' endorsement of @ZephyrTeachout for NY Attorney General is a fine choice, but AGs job is to represent the state, not undermine NY law to go to war with president.

**NYT Opinion** @nytopinion
With the right leadership, the New York attorney general's office could serve as a firewall if President Trump pardons senior aides, dismisses Robert Mueller or attacks the foundations of state power. nyti.ms/2Bs6Avn

◯ 2    ⟲ 2    ♡ 7    ✉

#tiffanyvtwitter

Top     Latest     People     Photos     Videos     News     Broadcasts

**Jaydub** @jasnwilsn · 21 Aug 2017
@tiffanysundevil I've read both briefs filed today & I would highly recommend
you talk to OC abt paying costs & nonsuit. #tiffanyvtwitter

💬 2          ⟲          ♡ 1          ✉

**Jay M. Wolman, CIPP/US** @wolmanj · 21 Aug 2017
Disappointed by @twitter  I want to represent John Doe just to vindicate the
parody in #tiffanyvtwitter

**Jay M. Wolman, CIPP/US** @wolmanj
Replying to @wolmanj @BoozyBarrister @tiffanysundevil
Pretty sure @PerkinsCoieLLP is going to make her regret this. How long until
the antislapp motion drops?

💬          ⟲          ♡ 2          ✉

**Virgil Abt** @abtnatural · 21 Aug 2017
Replying to @abtnatural @BoozyBarrister and 4 others
#TiffanyvTwitter Twitter&USD moved to dismiss today.  Twitter didn't follow
through on the threat of a fee-shifting anti-SLAPP motion,  /1

Your claims against Twitter may also be subject to other legal challenges. For example, the
lawsuit has been brought in the wrong court, and you have not alleged and cannot allege the
elements of your claims. Finally, the lawsuit seeks to hold Twitter liable for exercising its
editorial rights to set and enforce policies for reporting, investigating, and removing content, as
protected by the First Amendment to the U.S. Constitution.[7] Twitter may therefore move to
strike relevant claims under California's Anti-Strategic Lawsuit Against Public Participation
("Anti-SLAPP") Law, Cal. Civ. Proc. Code § 425.16, seeking its attorney's fees and costs, as
authorized by law.

We look forward to receiving confirmation that you will dismiss your claims against Twitter. In
the meantime, Twitter reserves and does not waive any of its rights, arguments, or objections.

Sincerely,

*Julie E. S_____*

Julie E. Schwartz



#TiffanyDevitt

Top    Latest    People    Photos    Videos    News    Broadcasts

**That Anonymous Coward - As seen on several dockets ...** · 21 Aug 2017  ⌄
#MoreRareThanAnEclipse
Tiffany filing a complaint that makes sense in #TiffanyvDevitt

♡ 2

**That Anonymous Coward - As seen on several dockets ...** · 21 Aug 2017  ⌄
When Pretenda sued to unmask me, people asked if I was worried... nope.
I'm smarter than most lawyers...
Ex: #TiffanyvDevitt

**BoozyBarrister** @BoozyBarrister · 21 Aug 2017                    ⌄
#TiffanyvDevitt continues as USD argues their graduate doesn't understand
FRCP, despite having a USD JD.

I don't know who won on this one.

♡ 5          ♡ 11

Tiffany Dahan liked

**Doctor_Cornelius** @Dr__Cornelius · 21 Aug 2017                 ⌄
Give them hell @tiffanyandevil you got this!! #TiffanyvDevitt

gofile.io/?c=FtUfuxx

mssullivan@paulplevin.com
JOANNE ALNAJJAR BUSER (SBN 295191)
jbuser@paulplevin.com
AMIR A. SHABAIK (SBN 288109)
ashabaik@paulplevin.com
PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Defendant University of San
Diego

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

#TiffanyvTwitter

Top   Latest   People   Photos   Videos   News   Broadcasts

~~~ and 3 law school

💬 1    🔁    ♡ 4    ✉

**BoozyBarrister** @BoozyBarrister · 2 Feb 2017
"COMES NOW the Plaintiff, and, like Oh my god you guys, she can't even."
#TiffanyvTwitter

💬    🔁 2    ♡ 9    ✉

**BoozyBarrister** @BoozyBarrister · 2 Feb 2017
#TiffanyvTwitter it is. @Popehat, plan accordingly.

Keith Lee @associatesmind
2nd the motion. Going forward #TiffanyvTwitter twitter.com/BoozyBarrister...

💬    🔁    ♡    ✉

**Keith Lee** @associatesmind · 2 Feb 2017
2nd the motion. Going forward #TiffanyvTwitter

BoozyBarrister @BoozyBarrister
@associatesmind I got a name for it now:  #TiffanyvTwitter

💬 1    🔁    ♡ 2    ✉

**BoozyBarrister** @BoozyBarrister · 2 Feb 2017
@associatesmind I got a name for it now: #TiffanyvTwitter

💬    🔁    ♡    ✉

🐦

Back to top ↑

 **That Anonymous Coward - As seen on several dockets …** · 22 Jun 2017 ∨
Smart people in the crowd know IANAL, so Law Twitter I have a question.
When you destroy your reputation, then what?
#TiffanyvTwitter

◯ 1          ⇄          ♡ 1          ✉

 **Virgil Abt** @abinatural · 22 Jun 2017                                     ∨
Replying to @abinatural @BoozyBarrister and 2 others

 6/8 Dehen puts up $400; 6/14 Twitter says stop or you'll pay
our fees; 6/16 Dehen serves process.

```
Receipt Number: CAS091701
Cashier ID: akukura
Transaction Date: 06/08/2017
Payer Name: Tiffany Dehien
------------------------------------------
CIVIL FILING FEE
 For: Tiffany Dehien
 Case/Party: D-CAS-3-17-CV-000198-001
```