# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY DEHEN, an individual on behalf of herself,<br><br>       Plaintiff,<br><br>vs.<br><br>JOHN DOES 1-100, TWITTER, INC., UNIVERSITY OF SAN DIEGO, AND PERKINS COIE LLP,<br><br>       Defendants. | CASE NO. 17cv198-LAB (WCG)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PREJUDICE [DKT. 57, 58, 63];**<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT [DKT. 67, 79, 82]** |

Plaintiff Tiffany Dehen sued Defendants Twitter, University of San Diego (USD), Perkin Coie LLP (Perkins), and Does 1-100 for claims related to a fake Twitter account she suspects USD law students created to intimidate her and damage her reputation. Twitter, USD, and Perkins now move to dismiss Plaintiff's claims against them. For the reasons below, these motions are **GRANTED** and Plaintiff's claims against these Defendants are **DISMISSED WITH PREJUDICE**.

## **BACKGROUND**

**I.  Factual History**

Plaintiff Tiffany Dehen is a former USD law student whose Second Amended Complaint alleges a wide-ranging conspiracy to impersonate and defame her online.

- 1 -

*See, e.g.,* Dkt. 55 at ¶¶32, 154, 281, 330. The central allegation of her Complaint is that, in January 2017, an anonymous user, John Doe, created a Twitter account using her name (@tiffanydehen) and likeness to parody her as a fictitious Donald Trump supporter. *Id.* at ¶89-115. The posts, which used Plaintiff's copyrighted images, were replete with swastikas and other content Dehen found offensive. *Id.* Dehen claims Doe's fake Twitter account has permanently damaged her reputation and has impacted her ability to, among other things, sit for the bar exam. *Id.* at ¶22-26.

Dehen's connection to the non-Doe Defendants is more complicated. While she was a student at USD, Dehen claims she was subject to "terroristic" behavior by unnamed USD students who declared themselves to be engaging in terrorism against the United States. *Id.* at ¶¶27, 48-49. She reported this behavior to the FBI in July 2016, but there is no indication that anything came of the investigation. *Id.* at ¶28. Dehen's Complaint attaches more than 200 pages of text messages, emails, and similar documents in which Dehen discusses the erratic behavior of one of these students with her friends and other members of the USD community. *Id.* at Ex. 94-139. Dehen alleges that USD "shut down" the law enforcement investigation of these students, but provides no explanation as to how it did so. *Id.* at ¶51. In Dehen's view, USD's failure to remedy the situation with her "terroristic" classmates directly led to the creation of the fake Twitter account that gives rise to the current dispute. *Id.* at ¶320. As evidence of this link, Dehen notes that "two [unknown] individuals from USD Law School viewed [her] LinkedIn profile" in the days leading up to the creation of fake Twitter account. *Id.* at ¶30, Ex. 52. She posits these viewers may be the Doe Defendants that created the fake Twitter account and may or may not be the same students who engaged in terroristic threats. Thus, according to Dehen, one of the "terroristic" students may be John Doe and USD is therefore responsible for the fake Twitter account and the various harms that have befallen Dehen because USD "shut down" an investigation that might have led to John Doe's arrest or dismissal from the school.

Defendant Twitter's involvement in the chain of events began when John Doe created the fake Twitter account in January 2017. John Doe styled the account as a "Parody account; Fiction and political satire about Republican white women" and used Plaintiff's photograph for the profile. *Id.* at ¶89. Doe then used the account to post views Dehen found offensive and to follow controversial Twitter accounts, including Vladimir Putin, the KKK, and Adolf Hitler. *Id.* at ¶92-115. On January 30, 2017, Dehen became aware of the account and reported the impersonation to Twitter using their designated form. *Id.* at ¶118. Following a car wreck that temporarily delayed her efforts, Dehen completed the verification process several days later and the account was disabled on February 3, 2017. *Id.* at ¶127. Dehen's primary dispute with Twitter appears to be over its identity verification process, which she claims led to the account remaining active for a matter of days.

As to the final named defendant, law firm Perkins Coie, Dehen alleges that she was involved in a separate car wreck on February 20, 2017 in which Perkins was somehow involved. *Id.* at ¶142. Dehen claims the San Diego Police Department refused to record an incident report and that she was forced to report the collision to the FBI over concerns that the accident was intentional and related to either the terroristic behavior of her classmates or her newly filed federal Complaint. *Id.* at ¶142-43. Dehen asserts that Perkins, who represents Twitter in this case, was involved in orchestrating the car wreck in order to intimidate her. *Id.* at ¶330. As relevant to Perkins, Dehen also alleges she received unwanted attention from an unnamed elderly woman in June 2017 while she was filing documents at the Southern District courthouse. *Id.* at ¶154. The woman was overly interested in Dehen's case and contacted her multiple times over the following days. After blocking her number, Dehen discovered the woman's daughter works for the law firm of Jones Day, and she alleges that this interference was part of a conspiracy by Perkins—a different law firm—to intimidate Dehen from pursuing her claims. *Id.* at ¶154.

/ / /

/ / /

**II. Procedural History**

Dehen filed her first complaint in February 2017. Dkt. 1. Following Motions to Dismiss by Twitter and USD, Dehen sought leave to file a First Amended Complaint, which the Court permitted. Dkt. 36. Before the Court could rule on the pending Motions to Dismiss, Dehen sought leave to file a Second Amended Complaint (SAC). Dkt. 45. At that time, the Court noted that Defendants' motions were well-taken, but permitted Dehen to file her SAC under FRCP 15's liberal amendment standards. Dkt. 54. The Court instructed Dehen to review Defendants' motions and correct any deficiencies they identified. *Id.* Dehen was also specifically cautioned that, among other things, it was not sufficient to "reserve the right" to bring claims later. *Id.* Dehen filed her SAC on April 6, 2018. Dkt. 55. Shortly thereafter, the three named Defendants submitted the Motions to Dismiss addressed here. After the Court took those motions under submission and received supplemental briefing from the parties, Dehen sought leave to file her Third Amended Complaint. Dkt. 79. The Court suspended briefing on that Motion until it could rule on the pending Motions to Dismiss. Dkt. 80.

# DISCUSSION

**I. Legal Standard**

A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). The Court must accept all factual allegations as true and construe them in the light most favorable to Plaintiff. *Cedars Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). To defeat Defendants' motion to dismiss, Plaintiff's factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**II. Federal Claims Relevant to All Defendants**

    **a. RICO Claims**

Plaintiff's Tenth and Twelfth Causes of Action are for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) against Twitter and USD, respectively.

RICO claims must meet the heightened standard of FRCP 9(b), so complaints must be particularized as to the time, place, and specific content of the alleged violation. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).

Against Twitter, Dehen provides only conclusory allegations that Twitter "participated in a pattern of racketeering activity" through "uses of interstate wire communications." Dkt. 55 at ¶286. She proceeds to quote the statutory definition of wire fraud as an allegation of predicate acts. *Id.* at ¶289. These are classic cases of conclusory, threadbare recitals of the elements of an offense, insufficient to meet even the *Iqbal* and *Twombly* standard, much less the heightened standard of Rule 9(b). Her allegations don't particularize as to time, place, or specific content with regards to any wire fraud or other predicate acts.

The same analysis is true of Dehen's RICO claims against USD, with identical conclusory allegations of a pattern of racketeering activity, (*id.* at ¶303), and wire fraud. *Id.* at ¶306.

Because Dehen's RICO claims fail to meet even the basic pleading standards of *Iqbal* and *Twombly*, much less the heightened standard of Rule 9(b), her RICO claims must be dismissed.

**b.     Extortion and Hobbs Act Claims**

Dehen's Fifteenth, Sixteenth, and Seventeenth Causes of Action are for violations of various federal criminal laws, including extortion, against each of the named Defendants. There is no private right of action for violations of criminal statutes and so claims brought under them must be dismissed. *Allen v. Gold Count Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006).

**III.     Remaining State Law Claims**

Having dismissed Plaintiff's federal claims against all named Defendants, the Court turns to the Plaintiff's remaining state law claims. A federal court has discretion to retain jurisdiction over pendent state claims "even if the federal claims . . . are dismissed." *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995). In making this decision, the court

weighs factors such as "economy, convenience, fairness, and comity." *Id.* Weighing these factors, the Court finds the state and federal claims are premised on the same allegations and that judicial efficiency is served by this Court retaining (and ruling on) these causes of action now.

### a. Twitter, Inc.

Twitter argues that Section 230(c)(1) of the Communications Decency Act bars all claims Plaintiff has brought against it, each of which is based on Twitter's alleged delay in taking down the offending content once notified. The Court agrees. Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C.§ 230(c)(1). This provision immunizes providers "against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). Courts apply Section 230 immunity broadly "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id.* at 1175.

A defendant is entitled to protection under the CDA if (1) it provides an "interactive computer service," (2) plaintiff's claim treats the defendant as the "publisher" or "speaker" of the offending content, and (3) the content was "provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570F.3d 1096, 1100-01 (9th Cir. 2009), *as amended* (Sept. 28, 2009). Twitter meets each of these requirements. The first and third requirements are plainly met: Twitter is an interactive computer service, *see Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016), and the offending content— the tweets—was posted by another information content provider, John Doe. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) ("[P]laintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online.").

Only the second requirement of the CDA, which requires that the claims at issue treat the defendant as the "publisher" or "speaker" of the offending content, is arguably at play here. Dehen argues that her claims do not involve Twitter's "publishing" of the tweets, but rather Twitter's delay in taking down the offending tweets after Dehen notified Twitter of the impersonation. *See, e.g., id.* at ¶178. She also argues that Twitter violated its terms of service and thereby breached a contract with her, rendering the claims not subject to the CDA. However, the case Dehen relies on, *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), is inapposite. In that case, Yahoo's Director of Communications personally promised the plaintiff he would remove the offending content, but failed to do so for two months. The court there found the CDA did not bar plaintiff's promissory estoppel claim because Yahoo took on a legal obligation as a counterparty, not a publisher. *Id.* at 1107. The court acknowledged that this was a limited exception and that "a general monitoring policy, or even an attempt to help a particular person … does not suffice for contract liability." *Id.* at 1108.

Dehen's interactions with Twitter do not meet this limited exception. Twitter's terms of service disclaim any specific obligation to remove content and Dehen makes no allegation that Twitter promised to remove the content. *See Barnes*, 570 F.3d at 1108 (An interactive computer service "need only disclaim any intention to be bound" in order "to avoid liability."). In short, even accepting Dehen's allegations as true, it appears Twitter complied with its own monitoring policies and removed the offending account in a matter of days. Without a breach of contract, Twitter's decision to remove the content, and the speed at which it did so, is publisher conduct that satisfies the second prong of the CDA.

The Court finds that Plaintiff's claims against Twitter—each of which is "derive[d] from the [Twitter's] status or conduct as a publisher or speaker"—are barred by § 230 of

/ / /

/ / /

/ / /

the CDA and should be dismissed.[1] *Barnes*, 570 F.3d at 1102. The Court also declines to find § 230 unconstitutional, as Dehen argues.

### b. USD and Perkins

Twitter is shielded by the CDA, but Defendants USD and Perkins are not. The Court must therefore assess the validity of each of Plaintiff's claims against these Defendants.

#### i. Negligent and Intentional Infliction of Emotional Distress

Dehen brings a claim against USD for negligent and intentional infliction of emotional distress. She states that "USD owed a duty of care to prevent plaintiff from being injured as a result of Doe's conduct." Dkt. 55 at ¶ 319. This breach of duty caused her to "suffer extreme mental and emotional distress." *Id.* at ¶339 (on page 64, as it appears out of order).

"In California, there is no independent tort of negligent infliction of emotional distress." *Eastman v. Allstate Ins. Co.*, 2014 WL 5355036 at *8 (S.D. Cal. 2014) (quoting *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965 (1993)). The applicable cause of action is general negligence, and "[u]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by the breach of duty." *Id.* (internal quotations omitted).

Dehen simply makes conclusory allegations about the duties owed by USD. She claims that the contracts between her and USD created a duty of care that it breached by not preventing John Doe's harmful conduct. Although a valid contract may or may not have existed between Dehen and USD, as discussed below, she hasn't sufficiently alleged that these contracts placed a duty on USD to prevent John Doe's conduct. Nor

---

[1] This includes Plaintiff's Declaratory Relief claim, which depends on the survival of Plaintiff's other claims.

has she sufficiently pled facts of how USD breached its alleged contractual duties. Because she has not sufficiently pled negligence against USD, her claim is dismissed. Having failed to state a claim even for negligent infliction of emotional distress, Dehen's claim for intentional infliction of emotional distress, which must meet a higher bar, is also dismissed.

### ii. Breach of Contract

Dehen alleges Breach of Contract against USD. To recover under a breach of contract claim under California law, Dehen must show "(1) existence of the contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages." *Tom Trading, Inc. v. Better Blue, Inc.*, 26 Fed. Appx. 733, 735 (9th Cir. 2002).

Although it is unclear from her pleading which specific document constitutes the breached contract, Dehen's Complaint refers to snippets from USD's website regarding the various safety policies on campus (Dkt. 55 at ¶¶35-42) as well as USD's Rules of Conduct, which she alleges (but does not demonstrate) that she signed when she entered school. *Id.* at ¶¶43-47. Courts within the Ninth Circuit have held that whether or not school guidelines, such as a code of conduct or student handbook, constitute a contract depends on its specific language. *Compare Banga v. Kanios*, 2016 WL 7230870 (N.D. Cal. 2016) (dismissing breach of contract claim because plaintiff failed to produce any language suggesting that handbook was binding) *with Dauven v. George Fox University*, 2010 WL 6089077 (D. Or. 2010) (allowing breach of contract claim because student handbook included express signature requirement for each student). But the Court need not reach that question today, because even assuming it was a contract, Dehen has not alleged any plausible breach by USD. None of the policies Dehen alleges USD breached required USD to take any affirmative action with respect to a given student or situation, such as the "terroristic" students she claims USD failed to have removed from campus. Instead, the terms provide that USD "may" take action if a student violates the guidelines. *See, e.g.,* Dkt. 55 at ¶45 ("Violations … *may* subject an individual or group to disciplinary

action.") (emphasis added). More importantly, all of Dehen's allegations of breach are conclusory statements, not factual allegations that would permit an inference of misconduct. *See* Dkt. 55 at ¶51 (alleging, without any supporting facts, that USD broke federal law and "shut down" a federal investigation); *Id.* at ¶¶52-53 (stating that USD failed to address "serious situations"); *Id.* at ¶55 (stating that USD failed to uphold federal law, but failing to allege what federal laws USD allegedly breached or in what way).

Because Dehen fails to allege breaching activity in a way that meets the requirements of *Twombly* and *Iqbal*, her breach of contract claim against USD is dismissed.

### iii. "Reserved" Claims

Under her Ninth Cause of Action, Dehen does not allege any actual claim, but instead "reserves the right" to bring civil conspiracy claims. Dkt. 55 at ¶277. Under her Eleventh Cause of Action, Dehen likewise "reserves the right" to bring libel claims. *Id.* at ¶298. The Court has already ordered that Dehen include facts that show she can plausibly allege the elements for each cause of action, and stated that merely "reserv[ing] the right" to make other claims will not be good enough. Dkt. 54. As such, Dehen's claims of civil conspiracy and libel are dismissed.

## **CONCLUSION**

The Court has already given Dehen two opportunities to amend her complaint, along with specific instructions as to what deficiencies she needed to cure. Dehen has failed to cure these deficiencies, and her Third Amended Complaint, which she has now sought leave to file, fares no better. Dkts. 77, 79, 82. As such, the following causes of action in Dehen's SAC are **DISMISSED WITH PREJUDICE:**

- Fourth Cause of Action for Rescission for Fraud against Twitter;
- Fifth Cause of Action for Declaratory Relief against Twitter;
- Eighth Cause of Action for Negligent Infliction of Emotional Distress against Twitter;
- Ninth Cause of Action for Conspiracy against All Defendants;
- Tenth Cause of Action for Violation of 18 U.S.C. § 1962 against Twitter;
- Eleventh Cause of Action for Libel against Twitter;

- Twelfth Cause of Action for Violation of 18 U.S.C. § 1962 against USD;
- Thirteenth Cause of Action for Breach of Contract against USD;
- Fourteenth Cause of Action for Intentional and/or Negligent Infliction of Emotional Distress against USD;
- Fifteenth Cause of Action for Extortion and Conspiracy to Commit Extortion against Twitter;
- Sixteenth Cause of Action for Extortion and Conspiracy to Commit Extortion against Perkins; and
- Seventeenth Cause of Action for Extortion and Conspiracy to Commit Extortion against USD.

The claims are dismissed under FRCP 12(b)(6) because Dehen cannot state a plausible claim against any of the named Defendants that meets the required pleading standards. In the alternative, however, the claims are dismissed under Rule 41, because Plaintiff, despite having ample chance to amend and receiving direct instructions from the Court on how to go about amending, still has not put forth a pleading that meets the requirements of FRCP 8. The claims are therefore subject to dismissal under FRCP 41(b). *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [R]ules 8(a) and 8(e) may be dismissed with prejudice pursuant to [R]ule 41(b).")

This leaves only Dehen's claims against John Doe(s) for copyright infringement, defamation, interference with economic advantage, intentional infliction of emotional distress, and violation of California's online impersonation statute (Cal. Penal Code § 528.5). The Court is not in a position to rule on these claims at this point. But this action has been pending for more than 18 months and Dehen has yet to identify Doe(s). Dehen shall have until **November 16, 2018** to determine the identity of Doe(s) and to substitute those parties in. If she meets that deadline, she shall have until **December 17, 2018** to properly serve them. Given the amount of time Plaintiff has had to identify and serve Doe since initiating this case, if she fails to meet these deadlines, her remaining claims will be dismissed with prejudice under FRCP 41(b). Plaintiff should not name another defendant unless she can demonstrate to the Court that the named defendant is,

in fact, John Doe. Naming a defendant without an adequate basis for doing so is grounds for sanctions under FRCP 11.

Because Plaintiff cannot correct the deficiencies identified, Plaintiff's Motion for Leave to File a Third Amended Complaint [Dkt. 79] and Motion to Consider New Additional Evidence in Support of Plaintiff's Motion for Leave to File a Third Amended Complaint [Dkt. 82] are **DENIED**.

USD argues it is entitled to costs under FRCP 54(d)(1) as the prevailing party. Dkt. 57 at 20. Dehen is **ORDERED TO SHOW CAUSE** by **October 19, 2018** why each of the Defendants' costs should not be taxed against her. She may submit a memorandum no longer than three pages. If she fails to show cause, Defendants are each entitled to submit a bill of costs.

This Order resolves Dkts. 57, 58, 63, 67, 79, and 82.

**IT IS SO ORDERED**.

Dated: September 18, 2018

*Larry A. Burns*
**HONORABLE LARRY ALAN BURNS**
United States District Judge